1
2
3
4
5

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

6
7
8

Attorneys for Plaintiffs
JONATHAN WAYNE BOTTEN, SR.,
TANJA DUDEK-BOTTEN, ANNABELLE BOTTEN,
AND J.B.

9
10
11

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20
21
22
23
24

| | |
|---|---|
| JONATHAN WAYNE BOTTEN, SR.; TANJA DUDEK-BOTTEN; ANNABELLE BOTTEN; and J.B., a minor, by and through his guardian JONATHAN WAYNE BOTTEN, SR., <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. **5:23-cv-257** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Fourth Amendment—Excessive Force (42 U.S.C. § 1983) <br> 2. Substantive Due Process (42 U.S.C. § 1983) <br> 3. Municipal Liability—Inadequate Training (42 U.S.C. § 1983) <br> 4. Municipal Liability—Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983) <br> 5. Battery <br> 6. Negligence <br> 7. Negligent Infliction of Emotional Distress <br> 8. Violation of Cal. Civil Code § 52.1 <br><br> **DEMAND FOR JURY TRIAL** |

25
26
27
28

---

## **COMPLAINT FOR DAMAGES**

JONATHAN WAYNE BOTTEN, SR., TANJA DUDEK-BOTTEN, ANNABELLE BOTTEN, and J.B., a minor by and through his legal guardian JONATHAN WAYNE BOTTEN, SR., for their Complaint against STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO, ISAIAH KEE, MICHAEL BLACKWOOD, BERNARDO RUBALCAVA, ROBERT VACCARI, JAKE ADAMS, and DOES 1-10, inclusive, allege as follows:

## **JURISDICTION AND VENUE**

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## **INTRODUCTION**

3.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the officer-involved shooting of Plaintiffs JONATHAN WAYNE BOTTEN, SR., TANJA DUDEK-BOTTEN, and J.B. on February 17, 2021.

/ / /

/ / /

/ / /

1

**PARTIES**

2      4.      At all relevant times, Plaintiff JONATHAN WAYNE BOTTEN, SR.

3   ("JONATHAN") was an individual residing in the City of Hesperia in the County of

4   San Bernardino, California.

5      5.      At all relevant times, Plaintiff TANJA DUDEK-BOTTEN ("TANJA")

6   was an individual residing in the City of Hesperia in the County of San Bernardino,

7   California.

8      6.      At all relevant times, Plaintiff ANNABELLE BOTTEN

9   ("ANNABELLE") was an individual residing in the City of Hesperia in the County

10  of San Bernardino, California.

11     7.      At all relevant times, Plaintiff J.B. ("J.B."), a minor, was an individual

12  residing in the City of Hesperia in the County of San Bernardino, California.

13     8.      At all relevant times, Defendant STATE OF CALIFORNIA

14  ("STATE") is and was a duly organized public entity existing under the laws of the

15  State of California. STATE is responsible for the actions, omissions, policies,

16  procedures, practices and customs of its various agents and agencies, including the

17  California Highway Patrol ("CHP") and its agents and employees. At all relevant

18  times, Defendant STATE is and was responsible for assuring that the actions,

19  omissions, policies, procedures, practices, and customs of the and its employees and

20  agents complied with the laws of the United States and of the State of California.

21     9.      At all relevant times, Defendant COUNTY OF SAN BERNARDINO

22  ("COUNTY") is and was a duly organized public entity existing under the laws of

23  the State of California. COUNTY is responsible for the actions, omissions, policies,

24  procedures, practices and customs of its various agents and agencies, including the

25  San Bernardino Sheriff's Department ("SBSD") and its agents and employees. At all

26  relevant times, Defendant COUNTY is and was responsible for assuring that the

27  actions, omissions, policies, procedures, practices, and customs of the and its

28

1  employees and agents complied with the laws of the United States and of the State

2  of California.

3      10.    At all relevant times, Defendants ISAIAH KEE ("KEE"), MICHAEL

4  BLACKWOOD ("BLACKWOOD"), and BERNARDO RUBALCAVA

5  ("RUBALCAVA") (collectively "OFFICER DEFENDANTS") were duly appointed

6  by STATE as CHP officers and employees or agents of STATE, subject to oversight

7  and supervision by STATE's elected and non-elected officials. KEE,

8  BLACKWOOD, and RUBALCAVA acted under color of law, to wit, under the

9  color of the statutes, ordinances, regulations, policies, customs, and usages of

10  defendant STATE and the CHP, and under the color of the statutes and regulations

11  of the State of California.

12      11.    At all relevant times, Defendants ROBERT VACCARI ("VACCARI")

13  and JAKE ADAMS ("ADAMS") (collectively "DEPUTY DEFENDANTS") were

14  duly appointed by COUNTY as SBSD deputies and employees or agents of

15  COUNTY, subject to oversight and supervision by COUNTY's elected and non-

16  elected officials. VACCARI and ADAMS acted under color of law, to wit, under the

17  color of the statutes, ordinances, regulations, policies, customs, and usages of

18  defendant COUNTY and the SBSD, and under the color of the statutes and

19  regulations of the State of California.

20      12.    At all relevant times, Defendants DOES 1-3 ("DOE OFFICERS") were

21  duly appointed by STATE as CHP officers and employees or agents of STATE,

22  subject to oversight and supervision by STATE's elected and non-elected officials.

23  DOES 1-3 acted under color of law, to wit, under the color of the statutes,

24  ordinances, regulations, policies, customs, and usages of defendant STATE and the

25  CHP, and under the color of the statutes and regulations of the State of California.

26      13.    At all relevant times, Defendants DOES 4-6 ("DOE DEPUTIES") were

27  duly appointed by COUNTY as SBSD deputies and employees or agents of

28  COUNTY, subject to oversight and supervision by COUNTY's elected and non-

elected officials. DOES 4-6 acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of defendant COUNTY and the SBSD, and under the color of the statutes and regulations of the State of California.

14.    At all relevant times, Defendants DOES 7-8 are managerial, supervisorial, and policymaking employees of the CHP, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the CHP.  DOES 7-8 were acting with the complete authority and ratification of their principal, Defendant STATE.

15.    At all relevant times, Defendants DOES 9-10 are managerial, supervisorial, and policymaking employees of the SBSD, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the SBSD.  DOES 9-10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

16.    KEE, BLACKWOOD, RUBALCAVA, VACCARI, ADAMS, and DOES 1-10 are sued in their individual capacities.

17.    In doing the acts and failing and omitting to act as hereinafter described, KEE, BLACKWOOD, RUBALCAVA, and DOE OFFICERS were acting on the implied and actual permission and consent of Defendant STATE.

18.    In doing the acts and failing and omitting to act as hereinafter described, VACCARI, ADAMS, and DOE DEPUTIES were acting on the implied and actual permission and consent of Defendant COUNTY.

19.    The true names and capacities of DOES 1-10 are unknown to Plaintiffs, who otherwise sues these Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to show the true names and capacities of the Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

20.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

21.     All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

22.     On or around April 6, 2021, Plaintiffs filed comprehensive and timely claims for damages with the State of California pursuant to the applicable sections of the California Government Code. Over forty-five days have passed without a final disposition on these claims.

23.     On or around April 6, 2021, Plaintiffs filed comprehensive and timely claims for damages with the County of San Bernardino pursuant to the applicable sections of the California Government Code. These claims were rejected on May 21, 2021.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

24.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 23 of this Complaint with the same force and effect as if fully set forth herein.

25.     This incident occurred on February 17, 2021 at approximately 3:00 a.m. near 17994 Catalpa Street in Hesperia, California ("BOTTEN RESIDENCE"). Plaintiffs were asleep inside the BOTTEN RESIDENCE in their respective beds when Plaintiff TANJA heard sirens near their residence and woke Plaintiff JONATHAN up. JONATHAN looked outside one of the windows of the BOTTEN RESIDENCE and observed law enforcement try to intercept a vehicle, ultimately

resulting in the vehicle becoming disabled due to a spike strip across the street from the BOTTEN RESIDENCE. JONATHAN and TANJA then went back to sleep.

26.    At approximately 3:35 a.m., Plaintiff TANJA awoke again to the sound of sirens and a helicopter outside the BOTTEN RESIDENCE. TANJA woke JONATHAN up again and JONATHAN looked outside and observed an incident taking place in front of his house. At around this time, TANJA woke her daughter ANNABELLE and son J.B. up and gathered them in the kitchen area. JONATHAN stood in front of the front doorway and took a video of what appeared to be a passenger of a vehicle with hands up being ordered to walk backwards. After JONATHAN took the video, he went back inside his house to get ready for work.

27.    At approximately 4:20 a.m., TANJA informed JONATHAN that it appeared the driver of the vehicle, later identified as Hector Puga ("PUGA"), was getting out of the vehicle. JONATHAN went to the doorway to observe. TANJA and J.B. stood behind JONATHAN observing the incident as well. ANNABELLE was in the kitchen of the BOTTEN RESIDENCE. At around this time, Plaintiffs heard shots and saw a spark hit their metal screen door as OFFICER DEFENDANTS and DEPUTY DEFENDANTS shot at PUGA in the direction of the BOTTEN RESIDENCE. Based on JONATHAN's observations, it appeared that PUGA did not have a gun immediately prior to or during the shooting.

28.    Due to the presence of the officers surrounding the BOTTEN RESIDENCE and shots by OFFICER DEFENDANTS and DEPUTY DEFENDANTS towards and into the BOTTEN RESIDENCE, OFFICER DEFENDANTS and DEPUTY DEFENDANTS restrained JONATHAN, TANJA, ANNABELLE, and J.B.'s liberty to leave their home. At the time of the shooting, JONATHAN, TANJA, ANNABELLE, and J.B. were confined to their home because of OFFICER DEFENDANTS and DEPUTY DEFENDANTS' show of authority.

29.    JONATHAN fell back and heard TANJA scream that she had been shot in the face. Both ANNABELLE and J.B. also observed their mother scream that she had been shot. TANJA was bleeding from her face. TANJA had sustained gunshot wounds to her chin and chest. In order to get medical assistance for his wife's injuries, JONATHAN exited the BOTTEN RESIDENCE for help, yelling that his wife had been shot. Based on the officers' shots toward the BOTTEN RESIDENCE and the officers' active efforts to apprehend PUGA, JONATHAN, TANJA, ANNABELLE, and J.B. did not feel free to leave the premises.

30.    OFFICER DEFENDANTS and DEPUTY DEFENDANTS approached the family. Based on OFFICER DEFENDANTS and DEPUTY DEFENDANTS' approach and presence, JONATHAN, TANJA, ANNABELLE, and J.B. believed that they were not free to leave. OFFICER DEFENDANTS and DEPUTY DEFENDANTS directed TANJA onto a bench outside BOTTEN RESIDENCE, to which she complied. At around this time, J.B. exited the house holding his side while stating that he could not breathe. J.B. had sustained gunshot wounds to his chest and ribcage. J.B. was instructed by OFFICER DEFENDANTS and DEPUTY DEFENDANTS to sit next to his mother. J.B. obeyed this direction.

31.    After the paramedics had arrived and as they were taking down the family's information, paramedics asked JONATHAN whether he had been shot. It was at this time that JONATHAN realized that he had been shot twice in the right forearm, once in his left hand, and once on his right leg.

32.    At all relevant times, Plaintiff ANABELLE was present and observed her father, mother, and brother sustain serious gunshot injuries.

33.    Plaintiffs TANJA and J.B. were subsequently airlifted to the hospital due to their serious injuries.

34.    Plaintiff JONATHAN was ultimately transported to the hospital via ambulance for his gunshot injuries.

**FIRST CLAIM FOR RELIEF**

**Fourth Amendment—Excessive Force (42 U.S.C. § 1983)**

(Plaintiffs JONATHAN, TANJA, and J.B. against OFFICER DEFENDANTS and DEPUTY DEFENDANTS)

35.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 34 of this Complaint with the same force and effect as if fully set forth herein.

36.     OFFICER DEFENDANTS and DEPUTY DEFENDANTS, while working as law enforcement officers for CHP and SBSD, respectively, and acting within the course and scope of their duties, intentionally shot at PUGA while he was between them and the BOTTEN RESIDENCE and used excessive and unreasonable force against him in an effort to detain him. Upon information and belief, PUGA did not pose an immediate threat of serious injury or death at the time of the shooting and the number of shots was excessive. OFFICER DEFENDANTS and DEPUTY DEFENDANTS had no legal justification for using deadly force against PUGA and their use of deadly force while carrying out their duties as police officers was an unreasonable and non-privileged use of force.

37.     OFFICER DEFENDANTS and DEPUTY DEFENDANTS intentionally used deadly force against PUGA, which resulted in serious gunshot injuries to Plaintiffs JONATHAN, TANJA, and J.B. Some of the gunshots OFFICER DEFENDANTS and DEPUTY DEFENDANTS intentionally fired at PUGA struck Plaintiffs JONATHAN, TANJA, and J.B.

38.     When OFFICER DEFENDANTS and DEPUTY DEFENDANTS intentionally used deadly force against PUGA, they were aware that PUGA was between them and the BOTTEN RESIDENCE, and they were aware that the BOTTEN RESIDENCE was in the background when they fired gunshots in PUGA's direction. OFFICER DEFENDANTS and DEPUTY DEFENDANTS knew

or reasonably should have known that there were innocent bystanders inside of the BOTTEN RESIDENCE and that their gunshots could strike the BOTTEN RESIDENCE and anyone inside the BOTTEN RESIDENCE. OFFICER DEFENDANTS and DEPUTY DEFENDANTS thus fired their weapons with the knowledge that innocent bystanders, including Plaintiffs, could be struck by their bullets.

39.    By intentionally and unreasonably using deadly force that struck and injured Plaintiffs JONATHAN, TANJA, and J.B., OFFICER DEFENDANTS and DEPUTY DEFENDANTS deprived them of their right to be secure in their persons against unreasonable searches and seizures as guaranteed to them under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

40.    When OFFICER DEFENDANTS and DEPUTY DEFENDANTS intentionally fired shots that struck the BOTTEN RESIDENCE, Plaintiffs JONATHAN, TANJA, and J.B. were aware OFFICER DEFENDANTS and DEPUTY DEFENDANTS were shooting with the intent to seize PUGA and that they were not free to leave the BOTTEN RESIDENCE.

41.    Based on these circumstances, and due to the shots that struck the BOTTEN RESIDENCE and Plaintiffs JONATHAN, TANJA, and J.B., Plaintiffs were not free to leave the premises of their home and in fact remained on the premises. The deadly force used by OFFICER DEFENDANTS and DEPUTY DEFENDANTS terminated Plaintiffs' freedom of movement and unreasonably seized them within the meaning of the Fourth Amendment.

42.    As a direct and proximate result of the conduct of OFFICER DEFENDANTS and DEPUTY DEFENDANTS, Plaintiffs JONATHAN, TANJA, and J.B. sustained serious physical injuries and emotional distress. As a result of their injuries, JONATHAN and TANJA were unable to work for a period of time. As a result of his injuries, J.B. was unable to attend school for a period of time.

43.     As a result of their misconduct, OFFICER DEFENDANTS and DEPUTY DEFENDANTS are liable for JONATHAN, TANJA, and J.B.'s injuries, either because they were integral participants in the use of excessive force, and/or because they failed to intervene to prevent these violations.

44.     The conduct of OFFICER DEFENDANTS and DEPUTY DEFENDANTS was malicious, wanton, oppressive, and accomplished with conscious disregard for the rights and safety of others, entitling JONATHAN, TANJA, and J.B. to an award of exemplary and punitive damages as to OFFICER DEFENDANTS and DEPUTY DEFENDANTS.

45.     Plaintiffs JONATHAN, TANJA, and J.B. seek compensatory damages, punitive damages, and attorney's fees under this claim.

## SECOND CLAIM FOR RELIEF

### Substantive Due Process (42 U.S.C. § 1983)

(Plaintiffs JONATHAN, TANJA, and J.B. against OFFICER DEFENDANTS and DEPUTY DEFENDANTS)

46.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 45 of this Complaint with the same force and effect as if fully set forth herein.

47.     Plaintiffs JONATHAN, TANJA, and J.B. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to arbitrary and/or oppressive exercises of government power that violate the decencies of civilized conduct.

48.     When OFFICER DEFENDANTS and DEPUTY DEFENDANTS fired their weapons in PUGA's direction, striking PUGA as well as Plaintiffs JONATHAN, TANJA, and J.B., they did so during an extended encounter with

PUGA during which PUGA presented no imminent threat of death or serious bodily injury.

49.    Given the absence of a need to use deadly force at any point whatsoever, let alone at the particular moments at which OFFICER DEFENDANTS and DEPUTY DEFENDANTS fired their weapons, OFFICER DEFENDANTS and DEPUTY DEFENDANTS had the opportunity to deliberate before deciding to fire their weapons in the direction of PUGA and the BOTTEN RESIDENCE. At the time the shots were fired, OFFICER DEFENDANTS and DEPUTY DEFENDANTS were not facing an escalating situation requiring them to make any snap judgments regarding whether or when to use deadly force.

50.    By firing their weapons in PUGA's direction in the absence of any imminent threat of death or serious bodily harm, without legal justification, and in reckless or conscious disregard of the likelihood that their shots would strike the BOTTEN RESIDENCE—which was visible to OFFICER DEFENDANTS and DEPUTY DEFENDANTS when they fired their weapons—or its occupants, OFFICER DEFENDANTS and DEPUTY DEFENDANTS demonstrated deliberate indifference toward the constitutional rights, safety, and bodily integrity of Plaintiffs JONATHAN, TANJA, and J.B.

51.    As a direct and proximate result of these actions, Plaintiffs JONATHAN, TANJA, and J.B. sustained serious physical injuries and emotional distress. As a result of their injuries, JONATHAN and TANJA were unable to work for a period of time. As a result of his injuries, J.B. was unable to attend school for a period of time.

52.    Plaintiffs JONATHAN, TANJA, and J.B. seek compensatory damages, punitive damages, and attorney's fees under this claim.

## **THIRD CLAIM FOR RELIEF**

### **Municipal Liability—Inadequate Training (42 U.S.C. § 1983)**

(Plaintiffs JONATHAN, TANJA, and J.B. against Defendants COUNTY and DOES 9-10)

53.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 52 of this Complaint with the same force and effect as if fully set forth herein.

54.     DEPUTY DEFENDANTS acted under color of law.

55.     The acts of DEPUTY DEFENDANTS deprived Plaintiffs JONATHAN, TANJA, and J.B. of their particular rights under the United States Constitution.

56.     The training policies of Defendant COUNTY were not adequate to train its officers to handle the usual and recurring situations with which they must deal. Specifically, Defendant COUNTY's training policies were not adequate to train its deputies to avoid excessive uses of force. Defendant COUNTY's training policies were not adequate to train the deputies to properly use nonlethal and lethal force in the event that such force was warranted. The officers were not trained in the proper use of equipment they carried with them.

57.     Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its deputies adequately.

58.     The failure of Defendant COUNTY to provide adequate training, including training with regards to detention, use of deadly force, and the use of force caused the deprivation of Plaintiffs JONATHAN, TANJA, and J.B.'s rights by DEPUTY DEFENDANTS; that is, Defendant COUNTY's failure to train is so closely related to the deprivation of Plaintiffs JONATHAN, TANJA, and J.B.'s rights as to be the moving force that caused the ultimate injury.

59.     On information and belief, COUNTY failed to train DEPUTY DEFENDANTS properly and adequately.

60.    The following are only a few examples of the continued misconduct by deputies working for the COUNTY, which indicates the COUNTY's failure to properly train its sheriff's deputies:

a.    In *Estate of Merlin Factor v. County of San Bernardino*, case no. 5:14-cv-01289-DMG-AGR(x), C.D. Cal., Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

b.    In *Young v. County of San Bernardino*, case no. 5:15-CV-01102-JGB-SP, C.D. Cal., Plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable. In 2016, a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

c.    In *Salazar v. County of San Bernardino*, case no. 5:16-cv-01103-JWH-KK, C.D. Cal., the COUNTY settled with the family of a man who died as a result of excessive force while being restrained by COUNTY deputies for $999,999.99. The COUNTY ratified the deputies' conduct, found the detention use of restraint to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

d.    In *Archibald v. County of San Bernardino*, case no. 5:16-cv-01128, C.D. Cal., the plaintiffs, the parents of a 29-year-old mentally ill unarmed man who was shot and killed by a deputy working for the COUNTY, argued that the deputy detained and arrested the decedent without reasonable suspicion and probable cause and used excessive force, including deadly force, in the unlawful detention and arrest of decedent. The jury returned a $33.5 million verdict against the COUNTY and deputy and found for the plaintiffs on all claims. The COUNTY ratified the deputy's conduct, found the detention and

shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputy for his conduct. The COUNTY negligently retained the deputy following this shooting, which resulted in a subsequent shooting by the same deputy of another unarmed man, for which the COUNTY settled with the victim prior to any litigation.

e.      In *Ranero v. County of San Bernardino*, case no. 5:16-cv-02655, C.D. Cal., the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

f.      In *Phillips v. County of San Bernardino*, case no. 5:18-cv-02532, C.D. Cal., the COUNTY settled for $2.1 million with the family of a woman who was shot and killed by a deputy working for the COUNTY while driving in her vehicle despite not posing an immediate threat of death or serious bodily injury to the deputy or anyone else at the time of the shooting.

g.      In *Ramos v. County of San Bernardino*, case no. 5:19-cv-01023-JGB-SP, C.D. Cal., a jury returned a verdict of $4.5 million against the COUNTY and involved deputy for the shooting death of a man who the jury found posed no immediate threat of death or serious bodily injury to anyone as he was shot in the back while running away. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

h.      In *Allen v. County of San Bernardino*, case nos. 5:20-cv-00283-JFW-SHK, 5:20-cv-00589 JFW-SHK, 8:20-cv-00567-JFW-SHK, C.D. Cal., the COUNTY settled for $1.6 million with the family of a man

who was shot and killed by deputies working for COUNTY without warning, despite posing no immediate threat of death or serious bodily injury. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

i.    In *Alvarado v. County of San Bernardino*, case no. 5:20-cv-00592-DMG-SHK, C.D. Cal., plaintiffs argued that the County Correctional Deputies failed to provide medical and mental health care to Perla Alvarado, who was in their custody in the West Valley Detention Center. The failure to provide medical care resulted in her death. The parties recently settled for an undisclosed amount.

j.    In *Brown v. County of San Bernardino*, case no. 5:20-cv-01658, C.D. Cal., Plaintiffs alleged that San Bernardino County Sheriff's Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

k.    In *Yepez v. County of San Bernardino*, case no. 5:21-cv-00123-JGB-SHK, C.D. Cal., the COUNTY settled for $815,000 with a man who was savagely beaten and tased by three deputies while he was lying on the ground, complying with commands, and with nothing in either hand. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

l.    In *Arrona v. County of San Bernardino*, case no. 5:21-cv-00389-DSF-KK, C.D. Cal., plaintiffs argued that the involved San Bernardino

County Sheriff's Deputies used excessive physical and less-lethal force against plaintiffs in their home. The case recently settled for an undisclosed amount.

m.      Numerous prior incidents at County of San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by COUNTY and its deputies involving violations of 42 U.S.C. § 1983. (Case No. 5:15-cv-02515-JGB-DTB.) Johnny Alcala and 14 other inmates sued COUNTY, and David Smith filed his own lawsuit, (Case No. 5:15-cv-02513-JGB-DTB), going back to years of torture by COUNTY correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at COUNTY's West Valley Detention Center ("WVDC"). (Case No. 14-2171-JGB-SP.) The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

61.    By reason of the aforementioned acts and omissions, Plaintiffs JONATHAN, TANJA, and J.B. sustained serious physical injuries and emotional distress. As a result of their injuries, JONATHAN and TANJA were unable to work for a period of time. As a result of his injuries, J.B. was unable to attend school for a period of time.

62.    Accordingly, Defendants COUNTY and DOES 9-10 each are liable to Plaintiffs JONATHAN, TANJA, and J.B. for compensatory damages under 42 U.S.C. § 1983. Plaintiffs JONATHAN, TANJA, and J.B. also seek attorney's fees under this claim.

1

2 **FOURTH CLAIM FOR RELIEF**

3 **Municipal Liability—Unconstitutional Custom, Practice, or Policy**

4 **(42 U.S.C. § 1983)**

5 (Plaintiffs JONATHAN, TANJA, and J.B. against Defendants COUNTY and DOES

6 9-10)

7 63.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

8 through 62 of this Complaint with the same force and effect as if fully set forth

9 herein.

10 64.     DEPUTY DEFENDANTS acted pursuant to an expressly adopted

11 official policy or a longstanding practice or custom of the Defendant COUNTY.

12 65.     On information and belief, DEPUTY DEFENDANTS were not

13 disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection

14 with their shooting of PUGA and Plaintiffs JONATHAN, TANJA, and J.B.

15 66.     Defendants COUNTY, DEPUTY DEFENDANTS, and DOES 9-10,

16 together with other COUNTY policymakers and supervisors, maintained, inter alia,

17 the following unconstitutional customs, practices, and policies:

18     (a)     Using excessive force, including excessive deadly force;

19     (b)     Providing inadequate training regarding the use of deadly force;

20     (c)     Employing and retaining as sheriff's deputies individuals such as

21           DEPUTY DEFENDANTS, whom Defendant COUNTY at all

22           times material herein knew or reasonably should have known

23           had dangerous propensities for abusing their authority and for

24           using excessive force;

25     (d)     Inadequately supervising, training, controlling, assigning, and

26           disciplining COUNTY deputies, and other personnel, including

27           DEPUTY DEFENDANTS, whom Defendant COUNTY knew or

28

1  in the exercise of reasonable care should have known had the

2  aforementioned propensities and character traits;

3  (e)    Maintaining grossly inadequate procedures for reporting,

4  supervising, investigating, reviewing, disciplining and

5  controlling misconduct by COUNTY sheriff's deputies,

6  including DEPUTY DEFENDANTS;

7  (f)    Failing to adequately discipline COUNTY sheriff's deputies,

8  including DEPUTY DEFENDANTS, for the above-referenced

9  categories of misconduct, including "slaps on the wrist,"

10  discipline that is so slight as to be out of proportion to the

11  magnitude of the misconduct, and other inadequate discipline

12  that is tantamount to encouraging misconduct;

13  (g)    Announcing that unjustified shootings are "within policy,"

14  including shootings that were later determined in court to be

15  unconstitutional;

16  (h)    Even where shootings are determined in court to be

17  unconstitutional, refusing to discipline, terminate, or retrain the

18  deputies involved;

19  (i)    Maintaining a policy of inaction and an attitude of indifference

20  towards soaring numbers of police shootings, including by

21  failing to discipline, retrain, investigate, terminate, and

22  recommend for criminal prosecution deputies who participate in

23  unjustified shootings;

24  (j)    Failing to properly train sheriff's deputies to use nonlethal force

25  and to maintain their equipment concerning nonlethal force,

26  including Tasers, in working condition.

27

28

COMPLAINT FOR DAMAGES

67.    The following are only a few examples of the continued misconduct by deputies working for the COUNTY, which indicates the COUNTY maintains unconstitutional customs, practices, and/or policies:

a.    In *Estate of Merlin Factor v. County of San Bernardino*, case no. 5:14-cv-01289-DMG-AGR(x), C.D. Cal., Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

b.    In *Young v. County of San Bernardino*, case no. 5:15-CV-01102-JGB-SP, C.D. Cal., Plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable.  In 2016, a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

c.    In *Salazar v. County of San Bernardino*, case no. 5:16-cv-01103-JWH-KK, C.D. Cal., the COUNTY settled with the family of a man who died as a result of excessive force while being restrained by COUNTY deputies for $999,999.99.  The COUNTY ratified the deputies' conduct, found the detention use of restraint to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

d.    In *Archibald v. County of San Bernardino*, case no. 5:16-cv-01128, C.D. Cal., the plaintiffs, the parents of a 29-year-old mentally ill unarmed man who was shot and killed by a deputy working for the COUNTY, argued that the deputy detained and arrested the decedent without reasonable suspicion and probable cause and used excessive force, including deadly force, in the unlawful detention and arrest of decedent. The jury returned a $33.5 million verdict against the COUNTY and deputy and found for the plaintiffs on all claims. The COUNTY ratified the deputy's conduct, found the detention and

shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputy for his conduct. The COUNTY negligently retained the deputy following this shooting, which resulted in a subsequent shooting by the same deputy of another unarmed man, for which the COUNTY settled with the victim prior to any litigation.

e.    In *Ranero v. County of San Bernardino*, case no. 5:16-cv-02655, C.D. Cal., the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

f.    In *Phillips v. County of San Bernardino*, case no. 5:18-cv-02532, C.D. Cal., the COUNTY settled for $2.1 million with the family of a woman who was shot and killed by a deputy working for the COUNTY while driving in her vehicle despite not posing an immediate threat of death or serious bodily injury to the deputy or anyone else at the time of the shooting.

g.    In *Ramos v. County of San Bernardino*, case no. 5:19-cv-01023-JGB-SP, C.D. Cal., a jury returned a verdict of $4.5 million against the COUNTY and involved deputy for the shooting death of a man who the jury found posed no immediate threat of death or serious bodily injury to anyone as he was shot in the back while running away. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

h.    In *Allen v. County of San Bernardino*, case nos. 5:20-cv-00283-JFW-SHK, 5:20-cv-00589 JFW-SHK, 8:20-cv-00567-JFW-SHK, C.D. Cal., the COUNTY settled for $1.6 million with the family of a man

who was shot and killed by deputies working for COUNTY without warning, despite posing no immediate threat of death or serious bodily injury. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

i.      In *Alvarado v. County of San Bernardino*, case no. 5:20-cv-00592-DMG-SHK, C.D. Cal., plaintiffs argued that the County Correctional Deputies failed to provide medical and mental health care to Perla Alvarado, who was in their custody in the West Valley Detention Center. The failure to provide medical care resulted in her death. The parties recently settled for an undisclosed amount.

j.      In *Brown v. County of San Bernardino*, case no. 5:20-cv-01658, C.D. Cal., Plaintiffs alleged that San Bernardino County Sheriff's Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

k.      In *Yepez v. County of San Bernardino*, case no. 5:21-cv-00123-JGB-SHK, C.D. Cal., the COUNTY settled for $815,000 with a man who was savagely beaten and tased by three deputies while he was lying on the ground, complying with commands, and with nothing in either hand. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

l.      In *Arrona v. County of San Bernardino*, case no. 5:21-cv-00389-DSF-KK, C.D. Cal., plaintiffs argued that the involved San Bernardino

County Sheriff's Deputies used excessive physical and less-lethal force against plaintiffs in their home. The case recently settled for an undisclosed amount.

m.      Numerous prior incidents at County of San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by COUNTY and its deputies involving violations of 42 U.S.C. § 1983. (Case No. 5:15-cv-02515-JGB-DTB.) Johnny Alcala and 14 other inmates sued COUNTY, and David Smith filed his own lawsuit, (Case No. 5:15-cv-02513-JGB-DTB), going back to years of torture by COUNTY correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at COUNTY's West Valley Detention Center ("WVDC"). (Case No. 14-2171-JGB-SP.) The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

68.    Defendants COUNTY, DEPUTY DEFENDANTS, and DOES 9-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these defendants condoned, tolerated, and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs JONATHAN, TANJA, J.B., and other individuals similarly situated.

69.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, DEPUTY DEFENDANTS and DOES 9-10 acted

with intentional, reckless, and callous disregard for Plaintiffs JONATHAN, TANJA, J.B.'s constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY, DEPUTY DEFENDANTS, and DOES 9-10 were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiffs JONATHAN, TANJA, J.B.

70.    By reason of the aforementioned acts and omissions, Plaintiffs JONATHAN, TANJA, and J.B. sustained serious physical injuries and emotional distress. As a result of their injuries, JONATHAN and TANJA were unable to work for a period of time. As a result of his injuries, J.B. was unable to attend school for a period of time.

71.    Accordingly, Defendants COUNTY and DOES 9-10 each are liable to Plaintiffs JONATHAN, TANJA, and J.B. for compensatory damages under 42 U.S.C. § 1983. Plaintiffs JONATHAN, TANJA, and J.B. also seek attorney's fees under this claim.

## FIFTH CLAIM FOR RELIEF

### Battery

(Plaintiffs JONATHAN, TANJA, and J.B. against all Defendants)

72.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 71 of this Complaint with the same force and effect as if fully set forth herein.

73.    OFFICER DEFENDANTS and DEPUTY DEFENDANTS, while working as law enforcement officers for CHP and SBSD, respectively, and acting within the course and scope of their duties, intentionally shot at PUGA while he was between them and the BOTTEN RESIDENCE and used excessive and unreasonable force against him. Upon information and belief, PUGA did not pose an immediate threat of serious injury or death at the time of the shooting and the number of shots

1   was excessive. OFFICER DEFENDANTS and DEPUTY DEFENDANTS had no

2   legal justification for using deadly force against PUGA and their use of deadly force

3   while carrying out their duties as police officers was an unreasonable and non-

4   privileged use of force.

5        74.    When OFFICER DEFENDANTS and DEPUTY DEFENDANTS

6   intentionally used deadly force against PUGA, they also used deadly force against

7   Plaintiffs JONATHAN, TANJA, and J.B. Some of the gunshots OFFICER

8   DEFENDANTS and DEPUTY DEFENDANTS intentionally fired struck Plaintiffs

9   JONATHAN, TANJA, and J.B.

10        75.    When OFFICER DEFENDANTS and DEPUTY DEFENDANTS

11   intentionally used deadly force against PUGA, they were aware that PUGA was

12   between them and the BOTTEN RESIDENCE, and they were aware that the

13   BOTTEN RESIDENCE was in the background when they fired gunshots in

14   PUGA's direction. OFFICER DEFENDANTS and DEPUTY DEFENDANTS knew

15   or reasonably should have known that there were innocent bystanders inside of the

16   BOTTEN RESIDENCE. OFFICER DEFENDANTS and DEPUTY DEFENDANTS

17   thus fired their weapons with the knowledge that innocent bystanders, including

18   Plaintiffs, could be struck by their bullets.

19        76.    As a direct and proximate result of the conduct of OFFICER

20   DEFENDANTS and DEPUTY DEFENDANTS, Plaintiffs JONATHAN, TANJA,

21   and J.B. sustained serious physical injuries and emotional distress. As a result of

22   their injuries, JONATHAN and TANJA were unable to work for a period of time.

23   As a result of his injuries, J.B. was unable to attend school for a period of time.

24        77.    Defendant STATE is vicariously liable for the wrongful acts of

25   OFFICER DEFENDANTS, pursuant to section 815.2(a) of the California

26   Government Code, which provides that a public entity is liable for the injuries

27   caused by its employees within the scope of the employment if the employee's act

28   would subject him or her to liability.

78.    Defendant COUNTY is vicariously liable for the wrongful acts of DEPUTY DEFENDANTS, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

79.    The conduct of OFFICER DEFENDANTS and DEPUTY DEFENDANTS was malicious, wanton, oppressive, and accomplished with conscious disregard for the rights and safety of others, entitling JONATHAN, TANJA, and J.B. to an award of exemplary and punitive damages as to OFFICER DEFENDANTS and DEPUTY DEFENDANTS.

80.    Plaintiffs JONATHAN, TANJA, and J.B. seek compensatory and punitive damages under this claim.

## SIXTH CLAIM FOR RELIEF

### Negligence

### (Plaintiffs JONATHAN, TANJA, and J.B. against all Defendants)

81.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 80 of this Complaint with the same force and effect as if fully set forth herein.

82.    Police officers, including OFFICER DEFENDANTS and DEPUTY DEFENDANTS, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, not using more force than necessary, using less than lethal options, and only using deadly force as a last resort.

83.    OFFICER DEFENDANTS and DEPUTY DEFENDANTS breached this duty of care. Upon information and belief, the actions and inactions of

OFFICER DEFENDANTS and DEPUTY DEFENDANTS were negligent and reckless, including but not limited to:

    (a)    the failure to properly and adequately assess the need to use force or deadly force against PUGA;

    (b)    the negligent tactics and handling of the situation with PUGA, including pre-shooting negligence, failure to deescalate, escalating the encounter, and failure to give a deadly force warning prior to the use of deadly force;

    (c)    the negligent use of force, including deadly force, against PUGA;

    (d)    the failure to properly and adequately assess their shooting background prior to their use of deadly force against PUGA;

    (e)    shooting indiscriminately and shooting an excessive number of times;

84.    As a direct and proximate result of the conduct of OFFICER DEFENDANTS and DEPUTY DEFENDANTS, Plaintiffs JONATHAN, TANJA, and J.B. sustained serious physical injuries and emotional distress. As a result of their injuries, JONATHAN and TANJA were unable to work for a period of time. As a result of his injuries, J.B. was unable to attend school for a period of time.

85.    Defendant STATE is vicariously liable for the wrongful acts of OFFICER DEFENDANTS, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

86.    Defendant COUNTY is vicariously liable for the wrongful acts of DEPUTY DEFENDANTS, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries

caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

87.    Plaintiffs JONATHAN, TANJA, and J.B. seek compensatory damages under this claim.

## SEVENTH CLAIM FOR RELIEF

### Negligence – Bystander (Negligent Infliction of Emotional Distress)

(All Plaintiffs against all Defendants)

88.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 87 of this Complaint with the same force and effect as if fully set forth herein.

89.     Plaintiffs JONATHAN is the husband of Plaintiff TANJA and the father of Plaintiffs ANNABELLE and J.B. Plaintiff TANJA is the wife of Plaintiff JONATHAN and the mother of Plaintiffs ANNABELLE and J.B. Plaintiffs ANNABELLE and J.B. are siblings. At all relevant times, Plaintiffs were close familial members all living together within the same household.

90.    Plaintiffs JONATHAN, TANJA, ANNABELLE, and J.B. were present and observed the shooting of JONATHAN, TANJA, and J.B. Plaintiffs JONATHAN, TANJA, ANNABELLE, and J.B. were contemporaneously aware that JONATHAN, TANJA, and J.B. were being injured at the time OFFICER DEFENDANTS and DEPUTY DEFENDANTS intentionally used deadly force against PUGA and also shot JONATHAN, TANJA, and J.B. Plaintiffs JONATHAN, TANJA, ANNABELLE, and J.B. observed and perceived their family members being shot by OFFICER DEFENDANTS and DEPUTY DEFENDANTS and were aware that JONATHAN, TANJA, and J.B. were injured after OFFICER DEFENDANTS' and DEPUTY DEFENDANTS' use of deadly force.

91.    OFFICER DEFENDANTS, while working as police officers for STATE and while acting within the course and scope of their duties, negligently and

carelessly inflicted emotional distress on Plaintiffs JONATHAN, TANJA, ANNABELLE, and J.B. when they shot and injured JONATHAN, TANJA, and BOTTEN JR in front of the Plaintiffs.

92.    DEPUTY DEFENDANTS, while working as sheriff's deputies for COUNTY and while acting within the course and scope of their duties, negligently and carelessly inflicted emotional distress on Plaintiffs JONATHAN, TANJA, ANNABELLE, and J.B. when they shot and injured JONATHAN, TANJA, and BOTTEN JR in front of the Plaintiffs.

93.    As a result of their misconduct, OFFICER DEFENDANTS and DEPUTY DEFENDANTS are liable for Plaintiffs JONATHAN, TANJA, ANNABELLE, and J.B.'s injuries when they shot and injured JONATHAN, TANJA, and J.B. in front of the Plaintiffs, either because they were integral participants in the use of excessive force, and/or because they failed to intervene to prevent these violations.

94.    As a direct and proximate result of OFFICER DEFENDANTS and DEPUTY DEFENDANTS' conduct as alleged above, Plaintiffs JONATHAN, TANJA, ANNABELLE, and J.B. were caused to suffer severe emotional distress, including but not limited to suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

95.    Defendant STATE is vicariously liable for the wrongful acts of OFFICER DEFENDANTS, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

96.    Defendant COUNTY is vicariously liable for the wrongful acts of DEPUTY DEFENDANTS, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries

1  caused by its employees within the scope of the employment if the employee's act
2  would subject him or her to liability.

3      97.    Plaintiffs JONATHAN, TANJA, ANNABELLE, and J.B. bring this
4  claim in their individual capacity and seek compensatory damages.

6                    **EIGHTH CLAIM FOR RELIEF**
7                **Violation of Cal. Civil Code § 52.1**
8         (Plaintiffs JONATHAN, TANJA, and J.B. against all Defendants)

9      98.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1
10  through 98 of this Complaint with the same force and effect as if fully set forth
11  herein.

12     99.    California Civil Code, Section 52.1 (the Bane Act), prohibits any
13  person from using violent acts or threatening to commit violent acts in retaliation
14  against another person for exercising that person's constitutional rights.

15     100.   OFFICER DEFENDANTS and DEPUTY DEFENDANTS, while
16  working as law enforcement officers for STATE and COUNTY, respectively, and
17  acting within the course and scope of their duties, intentionally committed and
18  attempted to commit acts of violence, including by repeatedly firing their weapons
19  in PUGA's direction while he was between them and the BOTTEN RESIDENCE
20  and using excessive and unreasonable force against him. Upon information and
21  belief, PUGA did not pose an immediate threat of serious injury or death at the time
22  of the shooting and the number of shots was excessive. OFFICER DEFENDANTS
23  and DEPUTY DEFENDANTS had no legal justification for using deadly force
24  against PUGA and their use of deadly force while carrying out their duties as police
25  officers was an unreasonable and non-privileged use of force.

26     101.   When OFFICER DEFENDANTS and DEPUTY DEFENDANTS
27  intentionally used deadly force by firing in PUGA's direction, they used deadly
28  force against Plaintiffs JONATHAN, TANJA, and J.B. Some of the gunshots

OFFICER DEFENDANTS and DEPUTY DEFENDANTS intentionally fired in PUGA's direction struck Plaintiffs JONATHAN, TANJA, and J.B. instead.

102.   When OFFICER DEFENDANTS and DEPUTY DEFENDANTS intentionally used deadly force, they were aware that PUGA was between them and the BOTTEN RESIDENCE, and they were aware that the BOTTEN RESIDENCE was in the background when they fired gunshots in PUGA's direction. OFFICER DEFENDANTS and DEPUTY DEFENDANTS knew or reasonably should have known that there were innocent bystanders inside of the BOTTEN RESIDENCE. OFFICER DEFENDANTS and DEPUTY DEFENDANTS thus fired their weapons with the knowledge that innocent bystanders, including Plaintiffs, could be struck by their bullets.

103.   By intentionally firing their weapons in PUGA's direction without any legal justification or excuse while aware innocent bystanders like Plaintiffs could be struck by their bullets, and by intentionally using deadly force that in fact seriously injured Plaintiffs JONATHAN, TANJA, and J.B., OFFICER DEFENDANTS and DEPUTY DEFENDANTS acted in reckless disregard of PUGA's as well as JONATHAN, TANJA, and J.B.'s civil rights.

When OFFICER DEFENDANTS and DEPUTY DEFENDANTS shot repeatedly in PUGA's direction and thereby struck PUGA and Plaintiffs JONATHAN, TANJA, and J.B., they deliberately subjected PUGA and Plaintiffs JONATHAN, TANJA, and J.B. to excessive force that was beyond what was necessary. By doing so, either by integrally participating in these actions or by failing to intervene, OFFICER DEFENDANTS and DEPUTY DEFENDANTS coercively interfered with PUGA's and Plaintiffs JONATHAN, TANJA, and J.B.'s civil rights to be free from unreasonable searches and seizures, to due process, and to be free from state actions that shock the conscience.

104.   On information and belief, OFFICER DEFENDANTS and DEPUTY DEFENDANTS intentionally and spitefully coercively committed the above acts to

coercively interference with PUGA's civil rights, to discourage PUGA from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy. In doing so while aware of the risks that their actions posed to Plaintiffs JONATHAN, TANJA, and J.B., OFFICER DEFENDANTS and DEPUTY DEFENDANTS demonstrated reckless indifference to the substantial likelihood that their conduct would have the same effect on Plaintiffs JONATHAN, TANJA, and J.B.

105.   Plaintiffs JONATHAN, TANJA, and J.B. reasonably believed and understood that the violent acts committed by OFFICER DEFENDANTS and DEPUTY DEFENDANTS were done with reckless indifference to the substantial likelihood that OFFICER DEFENDANTS' and DEPUTY DEFENDANTS' conduct would coercively interfere with Plaintiffs JONATHAN, TANJA, and J.B.'s civil rights, would discourage them from exercising the above civil rights, and/or would prevent them from exercising such rights.

106.   OFFICER DEFENDANTS and DEPUTY DEFENDANTS successfully interfered with the above civil rights of PUGA, as well as of Plaintiffs JONATHAN, TANJA, and J.B.

107.   The conduct of Defendants was a substantial factor in causing Plaintiffs JONATHAN, TANJA, and J.B.'s harms, losses, injuries, and damages.

108.   STATE is vicariously liable for the wrongful acts of OFFICER DEFENDANTS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

109.   Defendants DOES 7-8 are vicariously liable under California law and the doctrine of *respondeat superior*.

110.   COUNTY is vicariously liable for the wrongful acts of DEPUTY DEFENDANTS pursuant to section 815.2(a) of the California Government Code,

which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

111.    Defendants DOES 9-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

112.    The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Plaintiffs JONATHAN, TANJA, and J.B.'s rights, justifying an award of exemplary and punitive damages as to OFFICER DEFENDANTS and DEPUTY DEFENDANTS.

113.    Plaintiffs JONATHAN, TANJA, and J.B. seek compensatory damages, treble damages, attorney's fees, and costs under this claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs JONATHAN WAYNE BOTTEN, SR., TANJA DUDEK-BOTTEN, ANNABELLE BOTTEN, and J.B., a minor, by and through his guardian JONATHAN WAYNE BOTTEN, SR., request entry of judgment in their favor and against Defendants STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO, ISAIAH KEE, MICHAEL BLACKWOOD, BERNARDO RUBALCAVA, ROBERT VACCARI, JAKE ADAMS, and DOES 1-10 as follows:

A.     For compensatory damages in whatever other amount may be proven at trial;

B.     For medical expenses and loss of earnings;

C.     For punitive damages against the individual defendants in an amount to be proven at trial;

D.     For statutory damages;

E.     For treble damages pursuant to California Civil Code Sections 52, 52.1;

F.     For interest;

G.     For reasonable attorneys' fees, including litigation expenses;

H.     For costs of suit; and

I.     For such further other relief as the Court may deem just, proper, and appropriate.

DATED: February 17, 2023        LAW OFFICES OF DALE K. GALIPO

By_____*/s/ Dale K. Galipo*_____
         Dale K. Galipo
         Hang Le
         Attorneys for Plaintiffs

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury.

DATED:  February 17, 2023          LAW OFFICES OF DALE K. GALIPO

By_____*/s/ Dale K. Galipo*_____
         Dale K. Galipo
         Hang Le
         Attorneys for Plaintiffs

-34-
COMPLAINT FOR DAMAGES