**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiffs
JONATHAN WAYNE BOTTEN, SR.,
TANJA DUDEK-BOTTEN, ANNABELLE BOTTEN,
AND JONATHAN WAYNE BOTTEN, JR.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN WAYNE BOTTEN, SR.; TANJA DUDEK-BOTTEN; ANNABELLE BOTTEN; and JONATHAN WAYNE BOTTEN, JR., a minor, by and through his guardian JONATHAN WAYNE BOTTEN, SR., <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 1-10, inclusive, <br><br> Defendants. | No. 5:23-cv-00257 JGB-SHK <br><br> **JOINT RULE 26(f) REPORT** <br><br> Date**:** January 8, 2024 <br> Time: 11:00 a.m. <br> Judge: Hon. Jesus G. Bernal <br> Location: Courtroom 1 <br>          3470 Twelfth Street <br>          Riverside, CA 92501 |

## I. STATEMENT OF THE CASE

**A. Plaintiffs' Statement**

This civil rights case arises out of the detention and officer-involved shooting of Plaintiffs Jonathan Wayne Botten, Sr., Tanja Dudek-Botten, and J.B. by California Highway Patrol Officers Isaiah Kee, Michael Blackwood, and Bernardo Rubalcava ("CHP Officers" or "State Defendants") and San Bernardino County Sheriff's Department Deputies Robert Vaccari and Jake Adams ("SBSD Deputies") on February 17, 2021. At approximately 1:42 a.m. on that date, CHP Officers and SBSD Deputies attempted a traffic stop of Hector Puga's ("Mr. Puga") vehicle, a white Ford Expedition, on the I-15. Mr. Puga's vehicle exited the freeway and ultimately came to a stop in the area of Peach Avenue and Catalpa Street in Hesperia, California.

Mr. Puga complied with commands to exit his car and placed his hands in the air. He further complied with commands to position himself at the front of his vehicle with both hands above his head. CHP Officers and SBSD Deputies then approached Mr. Puga and shot at Mr. Puga. As a result of the shooting, Mr. Puga attempted to run away with his back towards CHP Officers and SBSD Deputies. CHP Officers and SBSD Deputies continued to shoot at Mr. Puga was he ran away with his back towards them. At some point, Mr. Puga fell onto the ground, away from the officers. CHP Officers and SBSD Deputies continued to shoot at Mr. Puga after he had fallen to the ground. Mr. Puga sustained several gunshot wounds and died as a result of those wounds.

Plaintiffs Jonathan Wayne Botten, Sr., Tanja Dudek-Botten, Annabelle Botten, and J.B. were inside of their then-residence, located at 17994 Catalpa Street in Hesperia, California for the duration of the incident between law enforcement and Mr. Puga. At approximately 3:00 a.m., Plaintiffs were asleep inside their residence in their respective beds when Plaintiff Tanja awoke to sirens outside of the residence. Plaintiff Tanja woke Plaintiff Botten, Sr. up and both Plaintiffs looked

outside their window and observed law enforcement trying to intercept a vehicle. At approximately 3:35 a.m., Plaintiff Tanja awoke again to the sound of sirens and a helicopter outside the residence. Plaintiff Tanja woke Plaintiff Botten, Sr. again and both looked outside their window and observed the incident taking place in front of their house. At around this time, Plaintiff Tanja woke her children, Plaintiffs Annabelle and J.B., and gathered them in the kitchen area. Plaintiff Botten, Sr. stood in front of the front doorway and took a video of what appeared to be a passenger of a vehicle with hands up being ordered to walk backwards. Due to the presence of law enforcement outside of their residence and law enforcement activity, Plaintiffs did not feel free to leave the premises of their home.

At approximately 4:20 a.m., as Plaintiffs were observing the law enforcement activity outside of their residence, Plaintiffs head shots and saw a spark hit their metal screen door as the involved officers shot at Mr. Puga and in the direction of Plaintiffs' residence. Based on the officers' shots toward Plaintiffs' residence and the officers' active efforts to apprehend Mr. Puga, Plaintiffs did not feel free to leave the premises of their home. The officer presence and shots towards Plaintiffs' residence confined Plaintiffs to their home due to the officers' show of authority and use of force.

Plaintiffs Botten, Sr., Tanja, and J.B. sustained gunshot wounds as a result of the incident. All Plaintiffs, including Plaintiff Annabelle, were present and observed their family members sustain serious gunshot injuries.

**B. Defendants' Statement**

On February 17, 2021, at approximately 1:40 a.m., California Highway Patrol (CHP) Officers Blackwood and Rubalcava began to pursue a white Ford Expedition that matched the description of a vehicle wanted in connection with a freeway shooting that occurred earlier in the Victorville Area. The driver of the Ford was later identified as decedent Hector Puga (Puga). Puga led the CHP officers, including CHP Sergeant Kee and Deputies from the San Bernardino County

Sheriff's Department (SBCSD) on an hour-long pursuit. Puga finally came to a stop near the intersection of Peach Avenue and Catalpa Street in Hesperia. CHP units positioned themselves behind the Ford and SBCSD units positioned behind the CHP patrol vehicles. None of the officers were aware of Plaintiffs, nor did they direct any orders towards the Plaintiffs.

Over the course of the next hour, officers gave Puga repeated orders to exit the vehicle and to put his hands out the window, but Puga did not comply. He rolled his window down and opened and closed the door several times, yelled inaudible comments, took off his shirt, threw items out of the vehicle, and commented that he wanted to call his mother and wife, that he was a "two-striker," and that he wanted one last cigarette. At one point, the passenger side door opened, and a female exited the passenger side and was removed from the area. Officers continued to order Puga to exit the vehicle, but he refused to comply with their commands. Sergeants Kee and Vaccari deployed several less-than-lethal munitions (bean bag rounds and pepper balls) at and into the vehicle, but Puga still refused to exit the vehicle. The seriousness of the evolving incident was obvious. Nevertheless, one or more of the Plaintiffs repeatedly and freely exited their residence to watch or record the incident.

At approximately 3:42 a.m., Puga finally exited the vehicle with his back towards the officers, who were giving him commands to keep his hands up because they could not see his waistband. (One or more Plaintiff was outside the residence or the open door or window watching the incident unfold.) Kee asked Puga if he had any weapons on him, and Puga stated he did not. Officers approached Puga who was standing in front of the Ford Expedition—Kee and Rubalcava approached Puga from his left side, while Vaccari and Adams approached from his right. Blackwood remained positioned behind Puga. Puga turned towards Kee and Rubalcava and reached for his waistband with this right hand. Kee saw the handle of a gun and yelled for Puga to keep his hands up, but Puga retrieved a black handgun from his

waistband and fired one round in the direction of Kee and Rubalcava. Fearing for their lives and the lives of the other officers, Kee, Rubalcava, Blackwood, and Adams fired several rounds from their firearms at Puga. Puga ran in a northwesterly direction and continued to point his handgun back at the officers, who fired additional rounds. Puga continued to run until he collapsed on the west shoulder of Peach Avenue.

Paramedics and personnel from the San Bernardino County Fire Department, who were waiting in the staging area nearby, immediately arrived on scene and rendered medical aid to Puga. Paramedics pronounced Puga dead at 4:05 a.m. Paramedics also responded to Plaintiffs' residence in response to the cries for help and their call to 911, informing the dispatch operator that they had been hit by crossfire when Puga shot at the police and the police shot back.

Defendants deny Plaintiffs' allegations that they detained Plaintiffs, that Plaintiffs were not free to leave their residence, or that they intentionally or negligently shot Plaintiffs. Defendants further deny Plaintiffs' allegations that Defendants used unjustified or excessive force towards Puga. Defendants intend to assert various affirmative defenses, including but not limited to: they are entitled to qualified immunity and other applicable state law immunities; they had probable cause to attempt to detain or arrest Puga; their use of force was justified and reasonable; self-defense and defense of others; and contributory negligence.

## II. SUBJECT MATTER JURISDICTION

This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because

those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

## III. LEGAL ISSUES

### A. Plaintiffs' Legal Issues

1. Whether Plaintiffs Botten Sr., Tanja, and J.B.'s rights against excessive force, including excessive deadly force, under the Fourth Amendment and state laws were violated when CHP Officers and SBSD Deputies shot them;

2. Whether Plaintiffs' constitutional rights to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience under the Fourteenth Amendment were violated when CHP Officers and SBSD Deputies shot them;

3. Whether CHP Officers and SBSD Deputies were negligent with respect to their handling of the situation, including using lethal force and engaging in pre-shooting negligent tactics; and

4. Whether CHP Officers and SBSD Deputies negligently inflicted emotional distress on Plaintiffs when they shot and injured Plaintiffs Botten, Sr., Tanja, and J.B. in front of Plaintiffs;

5. Whether CHP Officers and SBSD Deputies acted in reckless disregard of Plaintiffs' civil rights when they shot Plaintiffs Botten, Sr., Tanja, and J.B.

6. Damages.

### B. Defendants' Legal Issues

1. Whether Plaintiffs can maintain a Fourth or Fourteenth Amendment claim against Defendants in the absence of any intentional or malicious conduct directed at Plaintiffs.

2. Whether Defendants battered Plaintiffs in the absence of any intent to touch or make physical contact with them.

3. Whether Defendants acted negligently in the pre-shooting or shooting tactics.

4. Whether Plaintiffs' Bane Act claim is time barred for failing to bring such a claim within six months of the denial of the government claim.

5. Whether Defendants intentionally interfered with Plaintiffs' civil rights through threats, intimidation, or coercion in violation of the Bane Act.

6. Whether Defendants are entitled to qualified immunity.

7. Whether Defendants are entitled to state law immunity for Plaintiffs' supplemental state-law claims.

## IV.  PARTIES, EVIDENCE, ETC.

### A. Plaintiffs

Plaintiffs identify the following parties, witnesses and key documents on the main issues that are currently known or anticipated to be known to Plaintiffs:

1. Plaintiffs
2. State Defendants – State of California, Officers Isaiah Kee, Michael Blackwood, and Bernardo Rubalcava
3. County Defendants – County of San Bernardino, Robert Vaccari and Jake Adams
4. Police report of the incident
5. Video and/or audio recordings of the incident
6. Autopsy Report
7. Statements made by involved CHP Officers and SBSD Deputies (recorded or transcribed)

### B. Defendants

Parties & Witnesses

1. Defendants CHP Sergeant Isaiah Kee and Officers Michael Blackwood and Bernardo Rubalcava, were involved in the pursuit and incident with Puga, and one or more of these Defendants responded to Plaintiffs' residence.

2. The following SBCSD personnel were involved in the pursuit of or the incident with Puga:

    a. Sergeant Robert Vaccari (Defendant)
    b. Deputy Jake Adams (Defendant)
    c. Reserve Deputy III Kevin Henry, Helicopter Pilot
    d. Detective Greg Hanrahan, Tactical Flight Officer

3. The following personnel of San Bernardino County, who responded to the incident and rendered medical aid to Plaintiffs, Puga, or the involved officers:

    a. Jeremy Pedergraft, Engineer Paramedic of Medic Engine 22
    b. Carlos Topete, Paramedic of Medic Engine 22
    c. Jennifer Miescher, Engineer of Medic Engine 302
    d. Michael Stachowicz, Paramedic of Medic Engine 302
    e. Daniel Rios, Paramedic of Ambulance 302
    f. Marc Chappell, Emergency Medical Technician of Ambulance 302
    g. Juan Cobian, Paramedic of Medic Ambulance 302(A)
    h. Noah Haney, Emergency Medical Technician of Medic Ambulance 302(A)
    i. Michael Doucette, Paramedic of Fire Station #22 Ambulance
    j. Andrew Walk, Emergency Medical Technician of Fire Station #22 Ambulance
    k. Sheriff's Department deputies

6. The following witnesses, who reside in the neighborhood where the incident involving suspect Puga occurred, may have seen or heard the interaction between law enforcement officers and Puga or the medical care rendered to Plaintiffs, Puga, or the officers:

    a. Christina Renee Barrett, Passenger in Ford Expedition
    b. Wendy Mangerino, Neighbor witness
    c. Erin Mangerino, Neighbor witness

        d. Edward Mangerino, Neighbor witness

        e. Tammy Goodson, Neighbor witness

        f. Arthur Miranda, Neighbor witness who called 911

        g. Jonathan Botten, Sr., Plaintiff hit by cross fire

        h. Tanja Dudek-Botten, Plaintiff hit by cross fire

        i. Jonathan Botten, Jr., Plaintiff hit by cross fire

        j. Annabelle Botten, Plaintiff

Evidence

1. Relevant Policies and Procedures of the Defendant entities.
2. Audio/video recordings, including but not limited to dashcam footage from Kee's and Blackwood's CHP patrol vehicles, dispatching recordings, and video footage taken or provided by third parties.
3. Crime and Incident reports.
4. Scene photographs.
5. Documents related to damages, including but not limited to Plaintiffs' medical records.

    Defendants have already produced all non-privileged incident material to Plaintiffs' counsel.

## V. DAMAGES

    Plaintiffs are unable to provide a realistic range of damages at this time but expect that these damages will be determined as discovery progresses. Plaintiffs also expect to pursue punitive damages against the individual Defendants and attorney fees in amounts to be later determined.

    Defendants contend that they are not liable for any injury Plaintiffs suffered as a result of the incident on February 17, 2021 and dispute the amount of damages claimed.

## VI. INSURANCE

    Defendant State of California, by and through the CHP, is self-insured.

Defendant County is insured pursuant to Government Code §990 et. seq.

## VII. MOTIONS

Plaintiffs currently do not intend to file any motion to seek leave to add additional parties or claims. However, Plaintiffs reserve their right to file any such motion should the issue come up during the course of discovery. Plaintiffs propose **April 1, 2024** as the last day to file a motion or stipulation to amend the complaint.

At this time, Defendants do not anticipate filing any non-dispositive motions unrelated to discovery. They propose that the last day to amend the pleadings or add parties be **March 1, 2024**.

## VIII. COMPLEXITY

The parties agree that this is not a complex case and therefore is not subject to the Manual for Complex Litigation.

## IX. STATUS OF DISCOVERY

A related case arising out of this incident and involving the same Plaintiffs and Defendants was previously pending in state court. The parties had started conducting written discovery in that matter before the case was dismissed without prejudice. Although the parties have not started conducting discovery in this federal case, the Defendants have produced all the non-privileged incident material in *L.C. v. State of California* (*Puga*), No. 5:22-cv-00949 KK-SHK (C.D. Cal.) that is pending in this court. In addition, the parties agreed that the depositions of the involved officers, originally set for December 2023 in *Puga*, be noticed in this case. Plaintiffs served their notice of deposing the involved officers on November 16, 2023. Due to unforeseen circumstances, the depositions of the involved officers did not proceed. The parties have tentatively agreed to set the depositions of the involved-officers for the week of February 12-16, 2024, subject to the availability of the officers and counsel.

## X. DISCOVERY PLAN

The parties will exchange initial disclosures on **January 19, 2024**. The parties do not anticipate the need to modify the discovery limits and procedures as provided in the Federal Rules of Civil Procedure.

Plaintiffs anticipate on taking the deposition upon oral examination of the involved officers, the additional officers who responded to the scene after the shooting, the officers' supervisors, medical personnel, and percipient witnesses.

Plaintiffs anticipate on serving written interrogatories, requests for admission, and requests for production of documents on the issues of liability for excessive and unreasonable force, and related state law claims.

Defendants anticipate propounding written discovery to include interrogatories and admission and production requests on the Plaintiffs concerning the basis for their claims and damages before taking their depositions. Defendants may also depose Plaintiffs' medical providers, the coroner/medical examiner, and San Bernardino County Fire Department staff who rendered medical aid to Plaintiffs at the scene.

The parties do not see any issues regarding electronically stored information pursuant to Rule 26(f)(3)(C) in this case. The parties further do not propose that the Court issue any other orders under Federal Rules of Civil Procedure 16(b), 16(c), or 26(c).

## XI. DISCOVERY CUT-OFF

Plaintiffs propose a fact discovery cut-off date of **September 9, 2024**.

Defendants propose a discovery cut-off date for all discovery of **October 9, 2024**.

## XII. EXPERT DISCOVERY

Plaintiffs propose an initial expert disclosure exchange date of **July 29, 2024**, a rebuttal expert exchange date of **August 26, 2024**, and an expert discovery cut-off date of **September 9, 2024**.

1. Plaintiffs plan on designating a police practice expert. Plaintiffs further intend on designating non-retained medical experts who treated Plaintiffs Botten, Sr., Tanja, and J.B., for their wounds they sustained as a result of the CHP Officers and SBSD Deputies' use of deadly force. Plaintiffs reserve the right to designate additional experts should the need arise.

Defendants propose an initial expert disclosure exchange of **August 29, 2024**, and rebuttal expert disclosures on **September 20, 2024**. Defendants propose that expert discovery close on the cut-off date for all discovery, as stated above in section XI.

Defendants intend to retain and disclose expert witnesses concerning police practices and procedures and use of force. Defendants may also retain a medical or mental-health expert depending on the injuries or conditions Plaintiffs allege they suffered or developed as a result of the incident. Defendants will also disclose as non-retained experts Plaintiffs' medical and mental-health providers, the medical examiner who performed Puga's autopsy, toxicologist, and fire department personnel who rendered aid to Plaintiffs at the scene.

## XIII. DISPOSITIVE MOTIONS

Plaintiffs do not currently anticipate the filing of a dispositive motion but reserves the right to do so. Defendants anticipate filing motions for summary judgment, and propose the last day to hear such motions be December 2, 2024. Defendants contend that their lack of intent as to Plaintiffs, the reasonableness of the force used, Plaintiffs' failure to timely assert a Bane Act claim in the state-court action, and their entitlement to qualified immunity are proper issues to be determined on summary judgment. At this time, Defendants do not know what issues may be determined by motion *in limine*.

## XIV. SETTLEMENT/ADR PROCEDURE SELECTION

The parties elect to proceed with ADR Procedure No.#2 (Mediation Panel).

The parties have not discussed settlement. Discovery is needed before any meaningful settlement discussions can be had.

Plaintiffs propose a settlement conference deadline of **October 7, 2024**. Defendants propose a November 8, 2024 deadline.

## XV. MAGISTRATE JUDGE

The parties decline to consent to the designation of a Magistrate Judge to conduct all proceedings under 28 U.S.C. § 636.

## XVI. TRIAL

All parties have requested or anticipate requesting a jury trial.

Plaintiffs propose a pretrial conference date of **December 16, 2024**, and a trial date of **January 13, 2024**. Plaintiffs estimate that the trial will take approximately 5-7 court days.

State Defendants propose that the final pretrial conference take place on February 24, 2025, and that trial be set for March 10, 2025. County Defendants propose that the final pretrial conference take place on April 15, 2025 and the trial be set for April 29, 2025.[1] Defendants estimate that trial will take 7 to 10 court days to complete.

## XVII. TRIAL COUNSEL

Plaintiffs: Dale K. Galipo (lead), and Hang D. Le

State Defendants: Diana Esquivel, Office of the Attorney General for the State of California.

County Defendants: Shannon Gustafson (lead) and Amy Margolies, Lynberg & Watkins.

---

[1] County Defendants currently have two trials, each approx. seven-day trials, set in the Central District for February 25, 2025, and March 31, 2025.

## XVIII. INDEPENDENT EXPERT OR MASTER

The parties do not believe that the appointment of a master or independent scientific expert is needed or appropriate in this matter.

## XIX. TIMETABLE

The parties' proposed scheduling deadlines and trial date worksheet is attached as Exhibit A.

## XX. OTHER ISSUES

There is a related case pending in this court arising out of the February 17, 2021 shooting of Hector Puga. Plaintiffs' counsel intends to file a motion to consolidate this case with the related case, *L.C., et al. v. State of California, et al.*, case no. 5:22-cv-00949-KK-SHK (*Puga*). Defendants intend to oppose the motion because consolidation for trial purposes is improper, will confuse the jury, and unduly prejudice the Defendants. If the Court consolidates this case with *Puga*, Defendants agree to Plaintiffs' proposed scheduling deadlines, including a January 13, 2025 trial. However, if the cases are not consolidated, Plaintiffs' proposed scheduling deadlines conflict with the deadlines in *Puga*, which in turn will necessitate moving to modify the scheduling order.

The parties have agreed that discovery taken in *L.C., et al. v. State of California, et al.* may be used in and will apply, where appropriate, to this case to avoid duplicate or repetitive discovery and to conserve resources.

DATED: December 21, 2023          LAW OFFICES OF DALE K. GALIPO

By  */s/ Hang D. Le*
Dale K. Galipo
Hang Le
Attorneys for Plaintiffs

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: December 21, 2023 | ROB BONTA<br>Attorney General of California<br>CHRISTINE E. GARSKE<br>Supervising Deputy Attorney General |
| 3 | | |
| 4 | | |
| 5 | | */s/ Diana Esquivel\** |
| 6 | | DIANA ESQUIVEL<br>Deputy Attorney General<br>*Attorneys for Defendants Blackwood, Kee, and Rubalcava* |
| 7 | | |
| 8 | | |
| 9 | DATED: December 21, 2023 | LYNBERG & WATKINS |
| 10 | | By: */s/ Amy R. Margolies\** |
| 11 | | Shannon L. Gustafson, Esq. |
| 12 | | Amy R. Margolies, Esq. |
| 13 | | *Attorneys for Defendants County of San Bernardino, Robert Vaccari, and Jake Adams* |

\*The filer, Hang D. Le, hereby attests that all other signatories listed, and on whose behalf the filing is submitted, concur with the filing's content and have authorized the filing.

-14-
Joint Rule 16(f) Report

JUDGE JESUS B. BERNAL
EXHIBIT A: SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET

| Case No. | 5:23-cv-00257 JGB-SHK |
|---|---|
| Case Name | *Jonathan W. Botten, et al. v State of California, et al.* |

| Matter | Plaintiff(s)' Request mo/day/year | Defendant(s)' Request mo/day/year | Court's Order |
|---|---|---|---|
| ☒ Jury Trial or ☐ Court Trial **(Tuesday at 9:00 a.m.)** Length: <u>7-10 Days</u> | 1/13/25 | 3/10/25 State<br>4/29/25 County | |
| Final Pretrial Conference [L.R. 16] and Hearing on Motions *In Limine* **(Monday - ~~two (2)~~ weeks before trial date)** | 12/16/24 | 2/24/25 State<br>4/14/25 County | |
| Last Date to Conduct Settlement Conference | 10/7/24 | 11/8/24 State<br>1/20/24 County | |
| Last Date to **Hear** Non-discovery Motions (Monday at 9:00 a.m.) | | 12/2/24 State<br>1/13/24 County | |
| All Discovery Cut-Off (including hearing all discovery motions) | 9/9/24 | 10/9/24 State<br>12/9/24 County | |
| Expert Disclosure (Rebuttal) | 7/29/24 | 8/29/24 State<br>10/28/24 County | |
| Expert Disclosure (Initial) | 8/26/24 | 9/20/24 State<br>10/7/24 County | |
| Last Date to Amend Pleadings or Add Parties | 4/1/24 | 3/1/24 | |

ADR [L.R. 16-15] Settlement Choice:

    X    Attorney Settlement Officer Panel

         Private Mediation

         Magistrate Judge