# Exhibit A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C., a minor by and through her guardian ad litem Maria Cadena, individually and as successor-in-interest to Hector Puga; I.H., a minor by and through his guardian ad litem Jasmine Hernandez, individually and as successor-in-interest to Hector Puga; A.L., a minor by and through her guardian ad litem Lydia Lopez, individually and as successor-in-interest to Hector Puga; and ANTONIA SALAS UBALDO, individually, | ) ) ) ) ) ) No. 5:22-cv-00949-KK-(SHKx) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; S.S.C., a nominal defendant; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 6-10, inclusive, | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

REMOTE VIDEOTAPED DEPOSITION OF ANTONIA SALAS UBALDO

Bellflower, California

Tuesday, December 3, 2024

Volume I

Reported by:
JILL GLANTZ
CSR No. 11341

Job No. 131706

1

1    Q   You testified earlier that your doctor Jay

2    Rivera had prescribed you some medication for your

3    depression.  In your responses to written questions,

4    you identified a Dr. George -- I'm going to butcher

03:39:26  5    the last name -- it's "Jayatilaki,"

6    J-a-y-a-t-i-l-a-k-i -- who had diagnosed you with

7    depression and prescribed you some medication.

8         Can you please clarify which doctor it is

9    that diagnosed you with depression and prescribed

03:39:52  10   you the medication?

11   A   I called my doctor "Dr. Rivera" because I

12   don't even know how to pronounce the last name.  He

13   prescribed medicine for depression one time.

14   Q   So is George Jayatilaki the same as Dr. Jay

03:41:28  15   Rivera?

16   A   I don't know if it is the same one or what.

17   I say that "I'm going, I'm leaving," and what is the

18   name of the doctor, Dr. Rivera, and that's it.

19   Q   And you also testified earlier that you have

03:42:01  20   spoken with -- and I'm just going to call him

21   "Dr. Rivera," because that's who you mentioned

22   during this deposition -- that you've mentioned and

23   had discussions with him about your depression on a

24   number of occasions.  Is that correct?

03:42:38  25   A   Yes, yes.  I didn't go to say that I was

1    depressed.  I only said that my son died.

2    Q    Did Dr. Rivera inform you that he was

3    diagnosing you with depression?

4    A    Well, the thing is, he did not tell me that I

03:43:48  5    was depressed.  But what happened is that I cried

6    and I cried and I cried.  So the doctor said that I

7    was depressed.  But I have never -- he prescribed

8    those pills, but I never wanted to take the pills.

9    I just trust in God because I never said that I was

03:44:11  10    depressed.

11    Q    What clinic is Dr. -- or what hospital or

12    organization is Dr. Jay Rivera part of?

13    A    In Long Beach, but at the clinic that is on

14    Atlantic at -- next to the Santa Maria Hospital.

03:45:00  15    Q    Have you made any efforts to obtain your

16    medical records for those -- for those times that he

17    discussed your depression with you, including the

18    time that he prescribed you medication for

19    depression?

03:45:54  20    A    It was just that day that I spoke to him, and

21    I told him that my son had died, and I was crying

22    and -- but I haven't talked to him about depression

23    anymore, no.

24    Q    Did he actually hand you a physical paper

03:46:12  25    prescribing you the medication?

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby

3     certify:

4          That the foregoing proceedings were taken

5     before me at the time and place herein set forth;

6     that any witnesses in the foregoing proceedings,

7     prior to testifying, were administered an oath; that

8     a record of the proceedings was made by me using

9     machine shorthand which was thereafter transcribed

10    under my direction; that the foregoing transcript is

11    a true record of the testimony given.

12          Further, that if the foregoing pertains to

13    the original transcript of a deposition in a Federal Case,

14    before completion of the proceedings, review

15    of the transcript {X} was { } was not requested.

16          I further certify I am neither financially

17    interested in the action nor a relative or employee of any

18    attorney or party to this action.

19        IN WITNESS WHEREOF, I have this date subscribed my

20    name.

21

22    Dated: December 10, 2024

23                                          _____

24                                          JILL GLANTZ
                                            CSR No. 11341

25

# Exhibit B

**L.C., ET AL vs STATE OF CALIFORNIA, ET AL**
**Gabriela Salas, Vol. 1 on 12/19/2024**

```
 1              IN THE UNITED STATES DISTRICT COURT

 2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3

 4   L.C., et al.,

 5            Plaintiffs,

 6       vs.                         No. 5:22-cv-00949
                                         KK-SHK
 7   STATE OF CALIFORNIA, et al.,

 8            Defendants.
     _____/
 9

10

11

12
                   REMOTE DEPOSITION OF
13
                      GABRIELA SALAS
14
                        VOLUME I
15
            Appearing from Long Beach, California
16
                Thursday, December 19, 2024
17

18

19

20

21

22
     Reported by:
23   KATHLEEN BACA
     CSR No. 10267
24

25   JOB No. 00125976
```

L.C., ET AL vs STATE OF CALIFORNIA, ET AL
Gabriela Salas, Vol. 1 on 12/19/2024

Page 57

1    Q.    I'm sorry.  Was this the day that you were out

2   there?

3    A.    No.

4    Q.    Okay.  I just want to know about the day and

5   then we can talk about afterwards.

6          The day that you were out there wondering if

7   this was your brother involved in this incident where

8   you said you were there from about noon to 1 until 8 or

9   9 in the evening, did any of the neighbors at that time

10  offer you to -- offer to provide you with recordings of

11  what had transpired between your brother and the police?

12   A.    No.

13   Q.    It was afterwards that someone did that?

14   A.    Yes.

15   Q.    Was this the same neighbor that welcomed you

16  into her home?

17   A.    No.

18   Q.    Was this other neighbor, male or female?

19   A.    Female.

20   Q.    Do you remember her name?

21   A.    I think it was Betzabeth.  I don't remember

22  the name clearly.  But it was a female.

23   Q.    And how did she get in touch with you later to

24  tell you that she had a recording and was willing to

25  make that available to you?

L.C., ET AL vs STATE OF CALIFORNIA, ET AL
Gabriela Salas, Vol. 1 on 12/19/2024

Page 58

1      A.    She got my number through the GoFundMe that I
2  was -- that I had created.
3      Q.    Did she tell you where she lived in relation
4  to the intersection where the incident occurred?
5      A.    It was a very quick phone call.  She just told
6  me she has a video and I believe it was for my brother.
7  I asked to see if she was able to provide me with that
8  video, but if she could send it to the attorney, not to
9  me.
10      Q.    And you provided her with the attorney
11  information so she can send it directly to the attorney?
12      A.    Yes.
13      Q.    Other than that brief phone call, any other
14  contact with Betzabeth regarding any recordings or what
15  she saw concerning the incident?
16      A.    No.
17      Q.    And other than Betzabeth, any other neighbor
18  that subsequently contacted you offering you video or
19  audio recordings of what transpired between the police
20  and your brother on the date of the incident?
21      A.    If I -- I kind of -- kind of remember there
22  was another video on Facebook.  Yeah.  There was another
23  video on Facebook from one of the neighbors.
24      Q.    But is that something that was offered to you
25  or you just came across it on Facebook?

L.C., ET AL vs STATE OF CALIFORNIA, ET AL
Gabriela Salas, Vol. 1 on 12/19/2024

Page 85

CERTIFICATE

1

2          I, the undersigned, a Certified Shorthand

3    Reporter of the State of California, do hereby certify:

4          That the foregoing proceedings were taken

5    before me at the time and place herein set forth; that

6    any witnesses in the foregoing proceedings, prior to

7    testifying, were duly sworn; that a record of the

8    proceedings was made by me using machine shorthand which

9    was thereafter transcribed under my direction; that the

10   foregoing transcript is a true record of the testimony

11   given.

12         Further, that if the foregoing pertains to the

13   original transcript of a deposition in a Federal Case,

14   before completion of the proceedings, review of the

15   transcript [ ] was [ ] was not requested.

16         I further certify I am neither financially

17   interested in the action nor a relative or employee of

18   any attorney or party to this action.

19         IN WITNESS WHEREOF, I have this date subscribed

20   my name.

21

22   Dated:  December 27, 2024.

23

24   _____
            KATHLEEN BACA, CSR #10267

25

# Exhibit C

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

```
_____
                                    )
JONATHAN WAYNE BOTTEN, SR.; TANJA   )
DUDEK-BOTTEN; ANNABELLE BOTTEN; AND )
J.B., A MINOR BY AND THROUGH HIS    )
GUARDIAN JONATHAN WAYNE BOTTEN, SR.,)
                                    )
                                    ) CASE NO.
                Plaintiffs,         ) 5:23-CV-00257-KK-
                                    ) (KSHKX)
          vs.                       )
                                    )
STATE OF CALIFORNIA; COUNTY OF      )
SAN BERNARDINO; ISAIAH KEE; MICHAEL )
BLACWOOD; BERNARDO RUBALCAVA; ROBERT)
VACCARI; JAKE ADAMS; AND DOES 1-10, )
INCLUSIVE,                          )
                                    )
                Defendants.         )
_____)
```

VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

JONATHAN WAYNE BOTTEN, SR.

DECEMBER 16, 2024

REPORTED BY SANDRA NALLEY, CSR NO. 13607

1

02:04 1      A.   No.

02:04 2      Q.   Okay.  Are you aware of any other medical liens

02:04 3   that you're responsible for for -- based on the medical

02:04 4   care that your -- that your son received at Loma Linda

02:04 5   Hospital?

02:04 6      A.   No.

02:04 7      Q.   Are you aware of any medical liens for which

02:04 8   you are responsible for the medical care your wife

02:04 9   received at Loma Linda Hospital?

02:04 10      A.   No.

02:04 11      Q.   Are you aware of any bills for which you are

02:04 12   responsible for based on the medical care your son

02:04 13   received at Loma Linda Hospital?

02:04 14      A.   No.

02:05 15      Q.   Are you aware of any bills for which you are

02:05 16   responsible based on the medical care your wife received

02:05 17   at Loma Linda Hospital?

02:05 18      A.   No.

02:05 19      Q.   Were you aware that in the summer of 2022, your

02:05 20   father took your son to urgent care?

02:05 21      A.   Correct.

02:05 22      Q.   Okay.  Did your -- do you know why your father

02:05 23   took your son to urgent care while he was visiting in the

02:05 24   summer of 2022?

02:05 25      A.   Yes.

125

| | | |
|---|---|---|
| 02:05 | 1 | Q.   Why did he do that? |
| 02:05 | 2 | A.   Because my son's chest was bleeding. |
| 02:05 | 3 | Q.   Did your father-in -- did your father tell you |
| 02:05 | 4 | why your -- if he -- if he knew why your son's chest was |
| 02:05 | 5 | bleeding? |
| 02:05 | 6 | A.   No, he didn't. |
| 02:05 | 7 | Q.   Did your son contact you and let you know that |
| 02:06 | 8 | his chest was bleeding? |
| 02:06 | 9 | A.   Yes. |
| 02:06 | 10 | Q.   And did you ask him why it was bleeding? |
| 02:06 | 11 | A.   No.  I just asked -- I just told him to put a |
| 02:06 | 12 | Band-Aid on it. |
| 02:06 | 13 | Q.   Have you -- has -- your son, since he returned |
| 02:06 | 14 | home from the hospital, has he ever shown you his chest |
| 02:06 | 15 | when it's been bleeding? |
| 02:06 | 16 | A.   Yes. |
| 02:06 | 17 | Q.   On those occasions that he has shown it to you, |
| 02:06 | 18 | what did it look like? |
| 02:06 | 19 | A.   Like his chest was bleeding. |
| 02:06 | 20 | Q.   From an open wound? |
| 02:06 | 21 | A.   Yes, from a hole. |
| 02:06 | 22 | Q.   Is it just one hole? |
| 02:06 | 23 | A.   Yes. |
| 02:06 | 24 | Q.   And where is that hole located? |
| 02:06 | 25 | A.   His left side of his chest. |

126

1   I, SANDRA NALLEY, Certified Shorthand Reporter for the

2   State of California, do hereby certify:

3

4   That the witness in the foregoing deposition was by me

5   first duly sworn to testify to the truth, the whole truth

6   and nothing but the truth in the foregoing cause; that

7   the deposition was taken by me in machine shorthand and

8   later transcribed into typewriting, under my direction,

9   and that the foregoing contains a true record of the

10  testimony of the witness.

11

12  Dated:   This 30th day of December, 2024, at Temecula,

13  California.

14

15

16

17

18  _____

19                SANDRA NALLEY
                  CSR NO. 13607

20

21

22

23

24

25

# Exhibit D

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

_____ )
JONATHAN WAYNE BOTTEN, SR.; TANJA        )
DUDEK-BOTTEN; ANNABELLE BOTTEN; AND      )
J.B., A MINOR BY AND THROUGH HIS         )
GUARDIAN JONATHAN WAYNE BOTTEN, SR.,     )
                                         )
                                         ) CASE NO.
                 Plaintiffs,             ) 5:23-CV-00257-KK-
                                         ) (KSHKX)
            vs.                          )
                                         )
STATE OF CALIFORNIA; COUNTY OF           )
SAN BERNARDINO; ISAIAH KEE; MICHAEL      )
BLACWOOD; BERNARDO RUBALCAVA; ROBERT     )
VACCARI; JAKE ADAMS; AND DOES 1-10,      )
INCLUSIVE,                               )
                                         )
                 Defendants.             )
_____)


VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

ANNABELLE BOTTEN

DECEMBER 16, 2024


REPORTED BY SANDRA NALLEY, CSR NO. 13607

1

| | | |
|---|---|---|
| 03:14 | 1 | waste her time as a therapist and I just felt it was |
| 03:15 | 2 | useless to continue the services. |
| 03:15 | 3 | Q.   Is it your belief, as you sit here today, that |
| 03:15 | 4 | therapy just doesn't help you? |
| 03:15 | 5 | A.   Yes, ma'am. |
| 03:15 | 6 | Q.   Have you tried any therapists other than |
| 03:15 | 7 | Sarah Schmotzer? |
| 03:15 | 8 | A.   No. |
| 03:15 | 9 | Q.   How did you pay for Ms. Schmotzer's services? |
| 03:15 | 10 | A.   My -- my health insurance. |
| 03:15 | 11 | Q.   And what health insurance is that? |
| 03:15 | 12 | A.   Medi-Cal. |
| 03:15 | 13 | Q.   And how long have you had Medi-Cal? |
| 03:15 | 14 | A.   Since I started college. |
| 03:15 | 15 | Q.   And that was when you were still in high |
| 03:15 | 16 | school? |
| 03:15 | 17 | A.   No.  After I had graduated high school. |
| 03:15 | 18 | Q.   Did you have to pay anything out of pocket for |
| 03:15 | 19 | Ms. Schmotzer's services? |
| 03:15 | 20 | A.   No.  Other than to get -- |
| 03:15 | 21 | (Reporter clarification.) |
| 03:15 | 22 | THE WITNESS:  Other than to get this attendance |
| 03:15 | 23 | and treatment summary.  I had to pay for that out of |
| 03:15 | 24 | pocket. |
| 03:15 | 25 | /// |

03:15  1    BY MS. GUSTAFSON:

03:15  2        Q.    What did you have to pay to get the records?

03:16  3        A.    $25.

03:16  4        Q.    And when did you get the records?

03:16  5        A.    I got them -- it actually doesn't say when I

03:16  6    got them.  Oh, it says -- no, actually, I don't know if

03:16  7    that's the date.  Oh, no, it says April 1st of 2024.

03:16  8        Q.    What was the reason you got the records in

03:16  9    April of 2024?

03:16 10        A.    It was requested by my lawyer.

03:16 11        Q.    Now, you've brought these records and they're

03:16 12    sitting with you at the deposition.  Is this -- these

03:16 13    records from Sarah Schmotzer also something that you

03:16 14    reviewed to prepare for today?

03:16 15        A.    No.

03:16 16        Q.    What was the reason that you have them sitting

03:16 17    with you at the deposition?

03:16 18        A.    I was told they would be necessary.

03:16 19        Q.    Did Ms. Schmotzer ever recommend any medication

03:17 20    for you?

03:17 21        A.    Yes, she did have me sent to a psychiatrist to

03:17 22    try to get medication.  I attempted to take some of it.

03:17 23    I didn't like the way it made me feel and I stopped

03:17 24    taking it.

03:17 25        Q.    So you -- in addition to Ms. Schmotzer, you

30

03:17  1    also went and saw a psychiatrist?

03:17  2         A.   Yes, ma'am.  But not --

03:17  3         Q.   And --

03:17  4         A.   -- for a doctor or anything.  Like, she just --

03:17  5    I just gave her my symptoms.  She looked over what my

03:17  6    therapist had given her and she prescribed me a

03:17  7    medication.  I don't believe she was even actually a

03:17  8    psychiatrist.  They just call their nurse practitioners

03:17  9    psychiatrists.

03:17 10         Q.   But my question is -- is:  In addition to

03:17 11    Sarah Schmotzer, there was somebody else that you went to

03:17 12    see?

03:17 13         A.   Yes, ma'am.

03:17 14         Q.   And you believe that was either -- she was

03:17 15    either a psychiatrist or a nurse practitioner?

03:17 16         A.   No.  She had identified as a nurse

03:17 17    practitioner.

03:17 18         Q.   And what was the name of the nurse practitioner

03:17 19    that you went to see?

03:17 20         A.   I don't have her name.

03:17 21         Q.   When did you go see this nurse practitioner?

03:18 22         A.   I don't have the name -- the date for that

03:18 23    either.

03:18 24         Q.   Well, you indicated that you had been treating

03:18 25    with Ms. Schmotzer from about October of 2023 till

**Botten, Annabelle**
**Botten v. State of California**

03:20  1          Q.   And did you -- is that the reason you stopped

03:20  2    seeing her?

03:20  3          A.   Yes, ma'am.

03:20  4          Q.   And what medication did she give you in October

03:20  5    of 2023?

03:20  6          A.   I believe it was florhexide (phonetic).  I -- I

03:20  7    have the medication.  I can bring it to you if you'd

03:20  8    like.  I can't remember the exact name of it.  I'm not

03:20  9    good with medication names.

03:20 10          Q.   You sill have the bottle?

03:20 11          A.   Yes, ma'am.

03:20 12          Q.   Maybe when we take a break, we can get that.

03:20 13          A.   Okay.

03:20 14          Q.   Any other medication other than the one that

03:21 15    you believe was called florhexide?

03:21 16          A.   No.

03:21 17          Q.   And how long did you take the medication?

03:21 18          A.   Two days.

03:21 19          Q.   And why did you stop taking it?

03:21 20          A.   I didn't like the way it made me feel.

03:21 21          Q.   And what was it you didn't like?

03:21 22          A.   It made me feel like I was a zombie.

03:21 23          Q.   Did you discuss possibly trying a different

03:21 24    medication?

03:21 25          A.   No.

34

04:51  1            THE REPORTER:  Off the record?

04:51  2            MS. GUSTAFSON:  Yeah, we can go off the record.

04:51  3            THE VIDEOGRAPHER:  Videotaped deposition is

04:51  4   going off the record at 4:51 p.m.

04:54  5            (Recess taken.)

04:54  6            THE VIDEOGRAPHER:  Videotaped deposition is

04:55  7   returning to record at 4:55 p.m.

04:55  8

04:55  9                    EXAMINATION

04:55 10   BY MS. ESQUIVEL:

04:55 11       Q.   Good afternoon, Ms. Botten.  Like I mentioned

04:55 12   before we went back on the record, I just have some

04:55 13   follow-up questions, and I apologize.  I'm going to be

04:55 14   jumping around quite a bit.

04:55 15            Can you give us the name of the medication that

04:55 16   was prescribed to you by the nurse practitioner that you

04:55 17   believe was a psychiatrist?

04:55 18       A.   They call it a psychiatrist, but she identified

04:55 19   as a nurse practitioner.

04:55 20       Q.   All right.

04:55 21       A.   It's called fluoxetine.  It's spelled

04:55 22   f-l-u-o-x-e-t-i-n-e and it's 20 milligrams.

04:55 23       Q.   Okay.  Thank you.

04:55 24            And does it have a name there of the doctor

04:56 25   that wrote that prescription?

04:56  1          A.    Yes.  It says Lauren Ware.

04:56  2          Q.    Can you spell the last name for me, please?

04:56  3          A.    W-a-r-e.

04:56  4          Q.    Okay.  And is there a title there, like, either

04:56  5     Dr., NP?

04:56  6          A.    No.

04:56  7          Q.    Okay.  Is there a phone number for Lauren Ware?

04:56  8          A.    No.  I'm not seeing one.

04:56  9          Q.    Okay.  Does it have a name of the clinic or

04:56 10     practice?

04:56 11          A.    No.  The only thing it says is where I got it,

04:56 12     which was at Walmart.

04:56 13          Q.    Okay.  So I'm going to -- I guess I'm just

04:56 14     trying to have -- trying to understand -- get some

04:56 15     clarification from you in terms of what you no longer

04:57 16     have a recollection of.  I know Ms. -- I know Shannon was

04:57 17     asking you quite a bit of that, but I just -- I'm not

04:57 18     really clear.

04:57 19               So is it your testimony that after your mom

04:57 20     woke you up and had you come to the living room, that --

04:57 21     and you went to the window and then you went back to the

04:57 22     couch -- couch, that after that, your next recollection

04:57 23     is seeing your mom bleeding from the face while you were

04:57 24     on the floor?

04:57 25          A.    Yes.

05:16  1    quality.  Does this look like the one you might be

05:16  2    referring to?

05:16  3         A.   I can't see anything.  Alls I can see is --

05:16  4              MS. GUSTAFSON:  Diana, we don't have the video.

05:16  5    We just have your screen with a list of videos.

05:16  6              MS. ESQUIVEL:  Oh.

05:16  7              THE WITNESS:  Yeah.

05:16  8              MS. ESQUIVEL:  I probably shared the wrong

05:16  9    screen.  Hold on.

05:16 10    BY MS. ESQUIVEL:

05:16 11         Q.   Okay.  Let me try this again.

05:16 12         A.   No.

05:16 13         Q.   No?  Okay.  Let me try one more.  Okay.  Let's

05:16 14    try to see if this one might be it.

05:17 15         A.   No.

05:17 16         Q.   No?  And who showed you -- or do you know where

05:17 17    you got the second video that you're thinking about that

05:17 18    is in black and white?

05:17 19         A.   I don't know exactly where I got the video.  I

05:17 20    don't know if I had gotten it from my parents, but I do

05:17 21    know it was a video that was from the neighbors, and it's

05:17 22    in black and white.

05:17 23         Q.   Do you still have that video?

05:17 24         A.   I believe so, I do.

05:17 25         Q.   Okay.  I'm going to ask you if you can please

117

05:17  1    provide that to your attorney --

05:17  2        A.    Okay.

05:17  3        Q.    -- and we'll just ask it from her.  Okay?

05:17  4        A.    Okay.

05:17  5        Q.    Because like I said, I don't -- I have never

05:17  6    seen a black-and-white one, so I don't know if that's one

05:17  7    that we have.

05:17  8        A.    Okay.

05:17  9        Q.    Okay.  And that's one that you say that you've

05:17 10    watched and that you watched back in 2022 for six to

05:18 11    eight hours total over a period of time, correct?

05:18 12        A.    Yes.  I had watched both the neighbor videos.

05:18 13    The black-and-white video is very -- is probably the

05:18 14    worse video out of both of them.

05:18 15        Q.    Okay.

05:18 16        A.    Because in that video you hear us screaming for

05:18 17    help.

05:18 18        Q.    Okay.  And that's the one that you feel has

05:18 19    contributed to your trauma and why you want to -- you've

05:18 20    forgotten a lot of what had happened?

05:18 21        A.    No.  The shooting is the reason I forgot what

05:18 22    was happening.  The videos were to try to help me

05:18 23    remember what was happening.

05:18 24        Q.    Okay.

05:18 25              MS. GUSTAFSON:  And, Diana, for the record, I

                                                                    118

1    I, SANDRA NALLEY, Certified Shorthand Reporter for the

2    State of California, do hereby certify:

3

4    That the witness in the foregoing deposition was by me

5    first duly sworn to testify to the truth, the whole truth

6    and nothing but the truth in the foregoing cause; that

7    the deposition was taken by me in machine shorthand and

8    later transcribed into typewriting, under my direction,

9    and that the foregoing contains a true record of the

10   testimony of the witness.

11

12   Dated:   This 30th day of December, 2024, at Temecula,

13   California.

14

15

16

17

18   _____
                SANDRA NALLEY
19              CSR NO. 13607

20

21

22

23

24

25

121

# Exhibit E



## Renewing Hope Family Counseling Center, Inc.
### Attendance/Treatment Summary

April 1, 2024

Annabelle Botten
13853 Farmington St,
Oak Hills, Ca. 92344

Dear Annabelle Botten,

This letter is being written to confirm your participation at Renewing Hope Family Counseling Center, Inc. on the following dates:

**Therapy:**

| | | | |
|---|---|---|---|
| 06/14/2023 | 09/26/2023 | 12/08/2023 (Clinician Cancelled) | 02/29/2024 |
| 06/21/2023 | 09/29/2023 | 12/12/2023 | 03/06/2024 |
| 06/27/2023 | 10/06/2023 | 12/15/2023 | 03/13/2024 |
| 07/05/2023 | 10/10/2023 | 12/19/2023 | 03/21/2024 |
| 07/11/2023 (No Show) | 10/13/2023 | 12/26/2023 (Clinician Cancelled) | 03/27/2024 |
| 07/18/2023 | 10/17/2023 | 12/29/2023 (Clinician Cancelled) | |
| 07/25/2023 | 10/20/2023 | 01/02/2024 | |
| 07/27/2023 | 10/24/2023 | 01/05/2024 | |
| 08/01/2023 | 10/27/2023 | 01/09/2024 (No Show) | |
| 08/04/2023 | 10/31/2023 | 01/12/2024 | |
| 08/08/2023 | 11/03/2023 (Late Cancelled) | 01/16/2024 | |
| 08/11/2023 (No Show) | 11/07/2023 | 01/18/2024 | |
| 08/14/2023 | 11/10/2023 | 01/23/2024 | |
| 08/16/2023 | 11/14/2023 | 01/25/2024 | |
| 08/22/2023 | 11/17/2023 | 01/30/2024 | |
| 08/29/2023 | 11/21/2023 | 02/01/2024 | |
| 09/12/2023 | 11/24/2023 | 02/06/2024 | |
| 09/15/2023 | 11/28/2023 | 02/08/2024 | |
| 09/19/2023 | 12/01/2023 | 02/16/2024 | |
| 09/22/2023 | 12/05/2023 | 02/22/2024 | |

Corporate Office
24910 Las Brisas Rd Ste 117
Murrieta, CA 92562
Phone: 951-465-3664  Fax: 951-972-8551

PLTFS 00331

**Psychiatry:**
06/30/2023
07/31/2023
08/28/2023
09/25/2023

**Diagnosis:**
F33.1 - Major depressive disorder, recurrent, moderate

F43.10 - Post-traumatic stress disorder, unspecified

Modality: Cognitive Behavioral Therapy

# Exhibit F

1   Dale K. Galipo, Esq. (SBN 144074)
    dalekgalipo@yahoo.com
2   Hang D. Le, Esq. (SBN 293450)
    hlee@galipolaw.com
3   LAW OFFICES OF DALE K. GALIPO
    21800 Burbank Boulevard, Suite 310
4   Woodland Hills, California 91367
    Tel: (818) 347-3333/ Fax: (818) 347-4118
5

6   *Attorneys for Plaintiffs*

7

8               **UNITED STATES DISTRICT COURT**
9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11  L.C., a minor, et al.,                 Case No. 5:22-cv-00949-KK-(SHK)

12              Plaintiff,                  *Hon. Kenly Kiya Kato*

13        vs.                              **PLAINTIFF ANTONIA SALAS**
                                           **UBALDO'S FIRST**
14  STATE OF CALIFORNIA, et al.,           **SUPPLEMENTAL RESPONSES**
                                           **TO DEFENDANT COUNTY OF**
15              Defendant.                 **SAN BERNARDINO'S REQUESTS**
                                           **FOR PRODUCTION**
16

17

18      **PROPOUNDING PARTY:**   Defendant, County of San Bernardino

19      **RESPONDING PARTY:**    Plaintiff, Antonia Salas Ubaldo

20      **SET NUMBER:**          One (1)

21

22

23

24

25

26

27

28

---

PLAINTIFF A.G.'S RESPONSES AND OBJECTIONS TO DEFENDANT CITY OF ARVIN'S FIRST SET OF
PRODUCTION REQUESTS FOR PRODUCTION

1  or documents recalled, discovered or generated pursuant to subsequent investigation
2  and discovery.

3  ## III.

4  **PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES TO REQUESTS FOR**
5  **PRODUCTION**

6

7  **REQUEST NO. 9:**

8      Any and all photographs, videotapes, or audio tapes that depict any or all of
9  the INCIDENT giving rise to this lawsuit.

10 **SUPPLEMENTAL RESPONSE TO REQUEST NO. 9:**

11     Plaintiff objects to this Request on the basis that it calls for documents already
12 in Defendant's possession, custody, or control. Without waiving the foregoing
13 objections, Plaintiff responds as follows: Plaintiff identifies the following videos
14 that are in Defendant's possession, custody, and control: COSB1417-COSB1470.

15     Additionally, Plaintiff is concurrently producing a video that is responsive to this
16 request [Plaintiff 0241].

17     As discovery is ongoing, Plaintiff reserves the right to amend and/or
18 supplement this Response.

19

20 **REQUEST NO. 16:**

21     All DOCUMENTS that relate to, support, or evidence YOUR claims as
22 alleged in YOUR OPERATIVE COMPLAINT.

23 **SUPPLEMENTAL RESPONSE TO REQUEST NO. 9:**

24     Plaintiff is concurrently producing a video that is responsive to this request
25 [Plaintiff 0241].

26 As discovery is ongoing, Plaintiff reserves the right to amend and/or supplement this
27 Response.

28

1    DATED:  October 31, 2024            THE LAW OFFICES OF DALE K. GALIPO

2

3                                            BY: _____/s/ Hang D. Le_____

4                                                 Dale K. Galipo
                                                  Hang D. Le
5                                                 Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF A.G.'S RESPONSES AND OBJECTIONS TO DEFENDANT CITY OF ARVIN'S FIRST SET OF
PRODUCTION REQUESTS FOR PRODUCTION

# Exhibit G

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C., a minor by and through her guardian ad litem Maria Cadena, individually and as successor-in-interest to Hector Puga; I.H., a minor by and through his guardian ad litem Jasmine Hernandez, individually and as successor-in-interest to Hector Puga; A.L., a minor by and through her guardian ad litem Lydia Lopez, individually and as successor-in-interest to Hector Puga; and ANTONIA SALAS UBALDO, individually<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; S.S.C., a nominal defendant; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 6-10, inclusive,<br><br>Defendants. | Case No.: 5:22-cv-00949-JGB-(KK)<br><br><br>**PLAINTIFF ANTONIA SALAS UBALDO'S. RESPONSES TO DEFENDANT ROBERT VACCARI'S INTERROGATORIES (SET ONE)** |

**PROPOUNDING PARTY**:    Defendant, Robert Vaccari

**RESPONDING PARTY**:    Plaintiff, Antonia Salas Ubaldo

**SET NUMBER**:    One (1)

information already known by, or reasonably accessible to Defendants, or facts that are solely within the knowledge and control of Defendants.

10.    Plaintiff's objections to the disclosure of any information requested in the Interrogatories are not and shall not be construed as an admission that any such information exists.

<u>**RESPONSES TO INTERROGATORIES (SET ONE)**</u>

## INTERROGATORY 1:

IDENTIFY by name and provide contact information for the person that captured the video footage Plaintiff provided on October 31, 2024, identified by Plaintiff as Bates No. 0241, in response to County's Request for Production of Documents, Set One.

## RESPONSE TO INTERROGATORY 1:

Plaintiff does not have personal knowledge of the information requested in this Interrogatory. After diligent search and reasonable inquiry, Plaintiff is informed of and thereon believes the name and contact information of the person who captured the video footage Plaintiff provided on October 31, 2024, identified by Plaintiff as Bates No. 0214 is as follows: Betzabeth Gonzalez, Phone: 760-985-6970.

## INTERROGATORY 2:

IDENTIFY the type of recording device (such as cell phone, iPad, etc) and the make and model of the recording device used to capture Plaintiff's Bates No. 0241 video produced on October 31, 2024, in response to County's Request for Production of Documents, Set One.

## RESPONSE TO INTERROGATORY 2:

Plaintiff does not have personal knowledge of the information requested in this Interrogatory. After diligent search and reasonable inquiry, Plaintiff is informed of and thereon believes that the video was captured on a Samsung Galaxy cell phone.

## INTERROGATORY 3:

1    Plaintiff does not have personal knowledge of the information requested in this

2  Interrogatory. After diligent search and reasonable inquiry, Plaintiff is informed of and

3  thereon believes that the video was captured on a Samsung Galaxy cell phone.

4  **RESPONSES TO INTERROGATORY 3:**

5    Plaintiff does not have personal knowledge of the information requested in this

6  Interrogatory. After diligent search and reasonable inquiry, Plaintiff is informed of and

7  thereon believes that an individual by the name of Jacob Gonzalez was also present

8  when Bates No. 0241 was recorded and that his contact information is (619) 631-2526.

9  **INTERROGATORY 4:**

10    State the specific location, including the address, of where Plaintiff's Bates No.

11  0241 video, provided on October 31, 2024, in response to County's Request for

12  Production of Documents, Set One, was taken from.

13  **RESPONSES TO INTERROGATORY 4:**

14    Plaintiff does not have personal knowledge of the information requested in this

15  Interrogatory. After diligent search and reasonable inquiry, Plaintiff is informed of and

16  thereon believes that the video was taken at the following address: 11428 Peach

17  Avenue, Hesperia CA 92345.

18  **INTERROGATORY 5:**

19    State whether Plaintiff's Bates No. 0241 video, provided on October 31, 2024, in

20  response to County's Request for Production of Documents, Set One, was taken, from

21  inside or outside, and if from inside, identify where inside the video was taken from.

22  **RESPONSES TO INTERROGATORY 5:**

23  Plaintiff does not have personal knowledge of the information requested in this

24  Interrogatory. After diligent search and reasonable inquiry, Plaintiff is informed of and

25  thereon believes that the video was taken indoors, inside a bathroom.

26

27  **INTERROGATORY 6:**

28

**PLAINTIFF ANTONIA SALAS UBALDO'S. RESPONSES TO DEFENDANT ROBERT VACCARI'S
INTERROGATORIES (SET ONE)**

State whether Plaintiff's Bates No. 0241 video, provided on October 31, 2024, in response to County's Request for Production of Documents, Set One, was taken through a window or glass.

**RESPONSES TO INTERROGATORY 6:**

Plaintiff does not have personal knowledge of the information requested in this Interrogatory. After diligent search and reasonable inquiry, Plaintiff is informed of and thereon believes that the video was recorded behind a screen.

**INTERROGATORY 7:**

State whether Plaintiff's Bates No. 0241 video, provided on October 31, 2024, in response to County's Request for Production of Documents, Set One, is the entire video captured.

**RESPONSES TO INTERROGATORY 7:**

Plaintiff does not have personal knowledge of the information requested in this Interrogatory. After diligent search and reasonable inquiry, Plaintiff is informed of and thereon believes that Bates No. 0241 is the full video

**INTERROGATORY 8:**

State whether Plaintiff's Bates No. 0241 video, provided on October 31, 2024, in response to County's Request for Production of Documents, Set One, has been altered, enhanced, and/or modified in any way.

**RESPONSES TO INTERROGATORY 8:**

Plaintiff does not have personal knowledge of the information requested in this Interrogatory. After diligent search and reasonable inquiry, Plaintiff is informed of and thereon believes that Bates No. 0241 has not been altered, enhanced, or modified in any way.

/ / /

/ / /

**INTERROGATORY 9:**

1    State whether Plaintiff's Bates No. 0241 video, provided on October 31, 2024, in

2  response to County's Request for Production of Documents, Set One, is the original

3  version of the video or if there are other versions that exist.

4  **RESPONSES TO INTERROGATORY 9:**

5    Plaintiff does not have personal knowledge of the information requested in this

6  Interrogatory. After diligent search and reasonable inquiry, Plaintiff is informed of and

7  thereon believes that Bates No. 0241 is the original video.

8  **INTERROGATORY 10:**

9    State whether Plaintiff is aware of any other video or audio recording capturing

10  the incident and if so, IDENTIFY all known video and audio not yet provided to

11  Defendants.

12  **RESPONSES TO INTERROGATORY 10:**

13    Plaintiff does not have personal knowledge of the information requested in this

14  Interrogatory. After diligent search and reasonable inquiry, Plaintiff is informed of and

15  thereon believes that that there are three additional videos of the incident that were taken

16  by Betzabeth Gonzalez.

17

18  DATED:  December 4, 2024        THE LAW OFFICES OF DALE K. GALIPO

19

20                    BY:  _____*/s/ Hang D. Le*_____

21                        Dale K. Galipo
                        Hang D. Le

22                        Attorneys for Plaintiffs

23

24

25

26

27

28

| UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA | FOR COURT USE ONLY |
|---|---|
| **TITLE OF CASE (Abbreviated)** <br> L.C., et al. v. State of California, et al. | |
| **ATTORNEY(S) NAME AND ADDRESS** <br> Dale K. Galipo (CA SBN 144074) <br> Hang D. Le, Esq. (Bar No. 293450) <br> LAW OFFICES OF DALE K. GALIPO <br> 21800 Burbank Blvd, Suite 310 <br> Woodland Hills, California 91367 <br> Fax: (818) 347-4118 <br> Email:dalekgalipo@yahoo.com;hlee@galipolaw.com | |
| **ATTTORNEY(S) FOR: Plaintiffs** | Case No.  5:22-cv-00949-JGB-KK <br> Courtroom: 1 <br> Judge:  Jesus G Bernal |

## DECLARATION OF SERVICE

      I, Leslie De Leon, am employed in the County of Los Angeles, State of California and am over the age of eighteen years and not a party to the within action.  My business address is 21800 Burbank Boulevard, Suite 310, Woodland Hills, California 91367. On December 9, 2024, I served the foregoing document described as: **PLAINTIFF ANTONIA SALAS UBALDO'S RESPONSES TO DEFENDANT ROBERT VACCARI'S INTERROGATORIES (SET ONE)** on all interested parties, through their respective attorneys of record in this action by placing a true copy thereof enclosed in a sealed envelope addressed as specified below:

## SEE ATTACHED SERVICE LIST

## METHOD OF SERVICE

☐    (BY MAIL) I enclosed the documents in a sealed envelope or package and addressed to the parties at the address specified above.

☐    I placed the envelope or package for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of this office for the collection, processing and mailing of documents.  On the same day that documents are placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒    (BY ELECTRONIC SERVICE) I caused the foregoing document(s) to be sent via electronic transmittal to the notification addresses listed below as registered with this court's case management/electronic court filing system.

      I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 9, 2024

/s/ *Leslie De Leon*
_____
Leslie De Leon

# Exhibit H

1  ROB BONTA
   Attorney General of California
2  NORMAN D. MORRISON
   Supervising Deputy Attorney General
3  DIANA ESQUIVEL
   Deputy Attorney General
4  State Bar No. 202954
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone:  (916) 210-7320
     Facsimile:  (916) 322-8288
7    E-mail:  Diana.Esquivel@doj.ca.gov
   *Attorneys for Defendants State of California, by and*
8  *through the California Highway Patrol, Blackwood,*
   *Kee, and Rubalcava*
9

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13

14  | L.C., et al., | No. 5:22-cv-00949 KK-SHK |
    |---|---|
15  | Plaintiffs, | **NOTICE OF TAKING DEPOSITIONS OF PLAINTIFFS A.L., I.H., and L.C.** |
16  | | |
17  | v. | |
18  | **STATE OF CALIFORNIA, et al.,** | Date:        December 20, 2024 |
    | | Time:        10:00 a.m., 1:00 p.m. & 2:30 p.m. |
19  | Defendants. | Location:   LYNBERG & WATKINS |
    | | 1100 W. Town & Country Road |
20  | | Suite 1450, Orange, California |

21

22         TO ALL PARTIES AND THEIR ATTORNEYS OF RECORDS:

23         PLEASE TAKE NOTICE that Defendant State of California will take the

24  depositions of Plaintiffs A.L., I.H., and L.C. on the dates and times listed below,

25  upon oral examination before a certified shorthand reporter as permitted under

26  Federal Rule of Civil Procedure 30. The depositions shall take place in person at the

27  law firm of LYNBERG & WATKINS, A Professional Corporation, 1100 W. Town

28  & Country Road, Suite 1450, Orange, California 92868, (714) 937-1010.

| | | |
|---|---|---|
| 1 | **Layla Ibarra Cadena (L.C.)** | **December 20, 2024 at 10:00 a.m.** |
| 2 | **Isaiah Jessie Hernandez (I.H.)** | **December 20, 2024 at 1:00 p.m.** |
| 3 | **Allyson Maria Lopez (A.L.)** | **December 20, 2024 at 2:30 p.m.** |

4    If any deposition is not completed on the specified date, the deposition will be

5 continued from day-to-day thereafter at the same place, weekends and holidays

6 excepted, until completed and to the extent permitted under the Federal Rules of

7 Civil Procedure.

8    The noticing party may additionally cause the depositions to be digitally

9 recorded. Fed. R. Civ. P. 30(B)(3)(A). The audio-visual recording may be used at

10 trial. Fed. R. Civ. P. 32(a).

11    If any deponent requires the service of an interpreter, the Plaintiffs' attorney

12 must advise the undersigned, in writing, no later than five (5) days before the date

13 set for the deposition, of the need for an interpreter and the language or dialect

14 needed.

15    **The undersigned will to meet and confer with counsel to reschedule the**

16 **depositions if the date and times listed above are not convenient for counsel or**

17 **the Plaintiff and to set reasonable parameters, including time limits, for the**

18 **depositions of the minor Plaintiffs**.

19 Dated:  December 4, 2024                    Respectfully submitted,

20                                             ROB BONTA
                                              Attorney General of California
21                                            NORMAN D. MORRISON
                                              Supervising Deputy Attorney General
22

23                                            *Diana Esquivel*

24                                            DIANA ESQUIVEL
                                              Deputy Attorney General
25                                            *Attorneys for Defendants State,*
                                              *Blackwood, Kee, and Rubalcava*
26 LA2022603031
   38590776.docx
27

28

## DECLARATION OF SERVICE BY ELECTRONIC MAIL

**Name:** *L.C., et al. v. State of California, et al.*
**No.:** 5:22-cv-00949 KK-SHKx

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **December 4, 2024**, I served the attached

**NOTICE OF TAKING DEPOSITIONS OF PLAINTIFFS A.L., I.H., and L.C.**

by transmitting a true copy thereof in PDF format by electronic mail to the following:

| | |
|---|---|
| Dale K. Galipo, Esq.<br>Hang D. Le, Esq.<br>LAW OFFICES OF DALE K. GALIPO<br>21800 Burbank Blvd., Ste. 310<br>Woodland Hills, CA 91367<br>Tel: (818) 347-3333<br>Fax: (818) 347-4118<br>Email: dalekgalipo@yahoo.com<br>        hlee@galipolaw.com<br>*Attorneys for Plaintiffs* | Shannon L. Gustafson, Esq.<br>Amy R. Margolies, Esq.<br>LYNBERG & WATKINS<br>1100 Town & Country Road, Ste. 1450<br>Orange, CA 92868<br>Tel: (714) 937-1010<br>Fax: (714) 937-1003<br>Email: sgustafson@lynberg.com<br>        amargolies@lynberg.com<br>*Attorneys for Defendant County of San Bernardino, Adams, and Vaccari* |

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that this declaration was executed on December 4, 2024, at Sacramento, California.

Diana Esquivel
Declarant

*Diana Esquivel*
Signature

# Exhibit I

1 | **LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
2 | dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
3 | hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
4 | Woodland Hills, California, 91367
Telephone: (818) 347-3333
5 | Facsimile: (818) 347-4118

6 | Attorneys for Plaintiffs
L.C., I.H., A.L., and
7 | ANTONIA SALAS UBALDO

8 |

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 |

12 | L.C., a minor by and through her
guardian *ad litem* Maria Cadena,
13 | individually and as successor-in-interest
to Hector Puga; I.H., a minor by and
14 | through his guardian *ad litem* Jasmine
Hernandez, individually and as
15 | successor-in-interest to Hector Puga;
A.L., a minor by and through her
16 | guardian *ad litem* Lydia Lopez,
individually and as successor-in-interest
17 | to Hector Puga; and ANTONIA
SALAS UBALDO, individually;
18 |

19 |                               Plaintiffs,

20 |                     vs.

21 |
STATE OF CALIFORNIA; COUNTY
22 | OF SAN BERNARDINO; S.S.C., a
nominal defendant; ISAIAH KEE;
23 | MICHAEL BLACKWOOD;
BERNARDO RUBALCAVA;
24 | ROBERT VACCARI; JAKE ADAMS;
and DOES 6-10, inclusive,
25 |
26 |                               Defendants.
27 |
28 |

Case No. 5:22-cv-00949-KK-SHK

[Consolidated for purposes of discovery with *Botten, et al. v. State of California, et al.*, Case No. 5:23-cv-00257-KK-SHK]

*Honorable Kenly Kiya Kato*
*Mag. Judge Shashi H. Kewalramani*

**PLAINTIFFS' OBJECTIONS TO DEFENDANT STATE OF CALIFORNIA'S NOTICE OF TAKING DEPOSITION OF PLAINTIFFS A.L., I.H., AND L.C.**

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

2          Plaintiffs L.C., by and through her guardian *ad litem* Maria Cadena, I.H., by

3    and through his guardian *ad litem* Jasmine Hernandez, A.L., by and through her

4    guardian *ad litem* Lidia Lopez, and Antonia Salas Ubaldo hereby object to Defendant

5    State of California's Notice of Taking Depositions of Plaintiffs A.L., I.H., and L.C. as

6    follows:

7          1.     The depositions of A.L., I.H., and L.C. would result in more than ten

8    depositions being taken under Rule 30(a)(2)(A) by Defendants and Defendants have

9    not obtained leave of court to exceed the ten-deposition limit.

10         2.     The depositions of A.L., I.H., and L.C. are unreasonably cumulative and

11   duplicative of their guardian's deposition testimony and information regarding A.L.,

12   I.H. and L.C.'s damages are available from other more reasonable, convenient,

13   competent, and reliable sources.

14         3.     Due to their age, A.L., I.H., and L.C. are not competent to sit for

15   depositions and their testimonies would not be reliable.

16         4.     The depositions will cause A.L., I.H., and L.C. "annoyance,

17   embarrassment, oppression, or undue burden." *See* Fed. R. Civ. P. 26(c).

18         5.     The depositions were unilaterally set without confirmation from

19   Plaintiffs and Plaintiffs' counsel.

20         Accordingly, Plaintiffs will not produce deponents on the date and time

21   noticed. Subject to a court order granting Defendants leave to exceed the ten-

22   deposition limit under Rule 30(a)(2)(A) and compelling Plaintiffs to produce the

23   minor plaintiffs with reasonable parameters, including time limits, Plaintiffs' counsel

24   will meet and confer on a mutually agreeable date and time for the depositions.

25   //

26   //

27   //

28   //

1    DATED:  December 6, 2024        LAW OFFICES OF DALE K. GALIPO

2

3

4                                     By_____/s/ Hang D. Le_____
                                          Dale K. Galipo
5                                         Hang D, Le
                                          Attorneys for Plaintiffs
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit J

| | |
|---|---|
| From: | Hang Le |
| To: | Amy R. Margolies; Diana Esquivel |
| Subject: | RE: Botten state discovery |
| Date: | Monday, October 30, 2023 3:37:20 PM |
| Attachments: | image001.png |

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Good afternoon Ms. Margolies,

I'm not quite sure on exactly what it means for the discovery to be applicable and binding. Are you proposing that all of defendants' objections and any related discovery disputes in the Botten state case also carry over onto the federal case? While we're fine with stipulating to using all discovery materials already propounded by defendants and produced by plaintiffs in the state case, we would not be agreeable to defendants' objections to plaintiffs' propounded discovery and discovery disputes or time limit on challenging those objections be binding in the federal case, especially given that those objections arose primarily out of the different discovery standards between state and federal court and the lack of an agreed-upon protective order which are no longer applicable now that both Puga and Botten are in federal court.

Best,
Hang

**Hang D. Le, Esq.** | Law Offices of Dale K. Galipo | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118 | Email: hlee@galipolaw.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Amy R. Margolies <amargolies@lynberg.com>
**Sent:** Sunday, October 29, 2023 10:22 PM
**To:** Diana Esquivel <Diana.Esquivel@doj.ca.gov>; Hang Le <hlee@galipolaw.com>
**Subject:** RE: Botten state discovery

Ms. Le,

Is Plaintiff agreeable to the Botten state discovery being applicable to and binding in the Botten federal action?

Thank you,

AMY R. MARGOLIES
Off: <u>714-937-1010</u>      Fax: <u>714-937-1003</u>

LYNBERG & WATKINS

1100 W. Town & Country Rd., Suite 1450
Orange, California 92868
<u>www.lynberg.com</u>      <u>www.linkedin.com</u>

The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities. If you are not the intended recipient, you must not use or disseminate the information. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. If you have received this email in error, please immediately notify me by 'Reply' command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Lynberg & Watkins for any loss or damage arising in any way from its use.

---

**From:** Diana Esquivel <<u>Diana.Esquivel@doj.ca.gov</u>>
**Sent:** Tuesday, October 10, 2023 4:00 AM
**To:** Amy R. Margolies <<u>amargolies@lynberg.com</u>>; Hang Le <<u>hlee@galipolaw.com</u>>
**Subject:** RE: Botten state discovery

> CAUTION: This email originated from outside of Lynberg & Watkins. Do not click any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

I'm agreeable to the state discovery being applicable to and binding in the federal action.

Thanks,

-Diana

Diana Esquivel
Deputy Attorney General
TORT & CONDEMNATION SECTION
Office of the Attorney General
Tel: (916) 210-7320
Fax: (916) 322-8288
Email: <u>Diana.Esquivel@doj.ca.gov</u>

---

**From:** Amy R. Margolies <<u>amargolies@lynberg.com</u>>
**Sent:** Monday, October 9, 2023 1:15 PM
**To:** Hang Le <<u>hlee@galipolaw.com</u>>; Diana Esquivel <<u>Diana.Esquivel@doj.ca.gov</u>>
**Subject:** Botten state discovery

> EXTERNAL EMAIL: This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Counsels,

While Plaintiff has agreed to dismiss the Botten state court case pending discovery in the related federal matters, because discovery has already been initiated and exchanged in the Botten state matter, County Defendants would propose a stipulation to use the Botten state discovery in Botten

federal, so that we do not need to duplicate work.

Please advise and we can prepare a stipulation accordingly.

Thank you,

AMY R. MARGOLIES
Off: 714-937-1010     Fax: 714-937-1003

LYNBERG & WATKINS
1100 W. Town & Country Rd., Suite 1450
Orange, California 92868
www.lynberg.com     www.linkedin.com

The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities. If you are not the intended recipient, you must not use or disseminate the information. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. If you have received this email in error, please immediately notify me by 'Reply' command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Lynberg & Watkins for any loss or damage arising in any way from its use.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

# Exhibit K

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiffs
JONATHAN WAYNE BOTTEN, SR.,
TANJA DUDEK-BOTTEN, ANNABELLE BOTTEN,
AND J.B.

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN WAYNE BOTTEN, SR.; TANJA DUDEK-BOTTEN; ANNABELLE BOTTEN; and J.B., a minor, by and through his guardian JONATHAN WAYNE BOTTEN, SR., | Case No. 5:23-cv-00257-JGB-SHK |
| | *Honorable Jesus G. Bernal* |
| Plaintiffs, | **PLAINTIFFS' RULE 26(f) INITIAL DISCLOSURES** |
| vs. | |
| STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 1-10, inclusive, | |
| Defendants. | |

1    Pursuant to Federal Rule of Civil Procedure 26, Plaintiffs JONATHAN
2   WAYNE BOTTEN, SR.; TANJA DUDEK-BOTTEN; ANNABELLE BOTTEN;
3   and J.B., a minor, by and through his guardian JONATHAN WAYNE BOTTEN,
4   SR., hereby makes the following initial disclosures of witnesses, documents, and
5   damages known at this time.

6   **I.    WITNESSES**

7    Based on the information currently known to Plaintiffs, the following persons
8   have knowledge of facts that Plaintiffs may use to support their material allegations.
9   The subjects of information specified are those of which Plaintiffs are currently
10  aware of or Plaintiffs reasonably believe are within the knowledge of the identified
11  individuals.

| Name | Contact Information | Subject Matter(s) |
|---|---|---|
| 1.  Jonathan Wayne Botten | c/o Plaintiffs' counsel | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit; damages. |
| 2.  Tanja Dudek-Botten | c/o Plaintiffs' counsel | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit; damages. |
| 3.  Annabelle Botten | c/o Plaintiffs' counsel | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit; damages. |

| 4. J.B. through his guardian Jonathan Wayne Botten | c/o Plaintiffs' counsel | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit; damages. |
|---|---|---|
| 5. Isaiah Kee | c/o Defense counsel for State | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 6. Michael Blackwood | c/o Defense counsel for State | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 7. Bernardo Rubalcava | c/o Defense counsel for State | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 8. Robert Vaccari | c/o Defense counsel for County | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 9. Jake Adams | c/o Defense counsel for County | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 10. Joseph Edward Fargusson, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her |

| | | injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
|---|---|---|
| 11.Jon Boyd Roper, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 12.Heather Marie Tassone, D.O. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 13.Shannon Kiang, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 14.Bailey Ann Wentworth, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 15.Nicole Depolo, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 16.Daniel Paul Srikureja, M.D. | Loma Linda University Health, 11234 Anderson | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff |

| | | |
|---|---|---|
| | St., Loma Linda, CA 92345; (909) 558-4000. | J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 17. Andrew James Davis, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 18. Amanda MacQuoid, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 19. Gregory James Jutzy, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 20. Katherine Sigrid Burruss, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 21. Unidentified EMT/Paramedics who responded to the scene | Information unknown at this time | Plaintiffs Botten, Sr, Dudek-Botten, and J.B.'s injuries and medical treatment at the scene and en route to the hospital, medical expenses, and any information given to them regarding the circumstances of the detention and use of force. |
| 22. Unidentified law enforcement officers who responded to the scene | Information unknown at this time | The facts and circumstances relating to the officer-involved shooting, which occurred on February 17, |

| | | |
|---|---|---|
| | | 2021 and is the subject of this lawsuit. |
| 23. Other persons whose identities appear in the reports disclosed (see below) are incorporated by reference as though specifically identified | | |

Plaintiffs' investigation of this matter is not yet complete and Plaintiffs have not concluded discovery in this matter. Plaintiffs reserve the right to identify additional individuals with such knowledge as such persons become known to Plaintiffs, or the information they possess becomes relevant to the claims or defenses or any party, pursuant to Rule 26(e).

## II.    <u>DOCUMENTS</u>

Plaintiffs identify the following documents or categories of documents that they may use to support their material claims and defenses:

1. Medical records and billing for Jonathan Wayne Botten, Sr.;
2. Medical records and billing for Tanja Dudek-Botten;
3. Medical records and billing for J.B.;
4. San Bernardino County Sheriff's Department Lethal Force Encounter Investigation;
5. California Highway Patrol Critical Incident Report;
6. Witness videos of the incident;
7. Photographs of the incident scene;
8. Photographs of Plaintiffs Jonathan Wayne Botten, Sr., Tanja Dudek-Botten, and J.B.'s injuries.

Plaintiffs' investigation of this matter is not yet complete and Plaintiffs have not

concluded their discovery in this matter. Plaintiffs reserve the right to identify additional categories of documents as they become known to Plaintiffs or they become relevant to the claims or defenses of any party, pursuant to Rule 26(e). Plaintiffs further incorporate by reference all documents listed in Defendants' Initial Disclosures.

### III.   <u>DAMAGES</u>

Plaintiffs seek general and special compensatory damages, including but not limited to:

1. Compensatory damages;
2. Medical expenses;
3. Loss of earning capacity;
4. Lost wages;
5. Emotional distress damages;
6. Attorneys' fees;
7. Punitive damages against individual defendants;
8. Costs;
9. Treble damages under the Bane Act.

Plaintiffs' investigation of this matter is not yet complete and Plaintiffs have not concluded discovery in this matter. Plaintiffs reserve the right to supplement or amend their prayer for relief and nature and scope of damages, pursuant to Rule 26(c). Plaintiffs further reserve the right to supplement and/or amend their Rule 26 Disclosures as additional information becomes available, through discovery or otherwise.

//
//
//
//
//

1    DATED:  January 19, 2024          LAW OFFICES OF DALE K. GALIPO

2

3                                      By
4                                         Dale K. Galipo
                                          Hang D. Le
5                                         Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, am employed in the County of Los Angeles, State of California and am over the age of eighteen years and not a party to the within action.  My business address is 21800 Burbank Boulevard, Suite 310, Woodland Hills, California 91367.

On  January 19, 2024, I served the foregoing document described as: **PLAINTIFFS' RULE 26(f) INITIAL DISCLOSURES** on all interested parties, through their respective attorneys of record in this action by placing a true copy thereof enclosed in a sealed envelope addressed as indicated on the attached service list.

<u>METHOD OF SERVICE</u>

☐    (**BY MAIL**)  I caused such envelope(s) fully prepaid to be placed in the United States mail at Woodland Hills, California.  I am "readily familiar" with the firm's practice of collection and processing correspondence or mailing.  Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Woodland Hills, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒     (**BY ELECTRONIC SERVICE**)  Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed above.

<u>JURISDICTION</u>

☐    (State)  I declare under penalty of perjury that the above is true and correct.

☒    (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 19, 2024, at Woodland Hills, California.

Karen Slyapich

<u>SERVICE LIST</u>

Shannon L. Gustafson
Amy R. Margolies
LYNBERG & WATKINS
1100 W. Town & Country Road, Suite #1450
Orange, California 92868
Email: Sgustafson@lynberg.com
Amargolies@lynberg.com

Attorneys for Defendants


Diana Esquivel
Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
E-mail: Diana.Esquivel@doj.ca.gov

Attorneys for Defendants State of California, by and through the California Highway Patrol

# Exhibit L

1
**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
2
dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
3
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
4
Woodland Hills, California, 91367
Telephone: (818) 347-3333
5
Facsimile: (818) 347-4118

6
Attorneys for Plaintiffs
JONATHAN WAYNE BOTTEN, SR.,
7
TANJA DUDEK-BOTTEN, ANNABELLE BOTTEN,
AND J.B.
8

9
**UNITED STATES DISTRICT COURT FOR THE**
10
**CENTRAL DISTRICT OF CALIFORNIA**

11
JONATHAN WAYNE BOTTEN, SR.;          Case No. 5:23-cv-00257-JGB-SHK
12
TANJA DUDEK-BOTTEN;
ANNABELLE BOTTEN; and J.B., a        *Honorable Jesus G. Bernal*
13
minor, by and through his guardian
JONATHAN WAYNE BOTTEN, SR.,          **PLAINTIFFS' SUPPLEMENTAL**
14                                       **RULE 26(f) DISCLOSURES**

15                  Plaintiffs,

16          vs.

17
STATE OF CALIFORNIA; COUNTY
18
OF SAN BERNARDINO; ISAIAH
KEE; MICHAEL BLACKWOOD;
19
BERNARDO RUBALCAVA; ROBERT
VACCARI; JAKE ADAMS; and DOES
20
1-10, inclusive,
21

22                  Defendants.

23

24

25

26

27

28

1    Pursuant to Federal Rule of Civil Procedure 26, Plaintiffs JONATHAN
2  WAYNE BOTTEN, SR.; TANJA DUDEK-BOTTEN; ANNABELLE BOTTEN;
3  and J.B., a minor, by and through his guardian JONATHAN WAYNE BOTTEN,
4  SR., hereby makes the following initial disclosures of witnesses, documents, and
5  damages known at this time.

6  **I.    WITNESSES**

7    Based on the information currently known to Plaintiffs, the following persons
8  have knowledge of facts that Plaintiffs may use to support their material allegations.
9  The subjects of information specified are those of which Plaintiffs are currently
10  aware of or Plaintiffs reasonably believe are within the knowledge of the identified
11  individuals.

| Name | Contact Information | Subject Matter(s) |
|---|---|---|
| 1. Jonathan Wayne Botten | c/o Plaintiffs' counsel | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit; damages. |
| 2. Tanja Dudek-Botten | c/o Plaintiffs' counsel | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit; damages. |
| 3. Annabelle Botten | c/o Plaintiffs' counsel | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit; damages. |

| 4. J.B. through his guardian Jonathan Wayne Botten | c/o Plaintiffs' counsel | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit; damages. |
|---|---|---|
| 5. Isaiah Kee | c/o Defense counsel for State | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 6. Michael Blackwood | c/o Defense counsel for State | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 7. Bernardo Rubalcava | c/o Defense counsel for State | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 8. Robert Vaccari | c/o Defense counsel for County | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 9. Jake Adams | c/o Defense counsel for County | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 10. Joseph Edward Fargusson, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her |

| | | |
|---|---|---|
| | | injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 11. Jon Boyd Roper, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 12. Heather Marie Tassone, D.O. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 13. Shannon Kiang, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 14. Bailey Ann Wentworth, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 15. Nicole Depolo, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 16. Daniel Paul Srikureja, M.D. | Loma Linda University Health, 11234 Anderson | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff |

| | | |
|---|---|---|
| | St., Loma Linda, CA 92345; (909) 558-4000. | J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 17. Andrew James Davis, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 18. Amanda MacQuoid, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 19. Gregory James Jutzy, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 20. Katherine Sigrid Burruss, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 21. Unidentified EMT/Paramedics who responded to the scene | Information unknown at this time | Plaintiffs Botten, Sr, Dudek-Botten, and J.B.'s injuries and medical treatment at the scene and en route to the hospital, medical expenses, and any information given to them regarding the circumstances of the detention and use of force. |
| 22. Unidentified law enforcement officers who responded to the scene | Information unknown at this time | The facts and circumstances relating to the officer-involved shooting, which occurred on February 17, |

| | | |
|---|---|---|
| | | 2021 and is the subject of this lawsuit. |
| 23. Other persons whose identities appear in the reports disclosed (see below) are incorporated by reference as though specifically identified | | |

Plaintiffs' investigation of this matter is not yet complete and Plaintiffs have not concluded discovery in this matter. Plaintiffs reserve the right to identify additional individuals with such knowledge as such persons become known to Plaintiffs, or the information they possess becomes relevant to the claims or defenses or any party, pursuant to Rule 26(e).

## II.  <u>DOCUMENTS</u>

Plaintiffs identify the following documents or categories of documents that they may use to support their material claims and defenses:

1. Medical records and billing for Jonathan Wayne Botten, Sr.;
2. Medical records and billing for Tanja Dudek-Botten;
3. Medical records and billing for J.B.;
4. San Bernardino County Sheriff's Department Lethal Force Encounter Investigation;
5. California Highway Patrol Critical Incident Report;
6. Witness videos of the incident;
7. Photographs of the incident scene;
8. Photographs of Plaintiffs Jonathan Wayne Botten, Sr., Tanja Dudek-Botten, and J.B.'s injuries.

Plaintiffs' investigation of this matter is not yet complete and Plaintiffs have not

1  concluded their discovery in this matter. Plaintiffs reserve the right to identify
2  additional categories of documents as they become known to Plaintiffs or they
3  become relevant to the claims or defenses of any party, pursuant to Rule 26(e).
4  Plaintiffs further incorporate by reference all documents listed in Defendants' Initial
5  Disclosures.

6  **III.  DAMAGES**

7       Plaintiffs seek general and special compensatory damages, including but not
8  limited to:

9    1.  Compensatory damages:

10         a.  Jonathan Wayne Botten, Sr. – In excess of $15,000 in past and future
11            medical expenses. Based on the current information Plaintiff has,
12            Plaintiff currently has medical expenses totaling approximately $1,500.
13            This is calculated based on the liens issued on behalf of Desert Valley
14            Medical Group. Plaintiff anticipates that he has additional outstanding
15            bills. Plaintiff estimates that he will incur approximately $5,000-
16            $10,000 in additional medical expenses. This is calculated based on his
17            current problems with his right arm and estimate of the physical
18            therapy needed to help rehabilitate his arm. Plaintiff Botten Sr. further
19            estimates that he incurred approximately $700 in gas and lodging
20            expenses during the week he had to spend with his son, J.B., while J.B.
21            was in a hospital in Loma Linda.

22         b.  Tanja Dudek-Botten – In excess of $1.1 million in past and future
23            medical expenses. Based on the current information available to
24            Plaintiff, Plaintiff seeks approximately $100,000 in damages for
25            medical expenses. This amount was calculated based on the medical
26            bills currently available to Plaintiff. Plaintiff seeks in excess of $1
27            million in future medical expenses. Plaintiff currently cannot see well
28            out of her left eye and has a hard time hearing out of her left ear.

1    Additionally, there is still a big piece of metal in her rotary cuff.

2    Plaintiff anticipates that further treatment and/or accommodations for

3    her ongoing injuries will exceed $1 million.

4       c.  J.B. – In excess of $500,000 in past and future medical expenses.

5    Plaintiff is currently seeking approximately $500,000 in damages for

6    medical expenses. This amount was calculated by totaling up all the

7    medical bills Plaintiff has incurred as a result of the Incident.

8      2.  Medical expenses:

9       a.  Jonathan Wayne Botten, Sr. – Approximately $15,000. Based on the

10    current information Plaintiff has, Plaintiff currently has medical

11    expenses totaling approximately $1,500. This is calculated based on the

12    liens issued on behalf of Desert Valley Medical Group. Plaintiff

13    anticipates that he has additional outstanding bills that approximately

14    total $3,500. Plaintiff estimates that he will incur approximately

15    $5,000-$10,000 in additional medical expenses. This is calculated

16    based on his current problems with his right arm and estimate of the

17    physical therapy needed to help rehabilitate his arm.

18       b.  Tanja Dudek-Botten – In excess of $1.1 million in past and future

19    medical expenses. Based on the current information available to

20    Plaintiff, Plaintiff seeks approximately $100,000 in damages for

21    medical expenses. This amount was calculated based on the medical

22    bills currently available to Plaintiff. Plaintiff seeks in excess of $1

23    million in future medical expenses. Plaintiff currently cannot see well

24    out of her left eye and has a hard time hearing out of her left ear.

25    Additionally, there is still a big piece of metal in her rotary cuff.

26    Plaintiff anticipates that further treatment and/or accommodations for

27    her ongoing injuries will exceed $1 million.

28       c.  J.B. – In excess of $500,000 in past and future medical expenses.

1         Plaintiff is currently seeking approximately $500,000 in damages for

2         medical expenses. This amount was calculated by totaling up all the

3         medical bills Plaintiff has incurred as a result of the Incident.

4   3. Lost wages – Plaintiff Jonathan Wayne Botten Sr. seeks approximately

5      $4,300 in lost wages as a result of missing work for one month after the

6      incident. This is calculated based on his biweekly salary of approximately

7      $2,100-$2,200.

8   4. Emotional distress damages;

9   5. Attorneys' fees;

10   6. Punitive damages against individual defendants;

11   7. Costs;

12   8. Treble damages under the Bane Act.

13 Plaintiffs' investigation of this matter is not yet complete and Plaintiffs have not

14 concluded discovery in this matter. Plaintiffs reserve the right to supplement or

15 amend their prayer for relief and nature and scope of damages, pursuant to Rule

16 26(c). Plaintiffs further reserve the right to supplement and/or amend their Rule 26

17 Disclosures as additional information becomes available, through discovery or

18 otherwise.

19

20 DATED:  January 19, 2024       LAW OFFICES OF DALE K. GALIPO

21

22                   By _____

23                      Dale K. Galipo

24                      Hang D. Le

25                      Attorneys for Plaintiffs

26

27

28

1

<u>PROOF OF SERVICE</u>

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

I, am employed in the County of Los Angeles, State of California and am over the age of eighteen years and not a party to the within action.  My business address is 21800 Burbank Boulevard, Suite 310, Woodland Hills, California 91367.

4

5

On  January 29, 2024, I served the foregoing document described as: **PLAINTIFFS' SUPPLEMENTAL RULE 26(f) INITIAL DISCLOSURES** on all interested parties, through their respective attorneys of record in this action by placing a true copy thereof enclosed in a sealed envelope addressed as indicated on the attached service list.

6

7

8

<u>METHOD OF SERVICE</u>

9

☐ (**BY MAIL**)  I caused such envelope(s) fully prepaid to be placed in the United States mail at Woodland Hills, California.  I am "readily familiar" with the firm's practice of collection and processing correspondence or mailing.  Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Woodland Hills, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

10

11

12

13

☒  (**BY ELECTRONIC SERVICE**)  Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed above.

14

15

<u>JURISDICTION</u>

16

☐ (State)  I declare under penalty of perjury that the above is true and correct.

17

☒ (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

18

19

Executed on January 29, 2024, at Woodland Hills, California.

20

21

22

Karen Slyapich

23

24

25

26

27

28

1

## SERVICE LIST

2

3  Shannon L. Gustafson
Amy R. Margolies
4  LYNBERG & WATKINS
1100 W. Town & Country Road, Suite #1450
5  Orange, California 92868
Email:  Sgustafson@lynberg.com
6  Amargolies@lynberg.com

Attorneys for Defendants
7

8

9  Diana Esquivel
Deputy Attorney General
10  1300 I Street, Suite 125
P.O. Box 944255
11  Sacramento, CA 94244-2550
E-mail: Diana.Esquivel@doj.ca.gov
12
Attorneys for Defendants State of California, by and through
13  the California Highway Patrol

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit M

1 | **LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
2 | dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
3 | hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
4 | Woodland Hills, California, 91367
Telephone: (818) 347-3333
5 | Facsimile: (818) 347-4118

6 | Attorneys for Plaintiffs
JONATHAN WAYNE BOTTEN, SR.,
7 | TANJA DUDEK-BOTTEN, ANNABELLE BOTTEN,
AND J.B.

8 |

9 |

10 | **UNITED STATES DISTRICT COURT FOR THE**
**CENTRAL DISTRICT OF CALIFORNIA**

11 |

12 | JONATHAN WAYNE BOTTEN, SR.; | Case No. 5:23-cv-00257-KK-SHK
13 | TANJA DUDEK-BOTTEN;
ANNABELLE BOTTEN; and J.B., a | *Honorable Kenly Kiya Kato*
14 | minor, by and through his guardian
JONATHAN WAYNE BOTTEN, SR., | **PLAINTIFFS' SECOND**
15 | | **SUPPLEMENTAL RULE 26(f)**
| **DISCLOSURES**
16 | Plaintiffs,

17 | vs.

18 | STATE OF CALIFORNIA; COUNTY
19 | OF SAN BERNARDINO; ISAIAH
KEE; MICHAEL BLACKWOOD;
20 | BERNARDO RUBALCAVA; ROBERT
VACCARI; JAKE ADAMS; and DOES
21 | 1-10, inclusive,

22 |

23 | Defendants.

24 |

25 |

26 |

27 |

28 |

1      Pursuant to Federal Rule of Civil Procedure 26, Plaintiffs JONATHAN

2  WAYNE BOTTEN, SR.; TANJA DUDEK-BOTTEN; ANNABELLE BOTTEN;

3  and J.B., a minor, by and through his guardian JONATHAN WAYNE BOTTEN,

4  SR., hereby makes the following supplemental disclosures of witnesses, documents,

5  and damages known at this time.

6  **I.    WITNESSES**

7      Based on the information currently known to Plaintiffs, the following persons

8  have knowledge of facts that Plaintiffs may use to support their material allegations.

9  The subjects of information specified are those of which Plaintiffs are currently

10  aware of or Plaintiffs reasonably believe are within the knowledge of the identified

11  individuals.

| Name | Contact Information | Subject Matter(s) |
|------|--------------------|--------------------|
| 1. Jonathan Wayne Botten | c/o Plaintiffs' counsel | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit; damages. |
| 2. Tanja Dudek-Botten | c/o Plaintiffs' counsel | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit; damages. |
| 3. Annabelle Botten | c/o Plaintiffs' counsel | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit; damages. |

| 4. J.B. through his guardian Jonathan Wayne Botten | c/o Plaintiffs' counsel | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit; damages. |
|---|---|---|
| 5. Isaiah Kee | c/o Defense counsel for State | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 6. Michael Blackwood | c/o Defense counsel for State | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 7. Bernardo Rubalcava | c/o Defense counsel for State | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 8. Robert Vaccari | c/o Defense counsel for County | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 9. Jake Adams | c/o Defense counsel for County | The facts and circumstances relating to the officer-involved shooting of Decedent, which occurred on February 17, 2021 and is the subject of this lawsuit. |
| 10. Joseph Edward Fargusson, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her |

| | | injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
|---|---|---|
| 11. Jon Boyd Roper, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 12. Heather Marie Tassone, D.O. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 13. Shannon Kiang, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 14. Bailey Ann Wentworth, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 15. Nicole Depolo, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff Dudek-Botten's injuries, medical treatment and care that was provided to Plaintiff Dudek-Botten for her injuries, any prognosis regarding Plaintiff Dudek-Botten's injuries; damages. |
| 16. Daniel Paul Srikureja, M.D. | Loma Linda University Health, 11234 Anderson | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff |

| | | |
|---|---|---|
| | St., Loma Linda, CA 92345; (909) 558-4000. | J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 17. Andrew James Davis, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 18. Amanda MacQuoid, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 19. Gregory James Jutzy, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 20. Katherine Sigrid Burruss, M.D. | Loma Linda University Health, 11234 Anderson St., Loma Linda, CA 92345; (909) 558-4000. | Plaintiff J.B.'s injuries, medical treatment and care that was provided to Plaintiff J.B. for his injuries, any prognosis regarding Plaintiff J.B.'s injuries; damages. |
| 21. Unidentified EMT/Paramedics who responded to the scene | Information unknown at this time | Plaintiffs Botten, Sr, Dudek-Botten, and J.B.'s injuries and medical treatment at the scene and en route to the hospital, medical expenses, and any information given to them regarding the circumstances of the detention and use of force. |
| 22. Unidentified law enforcement officers who responded to the scene | Information unknown at this time | The facts and circumstances relating to the officer-involved shooting, which occurred on February 17, |

| | | |
|---|---|---|
| | | 2021 and is the subject of this lawsuit. |
| 23. Other persons whose identities appear in the reports disclosed (see below) are incorporated by reference as though specifically identified | | |

Plaintiffs' investigation of this matter is not yet complete and Plaintiffs have not concluded discovery in this matter. Plaintiffs reserve the right to identify additional individuals with such knowledge as such persons become known to Plaintiffs, or the information they possess becomes relevant to the claims or defenses or any party, pursuant to Rule 26(e).

## II. **DOCUMENTS**

Plaintiffs identify the following documents or categories of documents that they may use to support their material claims and defenses:

1. Medical records and billing for Jonathan Wayne Botten, Sr.;
2. Medical records and billing for Tanja Dudek-Botten;
3. Medical records and billing for J.B.;
4. San Bernardino County Sheriff's Department Lethal Force Encounter Investigation;
5. California Highway Patrol Critical Incident Report;
6. Witness videos of the incident;
7. Photographs of the incident scene;
8. Photographs of Plaintiffs Jonathan Wayne Botten, Sr., Tanja Dudek-Botten, and J.B.'s injuries.
9. **Counseling Attendance/Treatment Summary for Annabelle Botten**;

1    10. **Additional medical billing for Jonathan Wayne Botten, Sr.**;

2    11. **Additional photographs of J.B.'s injuries**;

3    12. **Photograph of metal fragments extracted from Tanja Dudek-Botten's**

4        **wounds**;

5    13. **Additional witness video of the incident**.

6    Plaintiffs' investigation of this matter is not yet complete and Plaintiffs have not

7    concluded their discovery in this matter. Plaintiffs reserve the right to identify

8    additional categories of documents as they become known to Plaintiffs or they

9    become relevant to the claims or defenses of any party, pursuant to Rule 26(e).

10   Plaintiffs further incorporate by reference all documents listed in Defendants' Initial

11   Disclosures.

12   **III.  DAMAGES**

13       Plaintiffs seek general and special compensatory damages, including but not

14   limited to:

15   1.  Compensatory damages:

16       a.  Jonathan Wayne Botten, Sr. – In excess of $15,000 in past and future

17           medical expenses. Based on the current information Plaintiff has,

18           Plaintiff currently has medical expenses totaling approximately $1,500.

19           This is calculated based on the liens issued on behalf of Desert Valley

20           Medical Group. Plaintiff anticipates that he has additional outstanding

21           bills. Plaintiff estimates that he will incur approximately $5,000-

22           $10,000 in additional medical expenses. This is calculated based on his

23           current problems with his right arm and estimate of the physical

24           therapy needed to help rehabilitate his arm. Plaintiff Botten Sr. further

25           estimates that he incurred approximately $700 in gas and lodging

26           expenses during the week he had to spend with his son, J.B., while J.B.

27           was in a hospital in Loma Linda.

28       b.  Tanja Dudek-Botten – In excess of $1.1 million in past and future

medical expenses. Based on the current information available to Plaintiff, Plaintiff seeks approximately $100,000 in damages for medical expenses. This amount was calculated based on the medical bills currently available to Plaintiff. Plaintiff seeks in excess of $1 million in future medical expenses. Plaintiff currently cannot see well out of her left eye and has a hard time hearing out of her left ear. Additionally, there is still a big piece of metal in her rotary cuff. Plaintiff anticipates that further treatment and/or accommodations for her ongoing injuries will exceed $1 million.

    c. J.B. – In excess of $500,000 in past and future medical expenses. Plaintiff is currently seeking approximately $500,000 in damages for medical expenses. This amount was calculated by totaling up all the medical bills Plaintiff has incurred as a result of the Incident.

2. Medical expenses:

    a. Jonathan Wayne Botten, Sr. – Approximately $15,000. Based on the current information Plaintiff has, Plaintiff currently has medical expenses totaling approximately $1,500. This is calculated based on the liens issued on behalf of Desert Valley Medical Group. Plaintiff anticipates that he has additional outstanding bills that approximately total $3,500. Plaintiff estimates that he will incur approximately $5,000-$10,000 in additional medical expenses. This is calculated based on his current problems with his right arm and estimate of the physical therapy needed to help rehabilitate his arm.

    b. Tanja Dudek-Botten – In excess of $1.1 million in past and future medical expenses. Based on the current information available to Plaintiff, Plaintiff seeks approximately $100,000 in damages for medical expenses. This amount was calculated based on the medical bills currently available to Plaintiff. Plaintiff seeks in excess of $1

million in future medical expenses. Plaintiff currently cannot see well out of her left eye and has a hard time hearing out of her left ear. Additionally, there is still a big piece of metal in her rotary cuff. Plaintiff anticipates that further treatment and/or accommodations for her ongoing injuries will exceed $1 million.

   c. J.B. – In excess of $500,000 in past and future medical expenses. Plaintiff is currently seeking approximately $500,000 in damages for medical expenses. This amount was calculated by totaling up all the medical bills Plaintiff has incurred as a result of the Incident.

3. Lost wages – Plaintiff Jonathan Wayne Botten Sr. seeks approximately $4,300 in lost wages as a result of missing work for one month after the incident. This is calculated based on his biweekly salary of approximately $2,100-$2,200.

4. Emotional distress damages;

5. Attorneys' fees;

6. Punitive damages against individual defendants;

7. Costs;

8. Treble damages under the Bane Act.

Plaintiffs' investigation of this matter is not yet complete and Plaintiffs have not concluded discovery in this matter. Plaintiffs reserve the right to supplement or amend their prayer for relief and nature and scope of damages, pursuant to Rule 26(c). Plaintiffs further reserve the right to supplement and/or amend their Rule 26 Disclosures as additional information becomes available, through discovery or otherwise.

//
//
//
//

1   DATED:  December 23, 2024        LAW OFFICES OF DALE K. GALIPO

2

3                                    By _____

4                                        Dale K. Galipo
                                         Hang D. Le
5                                        Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5:23-cv-00257-KK-SHK

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, am employed in the County of Los Angeles, State of California and am over the age of eighteen years and not a party to the within action.  My business address is 21800 Burbank Boulevard, Suite 310, Woodland Hills, California 91367.

On  December 23, 2024, I served the foregoing document described as: **PLAINTIFFS' SECOND SUPPLEMENTAL RULE 26(f) INITIAL DISCLOSURES** on all interested parties, through their respective attorneys of record in this action by placing a true copy thereof enclosed in a sealed envelope addressed as indicated on the attached service list.

METHOD OF SERVICE

☐    (**BY MAIL**)  I caused such envelope(s) fully prepaid to be placed in the United States mail at Woodland Hills, California.  I am "readily familiar" with the firm's practice of collection and processing correspondence or mailing.  Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Woodland Hills, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒    (**BY ELECTRONIC SERVICE**)  Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed above.

JURISDICTION

☐    (State)  I declare under penalty of perjury that the above is true and correct.

☒    (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 23, 2024, at Woodland Hills, California.

_____
Santiago G. Laurel

1

## <u>SERVICE LIST</u>

2

3  Shannon L. Gustafson
   Amy R. Margolies
4  LYNBERG & WATKINS
   1100 W. Town & Country Road, Suite #1450
5  Orange, California 92868
   Email:  Sgustafson@lynberg.com
6  Amargolies@lynberg.com

7  *Attorneys for Defendants*

8

9  Diana Esquivel
   Deputy Attorney General
10 1300 I Street, Suite 125
   P.O. Box 944255
11 Sacramento, CA 94244-2550
   E-mail: Diana.Esquivel@doj.ca.gov

12 *Attorneys for Defendants State of California, by and through*
   *the California Highway Patrol*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit N

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C. a minor by and through ) | |
| her guardian ad litem Maria ) | |
| Cadena, individually and as ) | |
| successor-in-interest to ) | |
| Hector Puga; I.H., a minor by) | |
| and through his guardian ad ) | |
| litem Jasmine Hernandez, ) | |
| individually and as ) | |
| successor-in-interest to ) | CASE NO. 5:22-cv-00949-KK |
| Hector Puga; A.L., a minor by) | (SHKx) |
| and through her guardian ad ) | |
| litem Lydia Lopez, ) | |
| individually and as ) | |
| successor-in-interest to ) | |
| Hector Puga; and ANTONIA ) | |
| SALAS UBALDO, individually, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | ORAL AND VIDEOTAPED |
| vs. ) | DEPOSITION OF |
| ) | ERIN MANGERINO |
| STATE OF CALIFORNIA; COUNTY ) | VIA WEB VIDEOCONFERENCE |
| OF SAN BERNARDINO; S.S.C., a ) | MONDAY, NOVEMBER 25, 2024 |
| nominal defendant; ISAIAH ) | |
| KEE; MICHAEL BLACKWOOD; ) | |
| BERNARDO RUBALCAVA; ROBERT ) | |
| VACCARI; JAKE ADAMS; and ) | |
| DOES 6-10, inclusive, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Oral and videotaped deposition taken remotely on behalf
of Defendants, commencing at 10:02 a.m. on Monday,
November 25, 2024 before Erika "Rik" Rutledge, Certified
Shorthand Reporter No. 13774 for the State of
California.

1

```
 1    house.
 2         Q    Other than law enforcement and your family and
 3    fiance, have you directly spoken about this incident to
 4    anyone else?
11:16:32  5    A    Yes.  We know some officers that, you know,
 6    were interested.  We had people at church that wanted to
 7    know what had happened, you know.  Just like the usual
 8    social networks that we had were curious about what had
 9    happened.
11:16:54 10    Q    No other official statements that you gave
11    though?
12         A    No.
13         Q    Aside from your family, did you speak with any
14    witnesses that were present for the incident?
11:17:10 15    A    No.  We -- nobody that witnessed it.
16         Q    Are you thinking about something else that
17    maybe I'm not asking the right question?
18         A    So he wasn't there at the time.  It was the
19    son, one of the older sons, from the house across Peach
11:17:31 20    had come to speak to us about what had happened, but he
21    wasn't there when it happened.  But it was his family,
22    so he wanted to know if we had seen or what had
23    happened.
24         Q    Okay.  Do you know who lives in the house
11:17:56 25    across from you on Peach, the family's last name?
```

45

1      A   I don't.  My brother knew that -- they were

2  about the same age.  He knew him, so that's why he came

3  over.  But I personally did not know them.  I never

4  really interacted with them.

11:18:20  5      Q   When did the older son who lives -- I don't

6  actually know who lives across the street.  But you're

7  describing, I think, the same house that we've described

8  earlier across from you on Peach that there's an older

9  son that came over to your house.  Was that the same day

11:18:41  10  of the incident or at another time?

11      A   Another time.

12      Q   From what you know from this older son, he was

13  not at the house on the night of the incident?

14      A   Yes.

11:19:06  15      Q   So did you talk to this older son or was it

16  your brother?

17      A   It was my brother.  But he wanted to know if we

18  had any footage of what had happened.  So I did talk to

19  him briefly that I did have footage.

11:19:26  20      Q   Did you give the older brother the footage that

21  you had?

22      A   Yes.

23      Q   Is it the same footage that you gave to law

24  enforcement?

11:19:36  25      A   Yes.

```
 1   STATE OF CALIFORNIA      )
                              )     ss.
 2   COUNTY OF ORANGE         )

 3

 4

 5              I, Erika "Rik" Rutledge, Certified

 6   Shorthand Reporter, Certificate No. 13774, for the State

 7   of California, hereby certify:

 8              I am the deposition officer that

 9   stenographically recorded the testimony in the foregoing

10   deposition;

11              Prior to being examined, the deponent was

12   by me first duly sworn;

13              The foregoing transcript is a true and

14   accurate record of the testimony given.

15

16   Dated:  December 16, 2024

17

18                      _____

19

20                      Erika "Rik" Rutledge

21

22

23

24

25
```

# Exhibit O

| From: | Hang Le |
|---|---|
| To: | Shannon Gustafson |
| Cc: | Diana Esquivel; Amy R. Margolies; Anita K. Clarke |
| Subject: | RE: L.C., et al. (Puga) v. State of California |
| Date: | Wednesday, December 18, 2024 10:13:24 AM |

---

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Good morning Shannon,

At the time of the conference with the Magistrate, there was no issue pending because we had yet to meet and confer on this issue, and as we all saw, Judge Kewalramani does not like to be surprised with issues that the parties have not adequately discussed before bringing the issues before him. Additionally, we sent out the letters yesterday because according to our calculations, yesterday was the deadline to timely to object to the subpoenas. Thus, although we still intended on conferring with you on this issue, in an abundance of caution so as not to blow any deadlines and waive objections, we sent those letters out. Had this issue not been resolved after we met and conferred, we would have brought an ex parte motion to quash.

Additionally, while we still maintain that the records are neither relevant nor proportional to the needs of this case—particularly because the Mr. Puga's mother has testified that she was aware that he had been incarcerated (and she visited him at times during periods of his incarceration), just not the reasons for the incarcerations because that topic was not something they liked to discuss with each other, and she would be the only plaintiff who defendants could credibly argue that Mr. Puga's criminal history has any bearing to "society and comfort" since two of the children were very young when Mr. Puga passed away and the older child had very limited contact with him—we do recognize that this issue may be a close call in terms of wrongful death damages.

Accordingly, after speaking with Mr. Galipo about this issue, we are willing to withdraw our objections and send out letters notifying the agencies so, if you are willing to supply us with a copy of the records once you receive them.

Best,
Hang

Hang D. Le, Esq. | Law Offices of Dale K. Galipo | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118| Email: hlee@galipolaw.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Shannon Gustafson <sgustafson@lynberg.com>
**Sent:** Tuesday, December 17, 2024 5:35 PM
**To:** Hang Le <hlee@galipolaw.com>
**Cc:** Diana Esquivel <Diana.Esquivel@doj.ca.gov>; Amy R. Margolies <amargolies@lynberg.com>; Anita K. Clarke <aclarke@lynberg.com>
**Subject:** FW: L.C., et al. (Puga) v. State of California

Hang,

If you intended to send out letters blocking all of our subpoenas so that we are not able to obtain any documents before the discovery cut off, you should have advised the Magistrate this morning when he asked if there were any outstanding issues, instead of waiting until this afternoon so now we have to bring yet another issue to the Court when we know it will be out next week.  Further, when do you plan on brining your Motion to Quash, or do you simply plan to let the discovery cut off expire and then claim we are not entitled to the documents?

Setting aside the timing issues above, your Motion to Quash is entirely without merit.  If you do not immediately withdraw your letters, we will be filing an Ex Parte seeking an order from the Magistrate to order withdrawal of the same and/or an Ex Parte with Judge Kato to extend the discovery cut off to address this issue by regularly noticed Motion.

First the subpoenas were properly issued pursuant to FRCP 45.  Contrary to your false assertions they were not served on the facilities on December 6, 2024.  That was the date they were prepared.  They were mail served on your office first and then on the custodians in compliance with FRCP 45.  This objection is without merit and we will get a declaration from our outside vendor confirming the same if necessary.  The subpoenas were procedurally compliant.

Second, Plaintiff's only asserted objection is relevance.  Under Rule 45 the grounds for quashing the subpoena are because it requires the disclosure of privileged or protected matter or subjects a person to an undue burden under FRCP 45.  There is nothing in FRCP 45 that allows for a Motion to Quash merely because Plaintiff unilaterally has decided the information is not relevant.  The standard for discovery under Rule 26 is not whether the information is relevant but whether the request is proportionate to the needs of the case, and here it clearly is for the reasons indicated below. If Plaintiff has an issue with the relevancy of this information or its admissibility at trial, the appropriate time is to raise that in a Motion in Limine and not by obstructing Defendants efforts to gather the information, that Plaintiff has unilaterally deemed not relevant.  *United States v. R. Enterprises Inc.* 498 U.S. 292, 301 (1991) (where " a subpoena is challenged on relevancy grounds, the motion to quash must be denied unless the district court determines there is no reasonable possibility that the category of

materials . . . will produce information relevant. ..").

Your basis for objecting to these subpoenas and all your authority is based entirely on the argument that records of other incidents that the officers did not know about cannot be relevant to their liability under Section 1983.  However, there are many other reasons these records are proportionate to the needs of this case, which is all that is required to issue discovery requests under Rule 26.. Given that Mr. Puga's family have all testified and essentially claimed ignorance of his criminal history , drug history or alcohol history, we were left with no choice but to seek out these records directly from the entities to expose these credibility issues and to introduce evidence of Mr. Puga's lifestyle.  So contrary to your claim there is no other means to obtain this information that Puga's mother and girlfriends deny exist.

It cannot be credibly disputed that the quality of the relationship between Puga and his children would be impacted in the future if he were to return to jail, which is the likely result given his past charges and his probation which would now be impacted by his evading of police on February 15-17, 2024.  Likewise Puga's past lifestyle is relevant for assessing the quality of his relationships to counter the testimony by Plaintiffs.  Finally Puga's medical history, drug history and or injuries sustained in jail may produce information relevant to his life expectancy which is also clearly relevant.  Plaintiffs cannot have it both ways, they cannot seek millions of dollars and then block any information related to who Mr. Puga was, and courts have repeatedly so held.

Indisputably, Decedent's life expectancy is at issue in this "wrongful death" case.  *See*, *Francis v. Sauve*, 222 Cal. App. 2d 102, 121 (1963); *see also*, *Parsons v. Easton*, 184 Cal. 764, 770-771 (1921) ("It is the shorter expectancy of life that is to be taken into consideration [in computing wrongful death damages]; for example; if as in the case here, the expectancy of life of the parents is shorter than that of the son, the benefits to be considered are those only which might accrue during the life of the surviving parents.").

These cases are grounded in the common sense reality that criminal activity presents lifestyle risks that can (and do) impact relationships and life expectancy.  *See*, CACI Jury Instruction No. 3921 (wrongful death damages calculations require the jury to evaluate decedent's "*health*, habits, *activities* [and] *lifestyle*....") (emphasis added); *see also*, *Witkin, Summary of Cal. Law*, Wrongful Death, § 181.17 (10th ed. 2015) ("[E]vidence that [parties' relationship] was strained and unhappy at the time of death may suffice to negate or minimize a surviving [heir's] damages for loss of the decedent's society, comfort, and protection."); *Benwell v. Dean*, 249 Cal.App.2d 345, 353 (1967) ("'It is always proper to make proof of the relations of the decedent to the person for whose benefit the action is being maintained, because such proof has a bearing upon the pecuniary loss suffered by the person entitled to recovery . . . '").

Introduction of a Decedent's criminal history is also grounded in basic notions of fairness and the recognition that litigation is a search for the truth.  *See*, *Agosto v. Trusswal Systems Corp.*,

142 F.R.D. 118, 120 (E.D. Pa. 1992) ("It is Plaintiff's choice to pursue claims that necessitate the introduction of life expectancy information and basic fairness dictates that Plaintiff should not be allowed to make a potentially large recovery against [the defendant] based on an average life span when, in reality, Plaintiff may well have a shorter than average life expectancy."); *see also, Lewis v. District of Columbia*, 793 F.2d 361, 363 (D.C. Cir. 1986) (affirming district court's order admitting evidence of past drug use *and arrests* when the evidence was probative in aiding the jury to fairly measure the extent of damages for the alleged police "excessive force" claim and that its prejudicial effect did not substantially outweigh its probative value).

Furthermore, Decedent's periods of prior incarceration are relevant to Plaintiff's damages because incarceration would reduce the amount of "society and comfort" Decedent provided to Plaintiffs. *Peraza v. Dalmeter*, 722 F.2d 1455, 1457 (9th Cir. 1984); *Castro v. Cty. of Los Angeles*, No. 2:13-cv-06631, 2015 WL 4694070, at *4 (C.D. Cal. 2015).

Under Rule 26 and FRCP 45, relevancy is not the standard for quashing a subpoena and even if it where the information requested is relevant, and not privileged. Plaintiffs are free to argue the relevancy at trial but there was no valid legal grounds to advise these third parties not to respond to a validly issued subpoena.

Withdraw your letters immediately or we will file an Ex Parte with the Magistrate. I am available tomorrow at 2:00 p.m. to discuss your position but the authority you provided thus far renders your objections frivolous and your obstruction without cause.

Thanks

Shannon L. Gustafson
Shareholder
Direct: (714) 352-3547



LYNBERG & WATKINS

1100 W. Town & Country Rd., Suite 1450
Orange, California 92868
www.lynberg.com          www.linkedin.com

The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities. If you are not the intended recipient, you must not use or disseminate the information. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. If you have received this email in error, please immediately notify me by 'Reply' command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Lynberg & Watkins for any loss or damage arising in any way from its use.

**From:** Santiago Laurel <slaurel@galipolaw.com>
**Sent:** Tuesday, December 17, 2024 4:49 PM
**To:** Diana.Esquivel@doj.ca.gov; Shannon Gustafson <sgustafson@lynberg.com>; Amy R. Margolies <amargolies@lynberg.com>; Gloria Pence <gpence@lynberg.com>
**Cc:** Hang Le <hlee@galipolaw.com>; Dalekgalipo@yahoo.com
**Subject:** L.C., et al. (Puga) v. State of California

CAUTION: This email originated from outside of Lynberg & Watkins. Do not click any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

Counsel,

Attached please find the following:

**Letter re Objection to Subpoena (CDCR Archives)**
**Letter re Objection to Subpoena (CDCR Archives)**
**Letter re Objection to Subpoena (East Angeles County Sheriff's Station)**
**Letter re Objection to Subpoena (LAPD Metropolitan Detention Center)**
**Letter re Objection to Subpoena (Long Beach Police Department)**
**Letter re Objection to Subpoena (Los Angeles County Sheriff's Department Cerritos Station)**
**Letter re Objection to Subpoena (Los Angeles County Sheriff's Department Norwalk Station)**
**Letter re Objection to Subpoena (Los Angeles Police Department)**
**Letter re Objection to Subpoena (Los Angeles Sheriff's Department)**
**Letter re Objection to Subpoena (South Angeles County Sheriff's Station)**
**Letter re Objection to Subpoena (Wasco State Prison)**

Please advise if you have any issues viewing or downloading attachments.

Best regards,
Santiago G. Laurel

**Santiago G. Laurel, Litigation Secretary | The Law Offices of Dale K. Galipo** | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118 | Email: SLaurel@galipolaw.com

THIS EMAIL MESSAGE IS FOR THE SOLE USE OF THE INTENDED RECIPIENT AND MAY CONTAIN CONFIDENTIAL, AND PRIVILEGED INFORMATION. ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR DISTRIBUTION IS PROHIBITED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.

# Exhibit P

| From: | Hang Le |
|-------|---------|
| To: | Diana Esquivel; Shannon Gustafson; Amy R. Margolies; Anita K. Clarke |
| Cc: | Amy R. Margolies; Anita K. Clarke; Mark Meneses; Angelica S. Calderon; Gloria Pence; dalekgalipo@yahoo.com; Santiago Laurel |
| Subject: | RE: Puga v. County of San Bernardino, et al. |
| Date: | Friday, October 18, 2024 2:50:57 PM |

---

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Good afternoon Diana,

We still have a month and a half until December and we have yet to know if there will be problems with officer depositions in November. If we are unable to take officer depositions in November (which we believe is unlikely), we are happy to revisit this issue and/or discuss continuing the case management dates then. Until then, we would like to abide by the stipulation all parties willingly entered into regarding priority of the officer depositions. Thank you.

Best regards,
Hang Le

**Hang D. Le, Esq.** | Law Offices of Dale K. Galipo | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118| Email: hlee@galipolaw.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Diana Esquivel <Diana.Esquivel@doj.ca.gov>
**Sent:** Friday, October 18, 2024 2:41 PM
**To:** Hang Le <hlee@galipolaw.com>; Shannon Gustafson <sgustafson@lynberg.com>; Amy R. Margolies <amargolies@lynberg.com>; Anita K. Clarke <aclarke@lynberg.com>
**Cc:** Amy R. Margolies <amargolies@lynberg.com>; Anita K. Clarke <aclarke@lynberg.com>; Mark Meneses <mmeneses@lynberg.com>; Angelica S. Calderon <acalderon@lynberg.com>; Gloria Pence <gpence@lynberg.com>; dalekgalipo@yahoo.com; Santiago Laurel <slaurel@galipolaw.com>
**Subject:** RE: Puga v. County of San Bernardino, et al.

Good afternoon Hang,

I share Shannon's concerns regarding delaying taking any Plaintiff's deposition until after all the Defendant officers are deposed, especially when your office isn't even

sure if it can proceed with the officers depositions in November due to your trial conflict. Based on your response below, if you're unable to proceed with Blackwood and Rubalcava's depositions on November 4, you will not allow Plaintiffs' depositions to go forward until Blackwood and Rubalcava's depos are rescheduled and completed. What if their deposition cannot be taken until mid-December due to your schedule? Are you doing to refuse to produce any Plaintiff for deposition until after mid-December? This makes no sense and will cause unnecessary delay in completing the discovery that needs to be done in the time remaining. We need to proceed in an efficient and practical manner that will allow completion of all the discovery that is needed between now and the close of discovery.

Moreover, I don't understand what prejudice Plaintiffs will suffer if any of their depositions are taken before all the officers' depositions are completed. Again, we need to be reasonable and practical. I'd hate to burden the Court with these petty discovery issues that the parties should be able to resolve on their own.

Thanks,

-Diana

Diana Esquivel
Deputy Attorney General
TORT & CONDEMNATION SECTION
Office of the Attorney General
Tel: (916) 210-7320
Fax: (916) 322-8288
Email: Diana.Esquivel@doj.ca.gov

---

**From:** Hang Le <hlee@galipolaw.com>
**Sent:** Friday, October 18, 2024 2:29 PM
**To:** Shannon Gustafson <sgustafson@lynberg.com>; Amy R. Margolies <amargolies@lynberg.com>; Anita K. Clarke <aclarke@lynberg.com>
**Cc:** Amy R. Margolies <amargolies@lynberg.com>; Anita K. Clarke <aclarke@lynberg.com>; Mark Meneses <mmeneses@lynberg.com>; Angelica S. Calderon <acalderon@lynberg.com>; Gloria Pence <gpence@lynberg.com>; dalekgalipo@yahoo.com; Diana Esquivel <Diana.Esquivel@doj.ca.gov>; Santiago Laurel <slaurel@galipolaw.com>
**Subject:** RE: Puga v. County of San Bernardino, et al.

EXTERNAL EMAIL: This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Shannon,

While I agree that we have limited time left discovery, this was an unfortunate result of the County's delay in concluding the investigation and the lack of communication from County Defendants regarding the conclusion of the investigation. We only agreed to continue the case management deadlines due to the agreement that the officers' depositions would proceed first, given that we had made the effort to secure those depositions first and was only told a few days before the depositions that they could not occur due to the pending investigation.

Had there not been that agreement, we would not have agreed to the stipulation and would have opposed any protective order regarding the officers' depositions. Additionally, we were informed at the time of the stipulation that the County anticipated it would conclude its investigation by June at the latest. Despite several follow ups from us, we were not informed that the County had concluded its investigation on September 12, 2024 and only found out about it when the County published its Public Release Memorandum regarding the incident on October 4, 2024. When we reached out for dates, we requested availability for the last week of October and were instead given dates in November. We believe if Defendants take this up with the Court, the Court would enforce the stipulation that the parties freely entered into.

In light of the parties' stipulation, we will not be producing the plaintiffs for October 28.

Additionally, I am currently not available the last two weeks of November. However, things may open up as we get closer. I will let you know if any dates free up.

Best regards,
Hang Le


Hang D. Le, Esq. | Law Offices of Dale K. Galipo | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118| Email: hlee@galipolaw.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.


**From:** Shannon Gustafson <sgustafson@lynberg.com>
**Sent:** Friday, October 18, 2024 2:12 PM
**To:** Hang Le <hlee@galipolaw.com>; Amy R. Margolies <amargolies@lynberg.com>; Anita K. Clarke <aclarke@lynberg.com>
**Cc:** Amy R. Margolies <amargolies@lynberg.com>; Anita K. Clarke <aclarke@lynberg.com>; Mark Meneses <mmeneses@lynberg.com>; Angelica S. Calderon <acalderon@lynberg.com>; Gloria Pence <gpence@lynberg.com>; dalekgalipo@yahoo.com; Diana.Esquivel@doj.ca.gov; Santiago Laurel <slaurel@galipolaw.com>
**Subject:** RE: Puga v. County of San Bernardino, et al.


Hang,

First at the time we reached this stipulation it was based on the premise that none of the

th

officers could be deposed due to the 5   amendment issues and therefore we would delay taking the Plaintiff depositions as a courtesy in return for Plaintiff agreeing to extend the deadline for the officers.

Now that the 5th amendment issues have been resolved and the Defendant depositions have been scheduled it makes little to no sense to force Defendants to wait to take a single Plaintiff deposition until after all the Defendants have been deposed given the limited time left and we think if we were forced to take this up with the Court it would agree.

Further we asked you for dates multiple times and did not receive a single date for a single witness until after we sent you notices.

Are you indicating that you are not available October 28 or are simply refusing to produce a Plaintiff until after the Defendants?  As to the November 21 date if you are not available we can work on rescheduling.  However, I note that you did not offer a single date in November.   Is it your position that not a single witness is available next month and that we have to wait until December or later to take all of the depositions.

This may pose a problem as I am currently set for a trial on December 17 and may therefore have to request a continuance of the discovery cut off under the circumstances as I cannot be in deposition every single day the week before my trial.

Shannon L. Gustafson
**Shareholder**
Direct: (714) 352-3547



LYNBERG & WATKINS

1100 W. Town & Country Rd., Suite 1450
Orange, California 92868
www.lynberg.com        www.linkedin.com

The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities. If you are not the intended recipient, you must not use or disseminate the information. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. If you have received this email in error, please immediately notify me by 'Reply' command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Lynberg & Watkins for any loss or damage arising in any way from its use.

**From:** Hang Le <hlee@galipolaw.com>
**Sent:** Friday, October 18, 2024 1:59 PM
**To:** Shannon Gustafson <sgustafson@lynberg.com>; Amy R. Margolies <amargolies@lynberg.com>; Anita K. Clarke <aclarke@lynberg.com>
**Cc:** Shannon Gustafson <sgustafson@lynberg.com>; Amy R. Margolies <amargolies@lynberg.com>; Anita K. Clarke <aclarke@lynberg.com>; Mark Meneses <mmeneses@lynberg.com>; Angelica S. Calderon <acalderon@lynberg.com>; Gloria Pence <gpence@lynberg.com>;

dalekgalipo@yahoo.com; Diana.Esquivel@doj.ca.gov: Santiago Laurel <slaurel@galipolaw.com>
**Subject:** RE: Puga v. County of San Bernardino, et al.

CAUTION: This email originated from outside of Lynberg & Watkins. Do not click any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

Dear Counsel,

We are in receipt of your notice of depositions of the Plaintiffs in the Puga v. County of San Bernardino case.

First off, we object to the date of October 28, 2024 for the depositions of Antonia Salas Ubaldo and Maria Cadena. Pursuant to the May 24, 2024 Stipulation (Doc. No. 84), the parties agreed that the deposition of the individual officers would proceed before any other witness or party depositions. Since the officer depositions have been tentatively agreed-upon to occur in November, the noticed date of October 28 is in violation of the parties' agreement.

Second, we are not available November 21 for Jasmine Hernandez and Lydia Lopez's depositions.

Assuming that the involved officers' depositions will have occurred prior to the following dates, the Puga Plaintiffs are available as follows:
Antonia Salas Ubaldo: 12/2-12/6, 12/9-12/13, 12/16-12/20. Please note, Ms. Ubaldo will require a Spanish translator. Additionally, Ms. Ubaldo recently suffered a stroke and now has a hard time speaking, so she may be difficult to understand at times.
Jasmine Hernandez: 12/2-12/6, 12/9-12/13, 12/16-12/20.
Maria Cadena: 12/2-12/6, 12/9-12/13, 12/16-12/20.
Lydia Lopez: 12/2-12/6, 12/9-12/13, 12/16-12/20, but prefers an earlier date and Wednesday or Thursday if possible.

Best regards,
Hang Le

Hang D. Le, Esq. | Law Offices of Dale K. Galipo | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118| Email: hlee@galipolaw.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Gloria Pence <gpence@lynberg.com>
**Sent:** Friday, October 18, 2024 12:41 PM
**To:** dalekgalipo@yahoo.com; Hang Le <hlee@galipolaw.com>; Diana.Esquivel@doj.ca.gov
**Cc:** Shannon Gustafson <sgustafson@lynberg.com>; Amy R. Margolies <amargolies@lynberg.com>;
Anita K. Clarke <aclarke@lynberg.com>; Mark Meneses <mmeneses@lynberg.com>; Angelica S.
Calderon <acalderon@lynberg.com>
**Subject:** Puga v. County of San Bernardino, et al.


Counsel, please see the attached.


Kindest,


Gloria Pence
*Legal Secretary to*
Shannon L. Gustafson
Anita K. Clarke
Amy Margolies
Mark Meneses

Off: (714) 937-1010    Fax: (714) 937-1003



1100 W. Town & Country Rd., Suite 1450
Orange, California 92868
www.lynberg.com    www.linkedin.com

The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities. If you are
not the intended recipient, you must not use or disseminate the information. Receipt by anyone other than the intended recipient is not a waiver of any
attorney-client or work product privilege. If you have received this email in error, please immediately notify me by 'Reply' command and permanently delete
the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect
any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is
accepted by Lynberg & Watkins for any loss or damage arising in any way from its use.

CONFIDENTIALITY NOTICE: This communication with its contents may contain
confidential and/or legally privileged information. It is solely for the use of the intended
recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may
violate applicable laws including the Electronic Communications Privacy Act. If you are
not the intended recipient, please contact the sender and destroy all copies of the
communication.