**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| L.C., et al; | Case No. 5:22-cv-00949-KK-SHK |
| Plaintiffs, | Case No. 5:23-cv-00257-KK-SHK |
| vs. | [Consolidated for purposes of discovery] |
| STATE OF CALIFORNIA, et al, | *Honorable Kenly Kiya Kato* |
| Defendants. | *Mag. Judge Shashi H. Kewalramani* |
| | |
| JONATHAN WAYNE BOTTEN SR., et al. | ***PUGA* PLAINTIFFS AND *BOTTEN* PLAINTIFFS' CONSOLIDATED OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION AND MOTION TO MODIFY SCHEDULING ORDER TO EXTEND FACT-DISCOVERY DEADLINE** |
| Plaintiffs, | |
| vs. | |
| STATE OF CALIFORNIA, et al. | |
| Defendants. | |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   RELEVANT PROCEDURAL HISTORY ................................................... 2

III.  EX PARTE BASIS FOR RELIEF ............................................................. 8

IV.  STATE DEFENDANTS FAIL TO SATISFY THE DEMANDING STANDARD FOR EX PARTE RELIEF ................................................. 10

V.   THE COURT SHOULD DENY STATE DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE SCHEDULING ORDER .................... 12

    A.    State Defendants Were Not Diligent in Pursuing Deposition Discovery ........................................................................................ 13

    B.    Defendants were Not Diligent in Pursuing Documents ...................... 15

        1.    Several Items Identified in State Defendants' Ex Parte Application are Moot ................................................................ 15

        2.    Defendants were Not Diligent in Pursuing Puga's Criminal Records ........................................................................... 16

VI.  STATE DEFENDANTS WILL NOT SUFFER ANY PREJUDICE IF THEIR EX PARTE APPLICATION IS DENIED ........................................ 17

    A.    The Minor Plaintiffs' Depositions Exceed the Rule 30 10-Deposition Limit and are Unreasonably Duplicative and Cumulative ...................................................................................... 17

    B.    Jessy Francis's Deposition is Duplicative and Cumulative ................ 19

    C.    Defendants Will Have the Opportunity to Depose and Subpoena Records from the Botten Plaintiffs' Healthcare Providers During Expert Discovery ................................................................................ 20

    D.    Defendants Will Not Be Prejudiced If Documents Regarding Mr. Puga's Incarceration and Criminal Records are Not Produced ........... 20

VII.  CONCLUSION ........................................................................................ 21

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Azam v. Brown*,
   714 F. App'x 663 (9th Cir. 2017) ......................................................9

*Duran v. Cisco Sys. Inc.*,
   258 F.R.D. 375, 378 (C.D. Cal. 2009) ...........................................17

*Erichsen v. Cnty. of Orange*,
   677 F. App'x 379 (9th Cir. 2017) .....................................................9

*Hereford v. City of Hemet*,
   No. 5:22-CV-00394-JWH-SHK, 2024 WL 3059056 (C.D. Cal. June 14, 2024)
   ......................................................................................................17

*Johnson v. Mammoth Recreations*,
   975 F.2d 604 (9th Cir. 1992) .............................................................9

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
   218 F.R.D. 667 (C.D. Cal. 2003) ......................................................9

*Mission Power Eng'g Co. v. Continental Cas. Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995)................................................8, 9

*Nguyen v. Lotus by Johnny Dung Inc.*,
   No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479 (C.D. Cal. June 5, 2019).17

*See Najera-Aguirre v. Riverside*,
   No. EDCV18762DMGSPX, 2019 WL 3249613 (C.D. Cal. Apr. 16, 2019)..18

*Thykkuttathil v. Keese*,
   294 F.R.D. 597 (W.D. Wash. 2013)............................................17, 18

*Zivkovic v. Southern California Edison Co.*,
   302 F.3d 1080 (9th Cir. 2002)............................................................9

## <u>Rules</u>

Fed. R. Civ. P. 16..................................................................................9

Fed. R. Civ. P. 26(b)(1) .......................................................................17

Fed. R. Civ. P. 26(b)(2)(C).............................................................17, 18

Fed. R. Civ. P. 30 Advisory Committee's Note (1993) .....................17, 18

Fed. R. Civ. P. 30(a)(2)(A) ..................................................................17

ii

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION

## I.    INTRODUCTION

In the early morning hours of February 17, 2021, near the area of Peach Avenue and Catalpa Street in Hesperia, California, Defendants California High Patrol Officers Isaiah Kee, Michael Blackwood, and Bernardo Rubalcava ("Officer Defendants") and County of San Bernardino Sheriff's Deputies Robert Vaccari and Jake Adams ("Deputy Defendants") used excessive force and were negligent in their conduct when detained Hector Puga and ultimately discharged their firearms at Mr. Puga and in the direction of the Botten Residence, killing Mr. Puga and seriously injuring Jonathan Wayne Botten, Sr., Tanja Dudek-Botten, and J.B. Two separate actions were initiated as a result of the February 17, 2021 incident, one on behalf of Mr. Puga's successors in interest and family and the other on behalf of the Botten family.

Plaintiffs Wayne Botten, Sr., Tanja Dudek-Botten, J.B., and Annabelle Botten ("Botten Plaintiffs") initially filed an action in state court on November 4, 2021 alleging only state law claims ("*Botten* I Case" or "*Botten* I"). Botten Plaintiffs then filed this action on February 16, 2023, against Defendants State of California and Officer Defendants (together "State Defendants"), County of San Bernardino and Deputy Defendants (together "County Defendants") (collectively "Defendants"), alleging federal claims of excessive force under the Fourth Amendment and violation of substantive due process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and state law claims of battery, negligence, negligent infliction of emotional distress, and violation of the Bane Act ("*Botten* II Case" or *"Botten* II"). Mr. Puga's successors in interest and family ("Puga Plaintiffs") also filed an action in this district court on June 7, 2022, alleging similar claims arising out of the February 17, 2021 incident in *L.C., et al. v. State of California, et al.*, case no. 5:22-cv-00949-KK-SHK

("*Puga* Case" or "*Puga*"). The parties in both cases are represented by the same attorneys, respectively.

State Defendants now bring an Ex Parte Application to modify the Court's Scheduling Order and extend the fact discovery deadline. For the reasons discussed herein, the *Puga* Plaintiffs and *Botten* Plaintiffs oppose State Defendants' Ex Parte Application in its entirety.

## II.    **RELEVANT PROCEDURAL HISTORY**

While the parties were litigating the *Botten* I Case and *Puga* Case, a discovery dispute arose in which the Defendants contend that an informational wall needs to be put into place so that the discovery obtained in the *Puga* Case cannot be used in the *Botten* I Case, due to allegedly different federal and state law standards regarding the entitlement to officer personnel records. This dispute stalled discovery in both cases. The *Botten* I Case has since been dismissed and the *Botten* Plaintiffs are moving with the *Botten* II Case. Due to both actions now proceeding in federal court, Defendants have produced the investigative documents regarding the incident.

The parties' attorneys then reached an agreement to have the defendant officers deposed for the purposes of both cases, the *Puga* Case and *Botten* II Case, on December 6, 12 and 13, 2023. Unfortunately, State Defendants' counsel suffered an unforeseeable loss of a family member prior to the depositions and requested that the December 6 depositions be continued. Due to a misunderstanding among the parties, County Defendants' counsel believed that all defendant depositions were to be continued. In order to accommodate the parties' calendar regarding deposition availability, the parties stipulated and requested that the Court continue the case management dates in the *Puga* Case so that the defendant officers' depositions could be taken in February 2024. (*See L.C., et al. v. State of California, et al.*, case no. 5:22-cv-00949-KK-SHK, Doc. No. 79). On December 11, 2023, the Court issued an Order granting the parties' stipulation and request to modify the scheduling order, including

1  continuing the All-Discovery Cut-Off Deadline to September 9, 2024 and the Jury

2  Trial to January 13, 2025. (*See L.C.*, Doc. No. 80).

3     On December 21, 2023, the parties in *Botten* II filed their Joint Rule 26(f)

4  Report. (*See Botten, et al. v. State of California, et al.*, case no. 5:23-cv-00257-KK-

5  SHK, Doc. No. 55). The parties indicated in their Joint Report that they had agreed

6  that discovery taken in the *Puga* Case may be used in and will apply, where

7  appropriate, to *Botten* II, in order to avoid duplicative or repetitive discovery and to

8  conserve resources. (*See Botten*, Doc. No. 55 at 13).

9     The parties further met and conferred on dates for the defendant officers'

10  depositions and agreed that the depositions would take place on February 14, 15, 20,

11  and 21, 2024. (*See* Le Decl. ¶ 4; Ex. 1 to Le Decl.).  An amended notice was

12  subsequently sent out in the *Puga* Case on January 26, 2024. (*Id.*). On February 2,

13  2024, County Defendants' counsel informed Plaintiffs' counsel that they had been the

14  County District Attorney's Office had yet to conclude its investigation into the

15  incident and therefore, the County Defendants would not be produced for their

16  depositions until the investigation concluded. (*Id.*). State Defendants' counsel joined

17  County Defendants' position also refused to produce their officers for depositions

18  until the investigation concluded. (*Id.*).

19     The parties subsequently agreed to temporarily take the defendant officers'

20  depositions off-calendar in order to give the parties time to come to a resolution on

21  this issue, if possible. (*See* Le Decl. ¶ 5). On February 28, 2024, the District Court

22  issued a Civil Trial Scheduling Order in *Botten* II, setting the Fact Discovery Cut-Off

23  for July 11, 2024 and the Jury Trial for February 3, 2025. (*Botten*, Doc. No. 60).

24  Because the parties had previously agreed that the discovery that has been produced

25  in the *Puga* Case may be used in *Botten* II (*See Botten*, Doc. No. 55 at 13) and

26  because County Defendants' Counsel and State Defendants' Counsel have indicated

27  that they would not produce their officers for depositions in either case until the DA

28  investigation had concluded, both cases reached a standstill at the same stage in

3

discovery and litigation at the time Botten Plaintiffs moved for consolidation of the two cases.

Prior to Botten Plaintiffs' Motion for Consolidation, the parties met and conferred several times regarding the consolidation issue, including a video conference meeting that took place on February 6, 2024. (*See Botten*, Doc. No. 62 at ii). Defendants indicated during the meet-and-confer process that they did not oppose consolidation for the purposes of discovery, but would oppose consolidation for all other purposes. (*See Botten*, Doc. No. 62 at ii, 4). On March 7, 2024, Botten Plaintiffs filed their Motion for Consolidation. (*See Botten*, Doc. No. 62). In their Motion, Botten Plaintiffs informed the District Court that the parties had met and conferred and that Defendants had indicated they did not oppose consolidation for the purposes of discovery. (*See Botten*, Doc. No. 62 at ii, 4).

Both State Defendants and County Defendants timely filed their oppositions to Plaintiffs' Motion to Consolidate. (*See Botten*, Doc. Nos. 63, 64). While both State and County Defendants generally argued against consolidation, neither disputed Botten Plaintiffs' representation that Defendants did not oppose consolidation for the purposes of discovery. (*See Botten*, Doc. Nos. 63, 64). On April 9, 2024, the District Court issued an Order (1) DENYING Plaintiff's Motion to Consolidate for All Purposes and (2) GRANTING the Parties' Jointly Agreed Upon Consolidation for the Purposes of Discovery. (*Botten*, Doc. No. 69). On April 17, 2024, the District Court issued an Order re: Consolidation for Limited Purpose of Discovery in *L.C., et al. v. State of California, et al.*, and attached the consolidation order issued in the *Botten* II. (*L.C.*, Doc. No. 82).

On May 24, 2024, because the DA's investigation had not yet concluded, the Defendants continued to maintain that the individual defendant officers could not be produced for deposition. (*See* Le Decl. ¶ 6). County Defendants' counsel was advised by the DA's Office that the criminal investigation and review were being finalized and that the decision would be made public around mid-June 2024. (*See L.C.*, Doc.

4

No. 84 ¶ 12; *Botten*, Doc. No. 71 ¶ 9). In light of this, the parties filed stipulations in
both *Botten* II and *Puga* to modify the scheduling order and continue all case
management dates. (*See L.C.*, Doc. No. 84; *Botten*, Doc. No. 71). Included in the
stipulations was the agreement that "given Plaintiffs' previous efforts to secure dates
for the depositions of the individual defendant officers, these depositions would
proceed before any other witness or party depositions." *See L.C.*, Doc. No. 84 ¶ 15;
*Botten*, Doc. No. 71 ¶ 12).

　　　　The DA's investigation did not conclude by mid-June 2024. (*See* Le Decl. ¶ 7).
On September 18, 2024, Plaintiffs' counsel sent a follow-up email inquiring into the
status of the DA's investigation. (*See* Le Decl. ¶ 7; Ex. 2 to Le Decl.). County
Defendant's counsel informed Plaintiffs' counsel that she had put in an inquiry with
the County and expected to hear back in a week or two. (*Id.*). On October 7, 2024,
Plaintiffs' counsel discovered that the DA had concluded its investigation and
published a Public Release Memorandum on the incident, dated **September 12, 2024**,
on its website. (*Id.*). On that same day, Plaintiffs' counsel emailed State Defendants'
counsel and County Defendants' counsel with this information and requested dates for
the involved officers' depositions, specifically during the last week of October 2024.
(*Id.*). Defense counsel for County Defendants replied, requesting dates for the
depositions of the guardian *ad litems* in *Puga* and the plaintiffs in *Botten* II. (*Id.*). On
October 9, 2024, the depositions of Deputies Adams and Vaccari were scheduled for
November 7 and November 14, 2024. On October 15, 2024, CHP Officers
Blackwood and Rubalcava's depositions were scheduled for November 4, 2024. (*See*
Le Decl. ¶ 8; Ex. 3 to Le Decl.). On October 24, 2024, CHP Officer Kee's deposition
was scheduled for November 5, 2024. (*Id.*).

　　　　On October 18, 2024, County Defendants' counsel sent deposition notices for
the guardian *ad litems* and the adult plaintiff in *Puga* and the four plaintiffs in *Botten*.
(Le Decl. ¶ 9; *see* Ex. 4, 5 to Le Decl.). After the parties met and conferred regarding
dates for the plaintiffs and Plaintiffs' counsel's availability, County Defendants'

counsel sent amended deposition notices for the eight depositions on October 20, 2024. (*See* Exs. 6, 7 to Le Decl.). The eight depositions were scheduled for the first two weeks of December. (Le Decl. ¶ 9; *see* Exs. 6, 7 to Le Decl.).

On October 31, 2024, County Defendants' counsel sent deposition notices and subpoenas for depositions of four percipient witnesses, scheduled for November 25 and 26, 2024. (Le Decl. ¶ 10). On November 21, 2024, Plaintiffs' counsel sent out supplemental discovery responses on behalf of the *Puga* Plaintiffs. (Le Decl. ¶ 10; *see* Ex. 8 to Le Decl.). The next day, on November 22, 2024, County Defendants' counsel inquired whether Plaintiffs intended on calling the minor plaintiffs at trial, and if so, when the parties could meet and confer regarding taking the minor plaintiffs' depositions prior to the January 2, 2024, discovery cut-off. (*Id.*). On that same day, State Defendants' counsel, for the first time, indicated that State Defendants intended on taking the depositions of the minor plaintiffs, regardless of whether the minor plaintiffs testified at trial. (*Id.*). State Defendants' counsel also proposed an extension of the fact discovery cut-off based on the belief that the contemplated depositions of the minor plaintiffs, the Bottens' medical providers, and the paramedics, could not be completed within the remaining time. (*Id.*). State Defendants' counsel proposed meeting and conferring on these issues sometime during the depositions of the percipient witnesses, scheduled for the following week, on November 25 and 26. (*Id.*).

Two of the percipient witnesses' depositions were completed on November 25, 2024. (Le Decl. ¶ 11). Only one percipient witness's deposition moved forward on November 26, 2024. After the November 26 deposition, the parties met and conferred regarding State Defendants' intent on deposing the minor plaintiffs and proposed extension of the fact discovery deadline. (*Id.*). Plaintiffs' counsel indicated that Plaintiffs would not be producing the minor plaintiffs for deposition absent a court order because Plaintiffs believed the depositions would be cumulative and duplicative of their mothers' deposition testimonies and that their mothers were the more

1    convenient and less burdensome source for the information requested. (*Id.*). Plaintiffs'

2    counsel further indicated that they were not agreeable to a fact-discovery extension

3    because they did not believe there was a sufficient need for one. (*Id.*).

4          On December 4, 2024, State Defendants served their Notice of Taking of

5    Deposition of Minor Plaintiffs A.L, I.H., and L.C. for December 20, 2024. (Le Decl. ¶

6    12). On December 6, 2024, Plaintiffs served their formal objections to State

7    Defendants' Notice. (Le Decl. ¶ 12; Ex. 9 to Le Decl.). On December 9, 2024, State

8    Defendants' counsel replied to Plaintiffs' formal objections, disputing Plaintiffs'

9    positions. (*Id.*). State Defendants again brought up the subject of continuing the fact

10   discovery deadline, contending that several witnesses were recently identified during

11   recently served discovery and depositions and as discovery continues, more witnesses

12   may be identified that need to be deposed. (*Id.*). The parties could not come to an

13   agreement on the matter. (*Id.*). Accordingly, on that same day, Plaintiffs' counsel

14   initiated the procedure to request an Informal Pre-Motion Video Conference in front

15   of Magistrate Judge Shashi H. Kewalramani. (*Id.*). After receiving Defendants'

16   position statement, Plaintiffs' counsel sent the request seeking a video conference

17   with Magistrate Judge Kewalramani to Magistrate Judge Kewalramani's chambers.

18   (Le Decl. ¶ 12).

19         An informal discovery conference regarding deposition disputes, including the

20   minor plaintiffs' depositions, was held before Magistrate Judge Kewalramani on

21   December 16, 2024. (*See L.C.*, Doc. No. 87; *Botten*, Doc. No. 76). With regards to the

22   issue of Defendants exceeding the 10-deposition limit under Rule 30, Magistrate

23   Judge Kewalrami found that there was good cause to allow Defendants to take the six

24   additional depositions Defendants sought (not including the minor plaintiffs), given

25   that eight of the ten allowed depositions Defendants took were of plaintiffs in the

26   consolidated discovery, but that Defendants were limited to only an additional

27   eighteen (18) hours of deposition. (*See L.C.*, Doc. No. 87; *Botten*, Doc. No. 76).

28   Magistrate Judge Kewalramani ordered the parties to further meet and confer on the

1  issue of the minor plaintiffs' deposition and return the following day for a further
2  hearing. (*See id.*). The parties met and conferred on the issue on the same day.
3  Plaintiffs counsel represented that they would be withdrawing claims for emotional
4  distress on behalf of the minor plaintiffs and would not be calling the minor plaintiffs
5  to testify at trial. The parties were still unable to reach an agreement regarding the
6  minor plaintiffs' depositions.

7          On December 17, 2024, a continued informal discovery conference regarding
8  the minor plaintiffs' depositions was held before Magistrate Judge Kewalramani. (*See*
9  *L.C.*, Doc. No. 88; *Botten*, Doc. No. 77). At the hearing, County Defendants' counsel
10  indicated that they did not have a position on the issue and was not seeking to depose
11  the minor plaintiffs because Plaintiffs' counsel had represented that they did not
12  intend to call them at trial. Ultimately, Magistrate Judge Kewalramani determined that
13  given the upcoming fact discovery cut off of January 2, 2025, the parties would not
14  have sufficient time to fully brief their positions.

15  **III.    EX PARTE BASIS FOR RELIEF**

16          The Court's Civil Standing Order reminds the parties "that ex parte
17  applications are solely for extraordinary relief and are discouraged." (*See*
18  https://www.cacd.uscourts.gov/honorable-kenly-kiya-kato (KK Civil Standing Order
19  at 8 (citing *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 488
20  (C.D. Cal. 1995))); *see L.C.*, Doc. No. 83; *Botten*, Doc. No. 70 (directing the parties
21  to the Court's website for updated civil procedures)). A proper ex parte motion
22  contains two distinct parts: "[t]he first part should address only why the regular
23  noticed motion procedures must be bypassed [and t]he second part consists of papers
24  identical to those that would be filed to initiate a regular noticed motion." *Mission
25  Power*, 883 F. Supp. at 492. The granting of *ex parte* relief requires an evidentiary
26  showing of good cause that: (1) "the moving party's cause will be irreparably
27  prejudiced if the underlying motion is heard according to regular noticed motion
28  procedures"; and (2) "the moving party is without fault in creating the crisis that

8

1  requires ex parte relief, or that the crisis occurred as a result of excusable neglect."

2  *Mission Power*, 883 F. Supp. at 492; *see, e.g.*, *Azam v. Brown*, 714 F. App'x 663, 665

3  (9th Cir. 2017) (recognizing *Mission Power* as setting forth standard for *ex parte*

4  relief); *Erichsen v. Cnty. of Orange*, 677 F. App'x 379, 380 (9th Cir. 2017) (mem.)

5  (noting that appellants failed to meet threshold requirement for *ex parte* relief by

6  failing to establish that they were "without fault in creating the crisis that requires ex

7  parte relief" (quoting *Mission Power*, 883 F. Supp. at 492)).

8       Under Rule 16, a scheduling order "may be modified only for good cause and

9  with the judge's consent." Fed. R. Civ. P. 16(b)(4). A party seeking to modify the

10  schedule must show good cause and diligence in meeting Federal Rule of Civil

11  Procedure 16's requirements. *See* Fed. R. Civ. P. 16 advisory committee notes (1983

12  amendment); *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992)

13  (Rule 16(b)'s "good cause" standard focuses on the diligence of the party seeking

14  modification of the scheduling order). "A party demonstrates good cause for the

15  modification of a scheduling order by showing that, even with the exercise of due

16  diligence, he or she was unable to meet the timetable set forth in the order. *Matrix*

17  *Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003)

18  (citing *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.

19  2002)); *Johnson*, 975 F.2d at 609. "Moreover, carelessness is not compatible with a

20  finding of diligence and offers no reason for a grant of relief." *Johnson*, 875 F.2d at

21  609. "[T]he existence or degree of prejudice to the party opposing the modification

22  might supply additional reasons to deny a motion" to modify a scheduling order. *Id.*

23  However, "[i]f the party seeking the modification 'was not diligent, the inquiry should

24  end' and the motion to modify should not be granted." *Zivkovic,* 302 F.3d at 1087

25  (citation omitted); *see also Johnson,* 975 F.2d at 609.

26  //

27  //

28

## IV.    STATE DEFENDANTS FAIL TO SATISFY THE DEMANDING STANDARD FOR EX PARTE RELIEF

State Defendants will neither suffer prejudice nor are State Defendants without fault in creating the crisis that requires ex parte relief. As discussed more thoroughly below, the discovery State Defendants seek in applying for an extension of the fact discovery deadline is duplicative and cumulative. Importantly, State Defendants are responsible for creating the crisis that requires ex parte relief now.

State Defendants joined in holding up discovery when they declined to produce their officers for depositions until the DA's investigation concluded. State Defendants were also not diligent in following up with County Defendants on the status of the investigation. Moreover, State Defendants did not seek any depositions nor notice depositions until the topic of the minor depositions came up. The first time State Defendants communicated their intention to depose the minor plaintiffs in *L.C.* was on November 22, 2024. In the same email communication, State Defendants proposed extending the fact discovery to the expert discovery deadline because State Defendants intended to take additional depositions and did not think it was possible to complete discovery in the time remaining. The parties met and conferred on November 26, 2024, regarding the issue of the minor plaintiffs' depositions and the State Defendants' proposal of extending the fact discovery deadline. During the meeting, Plaintiffs' counsel indicated that Plaintiffs opposed both the taking of the minor plaintiffs' depositions and the proposed extension. The parties acknowledged that these issues would need to be resolved by the Court by way of motion work. At that point in time, State Defendants had enough time to file a regularly noticed motion to continue the fact discovery deadline had State Defendants been diligent in seeking relief. Additionally, State Defendants could have filed an even earlier, regularly-noticed motion had State Defendants sought the depositions of the minor plaintiffs or other third-party witnesses earlier in the discovery process, since Plaintiffs' counsel October 7, 2024 email started the parties' discussions regarding depositions in the

10

consolidated discovery of both cases. Instead, State Defendants waited until a little over a month before discovery was set to close to bring up the issue of taking additional depositions. State Defendants then served their first deposition notices on December 4, 2024, less than a month before the fact discovery deadline.

Additionally, on <u>December 9, 2024</u>, after Plaintiffs served their objections the Defendants' December 4, 2024 Deposition Notices of the minor plaintiffs, the parties exchanged correspondence again about the issue. Within the correspondence, State Defendants once again reiterated that they sought to extend the fact discovery deadline and that if Plaintiffs were not agreeable, they would be moving ex parte for relief. <u>Plaintiffs' counsel reiterated their position that they were not agreeable to the extension of the fact discovery deadline</u>. State Defendants failed to seek relief regarding the fact discovery deadline then, despite repeated indications from Plaintiffs' counsel regarding Plaintiffs' opposition to continuing the fact discovery deadline. Finally, on <u>December 19, 2024</u>, after the deposition of third-party witness Nancy Juarez, State Defendants once again brought up the issue of their anticipated ex parte application to continue the fact discovery deadline. Plaintiffs' counsel confirmed that Plaintiffs' position had not changed. State Defendants then informed Plaintiffs' counsel that State Defendants would be filing their ex parte application "tomorrow (Friday, December 20, 2024), or over the weekend." State Defendants failed to diligently pursue relief that they had known they needed to pursue over a month ago, and instead, waited until New Years' Eve—two days before the discovery cut-off—to file their Ex Parte Application.

Moreover, the Court's Civil Standing Order states that "[c]ounsel must submit any request for a continuance or extension of time no later than five (5) court days prior to the expiration of the scheduled date." (KK Civil Standing Order at 7). The Standing Order further states that if a party is seeking an extension of deadlines by ex parte application, the application must be accompanied by a declaration setting forth the reasons for the requested extension of time and indicate whether there have been

11

any previous requests for continuances and whether those requests were granted or denied. (KK Civil Standing Order at 8). The Standing Order cautioned that "[f]ailure to comply with…this Order will result in the application being denied." Here, State Defendants failed to submit their Ex Parte Application to extend the fact discovery deadline at least five court days before the January 2, 2025 deadline, despite it being feasible to do so. Additionally, State Defendants have failed to comply with the Court's requirement to include a declaration with the application, setting forth the reasons for the requested extension and whether any previous requests for continuances have been granted or denied.

Accordingly, State Defendants have not satisfied the demanding standard for *ex parte* relief and their Ex Parte Application should be denied.

**V.      THE COURT SHOULD DENY STATE DEFENDANTS' EX PARTE
APPLICATION TO MODIFY THE SCHEDULING ORDER**

In addition to the exercise of diligence in pursuing discovery, the Court's Standing Order requires that a party seeking a continuance or extension of time also show "unforeseeable circumstances" in order to make a sufficient showing of good cause. *See* https://www.cacd.uscourts.gov/honorable-kenly-kiya-kato (KK Civil Standing Order at 8). The circumstances that led to State Defendants' filing of their *Ex Parte* Application were solely created by Defendants and State Defendants were not diligent in their efforts to comply with the Court's modified scheduling orders in *Puga* and *Botten*.

Plaintiffs had noticed and the parties had agreed upon dates for the involved officers depositions in December 2023—*last year*, but due to a series of continuances and subsequent delay by Defendants in refusing to produce the individual officers for deposition due to the pending DA Office's investigation, Defendants brought discovery to a standstill because without the deposition of the involved officers, this case regarding the officer-involved shooting death of Hector Puga, could not meaningfully proceed.

After the parties agreed to pause deposition discovery until the conclusion of the DA Office's investigation, State Defendants failed to follow up with County Defendants regarding the status of the investigation in order to restart discovery. Plaintiffs' counsel attempted to follow up regarding the status of the investigation in September. On October 7, 2024, Plaintiffs' counsel discovered that the County DA's Office had *published* a September 12, 2024, Public Release Memorandum regarding the investigation and conclusions from that investigation on its website. Thus, by October 7, 2024, the DA Office's criminal investigation had been closed for at least, over three weeks. Plaintiffs' counsel's October 7, 2024, email regarding the County DA's Public Release Memorandum was the catalyst that restarted discovery.

## A. State Defendants Were Not Diligent in Pursuing Deposition Discovery

State Defendants joined in holding up deposition discovery when they declined to produce the individual CHP officers for depositions until the DA Office's investigation had concluded, despite previously agreeing to producing the officers for deposition, twice. Moreover, State Defendants were not diligent in following up with County Defendant on the status of the DA Office's investigation. State Defendants waited until a little over a month before fact discovery closed—November 22, 2024—to begin discussions seeking the depositions of the minor plaintiffs and other third-party witnesses. State Defendants then waited until less than a month before fact discovery closed—December 4, 2024—to send out their first deposition notices.

Additionally, State Defendants have known about the minor plaintiffs' identities and involvement since the inception of the *Puga* case since they are named plaintiffs and were not diligent in seeking their depositions. State Defendants have known that the minor plaintiffs each sought wrongful death damages in excess of $2 million since Plaintiffs served their First Supplemental Rule 26 Disclosures on April 19, 2023. Moreover, State Defendants have known the minor plaintiffs' basis for their claim for wrongful death damages since they served their response to Defendant

County of San Bernardino Interrogatories (Set Two) on July 10, 2023. Yet, when the parties met and conferred regarding dates of the individual defendants, the guardians ad litem in *Puga*, the mother in *Puga*, and the *Botten* Plaintiffs in October 2024, there was no mention Defendants' intention or desire in taking the depositions of the minor plaintiffs. It was not until Plaintiffs served supplemental discovery responses on November 21, 2024, that the topic of the minor plaintiffs' depositions was brought up for the first time in response.

State Defendants further contend that a continuation of the fact discovery deadline is necessary to take the deposition of Jessy Francis because he was present with the Bottens in the two weeks following the incident and he spoke to a few neighbors to obtain a video of the shooting. First, State Defendants mischaracterize Tanja Dudek-Botten's testimony regarding Mr. Francis's involvement with Plaintiffs after the incident, as discussed more in detail later and any testimony from Mr. Francis would be duplicative and cumulative. Second, State Defendants were <u>not diligent</u> in seeking the deposition of Mr. Francis. As State Defendants admit in their Ex Parte Application, they knew of Mr. Francis's identity and their desire to take his deposition as early as November 25, 2024, after Ms. Mangerino's deposition. State Defendants had the opportunity to bring a regularly-noticed motion for a fact discovery extension after the parties' meeting on November 26, 2024, but failed to do so. State Defendants also have neither subpoenaed nor noticed the deposition of Mr. Francis since they allegedly were alerted the need to depose him on November 25, 2024, and after they were granted permission by Magistrate Judge Kewalramani to exceed their 10-deposition limit and depose him on December 16, 2024.

With regards to the deposition of Jacob Gonzalez, contrary to State Defendants' representation, Mr. Gonzalez was not a third-party witness who recorded the officer-involved shooting incident at issue in this case. Mr. Gonzalez was *present* when Betzabeth Gonzalez recorded videos of the officer-involved shooting (as State Defendants later state in the Ex Parte Application, Mrs. Gonzalez was the person who

14

recorded all the videos). Additionally, State Defendants have not explained whether they even attempted to locate Mr. Gonzalez after the County Defendants' attempt at serving Mr. Gonzalez failed. Thus, State Defendants have not explained how or whether they were diligent in pursuing Mr. Gonzalez's deposition.

Lastly, State Defendants contend that they did not get a fair opportunity to depose the person whose video was produced as PLTF 00345. The video identified as PLTF 00345 is a black and white surveillance video. As of the date of this filing, Plaintiffs have identified the person who had original possession of the black and white surveillance video as the Bottens' then-neighbor Sal (last name unknown). Neighbor Sal's identity was previously disclosed in the Bottens' <u>April 3, 2023</u> Responses to Interrogatories as someone with knowledge regarding the "facts and circumstances surrounding the incident." (*See* Le Decl. ¶ 14; Ex. 11 to Le Decl.). Plaintiffs provided Defendants with Neighbor Sal's last known address and phone number. However, Defendants never sought to depose Neighbor Sal, despite having advance notice that he had relevant knowledge regarding the facts and circumstances regarding the incident.

State Defendants have not been diligent in pursuing depositions and lack of diligence alone is sufficient reason for the Court to deny State Defendants' request for a continuance of the fact discovery deadline.

## B. <u>Defendants were Not Diligent in Pursuing Documents</u>

### 1. *Several Items Identified in State Defendants' Ex Parte Application are Moot*

Several records State Defendants seek in their Ex Parte Application are moot, either because they have been produced or because they never existed. First, State Defendants argue that an extension of the fact discovery deadline is warranted in the event the three additional videos taken by Betzabeth Gonzalez are not produced before the fact discovery deadline. As of the time of this filing, Plaintiffs have produced those videos, so the issue of those videos is moot. (See Le Decl. ¶ 13).

15

Additionally, State Defendants contend that during Plaintiff Antonia Salas-Ubaldo's deposition, she identified a physician, Dr. Jay Rivera, that had never previously been identified. State Defendants misunderstand Ms. Ubaldo's deposition testimony. Ms. Ubaldo testified that she calls her doctor, "Dr. Jay Rivera" because she is unable to pronounce his last name, but that she went to see him at a clinic on Atlantic in Long Beach. (*See* Ex. A to Esquivel Decl.). The physician Ms. Ubaldo calls "Dr. Jay Rivera" is Dr. George Jayatilaki, as previously identified in Ms. Ubaldo's responses in written discovery, who is located at 1045 Atlantic Avenue in Long Beach, California, and was the physician who prescribed Ms. Ubaldo medication for depression that she did not take. (*See id.*; Ex. 12 to Le Decl., Responses to Interrogatories 5, 6). Ms. Ubaldo served her written discovery responses on June 23, 2023. State Defendants had ample opportunity to subpoena records or depose Ms. Ubaldo's physician but failed to do so.

### 2. *Defendants were Not Diligent in Pursuing Puga's Criminal Records*

Finally, State Defendants contend that an extension of the fact discovery deadline is warranted because of outstanding subpoenas by State Defendants and County Defendants. The subpoenas issued by State and County Defendants seek the incarceration and criminal records of Mr. Puga. State Defendants have not provided an explanation (because there is none) as to why neither State Defendants nor County Defendants could have issued these subpoenas earlier in the discovery process. While deposition discovery was arguably on hold due to the DA Office's investigation into the incident, written discovery and subpoena of records were not. There is no justifiable excuse for Defendants' delay in issuing these subpoenas for Mr. Puga's incarceration and criminal records.

//

//

//

1  **VI.  STATE DEFENDANTS WILL NOT SUFFER ANY PREJUDICE IF**
2  **THEIR EX PARTE APPLICATION IS DENIED**

3  "Because discovery must be both relevant and proportional, the right to

4  discovery, even plainly relevant discovery, is not limitless." *Hereford v. City of*

5  *Hemet*, No. 5:22-CV-00394-JWH-SHK, 2024 WL 3059056, at *3 (C.D. Cal. June 14,

6  2024) (citing Fed. R. Civ. P. 26(b)(1); *Nguyen v. Lotus by Johnny Dung Inc.*, No.

7  8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019).

8  "Generally, the purpose of discovery is to remove surprise from trial preparation so

9  the parties can obtain evidence necessary to evaluate and resolve their dispute."

10 *Duran v. Cisco Sys. Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (internal citations and

11 quotation marks omitted). Rule 26(b)(2) requires the Court to limit discovery where:

12 "(i) the discovery sought is unreasonably cumulative or duplicative, or can be

13 obtained from some other source that is more convenient, less burdensome, or less

14 expensive; (ii) the party seeking discovery has had ample opportunity to obtain the

15 information by discovery in the action; or (iii) the proposed discovery is outside the

16 scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

17  **A. The Minor Plaintiffs' Depositions Exceed the Rule 30 10-Deposition**
18  **Limit and are Unreasonably Duplicative and Cumulative**

19 Rule 30(a)(2)(A) "is unambiguous in presumptively limiting the number of

20 allowed depositions to ten per side…" *Thykkuttathil v. Keese*, 294 F.R.D. 597, 599

21 (W.D. Wash. 2013). The rule provides that absent a stipulation by the parties, "[a]

22 party must obtain leave of court" to conduct a deposition if the deposition "would

23 result in more than 10 depositions being taken under this rule or Rule 31 by the

24 plaintiffs, or by the defendants, or by third-party defendants." Fed. R. Civ. P.

25 30(a)(2)(A). The Rule's Advisory Committee Note states that this limit "is aimed to

26 assure judicial review under the standards stated in Rule 26(b)(2) before any side will

27 be allowed to take more than 10 depositions in a case without agreement of the other

28 parties." Fed. R. Civ. P. 30 Advisory Committee's Note (1993). "The ten-per-side

17

limit is intended to promote cost-effective discovery and promote the federal rules' policy of minimizing 'unreasonably cumulative or duplicative' discovery" and "[t]he Advisory Committee expressly indicated that the ten-per-side deposition limit applies to multi-party cases…and can only be lifted by stipulation or court approval. *Thykkuttathil*, 294 F.R.D. at 599 (citing Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 30 Advisory Committee's Note (1993)).

Here, the District Court consolidated *L.C., et al. v. State of California, et al.* and *Botten, et al. v. State of California, et al.* for the purposes of discovery. Thus, both sides—plaintiffs and defendants—are limited to ten depositions per side pursuant to Rule 30(a)(2)(A). Prior to the informal discovery dispute conference in front of Magistrate Judge Kewalramani, Defendants had taken a total of eleven depositions—three percipient witnesses, the three guardians *ad litem* in *L.C.*, Ms. Ubaldo, the sole adult plaintiff in *L.C.*, and the four plaintiffs in *Botten*. Defendants then obtained leave from Magistrate Judge Kewalramani for an additional 18 hours to be divided among six witnesses—Gabriela Salas (Mr. Puga's sister), Nancy Juarez (Mr. Puga's sister), Betzabeth Gonzalez, Jacob Gonzalez, Jessy Francis, and J.B.'s medical provider because eight of Defendants' ten depositions were of plaintiffs. (*See L.C.*, Doc. No. 87; *Botten*, Doc. No. 76). The depositions of Gabriela Salas and Nancy Juarez were taken on December 19, 2024 and Betzabeth Gonzalez's deposition was taken on December 30, 2024. Thus, Defendants have taken a total of fourteen depositions to date.

Additionally, the minor plaintiffs' depositions would be cumulative and duplicative of their guardians' testimonies and responses to written discovery and any information regarding their relationship with Mr. Puga has already been obtained through more convenient, less burdensome means. *See Najera-Aguirre v. Riverside*, No. EDCV18762DMGSPX, 2019 WL 3249613 , at *4 (C.D. Cal. Apr. 16, 2019) (declining to allow defendants to exceed the ten-deposition limit to depose the minor plaintiffs given the burden and potential trauma to the minor plaintiffs that would be

18

caused by their depositions and the minor plaintiffs possessing no information that was not already provided by their mother and guardian ad litem or step-sister). The minor plaintiffs are damages witnesses only, and very limited ones at that. They did not witness the incident. Plaintiff A.L. was only seven days old and Plaintiff I.H. was only one-and-a-half years old when their father, Mr. Puga, passed away. They are unable to recall anything about their relationship with their father prior to his passing. Plaintiff L.C.'s mother testified that L.C. only saw Mr. Puga at most, a total of seven times in her lifetime and spoke on the phone with him at most, a total of three times in her lifetime prior to his passing when she was nine years old. She will also have very little to add regarding her relationship with Mr. Puga. Plaintiffs' counsel does not intend on calling the minor plaintiffs at trial. Moreover, the minor plaintiffs are still young and do not have the capacity to comprehend the true significance and weight of the loss of a parent. Their mothers are better sources the children's wrongful death damages as they had a better understanding of how involved Mr. Puga would have been in the children's lives and Mr. Puga's hopes and dreams for his children.

## B. **Jessy Francis's Deposition is Duplicative and Cumulative**

State Defendants will not suffer any prejudice if they are unable to take the deposition of the Bottens' eldest son, Jessy Francis. As previously stated, Mr. Francis was only present for a two-week period after the incident to help the family while Mr. and Mrs. Botten were dealing with J.B.'s injuries and hospitalization. Mr. Francis helped drive Mr. and Mrs. Botten, bought groceries for them, and visited J.B. He did not witness any of Mr. and Mrs. Bottens' injuries. Mr. Francis does not live with the Botten family and does not possess any relevant knowledge regarding the Bottens' injuries or pain and suffering. Mr. Francis was simply there for a short period of time to help his family. He would not have any relevant information regarding the Bottens' injuries that have not already been extensively documented by the Bottens' medical records during that two-week period.

Additionally, Mr. Francis briefly spoke to neighbors regarding whether anyone had videos of the shooting. He obtained a video from a neighbor across the street, as testified to by that neighbor, Erin Mangerino. Mr. Francis's deposition will not add to what has already been testified to by Ms. Mangerino.

### C. Defendants Will Have the Opportunity to Depose and Subpoena Records from the Botten Plaintiffs' Healthcare Providers During Expert Discovery

State Defendants contend that due to the late disclosure of J.B.'s visit to urgent care in the summer of 2022 that related to his injuries and Annabelle Botten's therapy resulting from the incident, Defendants have been deprived of the opportunity to conduct follow-up discovery to depose the health care providers and subpoena records. However, as Plaintiffs previously indicated to State Defendants, Plaintiffs intend to designate the Bottens' health care providers as non-retained experts in Botten Plaintiffs' Expert Disclosures. Thus, State Defendants will still have the opportunity to depose these health care providers, and subpoena records if so desired, during the expert discovery phase.

### D. Defendants Will Not Be Prejudiced If Documents Regarding Mr. Puga's Incarceration and Criminal Records are Not Produced

State Defendants contend that Mr. Puga's incarceration and criminal history records are "relevant and necessary to rebut *L.C.* Plaintiffs' damages claim," (Ex Parte App. At 11), but fail to explain how and why they are relevant and necessary. State Defendants have already obtained the visitation logs, dates of incarceration and parole records from the California Department of Corrections and Rehabilitation. These periods show the periods of time Mr. Puga was away from his family due to incarceration or imprisonment, and the number of times his mother visited him in prison. The details of Mr. Puga's criminal history, including specific details regarding the incidents that led to his arrests, charges filed against him, and imprisonment or incarceration, are neither relevant nor necessary to rebut damages. The only relevance

20

that his criminal records *may* have to damages, are any convictions against Mr. Puga and subsequent imprisonment, incarceration, and parole or probation from those convictions. To date, Defendants have already obtained all necessary documents and evidence regarding those issues. County Defendants have received records from the Los Angeles Police Department regarding his 2019 arrests that led to a conviction and parole violation and State Defendants have his parole records, including details of an arrest and pending charges close to the time of his death. Accordingly, Defendants will not be prejudiced if additional incarceration or criminal records are not turned.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny State Defendants' Ex Parte Application and Motion to Modify Scheduling Order to Extend Fact-Discovery Deadline in its entirety.


DATED:  December 31. 2024          LAW OFFICES OF DALE K. GALIPO


By_____ */s/ Hang D. Le*_____
    Dale K. Galipo
    Hang D. Le
    Attornevs for Plaintiffs

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs in *L.C., et al. v. State of California, et al.* and Plaintiffs in *Botten, et al. v. State of California, et al.*, certifies that this brief contains 6,812 words, which complies with the word limit of L.R. 11-6.1

DATED:  December 31. 2024          LAW OFFICES OF DALE K. GALIPO

By_____/s/ Hang D. Le_____
Dale K. Galipo
Hang D. Le
Attorneys for Plaintiffs