Shannon L. Gustafson (SBN 228856)
sgustafson@lynberg.com
Amy R. Margolies (SBN 283471)
amargolies@lynberg.com
Anita K. Clarke (SBN 321015)
aclarke@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 W. Town & Country Road, Suite #1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendants, COUNTY OF SAN BERNARDINO,
ROBERT VACCARI and JAKE ADAMS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN WAYNE BOTTEN, SR.; TANJA DUDEK-BOTTEN; ANNABELLE BOTTEN; and J.B., a minor by and through his guardian JONATHAN WAYNE BOTTEN, SR., <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; ISAIAH KEE; MICHAEL BLACWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 1-10  inclusive, <br><br> Defendants. | CASE NO. 5:23-cv-00257-KK-(SHKx) <br><br> *Assigned for All Purposes to:* <br> *Hon. Kenly Kiya Kato– Courtroom #3* <br><br> **COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> *[Filed Concurrently County Defendants' Separate Statement of Undisputed Material Facts; Exhibits; Proposed Judgment]* <br><br> Date:        March 20, 2025 <br> Time:        9:30 a.m. <br> Courtroom:   3 <br><br> *Trial:  July 28, 2025* <br><br> *Complaint filed:  02/16/23* <br> *FAC filed:  06/08/23* |

1

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ....................................................................... 10

II.  STATEMENT OF FACTS ............................................................................... 10

     A.   Tort Claims by the Botten Family ................................................... 10

     B.   Incident Involving Hector Puga ...................................................... 11

     C.   Location of Plaintiffs ....................................................................... 12

     D.   CHP Defendants ............................................................................... 13

     E.   County Defendants – Vaccari and Adams ....................................... 13

     F.   Plaintiffs' Injuries ........................................................................... 14

III. PLAINTIFFS HAVE INSUFFICIENT EVIDENCE ................................... 15

IV.  NEGLIGENCE AND NEGLIGENT INFLICTION OF
     EMOTIONAL DISTRESS .............................................................................. 16

     A.   NEGLIGENCE ................................................................................. 16

          1.   County Defendants Had No Legal Duty .................................. 16

          2.   The Botten Injuries Were Not Foreseeable ............................. 23

          3.   County Deputies Were Not the Proximate Cause ................... 25

          4.   The Actions of the CHP Defendants Were a
               Superseding Cause ................................................................... 26

     B.   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ........ 27

     C.   GOVERNMENT CODE IMMUNITIES ......................................... 28

     D.   TORT CLAIM PRESENTATION .................................................... 29

V. CONCLUSION ..................................................................................................... 30

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY
ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ash v. North American Title Co.*,
  223 Cal.App.4th 1258 (Cal. 2014) ..........................................................................26

*Brewer v. Teano*,
  40 Cal. App. 4th 1024 ..............................................................................................26

*Brown v. Ransweiler*,
  171 Cal. App. 4th 516 (2009) ..................................................................................20

*Brown v. USA Taekwondo*,
  11 Cal. 5th 204 (2021) .....................................................................................17, 21

*Burgess v. Superior Court*,
  2 Cal. 4th 1064 (1992) .............................................................................................27

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..................................................................................................15

*City of San Jose v. Superior Court*,
  12 Cal.3d 447 (1974) ................................................................................................29

*Connelly v. State of California*,
  3 Cal.App.3d 744 (1970) ..........................................................................................29

*Cunningham v. Happy Place, Inc.*,
  157 Or. App. 334 (1998) ..........................................................................................23

*Devereaux v. Abbey*,
  263 F.3d 1070 (9th Cir. 2001) .................................................................................15

*DiCampli-Mintz v. County of Santa Clara*,
  55 Cal.4th 983 (2012) ...............................................................................................29

*Donohue v. State of California*,
  178 Cal. App. 3d 795 (1986) ....................................................................................30

*Fall River v. Joint Unified School District v. Superior Court*,

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

206 Cal. App. 3d 431 (1988) ................................................................30

*Farr v. NC Mach. Co.*,
   186 F.3d 1165 (9th Cir. 1999) .........................................................26

*Frausto v. Department of California Highway Patrol*,
   53 Cal.App.5th 973 (2020) ..............................................................18

*Gilmer v. Ellington*,
   159 Cal. App. 4th 190 (2008) ..........................................................16

*Golick v. State of California*,
   82 Cal. App. 5th 1127 (2022) .............................................17, 18, 19, 21

*Gu v. BMW of N. Am., LLC*,
   132 Cal.App.4th 195 (2005) ............................................................27

*Hall v. City of Los Angeles*,
   19 Cal.2d 198 (1941) ......................................................................29

*Hayes v. County of San Diego*,
   57 Cal. 4th 622 (2013) ....................................................................28

*Hernandez v. KWPH Enterprise*,
   116 Cal. App. 4th 170 (2004) ..........................................................16

*Huang v. The Bicycle Casino, Inc.*,
   4 Cal.App.5th 329 (2d Cal. 2016) ....................................................23

*Ikeda v. City & Cnty. of Honolulu*,
   No. 19-cv-00009-DKW-KJM, 2019 WL 4684455 (D. Haw. Sept. 25, 2019) ......19

*Johnson v. State*,
   69 Cal.2d 782 (1968) ......................................................................28

*Kentucky Fried Chicken of Cal, Inc. v. Superior Court*,
   14 Cal. 4th 814 (1997) ....................................................................16

*Kesner v. Superior Court*,
   1 Cal. 5th 1132 (2016) ....................................................................25

*Kockelman v. Segal*,
   61 Cal. App. 4th 491 (1998) ............................................................19

4

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY
ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

*Koussayo v. City of Stockton*,
   54 Cal. App. 5th 909 (2020) ................................................................20

*Loehr v. Ventura County Community College Dist.*,
   147 Cal.App.3d 1071 (Cal. 2d 1983)....................................................29

*Lopez v. City of San Diego*,
   190 Cal.App.3d 678 (1987) ...........................................................18, 19

*Lucas v. City of Long Beach*,
   60 Cal. App. 3d 341 (Cal. 1976)..........................................................26

*Lugtu v. California Highway Patrol*,
   26 Cal.4th .......................................................................................17, 18

*M.B. v. City of San Diego*,
   (1991) 233 Cal.App.3d 699 ..................................................................17

*Mendoz v. City of Los Angeles*,
   66 Cal. App. 4th 1333 (199*)................................................................25

*Morgan v. County of Yuba*,
   230 Cal.App.2d 938 (1964) ..................................................................28

*Osborn v. City of Whittier*,
   103 Cal. App. 2d 609 (1951) ..........................................................23, 25

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965 (1993) ...........................................................................27

*Rowland v. Christian*,
   69 Cal.2d 108 (1968) .....................................................................17, 22

*Spates v. Dameron Hospital Assn.*,
   114 Cal.App.4th 208 (2003) .................................................................27

*Staats v. Vintner's Golf Club, LLC*,
   25 Cal. App. 5th 826 (2018) ...........................................................24, 25

*Steinle v. City and County of San Francisco*,
   919 F.3d 1154 (9th Cir. 2019) .............................................................28

*Sturgeon v. Curnutt*,
   (1994) 29 Cal. App. 4th 301 ................................................................23

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

*Tarasoff v. Regents of University of California*,
  17 Cal.3d 425 (1976) .................................................................. 17, 23

*Tate v. Canonica*,
  180 Cal. App. 2d 898 (1960) .................................................................. 27

*Von Batsch v. American Dist. Telegraph Co.*,
  175 Cal.App.3d 1111 (1985) .................................................................. 18

*Williams v. State of California*,
  34 Cal.3d 18 (1983) .................................................................. 17, 18

*Zelig v. County of Los Angeles*,
  27 Cal.4th 1112 (2002) .................................................................. 16, 17, 18, 19

Codes

Cal. Gov. Code § 945.4 .................................................................. 29

Cal. Gov. Code §§ 815.2(b), 820.2, and/or 820.8 .................................................. 7, 8, 29

Cal. Gov. Code §§ 910 .................................................................. 7, 8, 29

Cal. Gov.Code  § 820.2 .................................................................. 28

Cal. Gov. Code § 820.8 .................................................................. 10, 25

Rules

Fed. R. Civ. P. Rule 56 .................................................................. 7, 8

Other Authorities

6 Witkin, Summary of California Law (11th ed. 2017) Torts § 1348 ...................... 26

Restatement 2d Torts § 440 .................................................................. 26

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY
ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 20, 2025, at 9:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 3 of the above-entitled Court located at 3470 Twelfth Street, Riverside, California, Defendants County of San Bernardino, Jake Adams, and Robert Vaccari ("County Defendants") will, and hereby do, move the Court pursuant to Fed. R. Civ. P. Rule 56, for an order granting summary judgment, or in the alternative summary adjudication as to each claim in Defendants' favor, and against Plaintiffs Jonathan Wayne Botten Sr., Tanja Dudek-Botten, Annabelle Botten, and J.B., a minor by and through his guardian Jonathan Wayne Botten, Sr. ("Plaintiffs") on Plaintiffs' First Amended Complaint ("FAC").

The grounds for issuing an order granting summary judgment/adjudication as to each claim in favor of County Defendants are as follows[1]:

1. Plaintiffs' Fourth Claim for Negligence against the County of San Bernardino, Robert Vaccari, and Jake Adams is without merit and fails as a matter of law. Further, Robert Vaccari, Jake Adams, and County of San Bernardino are immune from liability pursuant to Cal. Gov. Code §§ 815.2(b), 820.2, and/or 820.8 because of the superseding conduct of a third party. Finally, Plaintiffs' novel theory that the County Defendants are liable not because they shot the Bottens, but because they allegedly used negligent tactics when apprehending Mr. Puga, was not fairly set forth in their Government Tort Claim and is therefore barred here. *See,* Cal. Gov. Code §§ 910, *et seq.*

2. Plaintiffs' Fifth Claim for Negligent Infliction of Emotional Distress against the County of San Bernardino, Robert Vaccari, and Jake Adams is without merit and

---

[1] Pursuant to the meet and confer efforts preceding this Motion, Plaintiffs have stipulated to dismiss all claims against the County Defendants, except Negligence and Negligent Infliction of Emotional Distress. (Dkt. 82). As a result, all other claims were dismissed by Court order. (Dkt. 83).

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

fails as a matter of law.  Further, Robert Vaccari, Jake Adams, and County of San Bernardino are immune from liability pursuant to Cal. Gov. Code §§ 815.2(b), 820.2, and/or 820.8 because of the superseding conduct of a third party.  Finally, Plaintiffs' novel theory that the County Defendants are liable not because they shot the Bottens, but because they allegedly used negligent tactics when apprehending Mr. Puga, was not fairly set forth in their Government Tort Claim and is therefore barred here.  *See,* Cal. Gov. Code §§ 910, *et seq.*

This Motion is made on the grounds that there are no triable issues of material facts as to any of the foregoing matters, and the County Defendants are entitled to judgment as a matter of law.  *See*, Fed. R. Civ. P. 56.

County Defendants' Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Jake Adams, Lucien Haag, Ken Hubbs, and Anita K. Clarke, and the Exhibits submitted therewith; the concurrently-filed Separate Statement of Uncontroverted Material Facts and Conclusions of Law; complete files and records of this action; and upon such other and further matters as may properly come before the Court.

Pursuant to Local Rule 7-3, this Motion is being filed following meet and confer efforts that commenced on January 16 with Defendants serving a detailed meet and confer letter.  This letter was then followed up by the required real-time telephonic meet and confer between counsel on January 22, 2025 where the claims were discussed at length.  Following this conference, the parties continued to exchange additional legal authority via email based on said discussions.  While the parties were eventually able to reach agreement on the dismissal of several claims as reflected in the stipulation filed at Docket Number 82, Plaintiffs refused to dismiss their Negligence and Negligent Infliction of Emotional Distress claims despite concessions that no bullets fired by the County Defendants actually struck any of the Botten Plaintiffs.  County Defendants therefore request this Court hear and decide the issues

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1 | raised herein and grant summary judgment on all claims.

2

3 | DATED:  January 30, 2025

**LYNBERG & WATKINS**
A Professional Corporation

4

5

6 | By:  /s/ Shannon L. Gustafson

7 | Shannon L. Gustafson
Amy R. Margolies

8 | Anita K. Clarke
Attorneys for Defendants, COUNTY OF

9 | SAN BERNARDINO, ROBERT VACCARI and JAKE ADAMS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

Plaintiffs have filed this lawsuit against the County of San Bernardino, and its employees Deputy Jake Adams and Sergeant Vaccari (hereinafter "County Defendants") without any legal basis as the undisputed evidence clearly establishes it was a physical impossibility for the County Defendants to have been the source of any of the injuries alleged by the Botten Plaintiffs.

In apparent recognition of the same, Plaintiffs have dismissed their § 1983 claims, and intentional state law torts.  (*See* Dkt. 82).  However, Plaintiffs stubbornly maintain the County Defendants should nevertheless be held liable for Negligence and Negligent Infliction of Emotional Distress for injuries caused by shots fired by a separate law enforcement agency.  In short, it is Plaintiffs' theory that the County Defendants allegedly employed negligent tactics when apprehending a suspect and therefore by proxy created a broad and far reaching duty to ***every*** single occupant of the neighborhood to protect them from any potential harm from ***every*** law enforcement officer on scene. Simply put, there is no statutory authority or case law to support this expansive duty.  *See,* Government Code § 820.8 ("a public employee is not liable for an injury caused by the act or omission of another person.").

## II.    STATEMENT OF FACTS

### A.    Tort Claims by the Botten Family

On April 6, 2021, each member of the Botten family submitted an identical Tort Claim to the County of San Bernardino.  (UMF 119-122).   Each claim recited the same factual circumstances as follows: "On or about February 17, 2021, various police agencies including the California Highway Patrol were in pursuit of, and apprehending an alleged suspect at or about the roadway near the home of claimants. There were shots fired by the police agency employees.  Respondent family members were at their home located at 17944 Catalpa Street, Hesperia, Ca 92395.  The bullets

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

shot and fired in the course of the pursuit and apprehension struck claimant resulting in serious injury and damage." (UMF 123-126). No mention was made of any negligent tactics by the County Defendants preceding the shooting. (UMF 123-126).

### B.    Incident Involving Hector Puga

On February 16, 2021, CHP received reports that a white Ford SUV with a funeral sticker on the back window had been involved in shooting at another vehicle on the freeway earlier in the evening. (UMF 9-10). CHP Officers Blackwood and Rubalcava located the vehicle in the early morning hours on February 17, 2021 and attempted a traffic stop. (UMF 11). The driver of the vehicle, later identified as decedent Hector Puga, then led the CHP officers on a pursuit, which was later joined by CHP defendant Sergeant Kee. (UMF 12-14). At some point Deputy Adams and Sergeant Vaccari also assisted CHP in this pursuit of Puga. (UMF 15). The pursuit terminated at the intersection of Peach Avenue and Catalpa Street in Hesperia, California when the suspect vehicle became disabled, just south of Catalpa. (UMF 16-18). While the passenger of the vehicle complied with commands and was safely taken into custody, Puga refused to exit the vehicle for over an hour, despite repeated commands for him to do so and the deployment of pepper balls into the vehicle to coerce his exit. (UMF 19-24).

Eventually, Puga exited his vehicle on the driver's side, but before he could be safely taken into custody, he ran to the front of his vehicle. (UMF 25-26). From this position the law enforcement officers could no longer see Puga's waistband, which was now concealed by his vehicle. (UMF 27-28). Defendants Kee and Rubalcava approached Puga from the driver's side of his vehicle, while Defendants Vaccari and Adams approached from the passenger side to apprehend Puga. (UMF 29-30).

Defendant Kee, armed with a rifle and Defendant Rubalcava armed with his duty weapon, approached with their weapons drawn. (UMF 31-32). Defendant Vaccari was armed with a less lethal 40 mm launcher that deploys less lethal sponge

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1  rounds.  (UMF 33-34).  Defendant Adams approached with his duty weapon drawn.

2  (UMF 35).  Meanwhile, Defendant Blackwood remained positioned behind the door

3  of his own patrol vehicle with a rifle drawn. (UMF 36-38).

4  As the four law enforcement officers approached, Puga's right hand went from

5  above his head towards his waistband.  (UMF 39).  As he did so, Defendants testified

6  they saw Puga draw a firearm from his waistband.  (UMF 40-43).  Sgt. Kee testified

7  he believes he fired first and continued to fire as Puga ran.   (UMF 44-45).  Officers

8  Rubalcava, Blackwood and Deputy Adams also fired at Puga.  (UMF 46-48).  As the

9  officers fired, Puga ran in a northwestern direction away from them.  (UMF 49).  Puga

10  eventually fell and later died from his injuries.  (UMF 50-51).  A handgun was located

11  underneath his body.  (UMF 52).

12  Sergeant Vaccari could not recall whether a round was ejected from his less

13  lethal launcher.  (UMF 53).  However, it is undisputed he did not fire any lethal rounds

14  from his service weapon during the incident.  (UMF 54).

15  **C.    Location of Plaintiffs**

16  The Plaintiffs' house is located on the northeast corner of the intersection of

17  Peach and Catalpa, pushed back slightly from the street.  (UMF 55-56).  A deputy

18  shooting at the Botten house from where Puga stopped his vehicle would have to shoot

19  in a northeastern direction.  (UMF 57).

20  From the time that Puga's vehicle became disabled until the time of the

21  shooting, Sergeant Vaccari and Deputy Adams did not make contact with the Botten

22  family or give the Botten family any commands.  (UMF 58-59).  The Botten family

23  observed various portions of what occurred between law enforcement and Puga from

24  inside their residence at different times.  (UMF 60-68).  The Bottens did not know

25  who Puga was.  (UMF 69).

26  At the time of the shooting, Plaintiff Botten Sr. was inside of his house

27  approximately six inches from the closed security door. (UMF 70-71). Plaintiff Tanja

28

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR**
**SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY**
**ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

Dudek-Botten was roughly in the same area as Botten Sr., near the front entrance but behind her husband. (UMF 72).  Plaintiff Botten Jr. was several feet from the front door inside the house when the shooting occurred, somewhere behind his mother. (UMF 73-74).  Annabelle Botten was in between the front door and the kitchen at the time of the shooting.  (UMF 75).

### D.    CHP Defendants

Sergeant Kee and Officer Blackwood were armed with AR-15 rifles with .223 Remington caliber bullets (UMF 77-78) and Officer Rubalcava was armed with a Smith & Wesson M&P pistol with .40 Smith & Wesson caliber bullets.  (UMF 79).

Specifically, CHP Officer Rubalcava approached Puga from the driver's side of Puga's vehicle (UMF 80) and fired approximately 10-15 shots (UMF 81) in a northeastern direction while Puga was in front of his own vehicle (UMF 82) and subsequently while Puga was running away.  (UMF 83).

CHP Sergeant Kee was also on the driver's side of Puga's vehicle (UMF 84), with Rubalcava on his right (UMF 85) and discharged 18 rounds at Puga from his AR-15 as Puga ran.  (UMF 86).

CHP Officer Blackwood fired 20 shots with his AR-15 while Puga was in front of him and as Puga ran away.  (UMF 87-89).

### E.    County Defendants – Vaccari and Adams

Deputy Adams and Sergeant Vaccari approached Puga from the eastern side of Puga's vehicle on the passenger side.  (UMF 90).  Deputy Adams was armed with a Glock (9mm caliber) (UMF 91) and Vaccari had a less-lethal 40mm round launcher. (UMF 33, 92).  Deputy Adams' gun was pointed towards Puga during this approach, and away from the Botten house and front door.  (UMF 93-94).  Deputy Adams testified that upon seeing Puga draw a gun and hearing shots he returned fire at Puga and continued firing as Puga ran in a northwestern direction.  (UMF 40, 95-96). Adams moved closer to the front passenger side of the vehicle to gain cover while

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1  continuing to fire at Puga, who ran toward the northwest dirt corner of the intersection.

2  (UMF 97-99).   Adams fired a total of 10 shots from his 9mm (UMF 100), all

3  discharged from the passenger side area of Puga's vehicle, in a northwesterly direction

4  as Puga ran in the same northwesterly direction.   (UMF 101-102).   The Botten

5  Plaintiffs, were inside the house near the front door area of the house when shots were

6  fired. (UMF 70-76).  Deputy Adams firearm was never pointed in the direction of the

7  Botten family home, let alone the area of the front door.  (UMF 93-94).

8    Sergeant Vaccari did not discharge his firearm.  (UMF 103).

9    **F.    Plaintiffs' Injuries**

10    Only shrapnel and bullet fragments were recovered from Botten Sr.  (UMF

11  104).  Tanja Dudek-Botten and Jonathan Botten Jr., were likewise injured, but again

12  only shrapnel and bullet fragments were recovered.  (UMF 105-106).

13    A review of the injuries suffered by the Botten Plaintiffs are consistent with

14  rifle bullet fragments (UMF 104-107) and not the consequence of direct projectile

15  strikes, such as the 9mm bullets fired by Deputy Adams. (UMF 108). The 9mm pistol

16  bullets fired by Deputy Adams can be excluded as the source of the Botten family's

17  injuries (UMF 109) due to their low velocity as 9mm bullets (UMF 110) and their

18  propensity to remain intact following shallow incident angle strikes and subsequent

19  ricochet from ground and roadway (asphalt) impacts.  (UMF 111).  The injuries

20  sustained by the Botten family are therefore consistent with the ammunition fired by

21  the AR-15 rifle used by either Sergeant Kee and/or Officer Blackwood, and not the

22  9mm bullets utilized by Deputy Adams.  (UMF 77-79, 91-92, 103, 112).  The only

23  individual armed with a rifle shooting in the northeastern direction at any time during

24  the shooting was Sergeant Kee.  (UMF 79, 82, 84, 86, 113).

25    Plaintiffs' home was in the northeast corner from where Puga's vehicle was

26  located and the shooting began.  (UMF 49,76).  Puga then ran in a northwestern

27  direction away from the Botten home.  (UMF 114).  Because Deputy Adams was

28

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

shooting in the opposite direction, his bullets were not ever fired towards the Botten house. (UMF 93-94, 98-102). Even if his bullets were to have ricocheted, they would remain intact and again could not have caused the type of injuries sustained by the Bottens. (UMF 104-108, 115-116). No intact bullets were recovered from Plaintiffs or their residence. (UMF 104-108, 117)

In short, the undisputed evidence is clear that the shots fired by Deputy Adams did not and could not have caused any of the physical injuries sustained by the Botten family. (UMF 91, 93-94, 96-99, 107-112). Further, neither Sgt. Vaccari nor Deputy Adams had any contact with the Botten family prior to the shooting nor did they issue any commands. (UMF 58-59).

Finally, law enforcement officers are trained to be aware of and clear their background prior to using deadly force. (UMF 118). There is no evidence to support that Sgt. Vaccari and/or Deputy Adams were aware that Sgt. Kee or any other CHP officer would deviate from this law enforcement training in the discharge of their firearms. (UMF 118).

### III.    PLAINTIFFS HAVE INSUFFICIENT EVIDENCE

Under *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the burden on the moving party may be discharged by pointing out that there is an ***absence of evidence*** to support the non-moving party's case. Once the moving party shows the absence of evidence, the burden shifts to the non-moving party to designate specific facts showing there is a genuine issue for trial. As summarized by the Ninth Circuit, "the Celotex 'showing' can be made by pointing out through argument – the absence of evidence to support plaintiff's claim." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

As set forth above the undisputed evidence clearly establishes that the weapons discharged by Defendants Adams and Vaccari during the incident could not have ***caused*** any of the physical injuries to the Botten family.

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

IV.    **NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

Based upon the meet and confer efforts, Plaintiffs have advised they are advancing a theory that although the County Deputies did not directly cause the injuries to Plaintiffs, they are still responsible for the injuries caused by CHP based on a general duty to protect the community when they engaged Puga. (Clarke Decl. ¶ 4, Exhibit N - correspondence).

Not only does a general duty to protect society form third party actions not exist under established law, *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1128 (2002), but the injuries that occurred to the Plaintiffs as a result of the CHP actions, was not foreseeable to County Defendants, who as evidence of their training, did not injure any bystanders. Simply put, Plaintiffs' theory that where a law enforcement officer is negligent in any manner when apprehending a suspect, that same officer is then legally responsible for any and all injuries sustained by bystanders caused by the negligence of others, is not only a far-reaching unwarranted extension of existing case law, but the consequences of the same would financially cripple law enforcement agencies moving forward.

A.    **NEGLIGENCE**

"To establish negligence, it must be shown that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, and (3) the breach was a proximate or legal cause of the plaintiff's injuries." *Gilmer v. Ellington*, 159 Cal. App. 4th 190, 195 (2008).

1. **County Defendants Had No Legal Duty**

"The existence of a duty of care is a question of law to be determined by the court alone." *Hernandez v. KWPH Enterprise,* 116 Cal. App. 4th 170, 176 (2004); *Kentucky Fried Chicken of Cal, Inc. v. Superior Court,* 14 Cal. 4th 814, 819 (1997) ("the existence of a duty is a question of law for the court.").

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1    Plaintiffs argue here that because there was a law enforcement encounter in

2    their neighborhood, County Defendants had some type of affirmative duty to evacuate

3    the Botten Plaintiffs or take some other action to avoid harm.  However, law

4    enforcement officers may not be held liable merely for failing to take affirmative steps

5    to prevent injury to another.  *Zelig,* 27 Cal.4th at 1128.  "'As a rule, one has no duty

6    to come to the aid of another.  A person who has not created a peril is not liable in tort

7    merely for failing to take affirmative action to assist or protect another unless there is

8    some relationship between them which gives rise to a duty to act.'"  *Zelig*, 27 Cal.4th

9    at 1129 quoting *Williams v. State of California*, 34 Cal.3d 18, 23 (1983).  Officers like

10   members of the public generally do not have a duty to aid another.  *Zelig*, 27 Cal.4th

11   at 1129 citing *Lugtu v. California Highway Patrol*, 26 Cal.4th at 717.

12    As such, the duty to protect only exists where there is a "special relationship

13   between the parties or some other set of circumstances giving rise to an affirmative

14   duty to protect."  *Golick v. State of California,* 82 Cal. App. 5th 1127, 1144 (2022).

15   "First, the court must determine whether there exists a special relationship between

16   the parties or some other set of circumstances giving rise to an affirmative duty to

17   protect.  Second, if so, the court must consult the factors described in *Rowland* to

18   determine whether relevant policy considerations counsel limiting that duty."  *Brown*

19   *v. USA Taekwondo*, 11 Cal. 5th 204, 209 (2021) citing *Rowland v. Christian,* 69

20   Cal.2d 108 (1968).

21           **a)  No Special Relationship Exists**

22    Generally, there is no legal "duty," and hence no liability for negligence, unless

23   there is a special relationship between the police and either the victim or the third

24   person which gives rise to a responsibility to control the third person's conduct.  *See*

25   *generally Tarasoff v. Regents of University of California* 17 Cal.3d 425, 435 (1976).

26   In the case of law enforcement officers, a special relationship has been found only in

27   a "***few narrow circumstances***." *M.B. v. City of San Diego* (1991) 233 Cal.App.3d

28

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1  699, 704–705 (emphasis added); *Golick, supra,* 82 Cal. App. 5th at 1149 (2022)

2  ("Cases finding a special relationship based on performance of police duties are ***rare***

3  and involve situations in which the victim detrimentally relied on some conduct or

4  representation by the officer.") (emphasis added).

5       Absent a special relationship creating a special duty, the police have no legal

6  duty to control the conduct of others. *Von Batsch v. American Dist. Telegraph Co.*

7  175 Cal.App.3d 1111, 1122 (1985).  Law enforcement officers have only been found

8  to establish a special relationship where they voluntarily assume a duty to provide a

9  particular level of protection and fail to do so or where the officer undertakes an

10  affirmative act that increases the risk of harm to the plaintiff, neither of which apply

11  here. *Zelig*, 27 Cal.4th at 1129.  For example, a special relationship has been found

12  between an officer and an arrestee. *Frausto v. Department of California Highway*

13  *Patrol*, 53 Cal.App.5th 973, 993 (2020).  Likewise, "a police officer who exercises

14  his or her authority to ***direct*** another person to proceed to—or to stop at—a particular

15  location, owes such a person a duty to use reasonable care in giving that direction, so

16  as not to put the person in danger or to expose the person to an unreasonable risk of

17  harm." *Lugtu v. CHP*, 26 Cal.4th 703, 716 (2001) (emphasis added).

18       On the other hand, officers do not create a special relationship simply for

19  performing their duties. *Lopez v. City of San Diego,* 190 Cal.App.3d 678, 681 (1987)

20  (no special relationship between police responding to restaurant massacre scene and

21  victims of massacre where police delayed acting on plan to "'neutralize'" murderer);

22  *Von Batsch,* 175 Cal.App.3d at 1122, 1222 (no special relationship between county

23  and decedent's surviving wife when county's officers responded to a burglar alarm,

24  searched the premises, and erroneously advised decedent's co-employees that no

25  intruders were on the premises); *William v. State of California,* 34 Cal.3d 18, 24

26  (1983) (no special relationship between stranded or injured motorist and police based

27  on fact that police stopped to aid her).

28

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

Applied here, as a matter of law, there was no recognized special relationship between the Botten family and the County Defendants such as the relationship between a peace officer and an arrestee or an inmate.  *See e.g. Kockelman v. Segal*, 61 Cal. App. 4th 491, 499 (1998) ("It has been observed that a typical setting for the recognition of a special relationship is where "the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly has some control over the Plaintiffs welfare.").

Likewise, none of the affirmative acts taken by Deputy Adams and/or Sergeant Vaccari to apprehend Puga, increased the harm Plaintiffs were already exposed vis a vis the pursuit terminating in their neighborhood.  *Zelig,* 27 Cal. 4th at 1129 ("Liability may be imposed . . . if an officer undertakes affirmative acts that increase the risk of harm to the plaintiff."); *cf. Ikeda v. City & Cnty. of Honolulu*, No. 19-cv-00009-DKW-KJM, 2019 WL 4684455, at *8 (D. Haw. Sept. 25, 2019) ("police officers are under a duty to avoid any affirmative acts which worsen the situation of the plaintiff") (cleaned up); *Lopez,* 190 Cal. App. 3d at 681 (special relationship has been found in cases where "the representations or conduct by the police which cause the victim(s) to detrimentally rely on the police such that the risk of harm as the result of police negligence is something more than that to which the victim was already exposed.").

It is undisputed that the Botten plaintiffs remained inside their residence throughout the duration of the law enforcement encounter with Puga and that they were never given any commands by County Defendants to do anything that would have increased the risk of harm they were already exposed based on Puga's refusal to surrender peaceably.  (UMF 58-59); *Golick,* 82 Cal. App. 5th at 1148 ("failing to eliminate a pre-existing risk of harm does not satisfy the element of increased risk required to establish a negligent undertaking.").

While there is a recognized duty of law enforcement officers to act reasonably

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

in their **_own_** use of deadly force or face liability for injuries caused by their deadly force, the undisputed evidence here is that Defendant Adams use of deadly force did not injure the Bottens. (UMF 91, 93-94, 96-99, 107-112). County Defendants are not aware of any case law that extends the duty to act reasonably when using deadly force to a duty of care to bystanders harmed inadvertently by a different officer's use of deadly force. *Koussayo v. City of Stockton*, 54 Cal. App. 5th 909, 946-947 (2020) (City cannot be liable for the "collective response" as unreasonable, where no individual officer is liable). Nor should the law be so extended.

Finally, Defendants anticipate Plaintiffs will argue the County Defendants allegedly utilized negligent tactics during the standoff leading up to the shooting and should therefore be held legally responsible for said tactics. However, there is no evidence that any tactics by the County Defendants were outside of the realm of reason given the actions of Puga. (UMF 22-43); *Brown v. Ransweiler,* 171 Cal. App. 4th 516, 537-538 (2009) ("As long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in successful apprehension of a violent suspect, in order to avoid liability for negligence").

Further, any claim that any such tactics prior to the shooting caused the CHP officers to shoot toward the Botten house and injure them would be rank speculation. *See Golick,* 82 App. 5th at 1148 ("'In volatile situations, one can always argue that the arrival of police officers caused incremental increase in tension at the scene, and thus increased the risk of injury occurring, and whenever tragedy ensues one can argue that a different police response would have produced a better outcome. But this sort of speculative, after-action critique falls short" in subjecting an officer to tort liability for negligence).

Again, while "negligence liability for an officer's unreasonable use of deadly

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

force may potentially extend to the unintended victims who the officer injuries" there is no similar case authority to support the officer is liable for unintended injuries caused by other officers' use of deadly force.  *See*, *Golick,* 82 Cal. App. 5th at 1127 ("''But plaintiffs cite no authority for their theory that, because [Defendant] attempted to apply deadly force against Wong, he thereby assumed a torty duty of care to the hostages . . .''); *Id. at* 1137 ("'officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect.'  This settled rule does not support plaintiff's theory of negligence against the County Defendants, however because [Defendant] did not shoot or kill Wong.  The deputy shot at Wong, but none of his shots hit their mark.").

### b) The Rowland Factors Do Not Support a Duty

Even if a special relationship were established between the County Defendants and the Bottens, the *Rowland* policy considerations preclude liability here.  As stated by the California Supreme Court ". . . a court might conclude that duty should not be imposed because, for example, the type of harm the plaintiff suffered was ***unforeseeable***, or because there was no moral blameworthiness associated with the defendant's conduct, notwithstanding the defendant's special relationship to the plaintiff.  Put differently, even when a special relationship gives rise to an affirmative duty to protect, a court must still consider whether the policy considerations set out in *Rowland* warrant a departure from that duty in the relevant category of cases."  *USA* at p. 222. (emphasis added).

The policy considerations in *Rowland* are:

- the foreseeability of harm to the plaintiff,

- the degree of certainty that the plaintiff suffered injury,

- the closeness of the connection between the defendant's conduct and the connection between the defendant's conduct and the injury suffered,

- the moral blame attached to the defendant's conduct,

- the policy of preventing future harm,

- the extent of the burden to the defendant,

- the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Rowland*, 69 Cal.2d at 112-113.

The *Rowland* policy considerations instruct against imposing a duty on the County Defendants here.  First, it was not foreseeable that the Bottens who were inside of their residence, would sustain injuries from another law enforcement officer who failed to clear his background before shooting at the suspect (UMF 118) nor was there any degree of certainty that the Bottens would sustain these types of injuries. Likewise, the conduct of Puga in failing to comply with commands and the actions of the CHP officers in shooting at Puga with the Botten house in their background were much more closely related to the cause of the Botten injuries then any conduct by the County Defendants.  (UMF 82, 86, 100, 102-103, 113).

Moreover, it cannot be credibly argued that moral blame should be placed on the County Defendants for attempting to apprehend a dangerous subject or because an officer from another agency caused injury during that process.  Imposing liability as to the County Defendants for the direct harm caused by the CHP Defendants serves no role in preventing future harm, but will certainly have a substantial impact on public entities moving forward as they would now be responsible for any harm caused to bystanders when trying to perform their duties to apprehend dangerous suspects, regardless of whether they were the cause of such harm.

While an officer may be negligent for his own use of deadly force that results in unintended injury, this duty has not and should not be extended to encompass liability for the unintended consequences of another's use of deadly force.  Policy considerations dictate against such a result as imposing liability here would

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1  essentially render the County of San Bernardino vicariously liable for injuries directly

2  caused by employees of the State of California.

3       Finally, there is no need to impose such a duty as Plaintiffs already have the

4  ability to seek damages as against the individual who was the direct cause of their

5  harm for said harm.

6                    **2.  The Botten Injuries Were Not Foreseeable**

7       Moreover, County Defendants only owe a legal duty to prevent injuries that

8  were reasonably foreseeable or damage that would likely occur.  *See, Osborn v. City*

9  *of Whittier,* 103 Cal. App. 2d 609, 615-16 (1951).  "Foreseeability supports a duty

10 only to the extent the foreseeability is reasonable."  *Sturgeon v. Curnutt* (1994) 29

11 Cal. App. 4th 301, 306.  "Foreseeability involves three considerations: 'the [general]

12 foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered

13 injury, [and] the closeness of the connection between the defendant's conduct and the

14 injury suffered.'"  *Huang v. The Bicycle Casino, Inc.*, 4 Cal.App.5th 329, 341 (2d Cal.

15 2016).   Further, "when the avoidance of foreseeable harm requires a defendant to

16 control the conduct of another person, or to warn of such conduct, the common law

17 has traditionally imposed liability only if the defendant bears some special

18 relationship to the dangerous person or to the potential victim."  *Tarasoff v. Regents*

19 *of Univ. of California*, 17 Cal. 3d at 435.   Where the court "determines that the

20 defendant's conduct clearly falls outside the community's conception of fault, the

21 issue of foreseeability must be withdrawn from the jury."  *Cunningham v. Happy*

22 *Place, Inc.*, 157 Or. App. 334, 337 (1998).

23       "As a consequence, the analysis of foreseeability for purposes of assessing the

24 existence or scope of a duty is different, and more general, than it is for assessing

25 whether any such duty was breached or whether a breach caused a plaintiff's injuries

26 . . . '[I]n analyzing duty, the court's task 'is not to decide whether a *particular*

27 plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's

28

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

conduct, but rather to evaluate more generally whether the *category* of negligent conduct at issue is sufficiently likely to result in the *kind* of harm experienced that liability may appropriately be imposed on the negligent party.'" *Staats v. Vintner's Golf Club, LLC*, 25 Cal. App. 5th 826, 837 (2018) (emphasis in original).

Applied here, initially the Botten family was inside their residence when the law enforcement officers encountered Puga contained inside of his vehicle. (UMF 60-68, 70-75)  As such, it was not foreseeable that the Botten family was in any type of danger of being shot, and if anything, the danger would have been increased if the Bottens were told to leave their residence.  Likewise, once Puga was outside of his vehicle and did not surrender, the Bottens were still inside of their residence (UMF127-130) and again the risk to them would have been increased if they were told do anything other than stay inside the home.  Finally, while there may arguably have been a general potential harm to neighbors posted by a potential violent suspect, if not apprehended, that was not the type of harm experienced by the Plaintiffs here, who were injured by stray fire from the CHP Defendants.  (UMF 82, 86, 100, 102-103, 104-107, 113).

It was simply not foreseeable to the County Defendants that the CHP officers, would abandon their law enforcement training and fail to exercise due care by shooting into the Botten house.  (UMF 118).  There was plainly no "degree of certainty" that the Bottens would be exposed to gunfire inside of their house by fellow law enforcement officers.  Additionally, there was no closeness in connection between the acts taken by the County Defendants, which were focused entirely on apprehending Puga, and the actions of the CHP officers in shooting toward the Botten residence which was the undisputed ultimate cause of the Botten injuries.  (UMF 104-113).  Finally, as already set forth above, there was no special relationship between the County Defendants and the Bottens.

///

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

### 3. County Deputies Were Not the Proximate Cause

"Like duty, proximate cause reflects a judgment regarding the permissible extent of liability for negligence. It limits the defendant's liability to those foreseeable consequences that the defendants' negligence was a substantial factor in producing." *Mendoz v. City of Los Angeles,* 66 Cal. App. 4th 1333, 1342 (199*). In sum, "'[p]roximate cause' means that the injury or damage was the natural and probable consequence of the wrongful or negligent act or omission ***and the ability on the part of a person of ordinary intelligence reasonably to have foreseen or anticipated the harmful consequence of his act or omission."*** *Osborn v. City of Whittier*, 103 Cal.App.2d 609, 615 (1951)(emphasis added). "The question is whether it was reasonably foreseeable that injury or damage would likely occur." *Osborn*, 103 Cal.App.2d at 615-16. "'[T]he closeness of the connection between the defendant's conduct and the injury suffered[,] [citation] is strongly related to the question of foreseeability itself' and generally is relevant when intervening third party conduct caused the injury." *Staats v. Vintner's Golf Club, LLC*, 25 Cal. App. 5th 826, 839 (2018) quoting *Kesner v. Superior Court*, 1 Cal. 5th 1132, 1148 (2016).

Plaintiffs claim that Defendants Adams and Vaccari employed negligent tactics when interacting with Puga which eventually led to the shooting. Even if this were true, the undisputed evidence is that they did not shoot the Bottens (UMF 33, 54, 91, 93-94, 96-99, 103, 107-112) and could not have reasonably anticipated that one of the CHP officers would have done so. (UMF 118).

The law is clear, "a public employee is not liable for an injury caused by the act or omission of another person." Government Code § 820.8. While nothing in §820.8 "exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission" the conduct of Sergeant Vaccari, and/or Deputy Adams when trying to apprehend Puga, even if "negligent" was not the proximate cause or otherwise, of any injury to the Bottens. *See,* Government Code

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

§820.8

### 4. The Actions of the CHP Defendants Were a Superseding Cause

"'A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his *antecedent* negligence is a substantial factor in bringing about.'" *Farr v. NC Mach. Co.*, 186 F.3d 1165, 1169 (9th Cir. 1999) quoting Restatement 2d Torts § 440; *Brewer v. Teano*, 40 Cal. App. 4th 1024, 1031.   "Where, subsequent to the defendant's negligent act, an independent intervening force actively operates to produce the injury, the ***chain of causation*** must be broken."   6 Witkin, Summary of California Law (11th ed. 2017) Torts § 1348.

"'It is usually said that if the risk of injury might have been reasonably foreseen, the defendant is liable, but that if the independent intervening act is ***highly unusual or extraordinary***, not reasonably likely to happen and hence not foreseeable, it is a *superseding cause*, and the defendant is not liable.'" *Ash v. North American Title Co.*, 223 Cal.App.4th 1258, 1274 (Cal. 2014) (emphasis added). "A superseding cause generally has to happen ***after*** the negligence of the defendant.   *Sofec* describes superseding intervening cause as 'a later cause of independent origin that was not foreseeable.'" *Farr v. NC Mach. Co.*, 186 F.3d 1165, 1168 (9th Cir. 1999)(emphasis added).

Once again, even if the Court finds County Defendants were negligent at any time during their apprehension of Puga, the action of the CHP Defendants in shooting toward the Botten residence was not the reasonably foreseeable result of any of the conduct by County Defendants thereby breaking any chain of causation. *See e.g., Lucas v. City of Long Beach*, 60 Cal. App. 3d 341, 351 (Cal. 1976) ("The intentional act of a third person is a superseding cause of harm and relieves the original actor of liability unless such act was reasonably foreseeable or the failure to foresee such act

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1 was a factor in the original negligence."); *Tate v. Canonica,* 180 Cal. App. 2d 898

2 (1960)("the intervening act of a third person does not relieve the original wrongdoer

3 of liability if the intervening act was a reasonably foreseeable result of the original

4 actor's wrongdoing.").

5     **B.**     <u>**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**</u>

6     Plaintiffs have also asserted a claim for Negligent Infliction of Emotional

7 Distress on the grounds that each of the family members witnesses the physical

8 injuries sustained by the others, causing distress. (First Amended Complaint – Dkt.

9 27 ¶¶ 71-72). As an initial matter, Plaintiffs must prove they are (1) closely related

10 to the injury victim, (2) present at the scene of the injury-producing event at the time

11 it occurred and was then aware that it was causing injury to the victim and, (3) as a

12 result suffered emotional distress beyond that which would be anticipated. *Spates v.*

13 *Dameron Hospital Assn.*, 114 Cal.App.4th 208, 213 (2003). To the extent Plaintiffs

14 maintain the actions of the County Defendants were negligent with respect to Puga, it

15 is undisputed there was no relationship between Puga and the Bottens, and therefore

16 the required element of a close relation to the victim is negated. (UMF 68).

17     As to any alleged emotional distress from witnessing the physical injuries of

18 other family members, this is merely an off shoot of their negligence claim as there is

19 no stand alone claim for negligent infliction of emotional distress under California

20 law. *See, Gu v. BMW of N. Am., LLC*, 132 Cal.App.4th 195, 204 (2005) ("[T]he

21 California Supreme Court has emphasized that '***there is no independent tort of***

22 ***negligent infliction of emotional distress***.'") (emphasis added); *Potter v. Firestone*

23 *Tire & Rubber Co.,* 6 Cal. 4th 965, 984 (1993) ("[T]here is no independent tort of

24 negligent infliction of emotional distress.") (internal citation omitted). As a result,

25 for claims involving emotional distress a plaintiff must still plead and prove

26 negligence by alleging the "traditional elements of duty, breach of duty, causations

27 and damages." *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992).

28

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

Thus, Plaintiffs' Fifth Claim for Negligent Infliction of Emotional Distress fails for the same reasons as their Negligence theory.

## C.    **GOVERNMENT CODE IMMUNITIES**

Even if the Court were to find that there was a legal duty and a triable issue on proximate cause, Plaintiff's claims are still barred by a host of state law immunities. *See, Steinle v. City and County of San Francisco,* 919 F.3d 1154,1162 (9th Cir. 2019) (finding "courts routinely answer questions of immunity" where facts are not in dispute).

Government Code § 820.2 provides "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

The Court defines discretionary acts as "'those wherein there is no hard and fast rule as to the course of conduct that one must or must not take and, if there is a clearly defined rule, such would eliminate discretion.'" *Johnson v. State*, 69 Cal.2d 782, 788 (1968). A "'discretionary act is one which requires 'personal deliberation, decision and judgment' while an act is said to be ministerial when it amounts 'only to the performance of a duty in which the officer is left no choice of his own." *Johnson*, 69 Cal.2d at 788 citing *Morgan v. County of Yuba*, 230 Cal.App.2d 938, 942 (1964). Further, it is well settled that "law enforcement personnel have a degree of discretion as to how they chose to address a particular situation." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 632 (2013).

Plaintiffs from the advantage of hindsight now allege the deputies should have done something to move the Bottens from their residence and/or possibly taken a different approach when apprehending Puga. However, the decisions made by the County Defendants to secure Puga should be deemed discretionary in nature and therefore cloaked with the immunity set forth in Government Code § 820.2. Likewise,

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1 if Sergeant Vaccari and/or Adams are immune then so too is the County of San

2 Bernardino. *See*, Government Code § 815.2(b) ("Except as otherwise provided by

3 statute, a public entity is not liable for an injury resulting from an act or omission of

4 an employee of the public entity where the employee is immune from liability.").

5 **D.    TORT CLAIM PRESENTATION**

6     Compliance with the tort claim presentation requirements is a condition

7 precedent to suit and the failure to comply bars suit for money damages. Cal. Gov.

8 Code § 945.4; *see e.g.*, *DiCampli-Mintz v. County of Santa Clara*, 55 Cal.4th 983, 991

9 (2012). The requirements are mandatory and strict compliance is required. *Wood v.*

10 *Riverside Gen. Hosp.*, 25, Cal. App 4th 1113, 1119 (1994). Further, these

11 requirements apply equally where state law claims are brought in federal court. *See*,

12 *Karhim-Panahi v. LA Police Dept.*, 839. F.2d 621, 627 (9th Cir. 1988).

13     Gov. Code § 910 requires: "the facts constituting the causes of action pleaded

14 in the complaint must substantially correspond with the circumstances described in

15 the claims as the basis of the plaintiff's injury." *Connelly v. State of California*, 3

16 Cal.App.3d 744, 743 (1970). Where there has been an attempt to comply but the

17 compliance is defective, the test of substantial compliance controls. Under this test,

18 the court must ask whether sufficient information is disclosed on the face of the filed

19 claim "to reasonably enable the public entity to make an adequate investigation of the

20 merits of the claim and to settle it without the expense of a lawsuit." *City of San Jose*

21 *v. Superior Court*, 12 Cal.3d 447, 456 (1974). The doctrine of substantial compliance,

22 however, cannot cure total omission of an essential element from the claim or remedy

23 a plaintiff's failure to comply meaningfully with the statute. *Hall v. City of Los*

24 *Angeles*, 19 Cal.2d 198 (1941); *Loehr v. Ventura County Community College Dist.*,

25 147 Cal.App.3d 1071, 1082-83 (Cal. 2d 1983).

26     Here the identical claims submitted by each Plaintiff generally allege "[t]here

27 were shots fired by the police agency employees. Respondent with family members

28

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

were at their home located at 17994 Catalpa Street, Hesperia, CA 92395.  The bullets shot and fired in the course of the pursuit and apprehension struck claimant resulting in serious injuries and damage." (UMF 123-126).  In short, Plaintiffs' Tort Claim contends they are seeking damages for bullets that struck them. The County Defendants had the ability to investigate this claim and have presented clear and irrefutable evidence that the bullets fired by County Defendants did not strike any Plaintiff.  What Plaintiffs failed to do is provide notice of or give the County the ability to investigate their revised theory that the County Defendants caused the Bottens' injuries through various pre-shooting tactics.  *See e.g., Fall River v. Joint Unified School District v. Superior Court,* 206 Cal. App. 3d 431, 435 (1988) (dismissing Plaintiff's complaint where new cause of action was "an entirely different factual basis than what was set forth in the tort claim"); *Donohue v. State of California,* 178 Cal. App. 3d 795, 804 (1986) (tort claim alleging DMV negligently allowed uninsured motorists to take driving exam did not fairly encompass cause of action alleging negligent supervision by the driving instructor during exam).  As such, this theory of liability must be dismissed.

## V.    <u>CONCLUSION</u>

For all the reasons stated herein, summary judgment should be granted.

DATED:  January 30, 2025

**LYNBERG & WATKINS**
A Professional Corporation

By:  */s/ Shannon L.. Gustafson*
Shannon L. Gustafson
Amy R. Margolies
Anita K. Clarke
Attorneys for Defendants, COUNTY OF SAN BERNARDINO, ROBERT VACCARI and JAKE ADAMS

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for County Defendants certifies that this brief contains 6,827 words, which:

☐ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED:  January 30, 2025

**LYNBERG & WATKINS**
A Professional Corporation


By:  */s/ Shannon L.. Gustafson*
Shannon L. Gustafson
Amy R. Margolies
Anita K. Clarke
Attorneys for Defendants, COUNTY OF SAN BERNARDINO, ROBERT VACCARI and JAKE ADAMS

**COUNTY DEFENDANTTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR  IN THE ALTERNATIVE SUMMARY ADJUDICATTION; MEMORANDUM OF POINTS AND AUTHORITIES**