Shannon L. Gustafson (SBN 228856)
sgustafson@lynberg.com
Amy R. Margolies (SBN 283471)
amargolies@lynberg.com
Anita K. Clarke (SBN 321015)
aclarke@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 W. Town & Country Road, Suite #1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendants, COUNTY OF SAN BERNARDINO, ROBERT VACCARI and JAKE ADAMS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN WAYNE BOTTEN, SR.; TANJA DUDEK-BOTTEN; ANNABELLE BOTTEN; and J.B., a minor by and through his guardian JONATHAN WAYNE BOTTEN, SR., <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; ISAIAH KEE; MICHAEL BLACWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 1-10 inclusive, <br><br> Defendants. | CASE NO. 5:23-cv-00257-KK-(SHKx) <br><br> *Assigned for All Purposes to:* <br> *Hon. Kenly Kiya Kato– Courtroom #3* <br><br> **DECLARATION OF LUCIEN C. HAAG IN SUPPORT OF COUNTY DEFENDANTS' MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION** <br><br> Date:      March 20, 2025 <br> Time:      9:00 a.m. <br> Courtroom: 3 <br><br> *Trial: July 28, 2025* <br><br> *Complaint filed: 02/16/23* <br> *FAC filed: 06/08/23* |

1
**DECLARATION OF LUCIEN C. HAAG**

## DECLARATION OF LUCIEN C. HAAG

I, Lucien C. Haag, declare as follows:

1. I am a Criminalist and Forensic Firearms Examiner with over 60 years of practical experience in the examination and comparison of firearms and firearms-related evidence. I have a Bachelor of Science degree in Chemistry from the University of California at Berkeley that I received in 1963. Following this I received additional training in chemistry, mathematics and criminalistics at California State University at Long Beach during the years 1963 to 1965. The criminalistics courses at California State University included forensic firearms examination and firearms evidence.

2. I was employed as a Criminalist and later as the Technical Director of the Phoenix Police Crime Laboratory in Phoenix, Arizona from June 1965 to March 1982 during which time I served as the primary firearms examiner for a number of years. As the Technical Director of the Phoenix Police Crime Laboratory, I also trained others in the forensic examination of firearms and firearms-related evidence.

3. I am a certified Instructor in Criminalistics with eleven years teaching experience in this field including the examination of firearms evidence (fired bullets and cartridges, the comparison of ammunition components, the analysis of gunshot residues, distance determinations, firearms operability, etc.).

4. Since leaving my employment with the Phoenix Police Crime Laboratory in March of 1982 I have continued to provide training in the area of firearms evidence and examination for both police and legal audiences. I have remained actively and continuously involved in actual casework relating to shooting incidents with a particular focus on the reconstruction of shooting incidents.

5. I am a member of a number of forensic science organizations to include the American Academy of Forensic Sciences, the Southwest Association of Forensic Scientists, the California Association of Criminalists, the Association of Firearm and

Toolmark Examiners and others. I am a past member of the International Wound Ballistics Association and held Board Member status in that organization. I hold a Distinguished Membership status in the Association of Firearm and Toolmark Examiners and have received the Key Member Award on three occasions (1978, 1979, and 1992). I am also a past-President of this Association (1985-1986).

6. I have authored over 200 scientific presentations and papers on firearms evidence, most of which have been published in the *Journal of the Association of Firearm and Toolmark Examiners*. I have also compiled a two volume, 3-hour videotape/DVD training program with a 90-page manual entitled "Forensic Firearms Evidence: Elements of Shooting Incident Investigation." I am the co-author of the current, 3rd edition of the textbook on firearms evidence and shooting reconstruction (Shooting Incident Reconstruction Elsevier/Academic Press 2021).

7. A true and correct copy of my *curriculum vitae* is attached hereto as Exhibit C.

8. I have qualified as an expert witness and criminalist on the subject of firearms evidence, firearms examination, gunshot residue analysis and various reconstructive aspects of shooting incidents in both United States Federal Courts and state courts. States where such testimony has been given include Arizona, Alaska, Alabama, Georgia, California, Colorado, Florida, Louisiana, Indiana, Iowa, Kansas, Michigan, New Jersey, Nevada, Oregon, Montana, New Mexico, Pennsylvania, Idaho, Oklahoma, Texas, Washington, West Virginia, Virginia, Tennessee, and Hawaii. I have also testified on behalf of the Crown on three occasions in Canada and Northern Ireland.

9. The following facts are within my personal knowledge. If called as a witness, I could and would testify competently thereto. I make this declaration in support of County of San Bernardino, Sergeant Vaccari's, and Deputy Adams' ("County Defendants") Motion for Summary Judgment or in the Alternative Motion

for Summary Adjudication in this matter.

10. In making this declaration, I reviewed the following:

- California Highway Patrol Incident Report F03885021,
- California Highway Patrol (CHP) dashcam videos of the pursuit and subsequent standoff culminating in a shooting incident at the intersection of Peach Avenue and Catalpa Street in Hesperia, California,
- numerous shooting scene photographs depicting the locations of the white Expedition, CHP vehicles, the San Bernardino County Sheriff's Department (SBCSD) vehicles, yellow, plastic 'tents' (marking the locations of spent law enforcement cartridge cases), the decedent, the decedent's semi-automatic pistol near his body, a spent 9mm cartridge case also near the decedent's body. Additional photographs depicted the Botten residence, apparent ballistic damage to the Botten residence and various images of injuries to John Botten, Sr., John Botten, Jr. and Tanja Botten,
- numerous x-ray views of small, radio-opaque objects associated with the wounds to the three Botten family members,
- Audio interviews of John Botten, Sr., John Botten, Jr., and Tanja Botten.
- Audio interviews of CHP Sgt. Kee, CHP officer Bernardo Rubalcava, CHP officer Michael Blackwood, and SBCSD Deputy Jake Adams,
- Aerial views of the scene marked by CHP Sgt. Kee, CHP officer Rubalcava, CHP officer Blackwood, and SBCSD Sgt. Vaccari,
- The autopsy report for Hector Puga and the autopsy photographs.
- The property impound list of recovered and secured items of physical evidence from the scene and the Ford Expedition,

The materials I reviewed include the concurrently lodged Exhibit A – Sergeant Kee's dashcam footage of the incident, and Exhibit B – cell phone video from Erin Mangerino.

4
**DECLARATION OF LUCIEN C. HAAG**

11. A review of these materials revealed the following officers used the following firearms:

CHP Sergeant Kee used an AR15 (Speer .223 Remington caliber with jacketed hollow point bullets).

CHP Officer Blackwood used an AR15 (Speer .223 Remington caliber with jacketed hollow point bullets).

CHP Officer Rubalcava used a Smith & Wesson M&P pistol (.40S&W caliber, loaded with Federal brand JHP ammunition).

SBCSD Deputy Jake Adams used a Glock (9mm caliber, loaded with Winchester +P and +P+ JHP ammunition).

SBCSD Sergeant Robert Vaccari had a .45 Auto pistol, however, he did not discharge his pistol at any point.

12. A true and accurate copy of the materials I reviewed to come to a conclusion about what firearm each law enforcement officer used is attached hereto as Exhibit D.

13. A review of the materials showed Deputy Adams fired a total of 10 shots from his 9 mm Glock pistol from the right side of Hector Puga's vehicle in a northwesterly direction as Puga ran in that same northwesterly direction.

14. The Botten house is on the northeast corner of Peach and Catalpa, pushed back from the intersection.

15. In order to shoot at the Botten house, a deputy would have to shoot in a northeastern direction from his shooting position adjacent to the right side of Puga's vehicle.

16. Based upon my review of the materials, including the video footage from Sergeant Kee's patrol vehicle, Deputy Adams' firearm was never pointed in the direction of the Botten family house at the time of discharge. As such, the trajectory

5
**DECLARATION OF LUCIEN C. HAAG**

1  of his bullets was such that they would not have hit the Botten residence directly.

2      17.    Because Deputy Adams did not fire in the direction of the Botten house based upon the video evidence, the only way Deputy Adams' bullets would have made contact with the Plaintiffs was if he discharged one or more of his shots in the direction of the Botten house. Even if he had done so and one or more of his bullets ricocheted from asphalt of bare ground, the bullets would have remained intact because the 9mm bullets have a relatively low velocity compared to the high velocity bullets fired from the AR15 rifles, and have a propensity to remain intact following shallow incident angle strikes and subsequent ricochet. An example of ~~a~~ an intact, ricocheted 9mm bullet is attached hereto as Exhibit E, which was a 9mm bullet that was recovered from Puga that had evidence it ricocheted off the ground, specifically the bullet's engravings were completely obliterated and over-written by the abrasive action of an impact with soil. However, the bullet did not fragment or even deform and as detailed below the injuries to the Botten family were consistent with fragmentation.

    18.    In contrast, the AR15 rifle bullets have muzzle velocities in the order of 3000 feet per second. These very energetic bullets typically undergo fragmentation upon striking an object to include ricochet events from asphalt and bare ground. These fragments depending upon their size, weight and remaining velocity are still capable of producing gunshot wounds and injuries of individuals down range of such impact sites. Based on the videos reviewed and testimony of Sgt. Kee the Botten family was downrange from Sgt. Kee when he fired his initial volley of AR15 shots.

    19.    I reviewed photographs of the injuries taken after the incident and numerous x-rays of small, irregular, round-opaque objects associated with the injuries sustained by Plaintiffs. In reviewing the following photographs attached hereto as Exhibit F, and the medical records from the Botten family attached hereto as Exhibit G, the evidence supports that the injuries sustained by the Botten family were caused

by fragmentation consistent with the rifle ammunition utilized by the AR-15.

20. Because the injuries to the Plaintiffs were caused by rifle bullet fragments, Deputy Adams and Sergeant Vaccari can be excluded as the cause of the injuries sustained by Botten Sr, Botten Jr. and Tanja Botten because neither Deputy fired a rifle during the incident.

21. There were no 9mm intact bullets found in the Botten residence.

22. The type of fragmenting that caused the injuries to the Botten family are consistent with ammunition fired by the AR15 rifle used by either Sergeant Kee and/or Officer Blackwood.

23. Exhibit H is a photograph taken in daylight shortly after the incident that transpired which I understand to represent the positions of the five vehicles involved in the incident, Mr. Puga, and the Botten house. The annotations were generated by me based upon my review of the evidence.

24. Exhibit I is a still image of Sergeant Kee's dashcam footage during the incident. The annotations were created by me based upon my review of the evidence.

25. Exhibit J is a photograph taken during daylight from the east side of Peach Avenue looking north. The annotations were created by me based on my review of the evidence depicting the locations of Deputy Adams, the Botten house, and Mr. Puga throughout the time Adams discharged his firearm.

I declare under penalty of perjury under the laws of the State of California that the above statement is true and correct. Executed this 28th day of January 2025, in Scottsdale, Arizona.

*[Signature: Lucien C. Haag]*
DECLARANT
LUCIEN C. HAAG

7
DECLARATION OF LUCIEN C. HAAG

0042