# EXHIBIT L

0192

1  **LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
2  dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
3  hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
4  Woodland Hills, California, 91367
Telephone: (818) 347-3333
5  Facsimile: (818) 347-4118

6  Attorneys for Plaintiffs
JONATHAN WAYNE BOTTEN, SR.,
7  TANJA DUDEK-BOTTEN, ANNABELLE BOTTEN,
AND J.B.

8

9                **UNITED STATES DISTRICT COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11

12

13  JONATHAN WAYNE BOTTEN, SR.;          Case No. 5:23-cv-00257-JGB-SHK
TANJA DUDEK-BOTTEN;
14  ANNABELLE BOTTEN; and J.B., a        **FIRST AMENDED COMPLAINT**
minor, by and through his guardian    **FOR DAMAGES**
15  JONATHAN WAYNE BOTTEN, SR.,
1.  Fourth Amendment—Excessive
16              Plaintiffs,                  Force (42 U.S.C. § 1983)
2.  Substantive Due Process (42
17       vs.                                 U.S.C. § 1983)
3.  Battery
18                                       4.  Negligence
STATE OF CALIFORNIA; COUNTY      5.  Negligent Infliction of Emotional
19  OF SAN BERNARDINO; ISAIAH            Distress
KEE; MICHAEL BLACKWOOD;          6.  Violation of Cal. Civil Code § 52.1
20  BERNARDO RUBALCAVA;
ROBERT VACCARI; JAKE ADAMS;
21  and DOES 1-10, inclusive,            **DEMAND FOR JURY TRIAL**

22              Defendants.

23

24

25

26

27

28

_____
FIRST AMENDED COMPLAINT FOR DAMAGES

0193

**COMPLAINT FOR DAMAGES**

JONATHAN WAYNE BOTTEN, SR., TANJA DUDEK-BOTTEN, ANNABELLE BOTTEN, and J.B., a minor by and through his legal guardian JONATHAN WAYNE BOTTEN, SR., for their Complaint against STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO, ISAIAH KEE, MICHAEL BLACKWOOD, BERNARDO RUBALCAVA, ROBERT VACCARI, JAKE ADAMS, and DOES 1-10, inclusive, allege as follows:

**JURISDICTION AND VENUE**

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

**INTRODUCTION**

3.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the officer-involved shooting of Plaintiffs JONATHAN WAYNE BOTTEN, SR., TANJA DUDEK-BOTTEN, and J.B. on February 17, 2021.

/ / /
/ / /
/ / /

**PARTIES**

4.     At all relevant times, Plaintiff JONATHAN WAYNE BOTTEN, SR. ("JONATHAN") was an individual residing in the City of Hesperia in the County of San Bernardino, California.

5.     At all relevant times, Plaintiff TANJA DUDEK-BOTTEN ("TANJA") was an individual residing in the City of Hesperia in the County of San Bernardino, California.

6.     At all relevant times, Plaintiff ANNABELLE BOTTEN ("ANNABELLE") was an individual residing in the City of Hesperia in the County of San Bernardino, California.

7.     At all relevant times, Plaintiff J.B. ("J.B."), a minor, was an individual residing in the City of Hesperia in the County of San Bernardino, California.

8.     At all relevant times, Defendant STATE OF CALIFORNIA ("STATE") is and was a duly organized public entity existing under the laws of the State of California. STATE is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies, including the California Highway Patrol ("CHP") and its agents and employees. At all relevant times, Defendant STATE is and was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the and its employees and agents complied with the laws of the United States and of the State of California.

9.     At all relevant times, Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is and was a duly organized public entity existing under the laws of the State of California. COUNTY is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies, including the San Bernardino Sheriff's Department ("SBSD") and its agents and employees. At all relevant times, Defendant COUNTY is and was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the and its

FIRST AMENDED COMPLAINT FOR DAMAGES

0195

1    employees and agents complied with the laws of the United States and of the State

2    of California.

3        10.    At all relevant times, Defendants ISAIAH KEE ("KEE"), MICHAEL

4    BLACKWOOD ("BLACKWOOD"), and BERNARDO RUBALCAVA

5    ("RUBALCAVA") (collectively "OFFICER DEFENDANTS") were duly appointed

6    by STATE as CHP officers and employees or agents of STATE, subject to oversight

7    and supervision by STATE's elected and non-elected officials. KEE,

8    BLACKWOOD, and RUBALCAVA acted under color of law, to wit, under the

9    color of the statutes, ordinances, regulations, policies, customs, and usages of

10    defendant STATE and the CHP, and under the color of the statutes and regulations

11    of the State of California.

12        11.    At all relevant times, Defendants ROBERT VACCARI ("VACCARI")

13    and JAKE ADAMS ("ADAMS") (collectively "DEPUTY DEFENDANTS") were

14    duly appointed by COUNTY as SBSD deputies and employees or agents of

15    COUNTY, subject to oversight and supervision by COUNTY's elected and non-

16    elected officials. VACCARI and ADAMS acted under color of law, to wit, under the

17    color of the statutes, ordinances, regulations, policies, customs, and usages of

18    defendant COUNTY and the SBSD, and under the color of the statutes and

19    regulations of the State of California.

20        12.    At all relevant times, Defendants DOES 1-3 ("DOE OFFICERS") were

21    duly appointed by STATE as CHP officers and employees or agents of STATE,

22    subject to oversight and supervision by STATE's elected and non-elected officials.

23    DOES 1-3 acted under color of law, to wit, under the color of the statutes,

24    ordinances, regulations, policies, customs, and usages of defendant STATE and the

25    CHP, and under the color of the statutes and regulations of the State of California.

26        13.    At all relevant times, Defendants DOES 4-6 ("DOE DEPUTIES") were

27    duly appointed by COUNTY as SBSD deputies and employees or agents of

28    COUNTY, subject to oversight and supervision by COUNTY's elected and non-

0196

1  elected officials. DOES 4-6 acted under color of law, to wit, under the color of the

2  statutes, ordinances, regulations, policies, customs, and usages of defendant

3  COUNTY and the SBSD, and under the color of the statutes and regulations of the

4  State of California.

5       14.    At all relevant times, Defendants DOES 7-8 are managerial,

6  supervisorial, and policymaking employees of the CHP, who were acting under

7  color of law within the course and scope of their duties as managerial, supervisorial,

8  and policymaking employees for the CHP.  DOES 7-8 were acting with the

9  complete authority and ratification of their principal, Defendant STATE.

10      15.    At all relevant times, Defendants DOES 9-10 are managerial,

11  supervisorial, and policymaking employees of the SBSD, who were acting under

12  color of law within the course and scope of their duties as managerial, supervisorial,

13  and policymaking employees for the SBSD.  DOES 9-10 were acting with the

14  complete authority and ratification of their principal, Defendant COUNTY.

15      16.    KEE, BLACKWOOD, RUBALCAVA, VACCARI, ADAMS, and

16  DOES 1-10 are sued in their individual capacities.

17      17.    In doing the acts and failing and omitting to act as hereinafter

18  described, KEE, BLACKWOOD, RUBALCAVA, and DOE OFFICERS were

19  acting on the implied and actual permission and consent of Defendant STATE.

20      18.    In doing the acts and failing and omitting to act as hereinafter

21  described, VACCARI, ADAMS, and DOE DEPUTIES were acting on the implied

22  and actual permission and consent of Defendant COUNTY.

23      19.    The true names and capacities of DOES 1-10 are unknown to Plaintiffs,

24  who otherwise sues these Defendants by such fictitious names. Plaintiffs will seek

25  leave to amend this Complaint to show the true names and capacities of the

26  Defendants when they have been ascertained. Each of the fictitiously named

27  Defendants is responsible in some manner for the conduct or liabilities alleged

28  herein.

0197

20.    At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

21.    All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

22.    On or around April 6, 2021, Plaintiffs filed comprehensive and timely claims for damages with the State of California pursuant to the applicable sections of the California Government Code. Over forty-five days have passed without a final disposition on these claims.

23.    On or around April 6, 2021, Plaintiffs filed comprehensive and timely claims for damages with the County of San Bernardino pursuant to the applicable sections of the California Government Code. These claims were rejected on May 21, 2021.

24.    On November 3, 2021, Plaintiffs filed an action arising out of the February 17, 2021 incident in the Superior for the County of San Bernardino, alleging state law negligence. The filing of Plaintiffs' action in state court tolled the 6-month statute of limitations for Plaintiffs' state law claims. *See* Cal. Gov't Code § 945.6; *Straley v. Gamble*, 217 Cal. App. 4th 533, 538 (2013) ("the statute of limitations in civil actions stops running the moment the complaint is filed").

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

25.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 24 of this Complaint with the same force and effect as if fully set forth herein.

0198

26.     This incident occurred on February 17, 2021 at approximately 3:00 a.m. near 17994 Catalpa Street in Hesperia, California ("BOTTEN RESIDENCE"). Plaintiffs were asleep inside the BOTTEN RESIDENCE in their respective beds when Plaintiff TANJA heard sirens near their residence and woke Plaintiff JONATHAN up. JONATHAN looked outside one of the windows of the BOTTEN RESIDENCE and observed law enforcement try to intercept a vehicle, ultimately resulting in the vehicle becoming disabled due to a spike strip across the street from the BOTTEN RESIDENCE. JONATHAN and TANJA then went back to sleep.

27.     At approximately 3:35 a.m., Plaintiff TANJA awoke again to the sound of sirens and a helicopter outside the BOTTEN RESIDENCE. TANJA woke JONATHAN up again and JONATHAN looked outside and observed an incident taking place in front of his house. At around this time, TANJA woke her daughter ANNABELLE and son J.B. up and gathered them in the kitchen area. JONATHAN stood in front of the front doorway and took a video of what appeared to be a passenger of a vehicle with hands up being ordered to walk backwards. After JONATHAN took the video, he went back inside his house to get ready for work.

28.     At approximately 4:20 a.m., TANJA informed JONATHAN that it appeared the driver of the vehicle, later identified as Hector Puga ("PUGA"), was getting out of the vehicle. JONATHAN went to the doorway to observe. TANJA and J.B. stood behind JONATHAN observing the incident as well. ANNABELLE was in the kitchen of the BOTTEN RESIDENCE. At around this time, Plaintiffs heard shots and saw a spark hit their metal screen door as OFFICER DEFENDANTS and DEPUTY DEFENDANTS shot at PUGA in the direction of the BOTTEN RESIDENCE. Based on JONATHAN's observations, it appeared that PUGA did not have a gun immediately prior to or during the shooting. Moreover, the OFFICER DEFENDANTS and DEPUTY DEFENDANTS continued to shoot at PUGA's direction even after it was clear that PUGA had been struck and seriously injured by some of the shots, had fallen face-first onto the ground and away from the

1   OFFICER DEFENDANTS and DEPUTY DEFENDANTS, and was not making and
2   threatening or furtive movements.

3       29.     The BOTTEN RESIDENCE is enclosed within a chain-linked fence
4   that surrounds the entire property, including the front yard, side yard, and backyard
5   of the BOTTEN RESIDENCE. Due to the presence of the officers surrounding the
6   BOTTEN RESIDENCE property and shots by OFFICER DEFENDANTS and
7   DEPUTY DEFENDANTS towards and into the BOTTEN RESIDENCE, OFFICER
8   DEFENDANTS and DEPUTY DEFENDANTS restrained JONATHAN, TANJA,
9   ANNABELLE, and J.B.'s liberty to leave the premises of their home. At the time of
10  the shooting, JONATHAN, TANJA, ANNABELLE, and J.B. were confined to their
11  home because of OFFICER DEFENDANTS and DEPUTY DEFENDANTS' show
12  of authority.

13      30.     JONATHAN fell back and heard TANJA scream that she had been shot
14  in the face. Both ANNABELLE and J.B. also observed their mother scream that she
15  had been shot. TANJA was bleeding from her face. TANJA had sustained gunshot
16  wounds to her chin and chest. In order to get medical assistance for his wife's
17  injuries, JONATHAN ran out into the front yard of the BOTTEN RESIDENCE,
18  yelling that his wife had been shot. Based on the officers' shots toward the
19  BOTTEN RESIDENCE and the officers' active efforts to apprehend PUGA,
20  JONATHAN, TANJA, ANNABELLE, and J.B. did not feel free to leave the
21  premises.

22      31.     OFFICER DEFENDANTS and DEPUTY DEFENDANTS approached
23  the family. Based on OFFICER DEFENDANTS and DEPUTY DEFENDANTS'
24  approach and presence, JONATHAN, TANJA, ANNABELLE, and J.B. believed
25  that they were not free to leave. OFFICER DEFENDANTS and DEPUTY
26  DEFENDANTS directed TANJA onto a bench in the front yard of the BOTTEN
27  RESIDENCE, to which she complied. At around this time, J.B. came out into the
28  front yard of the BOTTEN RESIDENCE, holding his side while stating that he

1    could not breathe. J.B. had sustained gunshot wounds to his chest and ribcage. J.B.

2    was instructed by OFFICER DEFENDANTS and DEPUTY DEFENDANTS to sit

3    next to his mother. J.B. obeyed this direction.

4        32.    After the paramedics had arrived and as they were taking down the

5    family's information, paramedics asked JONATHAN whether he had been shot. It

6    was at this time that JONATHAN realized that he had been shot twice in the right

7    forearm, once in his left hand, and once on his right leg.

8        33.    At all relevant times, Plaintiff ANABELLE was present and observed

9    her father, mother, and brother sustain serious gunshot injuries.

10        34.    Plaintiffs TANJA and J.B. were subsequently airlifted to the hospital

11    due to their serious injuries.

12        35.    Plaintiff JONATHAN was ultimately transported to the hospital via

13    ambulance for his gunshot injuries.

14

15                              **FIRST CLAIM FOR RELIEF**

16                **Fourth Amendment—Excessive Force (42 U.S.C. § 1983)**

17        (Plaintiffs JONATHAN, TANJA, and J.B. against OFFICER DEFENDANTS and

18                              DEPUTY DEFENDANTS)

19        36.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

20    through 35 of this Complaint with the same force and effect as if fully set forth

21    herein.

22        37.    OFFICER DEFENDANTS and DEPUTY DEFENDANTS, while

23    working as law enforcement officers for CHP and SBSD, respectively, and acting

24    within the course and scope of their duties, intentionally shot at PUGA while he was

25    between them and the BOTTEN RESIDENCE and used excessive and unreasonable

26    force against him in an effort to detain him. Upon information and belief, PUGA did

27    not pose an immediate threat of serious injury or death at the time of the shooting

28    and the number of shots was excessive. OFFICER DEFENDANTS and DEPUTY

1  DEFENDANTS had no legal justification for using deadly force against PUGA and

2  their use of deadly force while carrying out their duties as police officers was an

3  unreasonable and non-privileged use of force.

4      38.    OFFICER DEFENDANTS and DEPUTY DEFENDANTS

5  intentionally used deadly force against PUGA, which resulted in serious gunshot

6  injuries to Plaintiffs JONATHAN, TANJA, and J.B. Some of the gunshots

7  OFFICER DEFENDANTS and DEPUTY DEFENDANTS intentionally fired at

8  PUGA struck Plaintiffs JONATHAN, TANJA, and J.B.

9      39.    When OFFICER DEFENDANTS and DEPUTY DEFENDANTS

10  intentionally used deadly force against PUGA, they were aware that PUGA was

11  between them and the BOTTEN RESIDENCE, and they were aware that the

12  BOTTEN RESIDENCE was in the background when they fired gunshots in

13  PUGA's direction. OFFICER DEFENDANTS and DEPUTY DEFENDANTS knew

14  or reasonably should have known that there were innocent bystanders inside of the

15  BOTTEN RESIDENCE and that their gunshots could strike the BOTTEN

16  RESIDENCE and anyone inside the BOTTEN RESIDENCE. OFFICER

17  DEFENDANTS and DEPUTY DEFENDANTS thus fired their weapons with the

18  knowledge that innocent bystanders, including Plaintiffs, could be struck by their

19  bullets. Moreover, by intentionally using deadly force and firing towards the

20  direction of the BOTTEN RESIDENCE, OFFICER DEFENDANTS and DEPUTY

21  DEFENDANTS intended to confine Plaintiffs inside the property of the BOTTEN

22  RESIDENCE.

23      40.    By intentionally and unreasonably using deadly force that struck and

24  injured Plaintiffs JONATHAN, TANJA, and J.B., OFFICER DEFENDANTS and

25  DEPUTY DEFENDANTS deprived them of their right to be secure in their persons

26  against unreasonable searches and seizures as guaranteed to them under the Fourth

27  Amendment to the United States Constitution and applied to state actors by the

28  Fourteenth Amendment.

FIRST AMENDED COMPLAINT FOR DAMAGES

0202

41.     When OFFICER DEFENDANTS and DEPUTY DEFENDANTS intentionally fired shots that struck the BOTTEN RESIDENCE, Plaintiffs JONATHAN, TANJA, and J.B. were aware OFFICER DEFENDANTS and DEPUTY DEFENDANTS were shooting with the intent to seize PUGA, that they intended to confine Plaintiffs within the property of the BOTTEN RESIDENCE, and that they were not free to leave the premises of the BOTTEN RESIDENCE.

42.     Based on these circumstances, and due to the shots that struck the BOTTEN RESIDENCE and Plaintiffs JONATHAN, TANJA, and J.B., Plaintiffs were not free to leave the premises of the BOTTEN RESIDENCE and in fact remained on the premises. The deadly force used by OFFICER DEFENDANTS and DEPUTY DEFENDANTS terminated Plaintiffs' freedom of movement and unreasonably seized them within the meaning of the Fourth Amendment.

43.     As a direct and proximate result of the conduct of OFFICER DEFENDANTS and DEPUTY DEFENDANTS, Plaintiffs JONATHAN, TANJA, and J.B. sustained serious physical injuries and emotional distress. As a result of their injuries, JONATHAN and TANJA were unable to work for a period of time. As a result of his injuries, J.B. was unable to attend school for a period of time.

44.     As a result of their misconduct, OFFICER DEFENDANTS and DEPUTY DEFENDANTS are liable for JONATHAN, TANJA, and J.B.'s injuries, either because they were integral participants in the use of excessive force, and/or because they failed to intervene to prevent these violations.

45.     The conduct of OFFICER DEFENDANTS and DEPUTY DEFENDANTS was malicious, wanton, oppressive, and accomplished with conscious disregard for the rights and safety of others, entitling JONATHAN, TANJA, and J.B. to an award of exemplary and punitive damages as to OFFICER DEFENDANTS and DEPUTY DEFENDANTS.

46.     Plaintiffs JONATHAN, TANJA, and J.B. seek compensatory damages, punitive damages, and attorney's fees under this claim.

0203

**SECOND CLAIM FOR RELIEF**

**Substantive Due Process (42 U.S.C. § 1983)**

(Plaintiffs JONATHAN, TANJA, and J.B. against OFFICER DEFENDANTS and DEPUTY DEFENDANTS)

47.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 46 of this Complaint with the same force and effect as if fully set forth herein.

48.    Plaintiffs JONATHAN, TANJA, and J.B. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to arbitrary and/or oppressive exercises of government power that violate the decencies of civilized conduct.

49.    When OFFICER DEFENDANTS and DEPUTY DEFENDANTS fired their weapons in PUGA's direction, striking PUGA as well as Plaintiffs JONATHAN, TANJA, and J.B., they did so during an extended encounter with PUGA during which PUGA presented no imminent threat of death or serious bodily injury.

50.    Given the absence of a need to use deadly force at any point whatsoever, let alone at the particular moments at which OFFICER DEFENDANTS and DEPUTY DEFENDANTS fired their weapons, OFFICER DEFENDANTS and DEPUTY DEFENDANTS had the opportunity to deliberate before deciding to fire their weapons in the direction of PUGA and the BOTTEN RESIDENCE. At the time the shots were fired, OFFICER DEFENDANTS and DEPUTY DEFENDANTS were not facing an escalating situation requiring them to make any snap judgments regarding whether or when to use deadly force.

0204

1      51.     By firing their weapons in PUGA's direction in the absence of any

2   imminent threat of death or serious bodily harm, without legal justification, and in

3   reckless or conscious disregard of the likelihood that their shots would strike the

4   BOTTEN RESIDENCE—which was visible to OFFICER DEFENDANTS and

5   DEPUTY DEFENDANTS when they fired their weapons—or its occupants,

6   OFFICER DEFENDANTS and DEPUTY DEFENDANTS demonstrated deliberate

7   indifference toward the constitutional rights, safety, and bodily integrity of Plaintiffs

8   JONATHAN, TANJA, and J.B.

9      52.     As a direct and proximate result of these actions, Plaintiffs

10  JONATHAN, TANJA, and J.B. sustained serious physical injuries and emotional

11  distress. As a result of their injuries, JONATHAN and TANJA were unable to work

12  for a period of time. As a result of his injuries, J.B. was unable to attend school for a

13  period of time.

14     53.     Plaintiffs JONATHAN, TANJA, and J.B. seek compensatory damages,

15  punitive damages, and attorney's fees under this claim.

16

17                              **THIRD CLAIM FOR RELIEF**

18                                        **Battery**

19              (Plaintiffs JONATHAN, TANJA, and J.B. against all Defendants)

20     54.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

21  through 53 of this Complaint with the same force and effect as if fully set forth

22  herein.

23     55.     OFFICER DEFENDANTS and DEPUTY DEFENDANTS, while

24  working as law enforcement officers for CHP and SBSD, respectively, and acting

25  within the course and scope of their duties, intentionally shot at PUGA while he was

26  between them and the BOTTEN RESIDENCE and used excessive and unreasonable

27  force against him. Upon information and belief, PUGA did not pose an immediate

28  threat of serious injury or death at the time of the shooting and the number of shots

---

-12-

FIRST AMENDED COMPLAINT FOR DAMAGES

0205

1  was excessive. OFFICER DEFENDANTS and DEPUTY DEFENDANTS had no

2  legal justification for using deadly force against PUGA and their use of deadly force

3  while carrying out their duties as police officers was an unreasonable and non-

4  privileged use of force.

5        56.    When OFFICER DEFENDANTS and DEPUTY DEFENDANTS

6  intentionally used deadly force against PUGA, they also used deadly force against

7  Plaintiffs JONATHAN, TANJA, and J.B. Some of the gunshots OFFICER

8  DEFENDANTS and DEPUTY DEFENDANTS intentionally fired struck Plaintiffs

9  JONATHAN, TANJA, and J.B.

10        57.    When OFFICER DEFENDANTS and DEPUTY DEFENDANTS

11  intentionally used deadly force against PUGA, they were aware that PUGA was

12  between them and the BOTTEN RESIDENCE, and they were aware that the

13  BOTTEN RESIDENCE was in the background when they fired gunshots in

14  PUGA's direction. OFFICER DEFENDANTS and DEPUTY DEFENDANTS knew

15  or reasonably should have known that there were innocent bystanders inside of the

16  BOTTEN RESIDENCE. OFFICER DEFENDANTS and DEPUTY DEFENDANTS

17  thus fired their weapons with the knowledge that innocent bystanders, including

18  Plaintiffs, could be struck by their bullets.

19        58.    As a direct and proximate result of the conduct of OFFICER

20  DEFENDANTS and DEPUTY DEFENDANTS, Plaintiffs JONATHAN, TANJA,

21  and J.B. sustained serious physical injuries and emotional distress. As a result of

22  their injuries, JONATHAN and TANJA were unable to work for a period of time.

23  As a result of his injuries, J.B. was unable to attend school for a period of time.

24        59.    Defendant STATE is vicariously liable for the wrongful acts of

25  OFFICER DEFENDANTS, pursuant to section 815.2(a) of the California

26  Government Code, which provides that a public entity is liable for the injuries

27  caused by its employees within the scope of the employment if the employee's act

28  would subject him or her to liability.

0206

1      60.     Defendant COUNTY is vicariously liable for the wrongful acts of

2  DEPUTY DEFENDANTS, pursuant to section 815.2(a) of the California

3  Government Code, which provides that a public entity is liable for the injuries

4  caused by its employees within the scope of the employment if the employee's act

5  would subject him or her to liability.

6      61.     The conduct of OFFICER DEFENDANTS and DEPUTY

7  DEFENDANTS was malicious, wanton, oppressive, and accomplished with

8  conscious disregard for the rights and safety of others, entitling JONATHAN,

9  TANJA, and J.B. to an award of exemplary and punitive damages as to OFFICER

10  DEFENDANTS and DEPUTY DEFENDANTS.

11      62.     Plaintiffs JONATHAN, TANJA, and J.B. seek compensatory and

12  punitive damages under this claim.

13

14                    **FOURTH CLAIM FOR RELIEF**

15                              **Negligence**

16          (Plaintiffs JONATHAN, TANJA, and J.B. against all Defendants)

17      63.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

18  through 62 of this Complaint with the same force and effect as if fully set forth

19  herein.

20      64.     Police officers, including OFFICER DEFENDANTS and DEPUTY

21  DEFENDANTS, have a duty to use reasonable care to prevent harm or injury to

22  others. This duty includes using appropriate tactics, giving appropriate commands,

23  giving warnings, and not using any force unless necessary, not using more force

24  than necessary, using less than lethal options, and only using deadly force as a last

25  resort.

26      65.      OFFICER DEFENDANTS and DEPUTY DEFENDANTS breached

27  this duty of care. Upon information and belief, the actions and inactions of

28

0207

OFFICER DEFENDANTS and DEPUTY DEFENDANTS were negligent and reckless, including but not limited to:

      (a)    the failure to properly and adequately assess the need to use force or deadly force against PUGA;

      (b)    the negligent tactics and handling of the situation with PUGA, including pre-shooting negligence, failure to deescalate, escalating the encounter, and failure to give a deadly force warning prior to the use of deadly force;

      (c)    the negligent use of force, including deadly force, against PUGA;

      (d)    the failure to properly and adequately assess their shooting background prior to their use of deadly force against PUGA;

      (e)    shooting indiscriminately and shooting an excessive number of times;

66.    As a direct and proximate result of the conduct of OFFICER DEFENDANTS and DEPUTY DEFENDANTS, Plaintiffs JONATHAN, TANJA, and J.B. sustained serious physical injuries and emotional distress. As a result of their injuries, JONATHAN and TANJA were unable to work for a period of time. As a result of his injuries, J.B. was unable to attend school for a period of time.

67.    Defendant STATE is vicariously liable for the wrongful acts of OFFICER DEFENDANTS, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

68.    Defendant COUNTY is vicariously liable for the wrongful acts of DEPUTY DEFENDANTS, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries

FIRST AMENDED COMPLAINT FOR DAMAGES

0208

1  caused by its employees within the scope of the employment if the employee's act

2  would subject him or her to liability.

3      69.    Plaintiffs JONATHAN, TANJA, and J.B. seek compensatory damages

4  under this claim.

5

6              **FIFTH CLAIM FOR RELIEF**

7   **Negligence – Bystander (Negligent Infliction of Emotional Distress)**

8              (All Plaintiffs against all Defendants)

9      70.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

10  through 69 of this Complaint with the same force and effect as if fully set forth

11  herein.

12      71.    Plaintiffs JONATHAN is the husband of Plaintiff TANJA and the

13  father of Plaintiffs ANNABELLE and J.B. Plaintiff TANJA is the wife of Plaintiff

14  JONATHAN and the mother of Plaintiffs ANNABELLE and J.B. Plaintiffs

15  ANNABELLE and J.B. are siblings. At all relevant times, Plaintiffs were close

16  familial members all living together within the same household.

17      72.    Plaintiffs JONATHAN, TANJA, ANNABELLE, and J.B. were present

18  and observed the shooting of JONATHAN, TANJA, and J.B. Plaintiffs

19  JONATHAN, TANJA, ANNABELLE, and J.B. were contemporaneously aware that

20  JONATHAN, TANJA, and J.B. were being injured at the time OFFICER

21  DEFENDANTS and DEPUTY DEFENDANTS intentionally used deadly force

22  against PUGA and also shot JONATHAN, TANJA, and J.B. Plaintiffs

23  JONATHAN, TANJA, ANNABELLE, and J.B. observed and perceived their family

24  members being shot by OFFICER DEFENDANTS and DEPUTY DEFENDANTS

25  and were aware that JONATHAN, TANJA, and J.B. were injured after OFFICER

26  DEFENDANTS' and DEPUTY DEFENDANTS' use of deadly force.

27      73.    OFFICER DEFENDANTS, while working as police officers for

28  STATE and while acting within the course and scope of their duties, negligently and

-16-
FIRST AMENDED COMPLAINT FOR DAMAGES

0209

1    carelessly inflicted emotional distress on Plaintiffs JONATHAN, TANJA,

2    ANNABELLE, and J.B. when they shot and injured JONATHAN, TANJA, and

3    BOTTEN JR in front of the Plaintiffs.

4        74.    DEPUTY DEFENDANTS, while working as sheriff's deputies for

5    COUNTY and while acting within the course and scope of their duties, negligently

6    and carelessly inflicted emotional distress on Plaintiffs JONATHAN, TANJA,

7    ANNABELLE, and J.B. when they shot and injured JONATHAN, TANJA, and

8    BOTTEN JR in front of the Plaintiffs.

9        75.    As a result of their misconduct, OFFICER DEFENDANTS and

10   DEPUTY DEFENDANTS are liable for Plaintiffs JONATHAN, TANJA,

11   ANNABELLE, and J.B.'s injuries when they shot and injured JONATHAN,

12   TANJA, and J.B. in front of the Plaintiffs, either because they were integral

13   participants in the use of excessive force, and/or because they failed to intervene to

14   prevent these violations.

15       76.    As a direct and proximate result of OFFICER DEFENDANTS and

16   DEPUTY DEFENDANTS' conduct as alleged above, Plaintiffs JONATHAN,

17   TANJA, ANNABELLE, and J.B. were caused to suffer severe emotional distress,

18   including but not limited to suffering, anguish, fright, horror, nervousness, grief,

19   anxiety, worry, shock, humiliation, and shame.

20       77.    Defendant STATE is vicariously liable for the wrongful acts of

21   OFFICER DEFENDANTS, pursuant to section 815.2(a) of the California

22   Government Code, which provides that a public entity is liable for the injuries

23   caused by its employees within the scope of the employment if the employee's act

24   would subject him or her to liability.

25       78.    Defendant COUNTY is vicariously liable for the wrongful acts of

26   DEPUTY DEFENDANTS, pursuant to section 815.2(a) of the California

27   Government Code, which provides that a public entity is liable for the injuries

28

1   caused by its employees within the scope of the employment if the employee's act

2   would subject him or her to liability.

3       79.    Plaintiffs JONATHAN, TANJA, ANNABELLE, and J.B. bring this

4   claim in their individual capacity and seek compensatory damages.

5

6   ### SIXTH CLAIM FOR RELIEF

7   **Violation of Cal. Civil Code § 52.1**

8   (Plaintiffs JONATHAN, TANJA, and J.B. against all Defendants)

9       80.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

10   through 79 of this Complaint with the same force and effect as if fully set forth

11   herein.

12       81.    California Civil Code, Section 52.1 (the Bane Act), prohibits any

13   person from using violent acts or threatening to commit violent acts with the

14   specific intent to interfere, by threat, intimidation, or coercion, with that person's

15   constitutional rights. "A reckless disregard for a person's constitutional rights is

16   evidence of specific intent to deprive that person of those rights." *Reese v. Cnty. of*

17   *Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018).

18       82.    OFFICER DEFENDANTS and DEPUTY DEFENDANTS, while

19   working as law enforcement officers for STATE and COUNTY, respectively, and

20   acting within the course and scope of their duties, intentionally committed and

21   attempted to commit acts of violence, including by repeatedly firing their weapons

22   in PUGA's direction while he was between them and the BOTTEN RESIDENCE

23   and using excessive and unreasonable force against him. Upon information and

24   belief, PUGA did not pose an immediate threat of serious injury or death at the time

25   of the shooting and the number of shots was excessive. OFFICER DEFENDANTS

26   and DEPUTY DEFENDANTS had no legal justification for using deadly force

27   against PUGA and their use of deadly force while carrying out their duties as police

28   officers was an unreasonable and non-privileged use of force.

83.     When OFFICER DEFENDANTS and DEPUTY DEFENDANTS intentionally used deadly force by firing in PUGA's direction, they also used deadly force against Plaintiffs JONATHAN, TANJA, and J.B., who also did not pose a threat at the time of the use of force.

84.     When OFFICER DEFENDANTS and DEPUTY DEFENDANTS intentionally used deadly force, they were aware that PUGA was between them and the BOTTEN RESIDENCE, and they were aware that the BOTTEN RESIDENCE was in the background when they fired gunshots in PUGA's direction. OFFICER DEFENDANTS and DEPUTY DEFENDANTS knew or reasonably should have known that there were residents inside of the BOTTEN RESIDENCE. OFFICER DEFENDANTS and DEPUTY DEFENDANTS thus fired their weapons with the knowledge that residents, including Plaintiffs, could be struck by their bullets.

85.     By intentionally firing their weapons in PUGA's direction without any legal justification or excuse while aware residents like Plaintiffs could be struck by their bullets, and by intentionally using deadly force that in fact seriously injured Plaintiffs JONATHAN, TANJA, and J.B., OFFICER DEFENDANTS and DEPUTY DEFENDANTS acted in reckless disregard of PUGA's as well as JONATHAN, TANJA, and J.B.'s civil rights.

When OFFICER DEFENDANTS and DEPUTY DEFENDANTS shot repeatedly in PUGA's direction and thereby struck PUGA and Plaintiffs JONATHAN, TANJA, and J.B., they deliberately subjected PUGA and Plaintiffs JONATHAN, TANJA, and J.B. to excessive force that was beyond what was necessary. By doing so, either by integrally participating in these actions or by failing to intervene, OFFICER DEFENDANTS and DEPUTY DEFENDANTS coercively interfered with PUGA's and Plaintiffs JONATHAN, TANJA, and J.B.'s civil rights to be free from unreasonable searches and seizures, to due process, and to be free from state actions that shock the conscience.

0212

86. On information and belief, OFFICER DEFENDANTS and DEPUTY DEFENDANTS intentionally and spitefully coercively committed the above acts to coercively interference with PUGA's civil rights, to discourage PUGA from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy. In doing so while aware of the risks that their actions posed to Plaintiffs JONATHAN, TANJA, and J.B., OFFICER DEFENDANTS and DEPUTY DEFENDANTS demonstrated reckless indifference to the substantial likelihood that their conduct would have the same effect on Plaintiffs JONATHAN, TANJA, and J.B.

87. Plaintiffs JONATHAN, TANJA, and J.B. reasonably believed and understood that the violent acts committed by OFFICER DEFENDANTS and DEPUTY DEFENDANTS were done with reckless indifference to the substantial likelihood that OFFICER DEFENDANTS' and DEPUTY DEFENDANTS' conduct would coercively interfere with Plaintiffs JONATHAN, TANJA, and J.B.'s civil rights, would discourage them from exercising the above civil rights, and/or would prevent them from exercising such rights.

88. OFFICER DEFENDANTS and DEPUTY DEFENDANTS successfully interfered with the above civil rights of PUGA, as well as of Plaintiffs JONATHAN, TANJA, and J.B.

89. The conduct of Defendants was a substantial factor in causing Plaintiffs JONATHAN, TANJA, and J.B.'s harms, losses, injuries, and damages.

90. STATE is vicariously liable for the wrongful acts of OFFICER DEFENDANTS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

91. Defendants DOES 7-8 are vicariously liable under California law and the doctrine of *respondeat superior*.

0213

1    92.    COUNTY is vicariously liable for the wrongful acts of DEPUTY

2    DEFENDANTS pursuant to section 815.2(a) of the California Government Code,

3    which provides that a public entity is liable for the injuries caused by its employees

4    within the scope of the employment if the employee's act would subject him or her

5    to liability.

6    93.    Defendants DOES 9-10 are vicariously liable under California law and

7    the doctrine of *respondeat superior*.

8    94.    The conduct of Defendants was malicious, wanton, oppressive, and

9    accomplished with a conscious disregard for Plaintiffs JONATHAN, TANJA, and

10   J.B.'s rights, justifying an award of exemplary and punitive damages as to

11   OFFICER DEFENDANTS and DEPUTY DEFENDANTS.

12   95.    Plaintiffs JONATHAN, TANJA, and J.B. seek compensatory damages,

13   treble damages, attorney's fees, and costs under this claim.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

0214

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs JONATHAN WAYNE BOTTEN, SR., TANJA DUDEK-BOTTEN, ANNABELLE BOTTEN, and J.B., a minor, by and through his guardian JONATHAN WAYNE BOTTEN, SR., request entry of judgment in their favor and against Defendants STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO, ISAIAH KEE, MICHAEL BLACKWOOD, BERNARDO RUBALCAVA, ROBERT VACCARI, JAKE ADAMS, and DOES 1-10 as follows:

A.  For compensatory damages in whatever other amount may be proven at trial;

B.  For medical expenses and loss of earnings;

C.  For punitive damages against the individual defendants in an amount to be proven at trial;

D.  For statutory damages;

E.  For treble damages pursuant to California Civil Code Sections 52, 52.1;

F.  For interest;

G.  For reasonable attorneys' fees, including litigation expenses;

H.  For costs of suit; and

I.  For such further other relief as the Court may deem just, proper, and appropriate.

DATED:  June 8, 2023                LAW OFFICES OF DALE K. GALIPO

By_____*/s/  Hang D. Le*_____
Dale K. Galipo
Hang D. Le
Attorneys for Plaintiffs

-22-
FIRST AMENDED COMPLAINT FOR DAMAGES

0215

1

## **DEMAND FOR JURY TRIAL**

2    Plaintiffs hereby demand a trial by jury.

3

4    DATED:  June 8, 2023                LAW OFFICES OF DALE K. GALIPO

5

6

7                                By_____ */s/ Hang D. Le*_____
                                       Dale K. Galipo
8                                      Hang D, Le
                                       Attorneys for Plaintiffs
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-23-
FIRST AMENDED COMPLAINT FOR DAMAGES

0216