# Exhibit 19

```
 1                    UNITED STATES DISTRICT COURT

 2                    CENTRAL DISTRICT OF CALIFORNIA

 3

 4   JONATHAN WAYNE BOTTEN, SR.; TANJA    )
     DUDEK-BOTTEN; ANNABELLE BOTTEN; and  )
 5   J.B., a minor by and through his     )
     guardian JONATHAN WAYNE BOTTEN, SR., )
 6                                        )
                  Plaintiffs,             )
 7                                        )
                  vs.                     ) Case No.
 8                                        ) 5:22-CV-00949-KK-SHK
     STATE OF CALIFORNIA; COUNTY OF SAN   )
 9   BERNARDINO; ISAIAH KEE; MICHAEL      )
     BLACKWOOD; BERNARDO RUBALCAVA; ROBERT)
10   VACCARI; JAKE ADAMS; and DOES 1-10,  )
     inclusive,                           )
11                                        )
                  Defendants.             )
12   _____)

13

14

15

16          REMOTE VIDEOCONFERENCE DEPOSITION OF

17                    TIMOTHY JONG, M.D.

18               THURSDAY, JANUARY 2, 2025

19

20

21

22

23   Reported Stenographically By:

24   Jinna Grace Kim, CSR No. 14151

25   Job No.:   127502
```

```
 1   position?
 2        A.   That's correct.
 3        Q.   And the upward, again, that would be with the body
 4   in an anatomical position; correct?
 5        A.   Yes.
 6        Q.   If you know, can you get an upward trajectory if the
 7   body is leaning forward or fallen forward if the shot is to
 8   the back?
 9        A.   Just to clarify, you're saying in terms of upward?
10        Q.   Yes.
11        A.   Okay.  And leaning forward, or -- what was the other
12   position, please.
13        Q.   Or falling forward.  In other words, if the body is
14   canted forward away from the bullet, is that one explanation
15   for upward trajectory?
16        A.   That's a possibility, yes.
17        Q.   Okay.  And then going to the next one you described
18   at the top of Page 4, that would be a gunshot wound of the
19   left lower back?
20        A.   Yes.
21        Q.   And again, that area would have to be exposed to the
22   trajectory of that shot?
23        A.   Yes.
24        Q.   What did that bullet pass through?
25        A.   So that bullet passed through skin and soft tissue;
```

Page 21

```
 1  foot?
 2       A.   Yes.
 3       Q.   And did that strike in the area of the fifth toe?
 4       A.   Yes.
 5       Q.   And where did that travel after striking the toe or
 6  the area of the fifth toe?
 7       A.   The area that the projectile traveled through was
 8  the skin and the soft tissue of the right foot.
 9       Q.   Did that also have an upward trajectory?
10       A.   Yes.
11       Q.   And what were the associated injuries?
12       A.   The associated injuries of that wound included the
13  laceration which is a tear with surrounding hemorrhaging into
14  the soft tissue which is the ecchymosis on the sole of the
15  fourth toe of the right foot as well as another tear on the
16  anterior aspect of the right foot which is the front aspect
17  between the third and fourth toes, and there was also
18  hemorrhage throughout the wound track.
19       Q.   So were there ten entry wounds altogether?
20       A.   Yes.
21       Q.   And multiple shots to the backside of the body?
22       A.   That's correct.
23       Q.   And your opinion, the fatal shot was the wound to
24  the mid left back that we started off by describing?
25       A.   Yes.
```

Page 45

```
 1    A.   Specific understanding, no, but general
 2  understanding just based on physics.
 3    Q.   General understanding is okay.
 4    A.   Sure.  Yes.
 5    Q.   What would be the distance before the appreciable
 6  downward deviation?
 7         MS. ESQUIVEL:  Objection.  Vague as to
 8  appreciable.
 9         THE WITNESS:  I apologize.  I believe I
10  misunderstood your question then.
11  BY MR. GALIPO:
12    Q.   That's okay.  I think you said earlier, I asked you
13  do bullets generally travel in a straight line, and I think
14  you said, yes, but at some point they could start to go lower
15  or go down.
16         Do you remember something to that effect?
17    A.   Yes.
18    Q.   And I just didn't know if you have had a distance in
19  mind like it was 300 yards or a 100 yards or a quarter of a
20  mile, or what distance did you have in mind before they
21  started to drop?
22    A.   I wouldn't know off the top of my head.
23         Probably a firearm expert would know.
24    Q.   Okay.  That's fair enough.
25         And then with respect so these trajectories as been
```

Page 46

1  indicated in the questioning, many of the shots to the back,
2  the buttocks, et cetera, have a back-to-front trajectory;
3  correct?
4      A.   Yes.
5      Q.   And there were a few with an upward trajectory with
6  the body in an anatomical position that counsel pointed out.
7           Do you recall that?
8      A.   Yes.
9      Q.   And I think a couple that you pointed out was wound
10 H was with the anterior left thigh, and then C which was the
11 right lower leg number one, D was the right lower leg number
12 two, and F was the right foot.
13          Do you generally recall that?
14     A.   Yes.
15     Q.   Would those upward trajectories to the thigh, lower
16 right leg, and toe at least be consistent in your mind with
17 Mr. Puga going down to the ground having the front of his
18 legs exposed to the shooters and hitting his lower legs and
19 traveling upward?
20          MS. ESQUIVEL:  Objection.  Incomplete and improper
21 hypothetical.
22          Go ahead.
23          THE WITNESS:  So to clarify, you're saying that Mr.
24 Puga is face-down on the ground with one of his legs up?
25 BY MR. GALIPO:

JONATHAN WAYNE BOTTEN, SR., ET AL. vs STATE OF CALIFORNIA, ET AL.
Timothy Jong, M.D. on 01/02/2025

Page 54

```
 1                      CERTIFICATE

 2                          OF

 3         CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

 4

 5         I, JINNA GRACE KIM, CSR No. 14151, a Certified

 6   Stenographic Shorthand Reporter of the State of California,

 7   do hereby certify:

 8         That the foregoing proceedings were taken before me

 9   at the time and place herein set forth;

10         That any witnesses in the foregoing proceedings,

11   prior to testifying, were placed under oath;

12         That a verbatim record of the proceedings was made

13   by me, using machine shorthand, which was thereafter

14   transcribed under my direction;

15         Further, that the foregoing is an accurate

16   transcription thereof.

17         I further certify that I am neither financially

18   interested in the action, nor a relative or employee of any

19   attorney of any of the parties.

20

21         IN WITNESS WHEREOF, I have subscribed my name, this

22   date:  January 2, 2025.

23
                    _____
24
                    Jinna Grace Kim, CSR No. 14151
25
```