1   ROB BONTA
    Attorney General of California
2   NORMAN D. MORRISON
    Supervising Deputy Attorney General
3   DIANA ESQUIVEL
    Deputy Attorney General
4   State Bar No. 202954
      1300 I Street, Suite 125
5     P.O. Box 944255
      Sacramento, CA 94244-2550
6     Telephone: (916) 210-7320
      Facsimile: (916) 322-8288
7     E-mail: Diana.Esquivel@doj.ca.gov
    *Attorneys for Defendants Blackwood, Kee, and*
8   *Rubalcava*

9              IN THE UNITED STATES DISTRICT COURT

10             FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12

13

14  **JONATHAN WAYNE BOTTEN,**        No. 5:23-cv-257 KK (SHKx)
    **SR., et al.,**

15                                    **UNOPPOSED MOTION TO**
                        Plaintiffs,   **EXCUSE LATE FILING OF**
16                                    **STATE DEFENDANTS'**
                                      **MEMORANDUM IN SUPPORT OF**
        v.                            **MOTION FOR SUMMARY**
17                                    **JUDGMENT AND TO ALLOW**
                                      **FILING OF A CORRECTED**
    **STATE OF CALIFORNIA, et al.,**  **MEMORANDUM; SUPPORTING**
18                                    **DECLARATION**
                        Defendants.
19                                    Judge:        Hon. Kenly Kiya Kato
                                      Trial Date:   July 28, 2025
20                                    Action Filed: February 16, 2023

21

22         Under Federal Rule of Civil Procedure 6(b)(1)(B) and Local Rule 6-1,

23  Defendants Blackwood, Kee, and Rubalcava (State Defendants) move to be

24  relieved from the untimely filing of their Memorandum of Points and Authorities

25  (Memorandum) in support of their Motion for Summary Judgment (ECF Nos. 86,

26  87) due to excusable neglect. State Defendants also request leave to file a corrected

27  Memorandum to comply with the word limit of Local Rule 11-6.1. During the

28

parties' meet-and-confer, the undersigned was informed there were no objections to these requests. (*See* Ex. A-B hereto.)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Rule 7-12 of the Central District of California's Local Rules allows the Court to decline to consider any memorandum or other document not filed within the deadline set by order of local rule. Under Local Rule 11-6.1, a memorandum of points and authorities may not exceed 7,000 words, including headings, footnotes, and quotations but excluding the caption, tables, signature block, exhibits, indices, and certification. The memorandum shall be accompanied by a certificate acknowledging compliance with the 7,000 word limit. (L.R. 11-6.2.) Failure to comply with Rules 7-12 and 11-6.1 may subject a party to sanctions. (L.R. 7-13, 11-9.)

State Defendants' counsel regrettably and inadvertently failed to comply with Rules 7-12 and 11-6.1. Although State Defendants' timely filed their notice of motion and other supporting documents (*see* Notice of Electronic Filing at p. 1, attached here as Ex. C), the Memorandum was not included in the filing. This oversight was not discovered until later in the day and filed immediately upon discovering this error. (*Id.* at p. 4.) Further, the Memorandum exceeds the word limit of 11-6.1. Counsel for State Defendants confused the limit under 11-6.1 with that word limit applicable to state-court appeals, as she had been working on an appeal at the time same she was drafting the summary-judgment motion due in this case. Counsel for the State Defendants apologize to the Court and the parties for these errors and humbly requests that the late filing of the Memorandum be excused and that they be permitted to file a corrected Memorandum to comply with Rule 11-6.1. (A copy of the proposed corrected Memorandum is attached here as Exhibit D and has been provided to Plaintiffs' counsel.)

## II.  ARGUMENT

Federal Rule of Civil Procedure 6(b)(1)(B) provides that a court may, for good cause, extend deadlines "on motion made after the time has expired if the party failed to act because of excusable neglect." Rule 6(b)(1)(B) "is to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." *Ahanchian v. Xenon Pictures, Inc*., 624 F.3d 1253, 1259 (9th Cir. 2010) (citation omitted). District courts have exercised their discretion to construe late-filed briefs and other filings as extension requests under Rule 6(b)(1)(B). *See, e.g., Lacy v. U.S.*, No. 8:22-cv-01065 DOC, 2023 WL 4317659, at *13 (C.D. Cal. May 3, 2023) (construing affidavit attached with late-filed summary-judgment motion "as a motion to extend pursuant to Rule 6(b)(1)(B)"); *Rivera v. Marriott Int'l, Inc*., No. 2:19-cv-05050-ODW(KSx), 2020 WL 1984891, at *2 n.2 (C.D. Cal. Apr. 23, 2020) (construing "apology and explanation for the delay as a motion for extension of time under Rule 6(b)"); *N.L. v. Children's Hosp. L.A.*, No. ,2:15-cv-7200 AB-FFM, 2019 WL 10854340, at *4 (C.D. Cal. Oct. 22, 2019) (not requiring formal noticed motion under Fed. R. Civ. P. 6(b)(1)(B) "in the interest of efficiency and judicial economy"); *Taylor v. Garrison Prop. & Cas. Ins. Co*., No. 2:17-cv-07550-RGK-GJS, 2018 WL 5094912, at *2 (C.D. Cal. Apr. 26, 2018) (exercising discretion to consider plaintiffs' two-day-late response to summary-judgment motion despite plaintiffs failing "to file a formal motion demonstrating excusable neglect")[1].

"To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian*, 624 F.3d at 1261, citing *Pioneer Inv.*

---

[1] Reversed in part on unrelated grounds on appeal in No. 18-55687, 795 F. App'x 495 (9th Cir. Dec. 19, 2019).

1    *Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *Galfayan v.*

2    *State Farm Gen. Ins. Co.*, No. 2:23-CV-01991-RGK-SK, 2024 WL 5317267, at *1

3    (C.D. Cal. Apr. 23, 2024). There is no per se rule for finding excusable neglect, and

4    district courts have discretion in their application and weighing of the *Pioneer*

5    factors. *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004). Of the four *Pioneer*

6    factors, the reason for delay carries the greatest weight in determining excusable

7    neglect. *In re Edwards Theatres Circuit, Inc.*, 70 F. App'x 950, 952 (9th Cir. 2003)

8    (citation omitted). However, in determining excusable neglect, the Supreme Court

9    held that excusable neglect "encompasses both simple, faultless omissions to act

10    and, more commonly, omissions caused by *carelessness*." *Pioneer Inv. Serv. Co.*,

11    507 U.S. at 388 ("Congress plainly contemplated that the courts would be

12    permitted, where appropriate, to accept late filings caused by inadvertence, mistake,

13    or carelessness, as well as by intervening circumstances beyond the party's

14    control.") (emphasis added).

15        Here, the *Pioneer* factors weigh in favor of finding excusable neglect in the

16    late filing of the Memorandum. There was no prejudice to Plaintiffs from the

17    untimely filing as they were served and received the Memorandum the next day.

18    Plaintiffs timely received the notice, statement of uncontroverted facts, and

19    supporting evidence such that they were aware of the basis for the motion.

20    Moreover, based on the Court's order that summary-judgment motions be filed 49

21    days before the hearing (*see* Scheduling Order 2:5-7, ECF No. 60), Plaintiffs'

22    counsel have had the entire motion in their possession for more than 26 days, such

23    that a day's delay in receiving the supporting Memorandum did not substantially

24    deprive them of adequate time to prepare their opposition. Nor did the delay have

25    any material impact on these proceedings to warrant not considering the

26    Memorandum on the merits.

27        The third and fourth *Pioneer* factors favor finding excusable neglect. As

28    explained in greater detail in the attached supporting declaration, counsel for the

1  State Defendants acted in good faith to meet the deadline. She ran into a few

2  technical issues with the exhibits as she attempted to upload them to the Court's

3  electronic filing system, requiring that she reformat and combine some of the

4  exhibits. In her haste to timely file the motion after correcting the formatting issues

5  with the exhibits, counsel for the State Defendants inadvertently forgot to include

6  the Memorandum in the filing and did not catch this oversight until the next day

7  when she downloaded the filed documents using the link in the Court's Notice of

8  Electronic Filing. Upon noticing this oversight, she immediately filed the

9  Memorandum.

10      In the few weeks before the January 30, 2025 deadline to file dispositive

11  motions in this case, counsel for the State Defendants had several deadlines,

12  including filing a respondent's brief in *Jane Doe 1, et. al. v. CDCR* (Cal. Ct. of

13  App., Third App. Dist. No. C098273) that was due January 24, 2025. Under

14  California Rules of Court rule 8.204(c), an appellate brief cannot exceed 14,000

15  words. Counsel for the State Defendants confused this word limit for that under

16  Local Rule 11-6.1, and filed the Memorandum with the certification stating that the

17  brief contained 8,203 words. (ECF No. 87 at 24:3.) This error only came to the

18  attention of the State Defendants' attorney during the week of February 17, when

19  the parties were meeting and conferring about Plaintiffs' counsel's request to file an

20  oversized opposition to the motion for summary judgment. The State Defendants

21  are prepared to file a corrected Memorandum that complies with word limit under

22  Local rule 11-6.1 and that will not material or substantially alter the arguments in

23  the Memorandum to minimize any prejudice or surprise to Plaintiffs. (*See* Ex. D.)

24  ### III. CONCLUSION

25      Good cause exists to excuse the State Defendants' untimely filing of their

26  Memorandum due to the excusable neglect of their attorney. Plaintiffs were not

27  prejudiced by the short delay; the delay had little or no impact on the judicial

28  proceedings; the delay was caused by counsel's innocent but careless mistake in the

filing process; and counsel acted in good faith to immediately rectify the oversight. Similarly, good cause exists to grant the State Defendants leave to file a corrected Memorandum that complies with the word limit of Local Rule 11-6.1 because the non-compliant brief was filed under the mistaken belief that another word limit applied.

Dated:  February 27, 2025          Respectfully submitted,

ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General

*/s/ Diana Esquivel*

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendants Blackwood, Kee, and Rubalcava*

SA2023302180
38820548.docx

## DECLARATION OF DIANA ESQUIVEL

I, Diana Esquivel, declare:

1.  I am admitted to practice law in California and before this Court, and am a Deputy Attorney General with the Office of the Attorney General for the State of California, attorneys of record for Defendants California Highway Patrol Officers Michael Blackwood, Isaiah Kee, and Bernardo Rubalcava. (State Defendants).

2.  I submit this declaration in support of the State Defendants' motion to excuse their late filing of the oversized Memorandum of Points and Authorities in support of their motion for summary judgment. Foremost, I sincerely apologize to the Court and the parties and their counsel for any and all inconvenience these oversights may have caused.

3.  Exhibits A and B are my meet-and-confer e-mail communications with Plaintiffs' counsel and the attorneys for the County Defendants, respectively, concerning this motion and their assertion that they had no objection to the same.

4.  Based on the Court's February 28, 2024 Civil Trial Schedule Order, dispositive motions had to be filed no later than 49 days before the motion hearing cut-off date, or January 30, 2025. (ECF Nos. 60 at 2:5-7, 72 (setting the March 20, 2025 motion hearing cut-off date).)

5.  During the week of January 27, 2025, and the weeks leading up to the motion deadline, I had numerous deadlines in various cases. I was preparing the respondent's brief in *Jane Doe 1, et. al. v. CDCR* (Cal. Ct. of App., Third App. Dist. No. C098273) that was due on January 24, 2025. I was preparing for the February 18 trial and the February 3 mandatory settlement conference in *Lennox v. City of Sacramento*, et al. (E.D. Cal. No. 2:21-cv-2075 DAD-CSK): the settlement conference statement was due January 27; motions in limine were due January 28; and oppositions to motions in limine, proposed jury instructions and verdict form, and objections to trial exhibits were due February 4, but the parties were required to meet and confer prior to that deadline to resolve evidentiary issues and prepare a

joint set of instructions. Expert disclosures in this case and the related case of *L.C. v. State of California (Puga)* were due on January 30. In addition, I was engaged in extensive meet-and-confer discussions with plaintiffs' counsel in a coordinated proceeding, *CDCR Women's Facilities Cases* (JCCP No. 5276), concerning the master complaints that would be used by the more than 700 plaintiffs involved in this mass tort. I exercised diligence to accomplish and meet all the deadlines I had during this period, but it was an incredibly busy period that required my attention to multiple different matters, including the motion due here.

6. Because of the various deadlines and matters I had to complete, I did not finish the motion for summary judgment due here until the evening on January 30. I extrapolated the cited deposition testimony from the various transcripts and prepared to file the motion. As I was filing the motion, the court's filing system would not accept certain exhibits, such as the deposition transcripts and a photograph. I had to re-format these exhibits and combined several to reduce the number of exhibits to be filed in an effort to avoid any further rejection of the exhibits. This process took longer than I expected, but I was able to file the motion by the January 30 deadline. In my haste to make the filing deadline, I inadvertently forgot to upload the Memorandum for filing. The next day I had several matters to complete and did not download the filed motion until later in the day. When I downloaded the filed papers, I realized that the Memorandum was missing and that I had not filed it with the other motions papers the night before, so I immediately filed the Memorandum. Exhibit C includes copies of the Notice of Electronic Filing I received from the Court's CM/ECF system showing the dates and times the motion and Memorandum were filed.

7. The delay in filing the Memorandum was an oversight on my part and was not intended to prejudice or inconvenience the Plaintiffs, their counsel, or any other party, including the Court. I was making my best effort to timely file the motion, and in doing so, I carelessly forgot to include the Memorandum in the filing as my

focus was on not having the exhibits rejected as they were before in my earlier attempts to file the motion.

8.  The oversized Memorandum is the result of my mistaken belief that the word limit for supporting memoranda in this district was 14,000 based on my having worked on a state-court appellate brief the week before. In my mind, I confused the state rule for Local Rule 11-6.1. I did not attempt to hide or mislead the Plaintiffs' counsel concerning the length/size of the Memorandum. When I e-signed the certificate of compliance, I truthfully asserted the Memorandum contained more than 7,000 words, and I honestly believed that the word limit was higher. I realized I was mistaken about the word count when Plaintiffs' counsel sought to meet and confer about filing an oversized opposition last week.

9.  Exhibit D is my proposed corrected Memorandum the reduces the word count to below 7,000. No material or substantive changes are made to the legal arguments. Rather, the "Statement of Facts" section is deleted to bring the brief into compliance with Local Rule 11-6.1. The omission of this section does not materially alter or make the Memorandum deficient because the Introduction and Statement of Uncontroverted Facts contain a similar summary of the material facts. I provided a copy of the proposed corrected Memorandum to Plaintiffs' counsel on February 24.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing statements are true and correct.

Dated:  February 27, 2025                    _*/s/ Diana Esquivel*_____
                                             Diana Esquivel

# Exhibit A

| | |
|---|---|
| **From:** | Hang Le |
| **To:** | Diana Esquivel |
| **Cc:** | Dale K. Galipo |
| **Subject:** | RE: Botten v. State Corrections |
| **Date:** | Tuesday, February 25, 2025 11:38:23 AM |

> **EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Hi Diana, I have no objection to you filing the corrected P&A brief in Botten nor any objection to the Notice of Errata.

---

**From:** Diana Esquivel <Diana.Esquivel@doj.ca.gov>
**Sent:** Tuesday, February 25, 2025 7:08 AM
**To:** Hang Le <hlee@galipolaw.com>
**Cc:** Dale K. Galipo <dalekgalipo@yahoo.com>
**Subject:** RE: Botten v. State Corrections

Thanks Hang. Filed the stipulation this morning.

Can you please let me know your position on the corrected P&A brief. (Again, as I mentioned below, it deletes the "Statement of Facts" section and updates the TOC to bring it within the work limit.) I'm trying to figure out how to file this request and inform the court of your position on my request.

Also, I plan to file an errata re State Defs' Stmt of Uncontroverted Facts to correct 2 material mistakes, which I'm sure you noticed. Fact 15 should be "unsuccessful" not successful, and Fact 19 should be "southwest" not southeast corner as all the videos and testimony show. Just letting you know as I'm sure you're busy working on the opposition.

I'm really sorry about all these errors. I was a big mess around the time I filed the *Botten* MSJ, with *Lennox*, appeal brief in one of my mass tort cases, and expert disclosures due here and *Puga*.

---

**From:** Hang Le <hlee@galipolaw.com>
**Sent:** Monday, February 24, 2025 3:28 PM
**To:** Diana Esquivel <Diana.Esquivel@doj.ca.gov>
**Cc:** Dale K. Galipo <dalekgalipo@yahoo.com>
**Subject:** RE: Activity in Case 5:23-cv-00257-KK-SHK Jonathan Wayne Botten Sr. et al v. State of California et al Stipulation for Order

> **EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Hi Diana,

You may esign the stipulation on my behalf and file. Thanks.

Best,
Hang

---

**From:** Diana Esquivel <Diana.Esquivel@doj.ca.gov>
**Sent:** Monday, February 24, 2025 6:00 AM
**To:** Hang Le <hlee@galipolaw.com>
**Cc:** Dale K. Galipo <dalekgalipo@yahoo.com>
**Subject:** RE: Activity in Case 5:23-cv-00257-KK-SHK Jonathan Wayne Botten Sr. et al v. State of California et al Stipulation for Order

Good morning Hang,

Hope you had a good weekend. Attached please find the draft stipulation and proposed order to dismiss all but the negligence/NIED claims against Def Blackwood. Let me know if I have your permission to file it with your e-signature.

Later today, I also plan to file the application to excuse the State Defs' "late" filing of the MSJ as we discussed last week (2/17). As you may recall, I informed you that due to tech issues I was having with the exhibits, my filing didn't go thru until exactly midnight. You indicated you had no opposition to my proposed application. After you raised the issue of an enlarged brief for your opposition to the MSJs, I realized I exceeded the word limit in my P&A in this case. I had the 14,000 word limit in mind because I had been working on an appeal in state court the week before and I completely forgot about the difference in limits. So my application will also include a request to correct my P&A to comply with Local Rule 11-6.1. I can accomplish this by simply deleting the "Statement of Facts" section. Other than deleting that section and updating the TOC, no other changes will be made to the brief. I'm attaching the corrected brief here for your consideration. Let me know if you have any objection to my request to be allowed to correct my P&A by replacing it with the attached.

I have an appearance in the Bay Area this morning but hope to be back at my desk around 2 if you want to discuss. Thanks.

-Diana

Diana Esquivel
Deputy Attorney General
Tort & Condemnation Section
Office of the Attorney General
Tel: (916) 210-7320
Fax: (916) 322-8288
Email: Diana.Esquivel@doj.ca.gov

---

**From:** Hang Le <hlee@galipolaw.com>
**Sent:** Tuesday, January 28, 2025 12:44 PM
**To:** Diana Esquivel <Diana.Esquivel@doj.ca.gov>
**Cc:** Dale K. Galipo <dalekgalipo@yahoo.com>
**Subject:** RE: Activity in Case 5:23-cv-00257-KK-SHK Jonathan Wayne Botten Sr. et al v. State of

California et al Stipulation for Order

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Hi Diana,

We are agreeable to dismissing Blackwood on all the claims except Negligent and NIED for the Botten action. Please send over a draft of the proposed stipulation and order.

Best,
Hang

**From:** Diana Esquivel <Diana.Esquivel@doj.ca.gov>
**Sent:** Tuesday, January 28, 2025 11:37 AM
**To:** Hang Le <hlee@galipolaw.com>
**Cc:** Dale K. Galipo <dalekgalipo@yahoo.com>
**Subject:** RE: Activity in Case 5:23-cv-00257-KK-SHK Jonathan Wayne Botten Sr. et al v. State of California et al Stipulation for Order

Hi Hang,

Given that you dismissed the County Defs from all the UOF-related claims based on Adams and Vaccari not being in a position to shoot in the direction of the Botten residence, would you be similarly agreeable to dismissing Defendant Blackwood only from all the claims except the negligence claims? As I mentioned during our meet and confer last week, the County's analysis applies to Blackwood based on him being positioned on the driver side of the Puga's car and the passenger side of the CHP vehicle when he fired his weapon at Puga such that he did not have a line of sight to the Botten's home nor any reason to fire in the direction of the northeast corner where the residence is located.

Thanks,

-Diana

Diana Esquivel
Deputy Attorney General
Tort & Condemnation Section
Office of the Attorney General
Tel: (916) 210-7320
Fax: (916) 322-8288
Email: Diana.Esquivel@doj.ca.gov

**From:** cacd_ecfmail@cacd.uscourts.gov <cacd_ecfmail@cacd.uscourts.gov>
**Sent:** Tuesday, January 28, 2025 9:42 AM
**To:** ecfnef@cacd.uscourts.gov

# Exhibit B

| From: | Shannon Gustafson |
|---|---|
| To: | Diana Esquivel; Amy R. Margolies; Anita K. Clarke |
| Subject: | Re: Botton Application |
| Date: | Tuesday, February 25, 2025 5:27:43 PM |

> **EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

We have no objection

## Shannon L. Gustafson
**Shareholder**
Direct: (714) 352-3547



# LYNBERG & WATKINS

1100 W. Town & Country Rd., Suite 1450
Orange, California 92868
www.lynberg.com          www.linkedin.com

The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities. If you are not the intended recipient, you must not use or disseminate the information. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. If you have received this email in error, please immediately notify me by 'Reply' command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Lynberg & Watkins for any loss or damage arising in any way from its use.

**From:** Diana Esquivel <Diana.Esquivel@doj.ca.gov>
**Sent:** Tuesday, February 25, 2025 5:21 PM
**To:** Shannon Gustafson <sgustafson@lynberg.com>; Amy R. Margolies <amargolies@lynberg.com>; Anita K. Clarke <aclarke@lynberg.com>
**Subject:** Botton Application

> **CAUTION:** This email originated from outside of Lynberg & Watkins. Do not click any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

Good afternoon,

I intend to file a request or application to excuse my non-compliance with Local Rules re the State Defs MSJ. As I mentioned during our meet and confer conference last week, my MSJ was technically late, filed at exactly midnight. I was having trouble uploading the exhibits, and by the time I reformatted and uploaded them, the entire motion did not get filed before 1159pm. Also, I completely goofed on the P&A; it exceeds the 7k word limit. Had the word limit confused with the word limit for my state-court brief, and until Hang requested an enlarged brief last week, I didn't realize I messed up. So I plan to request permission to file the attached corrected brief that complies with the word limit—basically, I just deleted the entire Statement of Facts section.

I've already informed Hang of this, and she has no objection to my proposed request/application. Thought I should get your position on my request as well even though it doesn't affect the County Defs. Let me know if you have any objections to my requests.

Thanks,

-Diana

Diana Esquivel
Deputy Attorney General
TORT & CONDEMNATION SECTION
Office of the Attorney General
Tel: (916) 210-7320
Fax: (916) 322-8288
Email: Diana.Esquivel@doj.ca.gov

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

# Exhibit C

| From: | cacd_ecfmail@cacd.uscourts.gov |
|---|---|
| To: | ecfnef@cacd.uscourts.gov |
| Subject: | Activity in Case 5:23-cv-00257-KK-SHK Jonathan Wayne Botten Sr. et al v. State of California et al Motion for Summary Judgment |
| Date: | Friday, January 31, 2025 12:01:48 AM |

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Esquivel, Diana on 1/31/2025 at 0:00 AM PST and filed on 1/30/2025

| **Case Name:** | Jonathan Wayne Botten Sr. et al v. State of California et al |
|---|---|
| **Case Number:** | 5:23-cv-00257-KK-SHK |
| **Filer:** | Isaiah Kee |
| | Michael Blackwood |
| | Bernardo Rubalcava |

**Document Number:** 86

**Docket Text:**
**NOTICE OF MOTION AND MOTION for Summary Judgment as to All Claims filed by Defendants Isaiah Kee, Michael Blackwood, Bernardo Rubalcava. Motion set for hearing on 3/20/2025 at 09:30 AM before Judge Kenly Kiya Kato. (Attachments: # (1) Supplement, # (2) Declaration, # (3) Exhibit, # (4) Exhibit, # (5) Exhibit, # (6) Proposed Order) (Esquivel, Diana)**

**5:23-cv-00257-KK-SHK Notice has been electronically mailed to:**

Amy R Margolies      amargolies@lynberg.com, gpence@lynberg.com

Anita Kay Clarke      aclarke@lynberg.com, gpence@lynberg.com

Dale K Galipo      dalekgalipo@yahoo.com, amonguia@galipolaw.com, blevine@galipolaw.com, CMayne@galipolaw.com, coopermayne@recap.email, evalenzuela@galipolaw.com, hlee@galipolaw.com, ldeleon@galipolaw.com, msincich@galipolaw.com, rvalentine@galipolaw.com, sanderson@galipolaw.com,

slaurel@galipolaw.com, sleap@galipolaw.com

Diana F Esquivel    Diana.Esquivel@doj.ca.gov, Christine.Garske@doj.ca.gov, tort-
ecf@doj.ca.gov

Hang Dieu Le    hlee@galipolaw.com

Richard T Copeland    rtc@conflict-solution.com

Shannon Lin Gustafson    sgustafson@lynberg.com, amargolies@lynberg.com,
gpence@lynberg.com

**5:23-cv-00257-KK-SHK Notice has been delivered by First Class U. S. Mail or by other
means BY THE FILER to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\Notice 38745555.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/31/2025] [FileNumber=39430999-0
] [1b006d24988eee6968ebf9ba5fa1e299fa3ad039634cb7f3a7d941844ff3a251300
80c76d27b52abf656dc74d6462fb3c6f7dca2f6416fc1c46cd63001cb937d]]
**Document description:**Supplement
**Original filename:**C:\fakepath\DUF 38745556.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/31/2025] [FileNumber=39430999-1
] [4faa87e6907b106bf5fbd9c64b2febbbbdb81b682e278bd7a01ecb1e9c020fe1835
fcc0dc5a2a4c461dc9180331b2bbb6e3930ea009c860f64f1c128d1e0a891]]
**Document description:**Declaration
**Original filename:**C:\fakepath\Decl 38745557.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/31/2025] [FileNumber=39430999-2
] [afda78b866be1b3261133c7fe303d6cda1812be32df24abc335b7c9db822b353772
a9aa36cdeff7d5df292dd3abf9545f68d89e6d9bc7e828ecea153144adced]]
**Document description:**Exhibit
**Original filename:**C:\fakepath\A-Scene Photo.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/31/2025] [FileNumber=39430999-3
] [799dd2100e3c5260e81ecad17d254186a4d911b5e4b9aa4558a35eb8f43c86b4e20
fb578c14cb384d07027ce84409f019dbd0ce352b418792de43e4b3792d80c]]
**Document description:**Exhibit
**Original filename:**C:\fakepath\Ex B-M.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/31/2025] [FileNumber=39430999-4
] [baa877d6d2769cef68bd2d3da28dee2972014ec15cd735bbec3203024d57ff02cdc
398cdc003cce88f993215de864c2645511966d548c87e3391331bf256f1fd]]
**Document description:**Exhibit
**Original filename:**C:\fakepath\N-Y.pdf
**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=1/31/2025] [FileNumber=39430999-5
] [aec6e58f5b8c375a5442f4b4a4840187d6a870052f5d42b6e4a7f4df6b910fc53ed
c707b43f355b615ba2ae621b5876804caaa2f623d497bf22d35b4006bbdcd]]
**Document description:**Proposed Order
**Original filename:**C:\fakepath\Proposed Order.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/31/2025] [FileNumber=39430999-6
] [654f75200af8a2c709d059385e34e3a35d38c0e25fd702ac868c881dcee9fdd021b
8de9ff7be5ffb71bd17a48b42ba33a4135eb660fe500e33b51498b1e38c5d]]

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 5:23-cv-00257-KK-SHK Jonathan Wayne Botten Sr. et al v. State of California et al Memorandum in Support of Motion |
| **Date:** | Friday, January 31, 2025 5:06:50 PM |

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Notice of Electronic Filing**

The following transaction was entered by Esquivel, Diana on 1/31/2025 at 5:06 PM PST and filed on 1/31/2025

| | |
|---|---|
| **Case Name:** | Jonathan Wayne Botten Sr. et al v. State of California et al |
| **Case Number:** | 5:23-cv-00257-KK-SHK |
| **Filer:** | Isaiah Kee |
| | Michael Blackwood |
| | Bernardo Rubalcava |

**Document Number:** 87

**Docket Text:**
**MEMORANDUM in Support of NOTICE OF MOTION AND MOTION for Summary Judgment as to All Claims [86] filed by Defendants Isaiah Kee, Michael Blackwood, Bernardo Rubalcava. (Esquivel, Diana)**

**5:23-cv-00257-KK-SHK Notice has been electronically mailed to:**

Amy R Margolies    amargolies@lynberg.com, gpence@lynberg.com

Anita Kay Clarke    aclarke@lynberg.com, gpence@lynberg.com

Dale K Galipo    dalekgalipo@yahoo.com, amonguia@galipolaw.com, blevine@galipolaw.com, CMayne@galipolaw.com, coopermayne@recap.email, evalenzuela@galipolaw.com, hlee@galipolaw.com, ldeleon@galipolaw.com, msincich@galipolaw.com, rvalentine@galipolaw.com, sanderson@galipolaw.com, slaurel@galipolaw.com, sleap@galipolaw.com

Diana F Esquivel   Diana.Esquivel@doj.ca.gov, Christine.Garske@doj.ca.gov, tort-
ecf@doj.ca.gov

Hang Dieu Le   hlee@galipolaw.com

Richard T Copeland   rtc@conflict-solution.com

Shannon Lin Gustafson   sgustafson@lynberg.com, amargolies@lynberg.com,
gpence@lynberg.com

**5:23-cv-00257-KK-SHK Notice has been delivered by First Class U. S. Mail or by other
means BY THE FILER to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\P-A 38745559.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/31/2025] [FileNumber=39439245-0
] [6e2240cb208c3f54342749855e80a05bdb6984fe592ef2e4635a75a4ff03f885dcc9
ce6f1110881f54949a98f51615c6464011e1975b6e44837bc511885b8a7fe]]

# Exhibit D

1  ROB BONTA
   Attorney General of California
2  NORMAN D. MORRISON
   Supervising Deputy Attorney General
3  DIANA ESQUIVEL
   Deputy Attorney General
4  State Bar No. 202954
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 210-7320
     Fax: (916) 322-8288
7    E-mail: Diana.Esquivel@doj.ca.gov
   *Attorneys for Defendants Blackwood, Kee, and*
8  *Rubalcava*

9

10            IN THE UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                    RIVERSIDE DIVISION

13

| | |
|---|---|
| 14 **JONATHAN WAYNE BOTTEN, SR., et al.,** | No. 5:23-cv-0257 KK (SHKx) |
| 15 | |
| 16 Plaintiffs, | **CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| 17 v. | |
| 18 **STATE OF CALIFORNIA, et al.,** | |
| 19 Defendants. | Date: March 20, 2025 |
| 20 | Time: 9:30 a.m. |
| | Courtroom: 3 (3rd Floor) |
| 21 | Judge: Hon. Kenly Kiya Kato |
| | Trial Date: July 28, 2025 |
| | Action Filed: February 17, 2023 |

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................ 1

Standard on Summary Judgment ................................................................ 2

Argument .................................................................................................... 3

    I.     Plaintiffs' Claims Under 42 U.S.C. § 1983 and California Law Arising From Kee and Rubalcava's Use of Force Fail Because the Officers Used Objectively Reasonable Force to End the Immediate Threat of Death or Serous Harm that Puga Posed to the Officers and Others ............................................................... 3

          A.    No evidence shows that State Defendants intended to seize or restrict Plaintiffs' movement through their use of force ................................................................................... 8

          B.    Plaintiffs cannot maintain their Fourteenth Amendment claim because Puga created exigent circumstances that resulted in the shooting. ........................................................ 10

          C.    Because Kee and Rubalcava's use of force was reasonable, Plaintiffs' battery claim necessarily fails. ............. 12

          D.    Kee and Rubalcava were not negligent in their actions leading up or during their use of force. .................................. 13

          E.    Plaintiffs' claim under the Bane Act fails because no evidence shows that Kee or Rubalcava had the intent to violate Puga's right to freedom from unreasonable seizure. ......................................................................... 14

    II.    Kee and Rubalcava are Entitled to Qualified Immunity .................... 15

    III.   Blackwood Did Not Owe Plaintiffs A Duty of Care ......................... 18

    IV.   State Defendants are Immune from State-Law Liability ................... 19

Conclusion ............................................................................................... 20

Corrected Points & Authorities in Support of State Defs.' Motion for Summary Judgment
    i    
5:23-cv-0257 KK (SHKx)

**INTRODUCTION**

In the early morning of February 17, 2021, decedent Hector Puga led Defendants California Highway Patrol Officers Isaiah Kee, Michael Blackwood, and Bernardo Rubalcava (State Defendants) on a hour-long, highspeed pursuit, followed by an equally lengthy standoff to evade arrest. Puga was suspected of shooting at a motorist the day before, striking the victim's front passenger door. Kee was involved in the investigation, and Blackwood and Rubalcava were briefed on the shooting and provided Puga's physical description and vehicle information, such that they recognized Puga's vehicle while they were on patrol and gave chase. The pursuit ended near the intersection of Peach and Catalpa Streets in Hesperia. Plaintiffs Jonathan Botten (Jonathan), Tanja Dudek-Botten (Tanja), Annabelle Botten (Annabelle) and J.B. lived on the northeast corner of the intersection.

During the standoff, Kee attempted to communicate, negotiate, and build a rapport with Puga, in addition to repeatedly ordering him to get out of the car and surrender. Kee used less-lethal options, such a bean bags and pepper balls, to coax Puga out of the vehicle, but these efforts were unsuccessful, and the pepper balls were ineffective against Puga. When Puga finally exited the car, his actions were furtive and prevented the officers from seeing the front of his waistband to confirm that he was not armed. Puga even told Kee that he was not armed. It was a lie. When Puga eventually displayed his shirtless front torso to the officers, he reached for a gun in his waistband and eventually fired it at the officers. Kee and Rubalcava, who were on the southwest corner of the intersection, fired multiple rounds as they took cover. Blackwood also fired multiple rounds in rapid succession from his position near the rear of the driver's side of Puga's car. When Puga ran north up Peach Stret in the direction of a house with the gun still in hand, all three officers fired another round of multiple shots to end the immediate threat Puga presented. He died at the scene. Accidentally, during the shootout, Jonathan, Tanja, and J.B. were struck by stray bullets while at home. Annabelle witnessed her family

1  members being injured. Plaintiffs brought this action under 42 U.S.C. § 1983 and

2  California law for excessive force, substantive due process violations, battery,

3  negligence, negligent infliction of emotion distress, and violation of the Bane Act,

4  California Civil Code § 52.1 against Defendants.[1]

5      Summary judgment is appropriate because Kee and Rubalcava's use of lethal

6  force against Puga was objectively reasonable under the circumstances. Puga posed

7  an immediate threat of death or serious bodily injury when he reached for his gun

8  and fired it at the officers. State Defendants reasonably feared for their lives as well

9  as the safety of other officers. The reasonableness of Kee and Rubalcava's use of

10 force defeats Plaintiffs' Fourth Amendment claim for excessive force, battery, and

11 violation of the Bane Act. Further, the undisputed evidence shows that Kee and

12 Rubalcava did not direct or intend to direct their use of force at Plaintiffs, nor did

13 they intend to confine or restrict their movement through their use of force.

14 Blackwood did not owe Plaintiffs a duty of care, and Defendants are qualifiedly

15 immune and immune. Accordingly, the Court should grant this motion and enter

16 judgment in favor of the State Defendants.

17 **STANDARD ON SUMMARY JUDGMENT**

18     Summary judgment is appropriate when it is demonstrated that there exists no

19 genuine issue as to any material fact, and the moving party is entitled to judgment

20 as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of

21 identifying relevant portions of the record that demonstrate the absence of a fact or

22 facts necessary for one or more essential elements of each cause of action upon

23 which the moving party seeks judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317,

24 323 (1986).

25     If the moving party has sustained its burden, the nonmoving party must then

26 identify specific facts, drawn from materials on file, that demonstrate that there is a

27
28
    [1] The parties reached an agreement that Plaintiffs will voluntarily dismiss
their claims against Blackwood except for the negligence and negligent infliction of
emotional distress claims.

dispute as to material facts on the elements that the moving party has contested. Fed. R. Civ. P. 56(c). The nonmoving party may not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex Corp.*, 477 U.S. at 324.

Summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Abromson v. American Pac. Corp.*, 114 F.3d 898, 902 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

# ARGUMENT

**I. PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1983 AND CALIFORNIA LAW ARISING FROM KEE AND RUBALCAVA'S USE OF FORCE FAIL BECAUSE THE OFFICERS USED OBJECTIVELY REASONABLE FORCE TO END THE IMMEDIATE THREAT OF DEATH OR SEROUS HARM THAT PUGA POSED TO THE OFFICERS AND OTHERS**

The Supreme Court of the United States has determined that the Due Process Clause of the Fourteenth Amendment protects individuals who have not yet been convicted of a crime "from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 388 (1989). However, allegations of excessive force during the course of an arrest are analyzed under the Fourth Amendment, which prohibits arrests without probable cause or other justification. *Id.* (stating that claims that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure are properly analyzed under the Fourth Amendment's "objective reasonableness" standard). Under *Graham*, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Fundamental to "*Graham*'s objective-reasonableness test is

Corrected Points & Authorities in Support of State Defs.' Motion for Summary Judgment

3

5:23-cv-0257 KK (SHKx)

the clear principle that the force used to make an arrest must be balanced against the
need for force: it is the need for force which is at the heart of the *Graham* factors."
*Velazquez v. Cty. of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (citing
*Blankenhorn v. Cty. of Orange*, 485 F.3d 463, 480 (9th Cir. 2007)). In applying the
*Graham* standard, the Ninth Circuit instructs courts to consider "the totality of the
circumstances and ... whatever specific factors may be appropriate in a particular
case." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

In *Graham*, the Supreme Court set forth factors to be considered in evaluating
whether the force used was reasonable, "including the severity of the crime at issue,
whether the suspect poses an immediate threat to the safety of the officers or others,
and whether he is actively resisting arrest or attempting to evade arrest by flight."
490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Other
relevant considerations: the relationship between the need for the use of force and
the amount of force used; the extent of the plaintiff's injury; any effort made by the
officer to temper or to limit the amount of force; the severity of the security
problem at issue; and the threat reasonably perceived by the officer. *O'Neil v. Cty.
& Cty. of S.F.*, No. 17-CV-07190-JCS, 2021 WL 2914975, at *8 (N.D. Cal. July 12,
2021) (citing *Lombardo v. Cty. of St. Louis*, 14 S. Ct. 2239, 2241 (2021) (per
curiam)). "The calculus of reasonableness must embody allowance for the fact that
police officers are often forced to make split-second judgments—in circumstances
that are tense, uncertain, and rapidly evolving—about the amount of force that is
necessary in a particular situation." *Graham* at 396-397; *Reynolds v. San Diego
County*, 84 F.3d 1162, 1170 (9th Cir. 1996) (overruled on other grounds by *Acri v.
Varian Assocs.*, 114 F.3d 999, 1000 (9th Cir. 1997)) ("The inquiry is not whether
another reasonable or more reasonable interpretation of events can be constructed
. . . after the fact. Rather, the issue is whether a reasonable officer could have
believed that his conduct was justified") (internal quotations and citations omitted).
The court may additionally consider whether officers administered a warning,

assuming one was practicable. *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013) (citing *Scott v. Harris*, 550 U.S. 372, 381-82 (2007)). Ultimately, the "reasonableness" of the actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

The "most important single element" in the reasonableness analysis is the threat to the safety of officers and others posed by the suspect at the time of the incident. *Smith v. Cty. of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). It is the officer's perception that matters. An act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment. *See Krueger v. Fuhr*, 991 F.2d 435, 439 (8th Cir. 1993). Even if a suspect is ultimately "found to be unarmed, a police officer can still employ deadly force if objectively reasonable." *Billingsley v. Cty. of Omaha*, 277 F.3d 990, 995 (8th Cir. 2002). "A police officer may reasonably use deadly force where he 'has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" *Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002) (overruled on other grounds by *Cty of L.A. v. Mendez*, 137 S. Ct. 1539 (2017)). "A reasonable use of deadly force encompasses a range of conduct, and the availability of a less-intrusive alternative will not render conduct unreasonable." *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010). Requiring police officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. Officers therefore need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct identified as reasonable. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

The Fourth Amendment "does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010); *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996) ("[T]he Fourth Amendment does not

1  require omniscience . . . [o]fficers need not be absolutely sure, however, of the

2  nature of the threat or the suspect's intent to cause them harm—the Constitution

3  does not require that certitude precede the act of self protection.")

4      Applying the *Graham* considerations to Kee and Rubalcava's conduct on

5  February 17, 2021, the undisputed evidence shows that their conduct was

6  objectively reasonable. The officers were aware that Puga was suspected of firing a

7  gun at a motorist the day before, was considered armed and dangerous, and was

8  wanted for attempted murder, assault with a deadly weapon, and discharge of a

9  firearm under California Penal Code sections 664, 245(A)(2), and 246, respectively.

10 (DUF 4-5; *see also*, Arrest-Investigation Report at 1-13, attached as Ex. N to

11 Esquivel Decl.) When Blackwood and Rubalcava encountered Puga on the road at

12 approximately 1:30 a.m. and attempted to initiate a traffic stop, Puga feigned

13 cooperation by pulling over but then sped away to avoid arrest. He led officers on a

14 lengthy and dangerous chase, speeding in residential neighborhoods and ignoring

15 traffic signals, in violation of California Vehicle Code section 2800.2, among

16 others. (DUF 7-8.) After the pursuit and standoff, Puga pulled a gun on Kee and

17 Rubalcava and ultimately fired it at the officers in addition to pointing it at them in

18 a threatening way, thus committing, at a minimum, an assault on the officers. (Cal.

19 Pen. Code §§ 241(c), 245(a)(1).) It cannot be reasonably disputed that the severity

20 of Puga's crimes were serious and substantial, especially since they involved a

21 deadly weapon. Thus, the first *Graham* factor is satisfied.

22     The second *Graham* factor considers whether Puga posed an imminent threat

23 to Kee, Rubalcava, or others. This factor is also satisfied because Puga was evading

24 arrest by refusing to surrender, then he brandished a gun from his waistband,

25 pointed it at the officers, and fired at least once. (DUF 13-21.) When the officers

26 returned fire, Puga attempted to flee but continued to maintain control of his gun

27 and ran in the direction of a house, creating another immediate threat of death or

28 serious injury if he reached the residence and a hostage situation ensued. (DUF 22-

30.) State Defendants anticipate that Plaintiffs will argue that Puga was running away from the officers when they fired their second volley, such that he could not have posed an imminent threat of harm nor was it reasonable to perceive him as a threat. Any such argument fails because the State Defendants had information from which they could reasonably and objectively conclude that Puga continued to pose an imminent threat of death or serious harm. State Defendant reasonably believed Puga was the suspect involved in the freeway shooting. He was a fleeing felon, and took drastic measures to avoid arrest. Puga lied about being unarmed. And he pulled a gun on officers and fired at them. A reasonable officer would believe that Puga continued to pose an immediate threat of death or serious injury while he was in possession of a gun. Puga demonstrated that he would not hesitate to use the gun, and so long as he was armed and capable of using the gun, he continued to be an imminent threat. Additionally, despite the number of rounds the officers fired at Puga during the first volley, he continued to run and did not drop the gun. (DUF 22-30.) For these reasons, the second *Graham* factor is satisfied.

The final *Graham* factor—resisting arrest—is also satisfied. For over two hours, Puga resisted the officers efforts to arrest him. First he led then on an hour-long pursuit. When Puga's car came to a stop—because it became disabled, not because he decided to stop—he refused to exit the vehicle for almost another hour. Kee attempted to engage Puga in conversation to convince him to surrender, but Puga ignored those efforts. The officers used non-lethal force, such as the bean bags and pepper balls, to attempt to compel his surrender to no avail.

Given all these undisputed facts, a reasonable officer in Kee and Rubalcava's position would have believed that Puga posed an immediate threat of death or serious harm to the officers when Puga pulled the gun from his waistband and continued to be an imminent threat of death or harm when he tried to run away with the gun still firmly in his hand. The "critical inquiry" is what Kee and Rubalcava perceived. *Wilkinson*, 610 F.3d at 551. Here, because a reasonable officer would

have believed the use of deadly force was objectively reasonable in the face of

imminent threat of serious bodily harm or death to the officers and others, Kee and

Rubalcava are therefore entitled to summary judgment on Plaintiffs' Fourth

Amendment claim for excessive force.

**A.    No evidence shows that State Defendants intended to seize or restrict Plaintiffs' movement through their use of force**

A "Fourth Amendment seizure does not occur whenever there is a

governmentally caused termination of an individual's freedom of movement (the

innocent passerby), nor even whenever there is a governmentally caused and

governmentally *desired* termination of an individual's freedom of movement (the

fleeing felon), but only when there is governmental termination of freedom of

movement through means *intentionally* applied." *Brower v. Cnty. of Inyo*, 489 U.S.

593, 596–97 (1989) (emphasis added). A seizure does not occur "just so long as the

act of restraint itself is intended (here the act of shooting) though it restrains one not

intended to be restrained." *Rodriguez v. Cnty. of L.A.*, No. 2:21-CV-06574-SK,

2023 WL 4010447, at *7 (C.D. Cal. June 13, 2023), quoting *Rucker v. Harford

Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991)).  Courts have generally held that

"accidental or unintended seizures do not fall under the Fourth Amendment." *Lopez

v. Cty. of Santa Maria*, No. CV13-7287 AJW, 2016 WL 316004, at *3 (C.D. Cal.

Jan. 26, 2016); *U.S. v. Lockett*, 919 F.2d 585, 590 n.4 (9th Cir. 1990) ("[A]n

innocent bystander struck by a stray bullet from the officer's weapon would not

have [ ] a [Fourth Amendment] claim."); *Hernandez v. Cty. of L.A.*, No. 2:19-cv-

00441 CAS (GJx), 2021 WL 8820856, at *7 (C.D. Cal. Dec. 24, 2021); *Rodriguez

v. Cty. of Fresno*, 819 F. Supp. 2d 937, 946 (E.D. Cal. 2011) ("A plaintiff that is

injured collaterally or incidentally to the application of force by police against a

third party cannot maintain a Fourth Amendment claim."). A "person can only be

seized for Fourth Amendment purposes if that person was the 'deliberate object' of

the exertion of force intended to terminate freedom of movement." *Rodriguez*, 819

1  F. Supp. 2d at 946, quoting *Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir.

2  2006).

3      A "seizure" within the meaning of the Fourth Amendment can occur "only if,

4  in view of all of the circumstances surrounding the incident, a reasonable person

5  would have believed that he was not free to leave. Examples of circumstances that

6  might indicate a seizure, even where the person did not attempt to leave, would be

7  the threatening presence of several officers, the display of a weapon by an officer,

8  some physical touching of the person of the citizen, or the use of language or tone

9  of voice indicating that compliance with the officer's request might be compelled."

10 *U.S. v. Mendenhall*, 446 U.S. 544, 554-55 (1980). "In the absence of some such

11 evidence, otherwise inoffensive contact between a member of the public and the

12 police cannot, as a matter of law, amount to a seizure of that person." *Id.* at 555

13 (finding no "seizure" took place where federal agents approached respondent,

14 identified themselves, and requested to see her ticket and identification); *Jackson-*

15 *Moeser v. Armstrong*, 765 F. App'x 299 (9th Cir. 2019) (affirming summary

16 judgment of Fourth Amendment claim where CHP officer struck plaintiff with his

17 baton as the line of CHP officers was pushing the protesters off the freeway, and

18 plaintiff ran away, with no officer telling her to stop or followed her as she left the

19 freeway).

20     The undisputed evidence shows that no officer approached Plaintiffs, spoke to

21 Plaintiffs, ordered or demanded that they remain inside their home, or took any

22 action directed at Plaintiffs. (DUF 36.) There is also no evidence that any officer

23 directed their conduct at Plaintiffs. (DUF 1-37.) Plaintiffs did not allege or assert

24 that any officer stood near or by their fenced-in yard during the incident or that all

25 the streets were blocked or cordoned off. Indeed, Jonathan was preparing to leave

26 for work and intended to leave his home from the opposite direction (using Catalpa

27 Street) where the officers were interacting with Puga. (DUF 37.) He also opened the

28 security screen to video tape the incident. (*See* Botten Video, attached as Ex. K to

Esquivel Decl.; Botten Dep. 29:10-21, attached as Ex. U to Esquivel Decl.) After

the shooting, Plaintiffs were outside their home asking for assistance because Tanja,

J.B., and Jonathan were struck by errant gunfire. (Kee MVARS, Part 2 at 48:25-

49:30, attached as Ex. C to Esquivel Decl.; Botten Dep. 64:26-67:24.) Because no

evidence shows that State Defendants' conduct would have made a reasonable

person believe that they were not free to leave their home, summary judgment on

Plaintiffs' Fourth Amendment complaint is proper.

### B. Plaintiffs cannot maintain their Fourteenth Amendment claim because Puga created exigent circumstances that resulted in the shooting.

The "substantive component of the Due Process Clause insulates against the

arbitrary exercise of government power." *Rodriguez v. Cty. of Fresno*, 819 F. Supp.

2d at 946., citing *Claybrook v. Birchwell*, 199 F.3d 350, 259 (6th Cir. 2000). Under

the due Fourteenth Amendment, a state actor denies a plaintiff substantive due

process only if the plaintiff can show that police conduct "shocks the conscience."

*Id.*, citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998).

> In situations wherein the implicated state, county, or municipal agent(s)
> are afforded a reasonable opportunity to deliberate various alternatives
> prior to electing a course of action . . . , their actions will be deemed
> conscience-shocking if they were taken with "deliberate indifference"
> toward the plaintiff's federally protected rights. In contradistinction, in a
> rapidly evolving, fluid, and dangerous predicament which precludes the
> luxury of calm and reflective pre-response deliberation (such as, for
> example, a prison riot), public servants' reflexive actions "shock the
> conscience" only if they involved force employed "maliciously and
> sadistically for the very purpose of causing harm" rather than "in a good
> faith effort to maintain or restore discipline."

*Claybrook*, 199 F.3d at 359 (internal alterations and citations omitted); *Porter v.

Osborn*, 546 F.3d 1131, 1137-40 (9th Cir. 2008) (finding that constant flux of

events requiring officer to react quickly required evaluation under the purpose to

harm standard of culpability); *Rodriguez v. Cty of Fresno*, 819 F. Supp. 2d at 948

1    (stating that the proper inquiry in a Fourteenth Amendment claim is whether the

2    officer's actions with regard to the plaintiff were "malicious or sadistic" or for the

3    purpose of causing harm unrelated to any legitimate law enforcement interest).

4         The undisputed evidence shows that Puga's erratic and resistive behavior

5    created an unpredictable situation. (DUF 4-34.) That the standoff last about an hour

6    is not dispositive of whether the officers had ample opportunity to deliberate and

7    decide in which direction they could fire their weapons. Kee and Rubalcava

8    repositioned themselves based on Puga's actions. Initially both officers stood on the

9    driver's side of Blackwood's patrol vehicle. When Puga exited the vehicle, Kee and

10   Rubalcava moved to a position where they were almost in-line with the front of

11   Puga's car. Rubalcava even holstered his handgun and took out his handcuffs,

12   believing Puga was going to surrender. When Puga suddenly moved to the front of

13   his car, facing the officers but concealing his waistband, Rubalcava and Kee now

14   faced a very different scenario than seconds before. When Puga unexpectedly

15   reached down for the gun after Kee moved to a position where he could finally see

16   and confirm that Puga did in fact have a gun in his waistband, exigent

17   circumstances now existed for the officers' use of lethal force without time for

18   deliberation, even though Kee was aware that from his position at that moment,

19   Catalpa Street was in the background, not houses. Similarly, Rubalcava fired his

20   handgun in response to Puga's sudden movement of reaching for the gun and firing

21   at the officers. Rubalcava had a split-second to decide to act in the face of the

22   immediate threat of death or serious injury.

23        Based on these undisputed facts, Plaintiffs' Fourteenth Amendment claim

24   must be analyzed under the purpose-to-harm standard. There is simply no evidence

25   to show that Kee and Rubalcava acted maliciously or sadistically for the purpose of

26   causing Jonathan, Tanja, or J.B. harm. Summary judgment on this claim is

27   therefore appropriate.

28   / / /

### C.  Because Kee and Rubalcava's use of force was reasonable, Plaintiffs' battery claim necessarily fails.

Under California law, a battery cause of action against a police officer, just like a federal claim of excessive force, requires proof of unreasonable force. "Because federal civil rights claims of excessive use of force are the federal counterpart to state battery and wrongful death claims, federal cases are instructive in this area." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527, n.11 (2009). Police officers are not treated as ordinary battery defendants because they are charged with protecting the public peace and are therefore "entitled to the even greater use of force than might be in the same circumstances required for self-defense." *Id.* at 527. A police officer's use of deadly force is reasonable if the officer "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 528 (quotation omitted.) Because a police officer is "charged with acting affirmatively and using force as part of their duties," a plaintiff suing on grounds of battery resulting from police action must prove that "the police officer's use of force was unreasonable." *Id*.

Under the doctrine of transferred intent, a defendant who unlawfully aims at one but hits another is guilty of assault and battery on the party he hit, the injury being the direct, natural and probable consequence of the wrongful act. *Rodriguez v. Cty. of Fresno*, 819 F. Supp. 2d at 952-53 (citations and quotations omitted). Under this doctrine of transferred intent, the viability of a claim of battery by a bystander against a police officer turns on the "reasonability of the application of force by the police officer against the intended suspect." *Id*.

As discussed above in connection with the Fourth Amendment claim for excessive force, Puga posed an imminent threat to Kee, Rubalcava, and other officers when he, without warning, reached for the gun in his waistband and fired the gun at the officers. Summary judgment on Plaintiffs' claim for battery is therefore proper.

1

### D. Kee and Rubalcava were not negligent in their actions leading up or during their use of force.

2

3      Under California negligence law, "a plaintiff must show that the defendant had

4   a duty to use due care, that he breached that duty, and that the breach was the

5   proximate or legal cause of the resulting injury." *Tabares v. Cty. of Huntington*

6   *Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) (citations omitted). Officers have a

7   duty to act reasonably when using deadly force. *Id.* (citations omitted). "[T]he

8   'reasonableness' of a particular use of force must be judged from the perspective of

9   a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

10  (quoting *Graham v. Connor*, 490 U.S. at 396). The officer's conduct must only

11  "fall[ ] within the range of conduct that is reasonable" viewed "in light of the

12  totality of circumstances." *Tabares*, at 1125. Officers may be liable "if the tactical

13  conduct and decisions leading up to the use of deadly force show, as part of the

14  totality of circumstances, that the use of deadly force was unreasonable." *Id.* "The

15  reasonableness of a peace officer's conduct must be determined in light of the

16  totality of circumstances. ... Preshooting conduct is included in the totality of

17  circumstances surrounding an officer's use of deadly force, and therefore the

18  officer's duty to act reasonably when using deadly force extends to preshooting

19  conduct." *Villalobos v. Cty. of Sta. Maria*, 85 Cal. App. 5th 383, 389 (2022)

20  (internal quotation marks and brackets omitted), quoting *Hayes v. Cnty. of San*

21  *Diego*, 57 Cal. 4th 622, 632 (2013).

22      California courts generally use "[t]he same consideration" as federal law in

23  assessing an officer's tactical conduct at the time of shooting as part of the totality

24  of the circumstances. *Tabares*, 988 F.3d at 1126. California courts consider "the

25  severity of the crime at issue, whether the plaintiff posed a reasonable threat to the

26  safety of the officer or others, and whether the plaintiff was actively resisting

27  detention or attempting to escape." *Id.*

28

As discussed above in connection with the Fourth Amendment claim for excessive force, the undisputed evidence shows that the severity of the crime at issue, the immediate threat Puga posed to the safety of Kee, Rubalcava, or others, and Puga's continuous and active attempts to evade the officers, supports Kee and Rubalcava's use of lethal force to stop Puga from further firing upon the officers and advancing towards a house which could have resulted in a hostage situation. (DUF 4-34.) Based on the totality of the circumstances, the officers' use of lethal force was objectively reasonable.

Likewise, Kee and Rubalcava's pre-shooting conduct fell within standard of police procedures and practices. (Meyer Report 25-28, attached as Ex. Y to Esquivel Decl.) Kee engaged in lengthy de-escalation efforts to get Puga to exit the vehicle and surrender. He attempted less-lethal options that were ineffective against Puga. The undisputed evidence shows that the State Defendants were not negligent in their pre-shooting and shooting tactics and decisions. Because Kee and Rubalcava were not negligent for the injuries to Jonathan, Tanja, and J.B., Their and Annabelle's claim for negligent infliction of emotional distress also fails. *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1125-26 (E.D. Cal. 2014) ("Bystander cases are cases in which the plaintiff was not physically impacted or injured, but instead witnessed someone else being injured due to defendant's negligence.") (quotations omitted), quoting *Wooden v. Raveling*, 61 Cal.App.4th 1035, 1037 (1998). Summary judgment on Plaintiffs' negligence claims is therefore proper.

**E.    Plaintiffs' claim under the Bane Act fails because no evidence shows that Kee or Rubalcava had the intent to violate Puga's right to freedom from unreasonable seizure.**

California Civil Code section 52.1, known as the Bane Act, creates a cause of action against those who interfere with constitutional rights "by threat, intimidation, or coercion." *Diaz v. Cnty. of Ventura*, 512 F. Supp. 3d 1030, 1047 (C.D. Cal. 2021). In an excessive force case, the Bane Act requires not merely establishing a

Fourth Amendment violation, but also "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (2018), quoting *Cornell v. Cty. and Cnty. of S.F.*, 17 Cal. App. 5th 766, 801-02 (2017). A plaintiff must prove that the offending officer "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Reese*, at 1045 (internal quotation marks omitted).

As discussed above in connection with the Fourth and Fourteenth Amendment claims, no evidence shows Kee or Rubalcava violated any such rights. Further, there is no evidence to show that Kee or Rubalcava specifically intended the purported unreasonableness of his conduct. Rather, the undisputed evidence shows that the officers were required to make a split-second decision, when, Puga reached for and grabbed the gun from his waistband and fired it at the officers, making the use of lethal force objectively reasonable in the face of an immediate and obvious threat to life and limb. Accordingly, Plaintiffs' Bane Act claim fails.

## II. KEE AND RUBALCAVA ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity protects "government officials performing discretionary functions" by "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "The linchpin of qualified immunity is the reasonableness of the official's conduct." *Rosenbaum v. Washoe County*, 654 F.3d 1001, 1006 (9th Cir. 2011). Reasonableness is judged against the backdrop of the law at the time of the conduct at issue. *Brouseau v. Haugen*, 543 U.S. 194, 198 (2004); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). Thus, the reasonableness inquiry must be undertaken in light of the specific context of the case and not as a general, broad proposition. *Saucier v. Katz,* 533 U.S. 194, 202 (2001); *Kennedy v. Ridgefield*, 439 F.3d 1055, 1065-66 (9th Cir. 2006). To be clear, the Supreme Court has admonished courts "not to define clearly established law at a high level of generality." *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600,

613 (2015); *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017). "An officer will be denied qualified immunity in a [section] 1983 action only if (1) the facts alleged, taken in light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation." *Torres v. Cty. of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

Here, Kee and Rubalcava are entitled to qualified immunity for their direct actions towards Puga and any incidental consequences to Plaintiffs. As discussed above, no constitutional violation occurred in connection with Kee or Rubalcava's use of lethal force on February 17, 2021. "It would be unquestionably reasonable for police to shoot a suspect in [decedent's] position if he reaches for a gun in his waistband, or even if he reaches there for some other reason. Given [decedent's] dangerous and erratic behavior up to that point, the police would doubtless be justified in responding to such a threatening gesture by opening fire." *Cruz v. Cty. of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014); *Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023), cert. denied, 144 S. Ct. 559, 217 L. Ed. 2d 297 (2024) (stating that when a suspect points a gun in an officer's direction, "the Constitution undoubtedly entitles the officer to respond with deadly force"). The undisputed facts here show that Puga reached for his waistband where he had a gun and that is when Kee initially fired his gun at Puga. (DUF 22.) Rubalcava shot his first volley when Puga fired the gun at him. (DUF 28.) Under *Cruz*, both officers were justified in using lethal force.

However, the case law is not so equally clear whether Kee and Rubalcava's use of lethal force during the second volley, when Puga ran away from them with gun in hand in the direction of house. Qualified immunity applies when officers are reasonably mistaken about the nature of the threat. "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of an immediate

threat, and in those situations courts will not hold that they have violated the

Constitution." *Strickland*, 69 F.4th at 621, quoting *Saucier*, 533 U.S. at 206.

Although Kee and Rubalcava do not concede that they were mistaken about the

immediate threat Puga posed to them and others when he ran away (because Puga

still had the gun and could have easily fired at and shot them, including when Puga

stumbled to the ground and continued to hold the gun), assuming they were

mistaken about their belief, Kee and Puga are still entitled to qualified immunity for

the second volley of shots fired at Puga because their belief was reasonable and no

case law (that the undersigned has been able to find) put them on notice that their

action would be unlawful. As discussed above, Kee and Rubalcava were aware that

Puga had shot at another motorist the day before; he led police on a lengthy

highspeed chase without regard for public safety; he pulled a gun and fired at them

moments earlier. Thus, it was not unreasonable for the officers to believe that Puga

would again use the gun even if running away from them or that Puga would force

his way into the house that was in his path of travel and take hostages or shoot

someone in that home who might try to defend themself. Kee and Rubalcava knew

of and had already experienced the extreme and violent measures Puga resorted to,

especially to evade arrest. Because the law was not clear whether lethal force was

lawful to stop Puga as he ran way from the officers with the gun, Kee and

Rubalcava are entitled to qualified immunity.

As to Plaintiffs' Fourth and Fourteenth Amendment claims arising the

incidental consequences of Kee and Rubalcava's use of lethal force, *Rodriguez v.*

*County of Los Angeles*, 654 F. Supp. 3d 1029, is dispositive. There, the district

court concluded that the officer "had no clearly established basis to believe that he

could be sued under § 1983 by an individual who is accidentally shot by police

while they are attempting to apprehend someone else." *Rodriguez v. Cnty. of L.A.*,

654 F. Supp. 3d at 1045. *Rodriguez v. County of Los Angeles* involved facts more

egregious than Kee and Rubalcava's conduct here. In *Rodriguez*, plaintiffs were

1   approached by police with guns drawn. Police were dispatched to plaintiffs'

2   location (where plaintiffs were helping a friend fix his car) to investigate a hit-and-

3   run involving a parked vehicle. During the encounter, the friend started to run

4   away, and an officer fired a single shot at the friend with no warning. The bullet

5   missed and struck one of the plaintiffs instead. Plaintiffs' Fourth Amendment

6   claims alleged they were unlawfully seized based on the use of excessive force

7   (shooting at the friend) and showing of force (responding with guns drawn). The

8   court found the officers qualifiedly immune.

9        Here, Kee and Rubalcava's do not remotely mirror the conduct of the officers

10  in *Rodriguez v. County of Los Angeles*. They never drew their guns at Plaintiffs,

11  ordered Plaintiffs to comply with their commands, or physically detained Plaintiffs.

12  Consequently, Kee and Rubalcava are entitled to qualified immunity because the

13  law did not put them on notice that their conduct on February 17, 2021 would be

14  unlawful.

15  **III.   BLACKWOOD DID NOT OWE PLAINTIFFS A DUTY OF CARE**

16       "Unlike private citizens, police officers act under color of law to protect the

17  public interest. They are charged with acting affirmatively and using force as part

18  of their duties, because the right to make an arrest or investigatory stop necessarily

19  carries with it the right to use some degree of physical coercion or threat thereof to

20  effect it." *Golick v. State of Cal*., 82 Cal. App. 5th 1127, 1138-39 (2022) (citations

21  and internal quotation marks omitted). Thus, under California law, a peace officer

22  may use reasonable force to make an arrest, prevent escape or overcome resistance,

23  and need not desist in the face of resistance. *Id*. at 1139 (citations and quotations

24  omitted). An important corollary to these principles is that police officers have a

25  duty in tort to act reasonably when employing deadly force against a suspect. *Id*. An

26  officer's lack of due care when employing deadly force may give rise to liability for

27  injuries incurred by third parties in the deadly force incident. *Id*.; *Brown v.*

28  *Ransweiler*, 171 Cal. App. 4th 516, 526 n. 10 (2009) (stating that law enforcement

Corrected Points & Authorities in Support
of State Defs.' Motion for Summary          18                    5:23-cv-0257 KK (SHKx)
Judgment

1   officers do not "owe bystanders a duty different from the duty they owe to a

2   suspect, which is the duty to use reasonable force under the totality of the

3   circumstances").

4        As discussed above in connection with the Plaintiffs' Fourth Amendment

5   claim for excessive force, Blackwood's use of lethal force against Puga was

6   reasonable under the totality of the circumstances. Further, the undisputed evidence

7   shows that Blackwood aimed and shot at Puga in a northernly direction on Peach

8   Street, such that there were no homes or individuals in his background. (DUF 33-

9   35; Scene Photograph, Ex. A.) Blackwood did not shoot in a northeastern direction

10  where the Botten residence was located, and there is no evidence that he discharged

11  his weapon in an arbitrary or capricious manner such that the rounds could have

12  ricocheted or directly struck the Botten home.

13  **IV.   STATE DEFENDANTS ARE IMMUNE FROM STATE-LAW LIABILITY**

14       Peace officers are privileged under state law to use reasonable force to make

15  an arrest, prevent an escape, or overcome resistance. Cal. Penal Code § 835a.

16  *Hernandez v. Cty. of Pomona*, 46 Cal. 4th 501 (2009). California Penal Code

17  section 835a provides that an officer "may use reasonable force to effect the arrest,

18  to prevent escape or overcome resistance" and is justified in using deadly force

19  "when the officer reasonably believes, based on the totality of the circumstances,

20  that such force is necessary" to defend against an imminent threat of death or

21  serious bodily injury to the officer or to another person. Cal. Penal Code § 835a(b),

22  (c)(1)(A); *Edson v. Cty. of Anaheim*, 63 Cal. App. 4th 1269, 1272-73 (1998) (noting

23  "police battery actions recognize[ ]" § 835a's protections by requiring a plaintiff to

24  "prove[ ] unreasonable force was used").

25       California Penal Code section 196 also provides a privilege for justifiable

26  homicide. "Under Penal Code section 196, a police officer who kills someone has

27  committed a justifiable homicide if the homicide was necessarily committed in

28  overcoming actual resistance to the execution of some legal process, or in the

1    discharge of any other legal duty . . . [Citation omitted.]  There can be no civil

2    liability under California law as the result of a justifiable homicide." *Martinez*, at

3    349-350. "The test for determining whether a homicide was justifiable under Penal

4    Code section 196 is whether the circumstances reasonably create[d] a fear of death

5    or serious bodily harm to the officer or to another." *Id*. (Citations omitted); *see also*.

6    Cal. Pen. Code § 197 (privilege for justifiable homicide); *Gilmore v. Sup. Ct.*, 230

7    Cal. App. 3d 416, 422 (1991) ("[I]f, in a particular case, the facts establish a

8    justifiable [use of force] under the Penal Code, there is no civil liability.").

9        As discussed above concerning Plaintiffs' Fourth Amendment claim for

10   excessive force, the State Defendants' use of deadly force was reasonable under the

11   totality of the circumstances. They had a reasonable, well-founded belief that Puga

12   posed an imminent risk of serious injury or death to them and others. Puga was

13   armed with gun; Defendants were aware that he was a suspect in an earlier freeway

14   shooting; he took evasive measure to conceal the gun during the standoff; and he

15   pointed and fired the gun at the officers. State Defendants' use of lethal force was

16   reasonable, and therefore they are immune from liability on Plaintiffs' negligence,

17   Bane Act, and battery claims.

18                                    **CONCLUSION**

19       For the reasons discussed above, the Court should grant the State Defendants'

20   motion and entered judgment in their favor.

21   Dated:  February 24, 2025                Respectfully submitted,

22                                            ROB BONTA
                                             Attorney General of California
23                                           NORMAN D. MORRISON
                                             Supervising Deputy Attorney General
24

25                                           */s/ Diana Esquivel*

26   SA2023302180
     38745559.docx                            DIANA ESQUIVEL
                                             Deputy Attorney General
27                                           *Attorneys for Defendants Blackwood,
                                             Kee, and Rubalcava*
28

1                                     **CERTIFICATE OF COMPLIANCE**

2          The undersigned, counsel of record for Defendants Blackwood, Kee, and

3 Rubalcava, certifies that this brief contains 6,945 words, which complies with the

4 word limit of L.R. 11-6.1.

5

6 Dated:  February 24, 2025                 Respectfully submitted,

7                                           R OB B ONTA

8                                           Attorney General of California

9                                         ***/s/ Diana Esquivel***

10                                         D IANA E SQUIVEL

11                                         Deputy Attorney General
                                          *Attorneys for Defendants Blackwood,*

12                                           *Kee, and Rubalcava*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Corrected Points & Authorities in Support
of State Defs.' Motion for Summary
Judgment                 21                5:23-cv-0257 KK (SHKx)