1   ROB BONTA
    Attorney General of California
2   NORMAN D. MORRISON
    Supervising Deputy Attorney General
3   DIANA ESQUIVEL
    Deputy Attorney General
4   State Bar No. 202954
      1300 I Street, Suite 125
5     P.O. Box 944255
      Sacramento, CA 94244-2550
6     Telephone: (916) 210-7320
      Fax: (916) 322-8288
7     E-mail: Diana.Esquivel@doj.ca.gov
    *Attorneys for Defendants Blackwood, Kee, and*
8   *Rubalcava*

9

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                     RIVERSIDE DIVISION

13

| | |
|---|---|
| **JONATHAN WAYNE BOTTEN, SR., et al.,**<br><br>                                    Plaintiffs,<br><br>       **v.**<br><br>**STATE OF CALIFORNIA, et al.,**<br><br>                                    Defendants. | No. 5:23-cv-0257 KK (SHKx)<br><br>**CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:            March 20, 2025<br>Time:           9:30 a.m.<br>Courtroom:   3 (3rd Floor)<br>Judge:          Hon. Kenly Kiya Kato<br>Trial Date:    July 28, 2025<br>Action Filed: February 17, 2023 |

Corrected Points & Authorities in Support
of State Defs.' Motion for Summary
Judgment

5:23-cv-0257 KK (SHKx)

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................. 1

Standard on Summary Judgment ............................................................................ 2

Argument ................................................................................................................ 3

    I.    Plaintiffs' Claims Under 42 U.S.C. § 1983 and California Law
        Arising From Kee and Rubalcava's Use of Force Fail Because
        the Officers Used Objectively Reasonable Force to End the
        Immediate Threat of Death or Serous Harm that Puga Posed to
        the Officers and Others ............................................................................. 3

        A.    No evidence shows that State Defendants intended to
                seize or restrict Plaintiffs' movement through their use of
                force ............................................................................................ 8

        B.    Plaintiffs cannot maintain their Fourteenth Amendment
                claim because Puga created exigent circumstances that
                resulted in the shooting. ............................................................ 10

        C.    Because Kee and Rubalcava's use of force was
                reasonable, Plaintiffs' battery claim necessarily fails. ............. 12

        D.    Kee and Rubalcava were not negligent in their actions
                leading up or during their use of force. .................................... 13

        E.    Plaintiffs' claim under the Bane Act fails because no
                evidence shows that Kee or Rubalcava had the intent to
                violate Puga's right to freedom from unreasonable
                seizure. ...................................................................................... 14

    II.    Kee and Rubalcava are Entitled to Qualified Immunity .................... 15

    III.    Blackwood Did Not Owe Plaintiffs A Duty of Care .......................... 18

    IV.    State Defendants are Immune from State-Law Liability .................... 19

Conclusion ........................................................................................................... 20

Corrected Points & Authorities in Support
of State Defs.' Motion for Summary
Judgment

i

5:23-cv-0257 KK (SHKx)

# INTRODUCTION

In the early morning of February 17, 2021, decedent Hector Puga led Defendants California Highway Patrol Officers Isaiah Kee, Michael Blackwood, and Bernardo Rubalcava (State Defendants) on a hour-long, highspeed pursuit, followed by an equally lengthy standoff to evade arrest. Puga was suspected of shooting at a motorist the day before, striking the victim's front passenger door. Kee was involved in the investigation, and Blackwood and Rubalcava were briefed on the shooting and provided Puga's physical description and vehicle information, such that they recognized Puga's vehicle while they were on patrol and gave chase. The pursuit ended near the intersection of Peach and Catalpa Streets in Hesperia. Plaintiffs Jonathan Botten (Jonathan), Tanja Dudek-Botten (Tanja), Annabelle Botten (Annabelle) and J.B. lived on the northeast corner of the intersection.

During the standoff, Kee attempted to communicate, negotiate, and build a rapport with Puga, in addition to repeatedly ordering him to get out of the car and surrender. Kee used less-lethal options, such a bean bags and pepper balls, to coax Puga out of the vehicle, but these efforts were unsuccessful, and the pepper balls were ineffective against Puga. When Puga finally exited the car, his actions were furtive and prevented the officers from seeing the front of his waistband to confirm that he was not armed. Puga even told Kee that he was not armed. It was a lie. When Puga eventually displayed his shirtless front torso to the officers, he reached for a gun in his waistband and eventually fired it at the officers. Kee and Rubalcava, who were on the southwest corner of the intersection, fired multiple rounds as they took cover. Blackwood also fired multiple rounds in rapid succession from his position near the rear of the driver's side of Puga's car. When Puga ran north up Peach Stret in the direction of a house with the gun still in hand, all three officers fired another round of multiple shots to end the immediate threat Puga presented. He died at the scene. Accidentally, during the shootout, Jonathan, Tanja, and J.B. were struck by stray bullets while at home. Annabelle witnessed her family

Corrected Points & Authorities in Support
of State Defs.' Motion for Summary
Judgment

1

5:23-cv-0257 KK (SHKx)

members being injured. Plaintiffs brought this action under 42 U.S.C. § 1983 and California law for excessive force, substantive due process violations, battery, negligence, negligent infliction of emotion distress, and violation of the Bane Act, California Civil Code § 52.1 against Defendants.[1]

Summary judgment is appropriate because Kee and Rubalcava's use of lethal force against Puga was objectively reasonable under the circumstances. Puga posed an immediate threat of death or serious bodily injury when he reached for his gun and fired it at the officers. State Defendants reasonably feared for their lives as well as the safety of other officers. The reasonableness of Kee and Rubalcava's use of force defeats Plaintiffs' Fourth Amendment claim for excessive force, battery, and violation of the Bane Act. Further, the undisputed evidence shows that Kee and Rubalcava did not direct or intend to direct their use of force at Plaintiffs, nor did they intend to confine or restrict their movement through their use of force. Blackwood did not owe Plaintiffs a duty of care, and Defendants are qualifiedly immune and immune. Accordingly, the Court should grant this motion and enter judgment in favor of the State Defendants.

## STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a

---

[1] The parties reached an agreement that Plaintiffs will voluntarily dismiss their claims against Blackwood except for the negligence and negligent infliction of emotional distress claims.

Corrected Points & Authorities in Support of State Defs.' Motion for Summary Judgment

2

5:23-cv-0257 KK (SHKx)

1  dispute as to material facts on the elements that the moving party has contested.

2  Fed. R. Civ. P. 56(c). The nonmoving party may not simply rely on the pleadings

3  and must do more than make "conclusory allegations [in] an affidavit." *Lujan v.*

4  *National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex Corp.*, 477

5  U.S. at 324.

6      Summary judgment must be granted if the nonmoving party "fails to make a

7  showing sufficient to establish the existence of an element essential to that party's

8  case, and on which that party will bear the burden of proof at trial." *Celotex*, 477

9  U.S. at 322; *Abromson v. American Pac. Corp.*, 114 F.3d 898, 902 (9th Cir. 1997).

10 Summary judgment for the moving party is proper when a rational trier of fact

11 would not be able to find for the nonmoving party on the claims at issue.

12 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### ARGUMENT

**I.  PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1983 AND CALIFORNIA LAW ARISING FROM KEE AND RUBALCAVA'S USE OF FORCE FAIL BECAUSE THE OFFICERS USED OBJECTIVELY REASONABLE FORCE TO END THE IMMEDIATE THREAT OF DEATH OR SEROUS HARM THAT PUGA POSED TO THE OFFICERS AND OTHERS**

17     The Supreme Court of the United States has determined that the Due Process

18 Clause of the Fourteenth Amendment protects individuals who have not yet been

19 convicted of a crime "from the use of excessive force that amounts to punishment."

20 *Graham v. Connor*, 490 U.S. 386, 388 (1989). However, allegations of excessive

21 force during the course of an arrest are analyzed under the Fourth Amendment,

22 which prohibits arrests without probable cause or other justification. *Id.* (stating that

23 claims that law enforcement officials used excessive force in the course of making

24 an arrest, investigatory stop, or other seizure are properly analyzed under the Fourth

25 Amendment's "objective reasonableness" standard). Under *Graham*, "the question

26 is whether the officers' actions are 'objectively reasonable' in light of the facts and

27 circumstances confronting them, without regard to their underlying intent or

28 motivation." *Id.* at 397. Fundamental to "*Graham*'s objective-reasonableness test is

the clear principle that the force used to make an arrest must be balanced against the need for force: it is the need for force which is at the heart of the *Graham* factors." *Velazquez v. Cty. of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (citing *Blankenhorn v. Cty. of Orange*, 485 F.3d 463, 480 (9th Cir. 2007)). In applying the *Graham* standard, the Ninth Circuit instructs courts to consider "the totality of the circumstances and ... whatever specific factors may be appropriate in a particular case." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

In *Graham*, the Supreme Court set forth factors to be considered in evaluating whether the force used was reasonable, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Other relevant considerations: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; and the threat reasonably perceived by the officer. *O'Neil v. Cty. & Cty. of S.F.*, No. 17-CV-07190-JCS, 2021 WL 2914975, at *8 (N.D. Cal. July 12, 2021) (citing *Lombardo v. Cty. of St. Louis*, 14 S. Ct. 2239, 2241 (2021) (per curiam)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham* at 396-397; *Reynolds v. San Diego County*, 84 F.3d 1162, 1170 (9th Cir. 1996) (overruled on other grounds by *Acri v. Varian Assocs.*, 114 F.3d 999, 1000 (9th Cir. 1997)) ("The inquiry is not whether another reasonable or more reasonable interpretation of events can be constructed . . . after the fact. Rather, the issue is whether a reasonable officer could have believed that his conduct was justified") (internal quotations and citations omitted). The court may additionally consider whether officers administered a warning,

1    assuming one was practicable. *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir.

2    2013) (citing *Scott v. Harris*, 550 U.S. 372, 381-82 (2007)). Ultimately, the

3    "reasonableness" of the actions "must be judged from the perspective of a

4    reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

5    *Graham*, 490 U.S. at 396.

6         The "most important single element" in the reasonableness analysis is the

7    threat to the safety of officers and others posed by the suspect at the time of the

8    incident. *Smith v. Cty. of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). It is the

9    officer's perception that matters. An act taken based on a mistaken perception or

10   belief, if objectively reasonable, does not violate the Fourth Amendment. *See*

11   *Krueger v. Fuhr*, 991 F.2d 435, 439 (8th Cir. 1993). Even if a suspect is ultimately

12   "found to be unarmed, a police officer can still employ deadly force if objectively

13   reasonable." *Billingsley v. Cty. of Omaha*, 277 F.3d 990, 995 (8th Cir. 2002). "A

14   police officer may reasonably use deadly force where he 'has probable cause to

15   believe that the suspect poses a threat of serious physical harm, either to the officer

16   or to others.'" *Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002) (overruled

17   on other grounds by *Cty of L.A. v. Mendez*, 137 S. Ct. 1539 (2017)). "A reasonable

18   use of deadly force encompasses a range of conduct, and the availability of a less-

19   intrusive alternative will not render conduct unreasonable." *Wilkinson v. Torres*,

20   610 F.3d 546, 551 (9th Cir. 2010). Requiring police officers to find and choose the

21   least intrusive alternative would require them to exercise superhuman judgment.

22   Officers therefore need not avail themselves of the least intrusive means of

23   responding to an exigent situation; they need only act within that range of conduct

24   identified as reasonable. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

25        The Fourth Amendment "does not require officers in a tense and dangerous

26   situation to wait until the moment a suspect uses a deadly weapon to act to stop the

27   suspect." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010); *Elliott v.*

28   *Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996) ("[T]he Fourth Amendment does not

1  require omniscience . . . [o]fficers need not be absolutely sure, however, of the

2  nature of the threat or the suspect's intent to cause them harm—the Constitution

3  does not require that certitude precede the act of self protection.")

4      Applying the *Graham* considerations to Kee and Rubalcava's conduct on

5  February 17, 2021, the undisputed evidence shows that their conduct was

6  objectively reasonable. The officers were aware that Puga was suspected of firing a

7  gun at a motorist the day before, was considered armed and dangerous, and was

8  wanted for attempted murder, assault with a deadly weapon, and discharge of a

9  firearm under California Penal Code sections 664, 245(A)(2), and 246, respectively.

10  (DUF 4-5; *see also*, Arrest-Investigation Report at 1-13, attached as Ex. N to

11  Esquivel Decl.) When Blackwood and Rubalcava encountered Puga on the road at

12  approximately 1:30 a.m. and attempted to initiate a traffic stop, Puga feigned

13  cooperation by pulling over but then sped away to avoid arrest. He led officers on a

14  lengthy and dangerous chase, speeding in residential neighborhoods and ignoring

15  traffic signals, in violation of California Vehicle Code section 2800.2, among

16  others. (DUF 7-8.) After the pursuit and standoff, Puga pulled a gun on Kee and

17  Rubalcava and ultimately fired it at the officers in addition to pointing it at them in

18  a threatening way, thus committing, at a minimum, an assault on the officers. (Cal.

19  Pen. Code §§ 241(c), 245(a)(1).) It cannot be reasonably disputed that the severity

20  of Puga's crimes were serious and substantial, especially since they involved a

21  deadly weapon. Thus, the first *Graham* factor is satisfied.

22      The second *Graham* factor considers whether Puga posed an imminent threat

23  to Kee, Rubalcava, or others. This factor is also satisfied because Puga was evading

24  arrest by refusing to surrender, then he brandished a gun from his waistband,

25  pointed it at the officers, and fired at least once. (DUF 13-21.) When the officers

26  returned fire, Puga attempted to flee but continued to maintain control of his gun

27  and ran in the direction of a house, creating another immediate threat of death or

28  serious injury if he reached the residence and a hostage situation ensued. (DUF 22-

30.) State Defendants anticipate that Plaintiffs will argue that Puga was running away from the officers when they fired their second volley, such that he could not have posed an imminent threat of harm nor was it reasonable to perceive him as a threat. Any such argument fails because the State Defendants had information from which they could reasonably and objectively conclude that Puga continued to pose an imminent threat of death or serious harm. State Defendant reasonably believed Puga was the suspect involved in the freeway shooting. He was a fleeing felon, and took drastic measures to avoid arrest. Puga lied about being unarmed. And he pulled a gun on officers and fired at them. A reasonable officer would believe that Puga continued to pose an immediate threat of death or serious injury while he was in possession of a gun. Puga demonstrated that he would not hesitate to use the gun, and so long as he was armed and capable of using the gun, he continued to be an imminent threat. Additionally, despite the number of rounds the officers fired at Puga during the first volley, he continued to run and did not drop the gun. (DUF 22-30.) For these reasons, the second *Graham* factor is satisfied.

The final *Graham* factor—resisting arrest—is also satisfied. For over two hours, Puga resisted the officers efforts to arrest him. First he led then on an hour-long pursuit. When Puga's car came to a stop—because it became disabled, not because he decided to stop—he refused to exit the vehicle for almost another hour. Kee attempted to engage Puga in conversation to convince him to surrender, but Puga ignored those efforts. The officers used non-lethal force, such as the bean bags and pepper balls, to attempt to compel his surrender to no avail.

Given all these undisputed facts, a reasonable officer in Kee and Rubalcava's position would have believed that Puga posed an immediate threat of death or serious harm to the officers when Puga pulled the gun from his waistband and continued to be an imminent threat of death or harm when he tried to run away with the gun still firmly in his hand. The "critical inquiry" is what Kee and Rubalcava perceived. *Wilkinson*, 610 F.3d at 551. Here, because a reasonable officer would

Corrected Points & Authorities in Support of State Defs.' Motion for Summary Judgment

7

5:23-cv-0257 KK (SHKx)

1   have believed the use of deadly force was objectively reasonable in the face of

2   imminent threat of serious bodily harm or death to the officers and others, Kee and

3   Rubalcava are therefore entitled to summary judgment on Plaintiffs' Fourth

4   Amendment claim for excessive force.

5       **A.    No evidence shows that State Defendants intended to seize or
6            restrict Plaintiffs' movement through their use of force**

7           A "Fourth Amendment seizure does not occur whenever there is a

8   governmentally caused termination of an individual's freedom of movement (the

9   innocent passerby), nor even whenever there is a governmentally caused and

10  governmentally *desired* termination of an individual's freedom of movement (the

11  fleeing felon), but only when there is governmental termination of freedom of

12  movement through means *intentionally* applied." *Brower v. Cnty. of Inyo*, 489 U.S.

13  593, 596–97 (1989) (emphasis added). A seizure does not occur "just so long as the

14  act of restraint itself is intended (here the act of shooting) though it restrains one not

15  intended to be restrained." *Rodriguez v. Cnty. of L.A.*, No. 2:21-CV-06574-SK,

16  2023 WL 4010447, at *7 (C.D. Cal. June 13, 2023), quoting *Rucker v. Harford*

17  *Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991)).  Courts have generally held that

18  "accidental or unintended seizures do not fall under the Fourth Amendment." *Lopez*

19  *v. Cty. of Santa Maria*, No. CV13-7287 AJW, 2016 WL 316004, at *3 (C.D. Cal.

20  Jan. 26, 2016); *U.S. v. Lockett*, 919 F.2d 585, 590 n.4 (9th Cir. 1990) ("[A]n

21  innocent bystander struck by a stray bullet from the officer's weapon would not

22  have [ ] a [Fourth Amendment] claim."); *Hernandez v. Cty. of L.A.*, No. 2:19-cv-

23  00441 CAS (GJx), 2021 WL 8820856, at *7 (C.D. Cal. Dec. 24, 2021); *Rodriguez*

24  *v. Cty. of Fresno*, 819 F. Supp. 2d 937, 946 (E.D. Cal. 2011) ("A plaintiff that is

25  injured collaterally or incidentally to the application of force by police against a

26  third party cannot maintain a Fourth Amendment claim."). A "person can only be

27  seized for Fourth Amendment purposes if that person was the 'deliberate object' of

28  the exertion of force intended to terminate freedom of movement." *Rodriguez*, 819

1    F. Supp. 2d at 946, quoting *Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir.
2    2006).

3        A "seizure" within the meaning of the Fourth Amendment can occur "only if,
4    in view of all of the circumstances surrounding the incident, a reasonable person
5    would have believed that he was not free to leave. Examples of circumstances that
6    might indicate a seizure, even where the person did not attempt to leave, would be
7    the threatening presence of several officers, the display of a weapon by an officer,
8    some physical touching of the person of the citizen, or the use of language or tone
9    of voice indicating that compliance with the officer's request might be compelled."
10   *U.S. v. Mendenhall*, 446 U.S. 544, 554-55 (1980). "In the absence of some such
11   evidence, otherwise inoffensive contact between a member of the public and the
12   police cannot, as a matter of law, amount to a seizure of that person." *Id*. at 555
13   (finding no "seizure" took place where federal agents approached respondent,
14   identified themselves, and requested to see her ticket and identification); *Jackson-*
15   *Moeser v. Armstrong*, 765 F. App'x 299 (9th Cir. 2019) (affirming summary
16   judgment of Fourth Amendment claim where CHP officer struck plaintiff with his
17   baton as the line of CHP officers was pushing the protesters off the freeway, and
18   plaintiff ran away, with no officer telling her to stop or followed her as she left the
19   freeway).

20       The undisputed evidence shows that no officer approached Plaintiffs, spoke to
21   Plaintiffs, ordered or demanded that they remain inside their home, or took any
22   action directed at Plaintiffs. (DUF 36.) There is also no evidence that any officer
23   directed their conduct at Plaintiffs. (DUF 1-37.) Plaintiffs did not allege or assert
24   that any officer stood near or by their fenced-in yard during the incident or that all
25   the streets were blocked or cordoned off. Indeed, Jonathan was preparing to leave
26   for work and intended to leave his home from the opposite direction (using Catalpa
27   Street) where the officers were interacting with Puga. (DUF 37.) He also opened the
28   security screen to video tape the incident. (*See* Botten Video, attached as Ex. K to

Esquivel Decl.; Botten Dep. 29:10-21, attached as Ex. U to Esquivel Decl.) After

the shooting, Plaintiffs were outside their home asking for assistance because Tanja,

J.B., and Jonathan were struck by errant gunfire. (Kee MVARS, Part 2 at 48:25-

49:30, attached as Ex. C to Esquivel Decl.; Botten Dep. 64:26-67:24.) Because no

evidence shows that State Defendants' conduct would have made a reasonable

person believe that they were not free to leave their home, summary judgment on

Plaintiffs' Fourth Amendment complaint is proper.

> **B.**    **Plaintiffs cannot maintain their Fourteenth Amendment claim because Puga created exigent circumstances that resulted in the shooting.**

The "substantive component of the Due Process Clause insulates against the

arbitrary exercise of government power." *Rodriguez v. Cty. of Fresno*, 819 F. Supp.

2d at 946., citing *Claybrook v. Birchwell*, 199 F.3d 350, 259 (6th Cir. 2000). Under

the due Fourteenth Amendment, a state actor denies a plaintiff substantive due

process only if the plaintiff can show that police conduct "shocks the conscience."

*Id.*, citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998).

> In situations wherein the implicated state, county, or municipal agent(s)
> are afforded a reasonable opportunity to deliberate various alternatives
> prior to electing a course of action . . . , their actions will be deemed
> conscience-shocking if they were taken with "deliberate indifference"
> toward the plaintiff's federally protected rights. In contradistinction, in a
> rapidly evolving, fluid, and dangerous predicament which precludes the
> luxury of calm and reflective pre-response deliberation (such as, for
> example, a prison riot), public servants' reflexive actions "shock the
> conscience" only if they involved force employed "maliciously and
> sadistically for the very purpose of causing harm" rather than "in a good
> faith effort to maintain or restore discipline."

*Claybrook*, 199 F.3d at 359 (internal alterations and citations omitted); *Porter v.*

*Osborn*, 546 F.3d 1131, 1137-40 (9th Cir. 2008) (finding that constant flux of

events requiring officer to react quickly required evaluation under the purpose to

harm standard of culpability); *Rodriguez v. Cty of Fresno*, 819 F. Supp. 2d at 948

(stating that the proper inquiry in a Fourteenth Amendment claim is whether the officer's actions with regard to the plaintiff were "malicious or sadistic" or for the purpose of causing harm unrelated to any legitimate law enforcement interest).

The undisputed evidence shows that Puga's erratic and resistive behavior created an unpredictable situation. (DUF 4-34.) That the standoff last about an hour is not dispositive of whether the officers had ample opportunity to deliberate and decide in which direction they could fire their weapons. Kee and Rubalcava repositioned themselves based on Puga's actions. Initially both officers stood on the driver's side of Blackwood's patrol vehicle. When Puga exited the vehicle, Kee and Rubalcava moved to a position where they were almost in-line with the front of Puga's car. Rubalcava even holstered his handgun and took out his handcuffs, believing Puga was going to surrender. When Puga suddenly moved to the front of his car, facing the officers but concealing his waistband, Rubalcava and Kee now faced a very different scenario than seconds before. When Puga unexpectedly reached down for the gun after Kee moved to a position where he could finally see and confirm that Puga did in fact have a gun in his waistband, exigent circumstances now existed for the officers' use of lethal force without time for deliberation, even though Kee was aware that from his position at that moment, Catalpa Street was in the background, not houses. Similarly, Rubalcava fired his handgun in response to Puga's sudden movement of reaching for the gun and firing at the officers. Rubalcava had a split-second to decide to act in the face of the immediate threat of death or serious injury.

Based on these undisputed facts, Plaintiffs' Fourteenth Amendment claim must be analyzed under the purpose-to-harm standard. There is simply no evidence to show that Kee and Rubalcava acted maliciously or sadistically for the purpose of causing Jonathan, Tanja, or J.B. harm. Summary judgment on this claim is therefore appropriate.

/ / /

1

2

### C.   Because Kee and Rubalcava's use of force was reasonable, Plaintiffs' battery claim necessarily fails.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

Under California law, a battery cause of action against a police officer, just like a federal claim of excessive force, requires proof of unreasonable force. "Because federal civil rights claims of excessive use of force are the federal counterpart to state battery and wrongful death claims, federal cases are instructive in this area." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527, n.11 (2009). Police officers are not treated as ordinary battery defendants because they are charged with protecting the public peace and are therefore "entitled to the even greater use of force than might be in the same circumstances required for self-defense." *Id.* at 527. A police officer's use of deadly force is reasonable if the officer "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 528 (quotation omitted.) Because a police officer is "charged with acting affirmatively and using force as part of their duties," a plaintiff suing on grounds of battery resulting from police action must prove that "the police officer's use of force was unreasonable." *Id.*

17

18

19

20

21

22

23

Under the doctrine of transferred intent, a defendant who unlawfully aims at one but hits another is guilty of assault and battery on the party he hit, the injury being the direct, natural and probable consequence of the wrongful act. *Rodriguez v. Cty. of Fresno*, 819 F. Supp. 2d at 952-53 (citations and quotations omitted). Under this doctrine of transferred intent, the viability of a claim of battery by a bystander against a police officer turns on the "reasonability of the application of force by the police officer against the intended suspect." *Id.*

24

25

26

27

28

As discussed above in connection with the Fourth Amendment claim for excessive force, Puga posed an imminent threat to Kee, Rubalcava, and other officers when he, without warning, reached for the gun in his waistband and fired the gun at the officers. Summary judgment on Plaintiffs' claim for battery is therefore proper.

Corrected Points & Authorities in Support of State Defs.' Motion for Summary Judgment

12

5:23-cv-0257 KK (SHKx)

1
2

### D.    Kee and Rubalcava were not negligent in their actions leading up or during their use of force.

3    Under California negligence law, "a plaintiff must show that the defendant had

4    a duty to use due care, that he breached that duty, and that the breach was the

5    proximate or legal cause of the resulting injury." *Tabares v. Cty. of Huntington*

6    *Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) (citations omitted). Officers have a

7    duty to act reasonably when using deadly force. *Id*. (citations omitted). "[T]he

8    'reasonableness' of a particular use of force must be judged from the perspective of

9    a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

10   (quoting *Graham v. Connor*, 490 U.S. at 396). The officer's conduct must only

11   "fall[ ] within the range of conduct that is reasonable" viewed "in light of the

12   totality of circumstances." *Tabares*, at 1125. Officers may be liable "if the tactical

13   conduct and decisions leading up to the use of deadly force show, as part of the

14   totality of circumstances, that the use of deadly force was unreasonable." *Id*. "The

15   reasonableness of a peace officer's conduct must be determined in light of the

16   totality of circumstances. ... Preshooting conduct is included in the totality of

17   circumstances surrounding an officer's use of deadly force, and therefore the

18   officer's duty to act reasonably when using deadly force extends to preshooting

19   conduct." *Villalobos v. Cty. of Sta. Maria*, 85 Cal. App. 5th 383, 389 (2022)

20   (internal quotation marks and brackets omitted), quoting *Hayes v. Cnty. of San*

21   *Diego*, 57 Cal. 4th 622, 632 (2013).

22   California courts generally use "[t]he same consideration" as federal law in

23   assessing an officer's tactical conduct at the time of shooting as part of the totality

24   of the circumstances. *Tabares*, 988 F.3d at 1126. California courts consider "the

25   severity of the crime at issue, whether the plaintiff posed a reasonable threat to the

26   safety of the officer or others, and whether the plaintiff was actively resisting

27   detention or attempting to escape." *Id*.

28

Corrected Points & Authorities in Support
of State Defs.' Motion for Summary
Judgment

13

5:23-cv-0257 KK (SHKx)

As discussed above in connection with the Fourth Amendment claim for excessive force, the undisputed evidence shows that the severity of the crime at issue, the immediate threat Puga posed to the safety of Kee, Rubalcava, or others, and Puga's continuous and active attempts to evade the officers, supports Kee and Rubalcava's use of lethal force to stop Puga from further firing upon the officers and advancing towards a house which could have resulted in a hostage situation. (DUF 4-34.) Based on the totality of the circumstances, the officers' use of lethal force was objectively reasonable.

Likewise, Kee and Rubalcava's pre-shooting conduct fell within standard of police procedures and practices. (Meyer Report 25-28, attached as Ex. Y to Esquivel Decl.) Kee engaged in lengthy de-escalation efforts to get Puga to exit the vehicle and surrender. He attempted less-lethal options that were ineffective against Puga. The undisputed evidence shows that the State Defendants were not negligent in their pre-shooting and shooting tactics and decisions. Because Kee and Rubalcava were not negligent for the injuries to Jonathan, Tanja, and J.B., Their and Annabelle's claim for negligent infliction of emotional distress also fails. *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1125-26 (E.D. Cal. 2014) ("Bystander cases are cases in which the plaintiff was not physically impacted or injured, but instead witnessed someone else being injured due to defendant's negligence.") (quotations omitted), quoting *Wooden v. Raveling*, 61 Cal.App.4th 1035, 1037 (1998). Summary judgment on Plaintiffs' negligence claims is therefore proper.

### E. Plaintiffs' claim under the Bane Act fails because no evidence shows that Kee or Rubalcava had the intent to violate Puga's right to freedom from unreasonable seizure.

California Civil Code section 52.1, known as the Bane Act, creates a cause of action against those who interfere with constitutional rights "by threat, intimidation, or coercion." *Diaz v. Cnty. of Ventura*, 512 F. Supp. 3d 1030, 1047 (C.D. Cal. 2021). In an excessive force case, the Bane Act requires not merely establishing a

Corrected Points & Authorities in Support of State Defs.' Motion for Summary Judgment

14

5:23-cv-0257 KK (SHKx)

Fourth Amendment violation, but also "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (2018), quoting *Cornell v. Cty. and Cnty. of S.F.*, 17 Cal. App. 5th 766, 801-02 (2017). A plaintiff must prove that the offending officer "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Reese*, at 1045 (internal quotation marks omitted).

As discussed above in connection with the Fourth and Fourteenth Amendment claims, no evidence shows Kee or Rubalcava violated any such rights. Further, there is no evidence to show that Kee or Rubalcava specifically intended the purported unreasonableness of his conduct. Rather, the undisputed evidence shows that the officers were required to make a split-second decision, when, Puga reached for and grabbed the gun from his waistband and fired it at the officers, making the use of lethal force objectively reasonable in the face of an immediate and obvious threat to life and limb. Accordingly, Plaintiffs' Bane Act claim fails.

## II. KEE AND RUBALCAVA ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity protects "government officials performing discretionary functions" by "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "The linchpin of qualified immunity is the reasonableness of the official's conduct." *Rosenbaum v. Washoe County*, 654 F.3d 1001, 1006 (9th Cir. 2011). Reasonableness is judged against the backdrop of the law at the time of the conduct at issue. *Brousseau v. Haugen*, 543 U.S. 194, 198 (2004); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). Thus, the reasonableness inquiry must be undertaken in light of the specific context of the case and not as a general, broad proposition. *Saucier v. Katz,* 533 U.S. 194, 202 (2001); *Kennedy v. Ridgefield*, 439 F.3d 1055, 1065-66 (9th Cir. 2006). To be clear, the Supreme Court has admonished courts "not to define clearly established law at a high level of generality." *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600,

613 (2015); *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017). "An officer will be denied qualified immunity in a [section] 1983 action only if (1) the facts alleged, taken in light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation." *Torres v. Cty. of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

Here, Kee and Rubalcava are entitled to qualified immunity for their direct actions towards Puga and any incidental consequences to Plaintiffs. As discussed above, no constitutional violation occurred in connection with Kee or Rubalcava's use of lethal force on February 17, 2021. "It would be unquestionably reasonable for police to shoot a suspect in [decedent's] position if he reaches for a gun in his waistband, or even if he reaches there for some other reason. Given [decedent's] dangerous and erratic behavior up to that point, the police would doubtless be justified in responding to such a threatening gesture by opening fire." *Cruz v. Cty. of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014); *Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023), cert. denied, 144 S. Ct. 559, 217 L. Ed. 2d 297 (2024) (stating that when a suspect points a gun in an officer's direction, "the Constitution undoubtedly entitles the officer to respond with deadly force"). The undisputed facts here show that Puga reached for his waistband where he had a gun and that is when Kee initially fired his gun at Puga. (DUF 22.) Rubalcava shot his first volley when Puga fired the gun at him. (DUF 28.) Under *Cruz*, both officers were justified in using lethal force.

However, the case law is not so equally clear whether Kee and Rubalcava's use of lethal force during the second volley, when Puga ran away from them with gun in hand in the direction of house. Qualified immunity applies when officers are reasonably mistaken about the nature of the threat. "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of an immediate

threat, and in those situations courts will not hold that they have violated the Constitution." *Strickland*, 69 F.4th at 621, quoting *Saucier*, 533 U.S. at 206. Although Kee and Rubalcava do not concede that they were mistaken about the immediate threat Puga posed to them and others when he ran away (because Puga still had the gun and could have easily fired at and shot them, including when Puga stumbled to the ground and continued to hold the gun), assuming they were mistaken about their belief, Kee and Puga are still entitled to qualified immunity for the second volley of shots fired at Puga because their belief was reasonable and no case law (that the undersigned has been able to find) put them on notice that their action would be unlawful. As discussed above, Kee and Rubalcava were aware that Puga had shot at another motorist the day before; he led police on a lengthy highspeed chase without regard for public safety; he pulled a gun and fired at them moments earlier. Thus, it was not unreasonable for the officers to believe that Puga would again use the gun even if running away from them or that Puga would force his way into the house that was in his path of travel and take hostages or shoot someone in that home who might try to defend themself. Kee and Rubalcava knew of and had already experienced the extreme and violent measures Puga resorted to, especially to evade arrest. Because the law was not clear whether lethal force was lawful to stop Puga as he ran way from the officers with the gun, Kee and Rubalcava are entitled to qualified immunity.

As to Plaintiffs' Fourth and Fourteenth Amendment claims arising the incidental consequences of Kee and Rubalcava's use of lethal force, *Rodriguez v. County of Los Angeles*, 654 F. Supp. 3d 1029, is dispositive. There, the district court concluded that the officer "had no clearly established basis to believe that he could be sued under § 1983 by an individual who is accidentally shot by police while they are attempting to apprehend someone else." *Rodriguez v. Cnty. of L.A.*, 654 F. Supp. 3d at 1045. *Rodriguez v. County of Los Angeles* involved facts more egregious than Kee and Rubalcava's conduct here. In *Rodriguez*, plaintiffs were

Corrected Points & Authorities in Support of State Defs.' Motion for Summary Judgment

17

5:23-cv-0257 KK (SHKx)

1   approached by police with guns drawn. Police were dispatched to plaintiffs'
2   location (where plaintiffs were helping a friend fix his car) to investigate a hit-and-
3   run involving a parked vehicle. During the encounter, the friend started to run
4   away, and an officer fired a single shot at the friend with no warning. The bullet
5   missed and struck one of the plaintiffs instead. Plaintiffs' Fourth Amendment
6   claims alleged they were unlawfully seized based on the use of excessive force
7   (shooting at the friend) and showing of force (responding with guns drawn). The
8   court found the officers qualifiedly immune.

9       Here, Kee and Rubalcava's do not remotely mirror the conduct of the officers
10  in *Rodriguez v. County of Los Angeles*. They never drew their guns at Plaintiffs,
11  ordered Plaintiffs to comply with their commands, or physically detained Plaintiffs.
12  Consequently, Kee and Rubalcava are entitled to qualified immunity because the
13  law did not put them on notice that their conduct on February 17, 2021 would be
14  unlawful.

## III.   BLACKWOOD DID NOT OWE PLAINTIFFS A DUTY OF CARE

16      "Unlike private citizens, police officers act under color of law to protect the
17  public interest. They are charged with acting affirmatively and using force as part
18  of their duties, because the right to make an arrest or investigatory stop necessarily
19  carries with it the right to use some degree of physical coercion or threat thereof to
20  effect it." *Golick v. State of Cal.*, 82 Cal. App. 5th 1127, 1138-39 (2022) (citations
21  and internal quotation marks omitted). Thus, under California law, a peace officer
22  may use reasonable force to make an arrest, prevent escape or overcome resistance,
23  and need not desist in the face of resistance. *Id*. at 1139 (citations and quotations
24  omitted). An important corollary to these principles is that police officers have a
25  duty in tort to act reasonably when employing deadly force against a suspect. *Id*. An
26  officer's lack of due care when employing deadly force may give rise to liability for
27  injuries incurred by third parties in the deadly force incident. *Id*.; *Brown v.*
28  *Ransweiler*, 171 Cal. App. 4th 516, 526 n. 10 (2009) (stating that law enforcement

officers do not "owe bystanders a duty different from the duty they owe to a suspect, which is the duty to use reasonable force under the totality of the circumstances").

As discussed above in connection with the Plaintiffs' Fourth Amendment claim for excessive force, Blackwood's use of lethal force against Puga was reasonable under the totality of the circumstances. Further, the undisputed evidence shows that Blackwood aimed and shot at Puga in a northernly direction on Peach Street, such that there were no homes or individuals in his background. (DUF 33-35; Scene Photograph, Ex. A.) Blackwood did not shoot in a northeastern direction where the Botten residence was located, and there is no evidence that he discharged his weapon in an arbitrary or capricious manner such that the rounds could have ricocheted or directly struck the Botten home.

## IV.  STATE DEFENDANTS ARE IMMUNE FROM STATE-LAW LIABILITY

Peace officers are privileged under state law to use reasonable force to make an arrest, prevent an escape, or overcome resistance. Cal. Penal Code § 835a. *Hernandez v. Cty. of Pomona*, 46 Cal. 4th 501 (2009). California Penal Code section 835a provides that an officer "may use reasonable force to effect the arrest, to prevent escape or overcome resistance" and is justified in using deadly force "when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary" to defend against an imminent threat of death or serious bodily injury to the officer or to another person. Cal. Penal Code § 835a(b), (c)(1)(A); *Edson v. Cty. of Anaheim*, 63 Cal. App. 4th 1269, 1272-73 (1998) (noting "police battery actions recognize[ ]" § 835a's protections by requiring a plaintiff to "prove[ ] unreasonable force was used").

California Penal Code section 196 also provides a privilege for justifiable homicide. "Under Penal Code section 196, a police officer who kills someone has committed a justifiable homicide if the homicide was necessarily committed in overcoming actual resistance to the execution of some legal process, or in the

Corrected Points & Authorities in Support of State Defs.' Motion for Summary Judgment

19

5:23-cv-0257 KK (SHKx)

discharge of any other legal duty . . . [Citation omitted.]  There can be no civil liability under California law as the result of a justifiable homicide." *Martinez*, at 349-350. "The test for determining whether a homicide was justifiable under Penal Code section 196 is whether the circumstances reasonably create[d] a fear of death or serious bodily harm to the officer or to another." *Id*. (Citations omitted); *see also*. Cal. Pen. Code § 197 (privilege for justifiable homicide); *Gilmore v. Sup. Ct.*, 230 Cal. App. 3d 416, 422 (1991) ("[I]f, in a particular case, the facts establish a justifiable [use of force] under the Penal Code, there is no civil liability.").

As discussed above concerning Plaintiffs' Fourth Amendment claim for excessive force, the State Defendants' use of deadly force was reasonable under the totality of the circumstances. They had a reasonable, well-founded belief that Puga posed an imminent risk of serious injury or death to them and others. Puga was armed with gun; Defendants were aware that he was a suspect in an earlier freeway shooting; he took evasive measure to conceal the gun during the standoff; and he pointed and fired the gun at the officers. State Defendants' use of lethal force was reasonable, and therefore they are immune from liability on Plaintiffs' negligence, Bane Act, and battery claims.

## CONCLUSION

For the reasons discussed above, the Court should grant the State Defendants' motion and entered judgment in their favor.

Dated:  February 24, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General

*/s/ Diana Esquivel*

SA2023302180
38745559.docx

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendants Blackwood, Kee, and Rubalcava*

20

1

**CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Defendants Blackwood, Kee, and

3   Rubalcava, certifies that this brief contains 6,945 words, which complies with the

4   word limit of L.R. 11-6.1.

5

6   Dated:  February 24, 2025                    Respectfully submitted,

7                                                ROB BONTA
                                                 Attorney General of California
8

9                                                */s/ Diana Esquivel*

10                                               DIANA ESQUIVEL
                                                 Deputy Attorney General
11                                               *Attorneys for Defendants Blackwood,*
                                                 *Kee, and Rubalcava*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28