1  ROB BONTA
   Attorney General of California
2  NORMAN D. MORRISON
   Supervising Deputy Attorney General
3  DIANA ESQUIVEL
   Deputy Attorney General
4  State Bar No. 202954
    1300 I Street, Suite 125
5   P.O. Box 944255
    Sacramento, CA 94244-2550
6   Telephone: (916) 210-7320
    Fax: (916) 322-8288
7   E-mail: Diana.Esquivel@doj.ca.gov
   *Attorneys for Defendants Blackwood, Kee, and*
8  *Rubalcava*

9                IN THE UNITED STATES DISTRICT COURT

10              FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                        RIVERSIDE DIVISION

12

13

14 **JONATHAN WAYNE BOTTEN, SR., et al.,**             No. 5:23-cv-0257 KK (SHKx)

15                              Plaintiffs,    **STATE DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

16         v.

17 **STATE OF CALIFORNIA, et al.,**            Date:        March 20, 2025
                                               Time:        9:30 a.m.
18                              Defendants.    Courtroom:   3 (3rd Floor)
                                               Judge:       Hon. Kenly Kiya Kato
19                                             Trial Date:  July 28, 2025
                                               Action Filed: February 17, 2023

20

21

22

23

24

25

26

27

28

# INTRODUCTION

In Plaintiffs' opposition to the State Defendants' motion for summary judgment, Plaintiffs misconstrue the facts, rely on improper deductions, and refer to inapposite cases in an attempt to save their federal and state law claims against California Highway Patrol (CHP) Officers Kee, and Rubalcava. Despite citing and relying on *LaRocca v. City of Los Angeles*, No. 2:22-CV-06948-SVW-PD, 2024 WL 1635908 at *1 (C.D. Cal. Mar. 14, 2024), where the district court found that the law was not clearly established in June 2022 (more than a year after the subject incident here) that certain police conduct, including the use of force, resulting in the seizure of an innocent bystander was unlawful, Plaintiffs persist that they can maintain their Fourth and Fourteenth Amendment claims against Kee and Rubalcava. Plaintiffs are wrong. *LaRocca* is dispositive of Plaintiffs' 42 U.S.C. § 1983 claims. Plaintiffs' state-law claims are also barred because Rubalcava and Kee's use of deadly force was reasonable under the totality of the circumstances, and Defendants are immune. Last, Plaintiffs conceded that Blackwood never fired his gun in the direction of the Botten residence, and there is no specific argument in the opposition that Blackwood was negligent. Blackwood is therefore entitled to summary judgment.

## THE *LAROCCA* CASE DISPOSES OF PLAINTIFFS' § 1983 CLAIMS

In *LaRocca*, the district court addressed the issue whether an officer who objectively intends to target a particular suspect, fires their weapon at that suspect, but accidentally hits an innocent person standing several feet away. *LaRocca v. Cty of L.A.*, 2024 WL 1635908, at *1. The court determined that under *Brower v. County of Inyo*, 489 U.S. 593 (1989) and *Torres v. Madrid*, 141 S. Ct. 989 (2021), the innocent person is seized under the Fourth Amendment. In reaching this conclusion, the *LaRocca* court found that a seizure does not require intent to restrain a specific person, such as the plaintiff; rather, there is a seizure as long as

the officer uses force with the intent to restrain *a* person even if that person is not the plaintiff. Id. *4 (emphasis in original). The court explained that:

> "[T]he Fourth Amendment addresses misuse of power, not the accidental effects of *otherwise lawful government conduct*." 489 U.S. at 596 (citations and quotations omitted) (emphasis added). For example, consider an officer who shoots an individual for jaywalking. No one disputes that the officer seized the individual and—unlawfully—used unreasonable force. But under Defendants' argument [that an intent to restrain the specific plaintiff that sues for excessive force is required], if the officer's bullet misses the jaywalker and hits an innocent bystander on the other side of the crosswalk, there is no Fourth Amendment violation because it was an "accidental effect." That argument ignores *Brower'*s guidance that accidental effects fall outside the scope of the Fourth Amendment *only if they are a result of "otherwise lawful" conduct. Id*. Although hitting the innocent bystander at the crosswalk was an "accidental effect," it was not "otherwise lawful" because the officer's intended conduct would clearly have been an unreasonable seizure. In other words, if the underlying use of force was unlawful, then it does not matter whether that force strikes the suspect or the innocent-bystander-turned-plaintiff.

*LaRocca*, 2024 WL 1635908 at *6 (first emphasis in original; second emphasis added).

In *LaRocca*, the defendant officer accidentally struck the plaintiff with a 40mm less-lethal munition while officers broke up an authorized, impromptu concert. The defendant officer intended to strike an individual who was setting off illegal fireworks and tossing them into the crowd. The incident occurred in June 2022. The court found that the plaintiff had been seized, but factual disputes existed whether the seizure was reasonable under the *Graham* factors. *LaRocca*, 2024 WL 1635908 at *7. Although the plaintiff was seized as a matter of law, and a reasonable juror could find that the seizure was unreasonable, the defendant officer was nevertheless entitled to qualified immunity because the fact that plaintiff was seized was not clearly established, nor was it clearly established that the defendant

officer's conduct was unreasonable. *Id*. at *8-17 (reviewing Ninth Circuit case law and out-of-circuit authorities).

Although *La Rocca* is not binding precedent on this Court, Kee and Rubalcava are entitled to summary judgment on Plaintiffs' Fourth and Fourteenth Amendment claims whether analyzing Plaintiffs' claims under the prior standard or the newer one espoused by *LaRocca*. See *Rodriguez v. Cty. of Fresno*, 819 F. Supp. 2d 937, 946 (E.D. Cal. 2011) ("A plaintiff that is injured collaterally or incidentally to the application of force by police against a third party cannot maintain a Fourth Amendment claim.").

Under the prior standard, Plaintiffs failed to come forward with any evidence to show that they were the deliberate objects of Kee or Rubalcava's exertion of force. The undisputed evidence shows that the State Defendants' actions, including use of force, were directed at Puga, not Plaintiffs.

Under the *LaRocca* standard, Plaintiffs' claims still fail. In their opposition, Plaintiffs argue they were restrained in two ways. First, their house was surrounded by police vehicles and flashing lights during the standoff with Puga. Then they were seized when Kee and Rubalcava used lethal force and bullets struck the Plaintiffs and their home. Plaintiffs have no viable claim arising from the presence of patrol vehicles near their home because they did not plead this as a basis for their claim under the Fourth Amendment. (First Am Compl. ¶¶ 36-46, ECF No. 27.) Even if such a theory had been properly plead, under *LaRocca* the officers conduct—have patrol vehicles and flashing lights—was lawful and reasonable. Kee and Rubalcava were involved in a pursuit of suspect wanted in connection with a freeway shooting. There were only four patrol vehicles and five law enforcement officers in the intersection of Peach and Catalpa Streets. Although there were other units a block or two away controlling traffic, their presence was necessary to ensure public safety and that members of the public did not interfere with the officers' duties in attempting to apprehend Puga. Kee and Rubalcava were lawfully

exercising their authority to pursue and detain a dangerous suspect. Plaintiffs cited no authority that the presence of patrol vehicles, flashing lights, and an overhead helicopter was unlawful or unreasonable. Any seizure that may have resulted from the police presence outside of the Botten house was incidental to Kee and Rubalcava engaging in lawful conduct, such that there was not Fourth Amendment violation.

Plaintiffs' Fourth Amendment claim arising from a seizure resulting from Kee and Rubalcava's use of force also fails because the State Defendants are entitled to qualified immunity. The Court need not analyze the *Graham* factors to ascertain whether Defendants' use of force was reasonable. The shooting incident with Puga occurred on February 17, 2021, more than a year before the incident in *LaRocca*. If the law was not clear in 2022 as to what conduct resulting in the seizure of an innocent bystander was unreasonable, then it was certainly not clearly established in 2021 when Kee and Rubalcava used force against Puga and accidentally shot in the direction of Plaintiffs' home.

Similarly, State Defendants are entitled to qualified immunity on Plaintiffs' Fourteenth Amendment due process claims. Plaintiffs' opposition focuses on State Defendants' conduct directed at Puga, rather at them. Plaintiffs alleged that their claim was based on Kee and Rubalcava's firing gunshots at their home while attempting to apprehend Puga, but the opposition focuses on the force applied against Puga. (First Am. Compl. ¶¶ 47-53; Pls.' Opp'n 22:15-23:13, ECF No. 96.) To the extent Plaintiffs' due process claim derives from the use of forced directed at Puga, *LaRocca* applies and the claim would be subject to summary judgment based on qualified immunity.

/ / /
/ / /
/ / /
/ / /

## PLAINTIFFS CITE NO EVIDENCE TO CREATE A FACTUAL DISPUTE OF BLACKWOOD'S NEGLIGENCE

Plaintiffs' opposition does not address the State Defendants' argument that Blackwood has no liability in negligence (the only claim remaining against him) because there is no evidence that his fired his weapon in the direction of the Botten house such that he caused Plaintiffs' injuries. Rather than addressing this argument, the opposition focuses on the purported lack of tactical plan in apprehending Puga including the failure to evacuate Plaintiffs and bring in the SWAT team. However, Plaintiffs did not allege the failure to evacuate or use a SWAT team in their negligence claim. (First Am. Compl. ¶¶ 63-69.) Rather, the negligence claim is premised on Defendants alleged failure to adequately assess the need for deadline force, negligent tactics that include failure to deescalate and provide warnings before the use of deadly force, and failure to properly assess their shooting background. (*Id*.) Even if properly pled, the opposition does not point to any evidence that Blackwood was responsible for the tactical decisions or that he had the authority to evacuate the Plaintiffs and neighbors in addition to securing the presence of a SWAT team. For sure, the opposition does not even address Blackwood's purported negligent conduct. (Pls.' Opp'n 26:1-30:22.)

## KEE AND RUBALCAVA'S USE OF FORCE WAS REASONABLE

As discussed above, Plaintiffs' Fourth Amendment excessive force claim is subject to qualified immunity, such that their battery and Bane Act claims remain. Because the same reasonable standard applies, the State Defendants state-law claims as the analysis under the Fourth Amendment, State Defendants will address those points raised in the opposition in connection with the Fourth Amendment claim for excessive force.

Plaintiffs first argue in their opposition that factual disputes exist based on the deposition testimony of neighbor Betzbeth Gonzalez, who testified that she did not see a gun in Puga's waistband when he stepped out of the vehicle. Plaintiffs'

reliance on Gonzalez's deposition is misplaced for one significant reason: her testimony is contradicted by her own video recording showing that Puga never displayed the front of his waistband to the officers. Gonzalez was at home when the incident occurred, watching through her bathroom window. . Her house is the second house on Peach Street from the southwest corner of the intersection of Peach and Catalpa streets. Thus, her view of the incident was from behind the officers as her video recording shows. (Gonzalez Dep. 31:23-32:4, 51:11-52:4, 69:7-10, 70:1-71:4 & Ex. 54 thereto, Ex. DD to Esquivel Suppl. Decl.; s*ee*, Gonzalez Video, Ex. J to Esquivel Decl.) Gonzalez's video, like the dashcam from Blackwood's patrol vehicle undisputable show that Puga never turned his body towards the officers such that the front of his waistband was visible to the officers. Puga only faced south on Peach Street when he went to the front of his vehicle and used the hood a shield to conceal the front of his waistband from the officers. Thus, Gonzalez's testimony that she could see the front of Puga's waistband is so blatantly contradicted by the record, no reasonable juror could believe Gonzalez's testimony that she did not see a gun in Puga's waistband. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Plaintiffs' relied on Gonzalez's testimony to the exclusion of the testimony of Annabelle Botten, Edward Mangerino, and Tammy Goodson who testified that they either saw a gun in Puga's hand or evidence that he had and fired a gun, such as Mr. Mangerino who saw Puga holding something in his hand then saw smoke coming from the top of Puga's hand that he recognized as gun smoke. Nowhere in Plaintiffs' opposition did they address the testimony of these witnesses. Nor can Gonzalez's testimony create a factual dispute as to the testimony of these witnesses because, as stated above, her testimony is contrary to the video evidence that no reasonable juror can believe her account.

Similarly, Plaintiffs' contention that Puga was pulling up his pants rather than reaching for a gun in his waistband is not supported by the numerous videos. While

the videos show that Puga pulled up his underwear and pants on a few occasions, that is not true for the critical moment when he reached for the gun while standing in front of his vehicle. No video shows Puga's pants moving to indicate his was pulling them up or adjusting them rather than reaching for a gun immediately before Officer Kee shot his first round.

Plaintiffs' contention that a jury could disbelief Kee's testimony that he was a gun because Puga was shirtless and the back or sides of his waistband may have been visible to Kee when Puga stepped out of the vehicle is completely speculative. The undisputed evidence shows that Puga never permitted the officers to see the front of his waistband. Kee did not see the gun until he walked up the street to where he was almost even with the front of Puga's vehicle, and for the first time was able to see the front of Puga's waistband and the gun. Plaints have not pointed to any evidence that Kee saw the front of Puga's waistband before then.

As argued in the State Defendants moving papers, Kee was justified in using lethal force when Puga reached for the gun in his waistband even if Puga started to turn and run northwest on Peach Street. By reaching for and obtaining the gun in his waistband, Puga posed an immediate threat of death or serious bodily harm to Kee and the other officer such that the State Defendants' use of lethal force was reasonable and justified.

Plaintiffs next contend that Puga did not pose an immediate threat when he started to run with his back towards the officers. Not so. Here, the officers had information that Puga was involved in an earlier freeway shooting. Puga had just brandished a gun and fired it in Kee's direction. Although Puga took off running, no officer saw him drop the gun. Thus, he still posed an immediate threat because the gun was in his possession, and he could have easily fired upon the officers again. Moreover, Puga was running in the direction of a couple of houses on Peach Street. Puga had already evaded police following the freeway shooting, and again when Rubalcava and Blackwood attempted to arrest him before the hour-long,

highspeed pursuit ensued. State Defendants thus had a reasonable and well-founded belief that Puga could potentially barricade himself in a residence and take hostages to avoid arrest. Because the State Defendants' use of lethal force was reasonable during both volleys, Plaintiffs' battery and Bane Act claim against them fails.

Dated: March 6, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General

***/s/ Diana Esquivel***

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendants Blackwood, Kee, and Rubalcava*

SA2023302180
38843991.docx

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendants Blackwood, Kee, and Rubalcava, certifies that this brief contains 2,801 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 6, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California

*/s/ Diana Esquivel*

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendants Blackwood, Kee, and Rubalcava*