ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General
DIANA ESQUIVEL
Deputy Attorney General
State Bar No. 202954
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7320
  Facsimile: (916) 322-8288
  E-mail: Diana.Esquivel@doj.ca.gov
*Attorneys for Defendants Isaiah Kee and Bernardo Rubalcava*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| **JONATHAN WAYNE BOTTEN, SR.; TANJA DUDEK-BOTTEN; ANNABELLE BOTTEN; AND J.B., a minor by and through his guardian ad litem JONATHAN WAYNE BOTTEN, SR.,**<br><br>Plaintiffs,<br><br>v.<br><br>**STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; AND DOES 1-10, INCLUSIVE,**<br><br>Defendants. | No. 5:23-cv-0257 KK (SHKx)<br><br>**NOTICE OF APPEAL**<br><br>Action Filed: February 17, 2023 |

/ / /

/ / /

/ / /

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Isaiah Kee and Bernardo Rubalcava appeal to the United States Court of Appeals for the Ninth Circuit from the district court's Order Granting in Part and Denying in Part State Defendants' Motion for Summary Judgment, entered in this action on May 5, 2025 (ECF No. 120). Defendants seek review of the district court's denial of qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Hernandez v. City of San Jose*, 897 F.3d 1125, 1132 (9th Cir. 2018). A copy of the Order is attached as Exhibit A.

The required Representation Statement is attached as Exhibit B.

Dated: June 4, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General

*/s/ Diana Esquivel*

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendants Kee and Rubalcava*

SA2023302180
39072058

# Exhibit A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-257-KK-SHKx** | Date: | May 5, 2025 |
|---|---|---|---|
| Title: | *Jonathan Wayne Botten Sr. et al. v. State of California et al.* | | |

| Present: The Honorable | KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE |
|---|---|

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:	(In Chambers) Order GRANTING IN PART and DENYING IN PART State Defendants' Motion for Summary Judgment [Dkt. 86]**

# I.
# INTRODUCTION

Plaintiffs Jonathan Wayne Botten, Tanja Dudek Botten, Annabelle Botten,[1] and J.B., a minor by and through his guardian Jonathan Wayne Botten, Sr., (collectively, "Plaintiffs") filed a First Amended Complaint ("FAC") against defendants Robert Vaccari ("Vaccari"), Jake Adams ("Adams"), and the County of San Bernardino (collectively, "County Defendants") and Michael Blackwood ("Blackwood"), Isaiah Kee ("Kee"), Bernardo Rubalcava ("Rubalcava"), and the State of California (collectively, "State Defendants"), alleging constitutional violations and related state claims arising from a police-involved shooting outside their residence on the February 17, 2021. ECF Docket No. ("Dkt.") 27, FAC. On January 30, 2025, State Defendants filed the instant Motion for Summary Judgment ("Motion"). Dkt. 86.

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons set forth below, State Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

///

///

---

[1] To differentiate Plaintiffs, the Court uses their first names.

## II.
## BACKGROUND

### A.    PROCEDURAL HISTORY

On June 8, 2023, Plaintiffs filed the operative FAC, asserting the following claims:

(1) **Cause of Action One:** Violation of the Fourth Amendment— Excessive Force pursuant to 42 U.S.C. § 1983 ("Section 1983") by plaintiffs Jonathan, Tanja, and J.B. ("Injured Plaintiffs") against defendants Vaccari, Adams, Blackwood, Kee, and Rubalcava ("Officer Defendants");

(2) **Cause of Action Two:** Violation of the Fourteenth Amendment—Substantive Due Process pursuant to Section 1983 by Injured Plaintiffs against Officer Defendants;

(3) **Cause of Action Three:** Battery by Injured Plaintiffs against Defendants;

(4) **Cause of Action Four:** Negligence by Injured Plaintiffs against Defendants;

(5) **Cause of Action Five:** Negligent Infliction of Emotional Distress by Plaintiffs against Defendants; and

(6) **Cause of Action Six:** Violation of California Civil Code Section 52.1 ("Bane Act") by Injured Plaintiffs against Defendants.

FAC at 8-21.[2]

On November 12, 2023, State Defendants filed an Answer to the FAC. Dkt. 53. On July 3, 2024, the Court issued an Order setting a Final Pretrial Conference in this matter for July 10, 2025, and a trial date for July 28, 2025. Dkt. 74.

On January 30, 2025, State Defendants filed the instant Motion. Dkt. 86. State Defendants argue they are entitled to judgment as a matter of law on all claims. Id.; dkt. 87. In support of the Motion, State Defendants filed the State Defendants' Statement of Undisputed Material Facts ("SDUMF"), dkt. 86-1, and the declaration of Diana Esquivel, dkt. 86-2.

On February 27, 2025, Plaintiffs filed an Opposition to State Defendants' Motion. Dkt. 96. In support of Plaintiffs' Opposition, Plaintiffs filed a Statement of Additional Material Facts ("PAMF"), dkt. 96-1, and the declarations of Hang Le ("Le Decl."), dkt. 96-2, and Roger Clark, dkt. 96-21.

On March 7, 2025, State Defendants filed a Reply. Dkt. 109.

---

[2] With respect to County Defendants, on January 29, 2025, the Court dismissed Causes of Action One, Two, Three, and Six as to County Defendants pursuant to the stipulation of the parties, dkt. 83, and on April 30, 2025, Plaintiffs and County Defendants filed a status report indicating the parties have settled their remaining claims, dkt. 119. With respect to State Defendants, on August 21, 2023, the Court dismissed all claims against the State of California, dkt. 47, and on February 25, 2025, the Court dismissed Causes of Action One, Two, Three, and Six as to defendant Blackwood pursuant to the stipulation of the parties, dkt. 94. Causes of Action Four and Five (Negligence and Negligent Infliction of Emotional Distress) are the only remaining claims against defendant Blackwood. Id.

This matter, thus, stands submitted.

## B. RELEVANT FACTS

Unless otherwise indicated, the following facts are uncontroverted. To the extent certain facts are not referenced in this Order, the Court has not relied on such facts in reaching its decision. In addition, the Court considers the parties' evidentiary objections only where necessary.[3] All other objections are **OVERRULED AS MOOT**.

### 1. Relevant Parties

In February 2021, defendants Blackwood, Kee, and Rubalcava were officers patrolling for the California Highway Patrol, and defendants Adams and Vaccari served as deputies with the San Bernardino County Sheriff's Department. SDUMF ¶¶ 1-3, 8. Plaintiffs Jonathan, Tanja, Annabelle, and J.B. are a family of four who resided on the northeast corner of the intersection of Peach and Catalpa Streets in Hesperia, California. PAMF ¶ 298; SDUMF ¶ 9.

### 2. February 17, 2021 Police-Involved Shooting

On February 16, 2021, defendant Kee investigated a car-to-car shooting on Interstate 15. SDUMF ¶ 4. The following day, at approximately 1:30 a.m., defendants Blackwood and Rubalcava observed and pulled over a vehicle matching the suspect vehicle's description. SDUMF ¶ 6. The driver refused to turn off the vehicle or lower the vehicle's window and subsequently drove away, prompting a pursuit. SDUMF ¶ 7; PAMF ¶ 132. Defendants Kee, Adams, and Vaccari joined the pursuit. SDUMF ¶ 8; PAMF ¶¶ 133, 135.

The pursuit lasted over an hour and ended when the suspect's vehicle ran over a spike strip and stopped near the Botten residence at the intersection of Peach and Catalpa Streets in Hesperia, California. SDUMF ¶ 9; PAMF ¶¶ 143-44, 146. Plaintiffs observed the significant police presence outside their residence, including a helicopter overhead and police cars with flashing lights. PAMF ¶ 299. A standoff ensued, during which time the officers did not develop a tactical plan or request the SWAT Team. Id. ¶¶ 157-67, 320. Officers gave no instructions to the Botten family during the standoff, including no instruction to stay inside or information that deadly force would be used. SDUMF ¶ 36; PAMF ¶ 294. Plaintiff Jonathan periodically observed the incident as he was preparing for work. SDUMF ¶ 37.

At approximately 3:40 a.m., after Officer Defendants struck the suspect with a pepper ball, causing a cut above the suspect's right eye, the suspect exited the vehicle with his hands above his head. SDUMF ¶¶ 16, 17; PAMF ¶¶ 179-81. The suspect was shirtless and wearing baggy pants, which he continually grabbed to lift up. SDUMF ¶ 17; PAMF ¶¶ 192, 194, 212. The suspect moved from the driver's side of the vehicle to the front of the vehicle. SDUMF ¶ 19; PAMF ¶ 198.

---

[3] "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself[.]" Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). The Court declines to address such objections.

The parties dispute whether the suspect reached for a gun in his waistband to fire at the Officer Defendants. SDUMF ¶¶ 21-23; PAMF ¶ 194, 220-24. State Defendants argue defendant Kee fired the first shots at the suspect when he saw the suspect's hand move towards the gun. SDUMF ¶¶ 21-23. Plaintiffs, however, contend the suspect was merely adjusting his pants, and officers began shooting at him when he turned to run. PAMF ¶¶ 194, 220-24. The video evidence is not dispositive. Le Decl., Exs. 10, 13. Regardless, the suspect began to run towards the northeast corner of the intersection (towards the Botten residence) before turning north (not towards the Botten residence), and defendants Kee and Rubalcava, who were both armed with firearms, shot at the suspect as he ran away. SDUMF ¶ 25; PAMF ¶ 233. The parties further dispute whether the suspect ran with a firearm in his hands. SDUMF ¶ 25; PAMF ¶ 221-23. Again, the video evidence is not dispositive. Le Decl., Exs. 10, 13.

### 3. Injuries to the Botten Family Members

Plaintiffs' residence is located on the northeast corner of the subject intersection. SDUMF ¶ 9; PAMF ¶¶ 264-65, 296-97; Le Decl., Exs. 10, 13. It is undisputed that defendant Blackwood did not shoot in the direction of the northeast corner of the intersection, towards the Botten residence. SDUMF ¶ 35. Defendant Rubalcava fired shots in a northeastern direction while the suspect ran away. PAMF ¶ 265. Defendant Kee also shot in a northeastern direction with his gun. SDUMF ¶¶ 19, 21. When the shooting happened, Plaintiffs were all inside their home. PAMF ¶ 298. Plaintiff Jonathan sustained a gunshot wound to the right forearm consistent with either a 40 or 45 caliber bullet. Id. ¶¶ 302, 313. Plaintiff Tanja was shot in the face, chest, and right shoulder. Id. ¶¶ 303, 311. Plaintiff J.B. was shot three times in the chest, resulting in a collapsed lung, ruptured spleen, and damage to his internal organs. Id. ¶ 308.

## III.
## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit[.]" Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The party moving for summary judgment bears the initial burden of production by "producing evidence, or showing the absence of evidence, on the motion for summary judgment[.]" Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "[T]he ultimate burden of persuasion can refer either to the burden of persuasion on the motion or to the burden of persuasion at trial." Id. A moving party without the ultimate burden of persuasion at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. "[T]o carry its ultimate burden of persuasion on the motion, the moving party must" establish "there is no genuine issue of material fact." Id.

If the moving party meets its initial burden of production, the burden then shifts to the non-moving party to "go beyond the pleadings" and "designate specific facts showing that there is a

genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party "cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1982).

In deciding a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587. Summary judgment is, therefore, not proper "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts[.]" Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980). Furthermore, the court does not make credibility determinations with respect to the evidence offered. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

## IV.
## DISCUSSION

### A. DEFENDANTS KEE AND RUBALCAVA ARE NOT ENTITLED TO SUMMARY JUDGMENT ON CAUSE OF ACTION ONE UNDER THE FOURTH AMENDMENT

#### 1. Applicable Law

The Fourth Amendment prohibits the use of excessive force in effectuating a seizure. See Hopkins v. Bonvicino, 573 F.3d 752, 776 (9th Cir. 2009). A seizure must be intentional to violate the Fourth Amendment. Brower v. Cnty. of Inyo, 489 U.S. 593, 596-97 (1989) ("[A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is governmental termination of freedom of movement *through means intentionally applied*.") (emphasis in original). Courts have generally held that "accidental or unintended seizures do not fall under the Fourth Amendment." Lopez v. City of Santa Maria, CV-13-7287-AJW, 2016 WL 316004, at *3 (C.D. Cal. Jan. 26, 2016); see, e.g., United States v. Lockett, 919 F.2d 585, 590 n.4 (9th Cir. 1990) ("[A]n innocent bystander struck by a stray bullet from the officer's weapon would not have [ ] a [Fourth Amendment] claim."); Hernandez v. City of Los Angeles, CV-19-441-CAS-GJSx, 2021 WL 8820856, at *7 (C.D. Cal. Dec. 24, 2021) (holding an innocent bystander unintentionally shot by police does not have a Fourth Amendment claim). Rather, a "person can only be seized for Fourth Amendment purposes if that person was the 'deliberate object' of the exertion of force intended to terminate freedom of movement." Rodriguez v. City of Fresno, 819 F. Supp. 2d 937, 946 (E.D. Cal. 2011) (quoting Ciminillo v. Streicher, 434 F.3d 461, 465 (6th Cir. 2006)).

However, an innocent bystander may be "seized" for the purposes of the Fourth Amendment "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). "Examples of circumstances that might indicate a seizure, even where the person did not

attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id.; see also, Bailey v. Cnty. of San Joaquin, 671 F. Supp. 2d 1167, 1173 (E.D. Cal. 2009).

If a court finds a seizure, the Fourth Amendment's "objective reasonableness" standard governs the excessive force claim. Graham v. Connor, 490 U.S. 386, 388 (1989). The reasonableness standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal quotation marks omitted). In other words, a court must "balance the amount of force applied against the need for that force." Bryan v. MacPherson, 630 F.3d 805, 823-24 (9th Cir. 2010). Proper application of the reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. "[W]hether the suspect poses an immediate threat to the safety of the officers or others" is the "most important" of the Graham factors. Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir. 2005).

The use of deadly force is reasonable "only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1994) (quoting Tennessee v. Garner, 471 U.S. 1, 3 (1985)) (internal quotation marks omitted). When a suspect is armed or "reasonably suspected" to be armed, "a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat" rendering the use of deadly force reasonable. George v. Morris, 736 F.3d 829, 838 (9th Cir. 2013). On the other hand, the use of deadly force is not reasonable when a suspect has taken no "objectively threatening" actions, even when the suspect is armed. Id.; see also Zion v. Cnty. of Orange, 874 F.3d 1072, 1076 (9th Cir. 2017) ("[T]he use of deadly force against a non-threatening suspect is unreasonable."). "Because [the excessive force] inquiry is inherently fact specific, the determination whether the force used . . . was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." Green v. City & Cnty. of San Francisco, 751 F.3d 1039, 1049 (9th Cir. 2014) (internal quotation marks omitted).

2. Analysis

Here, as an initial matter, genuine issues of material fact exist as to whether defendants Kee and Rubalcava intentionally seized plaintiffs Jonathan, Tanja, and J.B. in violation of the Fourth Amendment. Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find that reasonable individuals in plaintiffs Jonathan, Tanja, and J.B.'s positions would have believed they were not free to leave. Specifically, Plaintiffs present evidence defendants Kee and Rubalcava (1) surrounded their house with red and blue flashing lights from the patrol vehicles with a helicopter flying overhead, (2) brandished weapons outside their residence, (3) shot in the direction of their residence with the intent of seizing the suspect, and (4) shot them while in their residence. PAMF ¶¶ 299, 265, 302-07; SDUMF ¶¶ 19, 21. Under these circumstances, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find Plaintiffs were intentionally seized within their home. Bailey, 671 F. Supp. 2d at 1173 (finding seizure of residents in their own home where the residents "were aware that police officers were surrounding their home and saw [an officer] at the front door with his gun drawn").

With respect to excessive force, genuine issues of material fact exist as to whether defendants Kee and Rubalcava used excessive force in violation of the Fourth Amendment. Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find defendants Kee and Rubalcava's actions were unreasonable under the circumstances. Specifically, a genuine issue of material fact exists as to whether the suspect posed an immediate and significant threat of death or serious physical injury to defendants Kee and Rubalcava or other nearby civilians. See Graham, 490 U.S. at 396; Scott, 39 F.3d at 914. Defendants assert that the use of deadly force was reasonable because the suspect reached for a gun in his waistband despite warnings from defendant Kee. SDUMF ¶¶ 20-21. In contrast, Plaintiffs contend the suspect was merely adjusting his pants (as he had been doing since exiting the vehicle) and running away from approaching officers when defendant Kee chose to shoot at him. PAMF ¶¶ 187, 194, 220. Notably, the video evidence submitted by the parties is not dispositive of this issue. Le Decl., Exs. 10, 13. Crediting Plaintiffs' inferences from the bystander cell phone video, the suspect did not grab a gun or try to shoot at the officers approaching the front side of his vehicle. Le Decl., Ex. 10, Mangerino Cellphone Video at 0:00:51-0:00:54. Hence, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find the suspect lowered his hands only to lift his waistband.

Moreover, to the extent a reasonable jury could find the suspect had pulled out a weapon, additional material facts exist as to whether the suspect shot or pointed the weapon at the Officer Defendants. The deposition testimony of defendant Vaccari indicates the suspect did not point the gun in any particular direction. Le Decl., Ex. 5, Vaccari Dep. 64:16-17. Additionally, based on video evidence and the deposition testimony of defendant Kee, no muzzle flashes came from the suspect's direction. Le Decl., Exs. 10, 13; Ex. 2, Kee Dep. 92:14-16. The testimony of bystander Betzabeth Gonzalez further suggests the suspect did not have a gun in his hand while running away from the officers. Le Dec., Ex. 8, Gonzalez Dep. 97:16-25. The video evidence submitted by the parties is not dispositive of this issue. Le Decl., Exs. 10, 13. Further, autopsy evidence establishes that the suspect was shot repeatedly in the back, suggesting he was not facing officers to shoot at them. PAMF ¶ 241. These undisputed facts further underscore that triable questions of fact exist as to whether the suspect had pulled a gun on the Officer Defendants. S.T. v. City of Ceres, 327 F. Supp. 3d 1261, 1277 (E.D. Cal. 2018) (finding the fact that decedent was shot in the back "present[ed] another reason to allow the trier of fact" to assess "officers' account that [suspect] was angling his body, while running and hunching over, to point hand torch at them").

Thus, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find there was no immediate and significant threat of death or serious physical injury to the officers or others such that the use of deadly force was reasonable.[4] Accordingly, defendants Kee and Rubalcava's request for summary judgment on Cause of Action One is **DENIED**.

///

///

///

---

[4] State Defendants' similar argument for immunity pursuant to California Penal Code Sections 835a and 196 against the state law claims fails for the same reasons.

**B.    DEFENDANTS KEE AND RUBALCAVA ARE NOT ENTITLED TO QUALIFIED IMMUNITY ON CAUSE OF ACTION ONE**

      **a.    Applicable Law**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity is to be determined at the earliest possible point in the litigation[.]" Estate of Lopez v. Gelhaus, 871 F.3d 998, 1021 (9th Cir. 2017). Nevertheless, summary judgment in favor of a government official on the basis of qualified immunity "is inappropriate where a genuine issue of material fact prevents a determination of qualified immunity until after trial on the merits." Id.

The qualified immunity analysis is two-pronged, and courts have discretion "in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. Under the first prong, the issue is whether the facts, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right. Id. at 232. Under the second prong, the issue is whether the constitutional right in question was "clearly established" when the conduct occurred. Id. at 232, 236.

A right is "clearly established" if, at the time of the challenged conduct, "'the contours of [the] right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (brackets omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition[,]" Saucier v. Katz, 533 U.S. 194, 201 (2001), and "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken[,]'" Pearson, 555 U.S. at 244 (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)). "[A] case directly on point" is not required to show the right in question was clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft, 563 U.S. at 741 (citing Anderson, 483 U.S. at 640; Malley v. Briggs, 475 U.S. 335, 341 (1986)).

      **b.    Analysis**

As discussed below, the Court finds genuine issues of material fact exist as to whether defendants Kee and Rubalcava are entitled to qualified immunity. With respect to the first prong, as discussed above, a reasonable jury could find defendants Kee and Rubalcava used excessive force in violation of the Fourth Amendment. In addition, with respect to the second prong, a reasonable jury could find defendants Blackwood, Kee, Rubalcava, and Adams' conduct violated a clearly established right.

It is clearly established "the use of deadly force against a non-threatening suspect is unreasonable." Zion, 874 F.3d at 1076. For example, in George v. Morris, 736 F.3d 829 (9th Cir. 2013), the Ninth Circuit held the use of deadly force against a domestic violence suspect armed with a gun would violate the Fourth Amendment where the suspect took no "objectively threatening" actions immediately prior to being shot by law enforcement officers. Similarly, in Estate of Lopez,

the Ninth Circuit held the use of deadly force against a teenager carrying a toy AK-47 would violate the Fourth Amendment, even though law enforcement officers believed he was carrying a firearm, where the teenager moved "naturally and non-aggressively" immediately prior to being shot and did not point the object believed to be a firearm at the officers. See 871 F.3d at 1021.

Here, genuine issues of material fact exist as to whether the suspect's actions were objectively threatening. While State Defendants assert the suspect reached for a gun in his waistband, SDUMF ¶¶ 20-21, Plaintiffs contend the suspect moved his hands to adjust his pants and ran away when defendant Kee started to shoot at him. PAMF ¶¶ 187, 194, 220. In addition, it is disputed whether the suspect shot at the Officer Defendants, as no muzzle flashes came from the suspect's direction. Le Decl., Exs. 10, 13; Ex. 2, Kee Dep. 92:14-16. Moreover, even if the suspect were carrying a firearm, a reasonable jury could find the suspect did not face defendants Kee and Rubalcava when defendants Kee and Rubalcava shot at his back and in the direction of the Botten residence. PAMF ¶¶ 241-48. Thus, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find the suspect did not take objectively threatening action immediately prior to Officer Defendants deploying a barrage of bullets into his back and towards the Botten family residence.

Thus, genuine issues of material fact exist as to whether defendants Kee and Rubalcava are entitled to qualified immunity with respect to the excessive force claim. Accordingly, defendants Kee and Rubalcava's request for summary judgment on Cause of Action One is **DENIED**.

**C.    DEFENDANTS KEE AND RUBALCAVA ARE ENTITLED TO SUMMARY JUDGMENT ON CAUSE OF ACTION TWO UNDER THE FOURTEENTH AMENDMENT**

**1.    Applicable Law**

"To prevail on a substantive due process claim under the Fourteenth Amendment, Plaintiffs must show that an officer's conduct 'shocks the conscience.'" Nicholson v. City of Los Angeles, 935 F.3d 685, 692 (9th Cir. 2019) (quoting Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010)). In determining whether a law enforcement officer's use of force "shocks the conscience" and, therefore, violates the Fourteenth Amendment, a court must first determine whether the circumstances were such that "actual deliberation" by the officer was practical. Wilkinson, 610 F.3d at 554. "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience." Id. By contrast, "where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." Id.

**2.    Analysis**

Here, defendants Kee and Rubalcava are entitled to summary judgment on Plaintiffs' Fourteenth Amendment claim. As an initial matter, the heightened purpose-to-harm standard applies to Plaintiffs' Fourteenth Amendment claim because "actual deliberation" was not practical under the circumstances, where it is undisputed that within seconds the suspect lowered his hands towards his waistband, the officers claim to have seen a firearm, and the suspect sprinted away from the officers toward Plaintiffs' residence. See SDUMF ¶¶ 22-21; Diaz v. Cnty. of Ventura, 512 F. Supp. 3d 1030, 1047 (C.D. Cal. 2021) (applying purpose-to-harm standard despite "lengthy car

chase" and "approximately hour-long standoff" because "the moments before [defendant officer] used lethal force upon [decedent] were fast-paced and occurred within a matter of seconds").  Thus, defendants Kee and Rubalcava "faced an evolving set of circumstances that took place over a short time period" and required "split-second decisions."  See Porter v. Osborn, 546 F.3d 1131, 1133, 1139 (9th Cir. 2008) (holding purpose-to-harm standard applied where, over the course of approximately five minutes, defendant officers responding to a call about an apparently abandoned vehicle "shouted at a startled and confused [suspect] to get out of his car," "pepper sprayed him through the open window" when he failed to comply, and fatally shot him when he "began to drive the car slowly forward").

Applying the purpose-to-harm standard, the Court concludes no genuine issue of material fact exists from which a reasonable factfinder could conclude defendants Kee and Rubalcava's conduct violated the Fourteenth Amendment.  See Wilkinson, 610 F.3d at 554.  Plaintiffs present no evidence – nor has the Court identified any – to suggest defendants Kee or Rubalcava "had a purpose to harm [the Botten family] apart from legitimate law enforcement objectives."  Id.  Even if the suspect simply reached for his waistband to lift his pants before he ran away, PAMF ¶ 194, the purpose-to-harm standard "is a subjective standard of culpability."  A.D. v. Cal. Highway Patrol, 712 F.3d 446, 453 (9th Cir. 2013).  Hence, even viewing the evidence in the light most favorable to Plaintiffs, no reasonable jury could find defendants Kee and Rubalcava acted with a purpose to harm unrelated to legitimate law enforcement objectives, such that their actions shock the conscience.  See Diaz, 512 F. Supp. 3d at 1047 (finding no genuine issue of material fact existed as to whether defendant officer had purpose to harm where he "fired four shots in rapid succession and stopped when [decedent] hit the ground" because "[a]t most, a jury could conclude that [defendant officer] irrationally panicked out of a false sense of fear").

Thus, because no reasonable factfinder could conclude defendants Kee and Rubalcava's conduct violated Plaintiffs' Fourteenth Amendment rights, defendants Kee and Rubalcava's request for summary judgment on Cause of Action Two is **GRANTED**.

### D. DEFENDANTS KEE AND RUBALCAVA ARE NOT ENTITLED TO SUMMARY JUDGMENT ON CAUSE OF ACTION THREE FOR BATTERY

#### 1. Applicable Law

To prevail on a claim for battery under California law, a plaintiff must show the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, the plaintiff did not consent to such contact, and such contact caused injury, damage, loss, or harm to the plaintiff.  Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007); accord. Brown v. Ransweiler, 171 Cal. App. 4th 516, 526-27 (2009).  In an excessive force case, a plaintiff asserting a claim for battery must establish the defendant officer's use of force was unreasonable.  Avina v. United States, 681 F.3d 1127, 1131 (9th Cir. 2012).  Such claims are governed by the Fourth Amendment's "objective reasonableness" standard.  Id.; see also Diaz, 512 F. Supp. 3d at 1048 ("[C]laims for battery against police officers acting in their official capacities 'are analyzed under the reasonableness standard of the Fourth Amendment[.]'").

///

///

      **2.**    **Analysis**

      Here, genuine issues of material fact exist as to the reasonableness of defendants Kee and Rubalcava's use of force.  As discussed above in Section IV.A.2, a reasonable jury could find defendants Kee and Rubalcava used unreasonable force when shooting toward the Botten house when their intended suspect did not pose a threat to the officers or others.  Thus, genuine issues of material fact exist as to whether defendants Kee and Rubalcava committed a battery.  Accordingly, for the same reasons that defendants Kee and Rubalcava's request for summary judgment on Cause of Action One is denied, defendants Kee and Rubalcava's request for summary judgment on Cause of Action Three is **DENIED**.

**E.**    **DEFENDANTS KEE AND RUBALCAVA ARE NOT ENTITLED TO SUMMARY JUDGMENT ON CAUSES OF ACTION FOUR AND FIVE FOR NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND DEFENDANT BLACKWOOD IS ENTITLED TO SUMMARY JUDGMENT ON CAUSES OF ACTION FOUR AND FIVE FOR NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

      **1.**    **Applicable Law**

      "In California, the general rule is that people owe a duty of care to avoid causing harm to others and that they are thus usually liable for injuries their negligence inflicts." S. California Gas Leak Cases, 7 Cal. 5th 391, 398 (2019) (internal quotation marks omitted).  To prevail in a negligence action, a plaintiff must show the defendant (1) owed a legal duty, (2) breached that duty, and (3) the breach was the proximate cause of (4) plaintiff's injury.  J.L. v. Children's Inst., Inc., 177 Cal. App. 4th 388, 396 (2009).  Under California law, law enforcement officers owe "a duty to act reasonably when using deadly force."  Hayes v. Cnty. of San Diego, 57 Cal. 4th 622, 629 (2013).  Whether an officer has breached this duty "is determined in light of the totality of circumstances."  Id. Generally, an officer's use of deadly force "will be considered reasonable where the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."  Koussaya v. City of Stockton, 54 Cal. App. 5th 909, 936-37 (2020).

      Under California law, "[t]here is no independent tort of negligent infliction of emotional distress."  Doe v. Gangland Prods., Inc., 730 F.3d 946, 961 (9th Cir. 2013).  "[R]ecovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty."  Id.

      **2.**    **Analysis**

      Here, genuine issues of material fact exist as to the reasonableness of defendants Kee and Rubalcava's use of force.  As discussed above in Sections IV.A.2, a reasonable jury could find defendants Kee and Rubalcava were unreasonable in their use of excessive force when shooting toward the Botten residence at a suspect who did not pose a significant threat of death or serious physical injury to the officers or other bystanders.  Thus, genuine issues of material fact exist as to whether defendants Kee and Rubalcava were negligent.  Accordingly, for the same reasons defendants Kee and Rubalcava's request for summary judgment on Cause of Action One is denied, defendants Kee and Rubalcava's request for summary judgment on Causes of Action Four and Five is **DENIED**.

However, with respect to defendant Blackwood, there is no evidence to suggest he shot toward the Botten residence. Plaintiffs appear to concede defendant Blackwood was not negligent by failing to address his actions and request for summary judgment in their Opposition. Dkt. 96. In fact, the undisputed evidence shows defendant Blackwood aimed and shot at the suspect in a northerly direction, not in the direction of any home. SDUMF ¶ 35. Hence, even if defendant Blackwood owed Plaintiffs a duty, there is no evidence defendant Blackwood breached that duty. Accordingly, defendant Blackwood's request for summary judgment on Causes of Action Four and Five is **GRANTED**.

F.  **DEFENDANTS KEE AND RUBALCAVA ARE NOT ENTITLED TO SUMMARY JUDGMENT ON CAUSE OF ACTION SIX UNDER THE BANE ACT**

   1.  **Applicable Law**

The Bane Act creates a cause of action against persons who interfere with constitutional rights "by threat, intimidation, or coercion[.]" Cal. Civ. Code § 52.1. In an excessive force case, the Bane Act requires establishing a Fourth Amendment violation and "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting Cornell v. City & Cnty. of San Francisco, 17 Cal. App. 5th 766, 801 (2017)). Evidence of "[r]eckless disregard for a person's constitutional rights" is sufficient to establish "a specific intent to deprive that person of those rights." Id. at 1045 (quoting United States v. Reese, 2 F.3d 870, 885 (9th Cir. 1993)). Courts have concluded a reasonable jury could find an officer's use of deadly force on a suspect amounted to reckless disregard where the evidence raised a triable question of fact as to whether the suspect posed a threat to the officer or others. See, e.g., Banks v. Mortimer, 620 F. Supp. 3d 902, 935 (N.D. Cal. 2022) (concluding reasonable jury could find use of deadly force amounted to reckless disregard where evidence suggested suspect was fleeing and posed no threat); Chambers v. Cnty. of Los Angeles, No. CV 21-8733-MCS-JEMx, 2022 WL 19076765, at *12 (C.D. Cal. Dec. 12, 2022) (concluding reasonable jury could find use of deadly force amounted to reckless disregard where, despite claim that suspect approached deputies in a "threatening manner[,]" video footage of incident did "not clearly show [suspect] posing a threat to the deputies").

   2.  **Analysis**

Here, genuine issues of material fact exist as to whether defendants Kee and Rubalcava acted with reckless disregard for the Bottens' constitutional rights during the shooting. Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could conclude defendants Kee and Rubalcava exhibited reckless disregard by shooting toward the Botten residence in an unreasonable manner. See PAMF ¶ 265; SDUMF ¶¶ 19, 21. For essentially the same reasons defendants Kee and Rubalcava are not entitled to summary judgment on Plaintiff's Fourth Amendment claim, Plaintiffs' Bane Act claim must survive. Reese, 888 F.3d at 1042 ("[The Bane Act] does not require a showing of threats, intimidation and coercion separate from an underlying constitutional violation.") (internal quotation marks omitted). In fact, crediting Plaintiffs' inferences from the bystander videos, defendants Kee and Rubalcava continued shooting toward the Botten residence after the suspect had fallen to the ground. See PAMF ¶¶ 241-42. Hence, while a jury may find the initial gunshots do not constitute reckless disregard, a reasonable jury could find the

excessive number of additional gunshots constitutes reckless disregard. The evidence raises a triable question of fact as to whether the suspect posed a threat to the officer or others. Hence, a reasonable jury could conclude defendants Kee and Rubalcava's use of force amounted to reckless disregard. See Banks, 620 F. Supp. 3d at 935; Chambers, 2022 WL 19076765, at *12.

Thus, genuine issues of material fact exist as to whether defendants Kee and Rubalcava violated the Bane Act. Accordingly, defendants Kee and Rubalcava's request for summary judgment on Cause of Action Six is **DENIED**.

## V.
## CONCLUSION

For the reasons set forth above, State Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. State Defendants' Motion for Summary Judgment is **GRANTED** as to Cause of Action Two;
2. State Defendants' Motion for Summary Judgment is **GRANTED** as to Causes of Action Four and Five with respect to defendant Blackwood;
3. State Defendants' Motion for Summary Judgment is **DENIED** as to Causes of Action Four and Five with respect to defendants Kee and Rubalcava; and
4. State Defendants' Motion for Summary Judgment is **DENIED** as to Causes of Action One, Three, and Six.

**IT IS SO ORDERED**.

# Exhibit B

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 6. Representation Statement

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form06instructions.pdf

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

| Isaiah Kee and Bernardo Rubalcava, Defendants |

Name(s) of counsel (if any):

| Diana Esquivel, Deputy Attorney General (SBN 202954) |
| Office of the Attorney General for the State of California |

Address: 1300 I Street, Suite 125, Sacramento, CA 95814

Telephone number(s): (916) 210-7320

Email(s): Diana.Esquivel@doj.ca.gov

Is counsel registered for Electronic Filing in the 9th Circuit?    ⦿ Yes    ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

| Jonathan Wayne Botten, Sr., Tanja Dudek-Botten, Annabelle Botten, and J.B., Plaintiffs |

Name(s) of counsel (if any):

| Dale K. Galipo (SBN 144074) |
| Hang D. Le (SBN 293450) |
| Law Offices of Dale K. Galipo |

Address: 21800 Burbank Blvd., Ste. 310, Woodland Hills, CA 91367

Telephone number(s): (818) 347-3333

Email(s): dalekgalipo@yahoo.com; hlee@galipolaw.com

*To list additional parties and/or counsel, use next page.*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 6**                                                    1                                      *New 12/01/2018*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?   ○ Yes   ○ No

**Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                                   2                          *New 12/01/2018*

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Jonathan Wayne Botten, Sr., et al. v. State of California, County of San Bernardino, et al.** | No. | **5:23-cv-257 JGB (SHKx)** |

I hereby certify that on June 4, 2025, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF APPEAL**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on June 4, 2025, at Sacramento, California.

|  |  |
|---|---|
| Sienna Sweiven | */s/ Sienna Sweiven* |
| Declarant | Signature |

SA2023302180
39073693.docx